## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CISCO SYSTEMS, INC., )<br>)<br>Plaintiff, )<br>v. )<br>)<br>TELES AG )<br>INFORMATIONSTECHNOLOGIEN, )<br>)<br>Defendant. )<br>)<br>TELES AG )<br>INFORMATIONSTECHNOLOGIEN, )<br>)<br>Counterclaimant, )<br>v. )<br>)<br>CISCO SYSTEMS, INC., )<br>)<br>Counterdefendant. )<br>) | Civil Action No.: 1:05-CV-02048 (RBW) |

### JOINT MEET AND CONFER STATEMENT

Plaintiff Cisco Systems, Inc. ("Cisco") filed this case seeking a declaratory judgment that Cisco does not infringe United States Patent No. 6,954,453 ("the '453 patent"), entitled "Method for Transmitting Data in A Telecommunications Network And Switch for Implementing Said Method" and that the '453 patent is invalid.  The patent was issued on October 1, 2005 to Defendant Teles AG Informationstechnologien ("Teles").  Teles has since filed an Answer and Counterclaims in which it asserts that certain products of Cisco infringe the '453 patent.  The Parties having met and conferred pursuant to Local Civil Rule 16.3(c) before the Initial Conference pursuant to Rule 16 of the Federal Rules of Civil Procedure on May 31, 2006, and for good cause, submit the following report and Proposed Order to the Court.

In the sections below, to the extent the parties disagree, the parties have tried to set out and explain their respective positions, first by a statement of the position of Plaintiff Cisco, and then by a statement of the position of Defendant Teles.

The parties have each attached copies of their respective proposed scheduling orders as Exhibits hereto.

I.      **DISCOVERY AND MOTION PRACTICE**

**Position of Cisco Systems**

1.      *Fact Discovery (excluding damages related discovery) is to remain open through June 15, 2007.  Damages discovery will be conducted only after a finding of liability, if any.*

The parties in this case agree, in large part, on the schedule for fact discovery, but not on the scope of discovery that should be allowed before liability is found (Cisco thinks there should be some phasing of discovery), nor on the claim construction procedures (Cisco believes Teles should be required to disclose the basis for its infringement allegations and its proposed claim construction early in this case, and that the Court should have an early Markman hearing after an orderly argument schedule, and that early summary judgment motions should be possible).  As discussed below, Cisco's proposals for the scheduling and phasing of this case are intended to try to significantly narrow the issues and facts in dispute early in this case, so as to allow this case to be fairly and efficiently litigated.

Before discussing the individual scheduling issues raised by the parties' proposed orders, it is critical for this Court to know that Cisco has already demonstrated, in litigation between Teles and Cisco in Germany over German and European counterpart patents to the '453 patent, [1]

---

[1] The '453 patent issued from international patent application PCT/DE97/02363, which claims that it is entitled to the filing date of German Patent DE 196 42 063.  The foreign counterparts to the patent-in-suit include DE 196 42 063 and European Patent EP 0 929 884 B1, which issued from the same international application as the patent-in-suit.

both that (i) similar claims in the German and European counterpart patents *are invalid*, and (ii) Teles is unlikely to succeed on its infringement claims against any of Cisco's products. Specifically, in a invalidity proceeding before the German Patent Court on April 4 and 5, 2006, the German patent court invalidated and revoked the basic claims of Teles' German and European counterpart patents. Just days before, on March 31, 2006, at an infringement hearing in the German District Court in Mannheim, the Court stated its preliminary view that Teles was unlikely to succeed on any of its infringement theories against Cisco's products. Both of these decisions were made after submission of extensive argumentation, briefing, evidence and prior art. During pendency of the German infringement action, which lasted over a year, Teles had access to Cisco products it had purchased as well as substantial publically available detailed technical specifications for the hardware and software sold by Cisco. A key issue addressed in the German infringement proceedings was the nature of the limitation in the claims that pertains to the changing over of a telephone call between two different switching networks during mid-conversation, a claim limitation that appears in each of the '453 patent claims as requiring a changeover "during the existing transfer" of data.

Given this history, it seems likely that Teles intends, in this case, to rehash these same issues in this Court. However, rather than seek a prompt resolution of those issues that are central to the dispute in this case – particularly the claim construction issues – Teles's proposed schedule, we submit, seems designed to forestall as long as possible any actual joining of the issues in this case on the critical issues of (i) claim construction, (ii) invalidity, and (iii) lack of infringement by Cisco.

Accordingly, Cisco suggests to this Court that the *unlikelihood* of Teles ever succeeding on enforcing the counterpart '453 patent in the United States is already demonstrated by the

European proceedings, and from this it follows that certain measures should be taken to allow this case to be litigated efficiently and fairly, so as to quickly identify the genuine issues in dispute, and to allow this Court to focus early in the case on those same issues that the German courts have already found to be dispositive.  The three principal features of Cisco's proposed scheduling order that will help this Court resolve these issues expeditiously and fairly are:  (i) an early process by which Teles is required to disclose the basis for its infringement contentions and its proposed claim construction, (ii) an early Markman hearing after this disclosure process, and the issuance of a construction order by this Court in this case, and (iii) the phasing of this case into liability and then damages phases.  Paramount among these means is the need for early disclosure by Teles of both the basis for its infringement allegations and its proposed claim construction, followed promptly by resolution by this Court of the proper construction of the asserted claims (through a Markman hearing or otherwise), so that the parties know *as early as possible in this case* the real scope of the patent claims, and thus the products at issue.  This is critically important because Teles has accused so many different products of infringement, and because Cisco knows from the prior litigation that, if certain claim language appearing in the claims means what it says, then Teles's infringement arguments are clearly baseless or, at worst, extremely limited in scope.

It just happens that in the order in which this joint scheduling submission is provided to the Court, the first issue to come up is bifurcation of this case into liability and damages phases. The issues of claims construction and Markman issues are discussed below.  With respect to bifurcation, Cisco's proposal is that damages discovery, expert discovery on damages, and trial on damages issues be postponed until after there is a finding of liability against Cisco.  In addition to the fact that Cisco has already proven that Teles is unlikely to prevail on the merits of

this case, thus making damages discovery potentially unnecessary, it is also true that Teles has

identified a wide range of Cisco products as accused products. It is extremely burdensome and

difficult to engage in damages discovery on such a broad range of products. Teles may argue

that damages information will help facilitate mediation or resolution of the case even during the

liability phase, but that does not require a full scale damages discovery or analysis. Damages

related discussions can occur in mediation based on more limited disclosure between the parties

as part of the mediation process.

Clearly, this Court has the authority and ability to bifurcate this action. Federal Rule of

Civil Procedure 42(b) provides that this Court may order separate trials of any claims or issues to

"further[] . . . convenience or to avoid prejudice, or when separate trials will be conducive to

expedition and economy . . . ." Patent infringement actions are uniquely suited to bifurcation

due to "the lack of substantial community between liability and damages issues." *Eaton Corp. v.*

*Auburn Gear, Inc*., Civ. No. F 88-80, 1988 U.S. Dist. LEXIS 15885 at *3, 8 U.S.P.Q.2d (BNA)

1373 (N.D. Ind. July 18, 1988) (quoting 3 R. WHITE ET AL., PATENT LITIGATION: PROCEDURE

AND TACTICS § 4.04[5] (1984)). Indeed, Congress anticipated exactly the kind of bifurcation

sought here, granting the Federal Circuit jurisdiction over a judgment of patent infringement

which is "final except for an accounting" of damages. 28 U.S.C. § 1292(c); *see In re Calmar*,

854 F.2d 461, 464 (Fed. Cir. 1988) (stating that "the purpose of [] § 1292(c)(2), [which] allows

interlocutory appeals in patent cases[,] was to permit a stay of a damages trial").

Bifurcating this case would promote judicial economy and conserve the parties'

resources because Cisco is likely to prevail on liability for the reasons stated above, thus

rendering damages-related activities unnecessary. The outcomes of these foreign actions

strongly suggests that the patent in-suit is invalid, and that even if the patent-in-suit is not

invalid, none of Cisco's products infringe.  Given these circumstances, the resources devoted to damages issues, including the added length and expense at trial, may prove unnecessary.[2] Accordingly, Cisco asks this Court to bifurcate this action into separate liability and damages phases and postpone damages-related discovery and trial until after a finding of liability, if any.

**Position of Teles AG**

>    *1.    Fact Discovery is to remain open through June 15, 2007.*

Teles' position is that fact discovery should follow the normal and efficient course routinely followed in patent and other cases in which all issues are subject to discovery.  Cisco, however, seeks the extraordinary measure of bifurcating discovery into liability and damages phases, which also will require empanelling separate juries for separate trials on those overlapping issues.  Because such bifurcation is inherently inefficient, time-consuming and burdensome to the parties and the court, bifurcation is an exceptional procedure in patent cases. *See Bryan Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 620 (N.D. Ill. 2000); *see also Fuji Mach. Mfg. Co. v. Hover-Davies, Inc.*, 982 F. Supp. 923, 924 (W.D.N.Y. 1997).  Cisco cannot meet its heavy burden of showing that bifurcation is warranted.  *Spectra-Physics Lasers, Inc. v. Uniphase Corp.*, 144 F.R.D. 99, 101 (N.D. Cal. 1992).

Cisco's request to bifurcate damages should be denied because (1) damages in this case are not unusually complex; (2) there is a substantial overlap of liability and damages; (3)

---

[2] Bifurcation is also warranted in this case because the sheer number of products that Teles alleges infringe the patent-in-suit increases the potential for jury confusion.  Teles's broadly-worded infringement allegation, which claims that "products, methods or services relating to the transmission of data in a telecommunications network" infringe the patent in suit, may implicate numerous Cisco products.  (D.I. 9, Answer and Counterclaim, ¶¶ 8, 10.) Bifurcating liability and damages will help simplify the presentation of evidence to the jury and alleviate the jury's burden, and therefore diminish the potential for confusion.  *See Princeton Biochemicals, Inc. v. Beckman Instr., Inc.*, 180 F.R.D. 254, 256 (D.N.J. 1997) (indicating that bifurcation may be appropriate in cases with complicated damages issues requiring extensive evidence).

bifurcation would unreasonably complicate discovery; (4) bifurcation would unduly prejudice Teles; and (5) delaying damages discovery can impede potential settlement.

First, this case presents none of the special circumstances that courts have found in a limited number of cases to jutify the inefficiency and delay inherent in bifurcated discovery – e.g., multiple parties dealing with unusually complex discovery.  Rather, this case concerns one patent with only three independent claims asserted by a single party against another single party. Further, the damages in this case will involve a routine assessment of a reasonable royalty, rather than the more complicated lost profits form of damages.

Second, there is a substantial overlap between the liability and damages issues, including the type of evidence used to establish both – e.g., the same documents and witnesses may be relevant to both liability and damages.  The damages issues, therefore, cannot be cleanly severed from the liability issues in this case.  For example, the documents, witnesses and other discovery concerning prior art is relevant to both (1) validity issues in the liability phase and (2) the reasonable royalty in the damages phase – e.g., Georgia-Pacific Factor No. 9 concerning availability of non-infringing alternative designs.  *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  Further, the commercial success of the accused products is relevant to both (1) damages and (2) validity as a secondary indicia of non-obviousness.  *See Demaco Corp. v. F. Von Langsdorff Licensing, Ltd.*, 851 F.2d 1387, 1391-94 (Fed. Cir. 1988).

Third, bifurcation will most likely result in contentious and time-consuming motion practice resulting from the near impossible task of trying to divide out these intertwined issues. One of the reasons that "most judges tend to let discovery go forward on all issues, even if the trial is divided," is that "[i]f discovery is divided, it often leads to increased motion practice as to the proper line to draw between what is properly produced in the first wave of discovery, and what is relevant only to a later date.  Robert P. Taylor et al., *Bifurcation, Trifurcation, Opinions of Counsel, Privilege and Prejudice* 828 Practicing Law Institute, No. G4-3952 (Nov. 1995); *see also Real v. Bunn-O-Matic Corp.*, 195 F.R.D. 618, 624 (N.D. Ill. 2000) ("repeated discovery

disputes will arise over whether requested discovery is related to liability, damages, willfulness, or all these issues.").

Fourth, bifurcating discovery virtually converts this one simple case into two separate cases each having complete discovery, pretrial, and trial schedules. The substantial costs associated with such a two-trial approach are manifest. Additionally, many of Teles' witness are German. To force those witnesses to testify more than once, including repeated trips to the United States (i.e., for a liability phase deposition, at the liability phase of the trial, for a damages phase deposition, at the damages phase of the trial) would be wasteful and disruptive to Teles' business. As the Counterclaimant Teles anticipates some disruption of its business, but there is no need to exacerbate such disruption.

Fifth, bifurcating damages discovery can be counter-productive to settlement because discovery on damages educates each party on the other's view of the damages. Damage discovery assists each party in evaluating essential elements of the matters in issue and in assessing the risks associated with an adverse decision and, consequently, can facilitate settlement discussions. *Johns Hopkins University v. Cellpro*, 160 F.R.D. 30, 35 (D. Del. 1995). Where discovery is bifurcated the parties and the court may be deprived of this information.

Cisco's arguments in favor of bifurcation are flawed. First, Cisco argues that bifurcation is appropriate under 28 U.S.C. § 1292 (c)(2) because an interlocutory appeal purportedly is available if all that remains is an "accounting" of damages. This argument is wholly inapplicable here. Under Cisco's proposed bifurcation, the issues remaining after liability would also include, not just infringement damages, but willful infringement, enhancement of damages based on willful infringement, and attorneys' fees, thus precluding appeal under § 1292 (c)(2). *See Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1343 n.2 (Fed. Cir. 2001) ("accounting" in § 1292 refers only to infringement damages, and not, *inter alia*, attorneys' fees).

Cisco also attempts to relay on determinations made in the German patent court to dictate the procedure - bifurcation - in the present litigation. What Cisco fails to mention is that while the parties in both the German action and the present action are the same, nothing else is.

First, unlike U.S. litigation, no formal discovery into how Cisco's products actually work was permitted in the German action.

Second, different products were involved in the German action.

Third, different patents were involved in the German action – i.e., German and European patents with different claims and claim terms than the U.S. patent at issue here.

Fourth, the validity issues in this action and the German action are much different. The German patent court applies very different standards of patentability than those applied in the U.S. patent system and the outcome, therefore, has nominal relevance to a U.S. patent action. *See Skil Corp. v. Lucerne Prods., Inc.*, 684 F.2d 346, 351 n.4 (6th Cir. 1982) ("Patent proceedings in other countries are not controlling, in part because the standards of patentability vary widely from country to country) (*citing Timely Prods. Corp. v. Arron*, 523 F.2d 288, 295 (2d Cir. 1975)). Further, unlike the German patents in the German action, the U.S. patent at issue here is presumed valid and Cisco has the burden of proving invalidity by clear and convincing evidence. Indeed, the U.S. patent at issue here received substantial examination the U.S. Patent Office prior to issuing, wherein the Patent Office considered nearly five times as much prior art references than those considered by the foreign patent offices that issued the German and European patents.

Fifth, there has been no final definitive written opinion on validity or infringement in the German actions.

In sum, the substantial differences between the subject matter of the German actions and the infringement action here could not even provide Cisco any good faith basis to believe it does not infringe the '453 patent, much less give rise to the exceptional circumstances that would warrant bifurcation.

Finally, Cisco's assertion that bifurcation is warranted to avoid jury confusion is at most relevant to whether to bifurcate trial before the same jury, but not bifurcating discovery. And it is premature to determine at this time whether the trial should be bifurcated. Rather, the proper time to determine whether and to what extent to bifurcate trial should be made at the Pretrial

Conference upon an informed assessment of the extent of overlap of witnesses, exhibits, and other issues the Court should balance in fashioning the trial schedule.

      2.      No fact discovery is to be issued any later than **May 2, 2007** or engaged in beyond **June 15, 2007**, except for pending discovery disputes or upon application and for good cause shown.  The discovery motion cutoff is May 15, 2007.

      a.      Maximum of 30 interrogatories to be served by each party on each opposing party, including contention interrogatories.

**Position of Cisco Systems**

      ***b.      Maximum number of requests for admissions to be served by each party will be limited to 35.***

Cisco submits that the Defendants' proposed number of 75 requests for admission is unnecessarily large and burdensome.

**Position of Teles AG**

      ***b.      Maximum number of requests for admissions to be served by each party will be limited to 75.***

Although the rules provide no limit on the number of requests for admissions, Teles suggests limiting such requests to 75 for each party, absent agreement otherwise.  Cisco's proposed number of 35 requests for admissions is simply to narrow and would unduly deprive the parties of this crucial tool for disposing of uncontested issues.

**Position of Cisco Systems**

    *c. Maximum number of document requests to be served by each party is three sets, unless otherwise agreed to by the parties.*

   Cisco proposes that the Court limit each party to *three <u>sets</u>* of document requests.  Teles has objected to Cisco's proposal arguing that Cisco is trying to reduce the number of document requests.  Cisco's proposal, however, does not in any way reduce the number of individual document requests, but rather confines each parties to a limited number of *sets* of separate document requests.  In this way, Cisco proposes to reduce the burden of discovery on both sides and add a great deal of predictability and organization to the process.  Moreover, this prevents an abuse of the discovery process, whereby parties serve set after set of discovery requests each containing only a few requests.  Cisco's proposal simply seeks to avoid this type of abuse, while not limiting the number of requests that can be served.  Of course, to the extent necessary, and upon a showing of good faith, either party may seek permission for additional discovery.

   Cisco further notes that although this Court does not have specific rules on the subject, other district courts have introduced local rules that limit the sets of document requests.  *See, e.g.*, L.R. D. Mass. 26.1(C) (limiting each party to "two (2) separate sets of requests of production").  There is no reason the parties cannot keep to the reasonable number of three sets of document requests.

**Position of Teles AG**

    *c. The number of sets of document requests remains that normally provided by the Federal Rules of Civil Procedure.*

   Teles proposes that document requests should follow the normal course established by the rules and routinely followed in all cases.  The number and timing of document requests necessarily will depend on how discovery unfolds, including whether each party is forthright in responding to discovery requests.  For example, deposition testimony may reveal that relevant

documents have not been produced for any number of reasons, including a disagreement among counsel as to the scope of prior document requests. An arbitrary limit on the sets of document requests that may be served would compel the parties into motion practice to resolve the disagreement that otherwise could be resolved by a simple, rephrased document request. Cisco provides no compelling basis to depart from the normal course or for the particular arbitrary number sets of document request it proposes.

> d.    Maximum number of fact depositions, including Rule 30(b)(6) depositions, will be limited to 15, absent further agreement of the parties or leave of the court. All fact depositions shall be limited to a single day, absent further agreement of the parties. The deposition of each individual Rule 30(b)(6) designee shall be limited to a single day.

3.    Any motion to amend pleadings or join any parties must be filed no later than **October 18, 2006**.

4.    Any discovery dispute shall be brought to the Court's attention by motion, but only after the parties' good faith attempt to resolve the dispute has failed. *See* LCvR 7(m).

5.    The parties shall serve Initial Disclosures, not later than fourteen calendar days after the Rule 16 conference, which is currently set for May 31, 2006.

**Position of Cisco Systems**

***6.    Plaintiffs/Counter-defendants will notify Defendants/Counter-plaintiffs whether they intend to rely on an opinion of counsel and produce all related documents by April 2, 2007.***

Defendant Teles in its counterclaims has alleged that Cisco's supposed infringement was "willful." One possible defense against such an allegation would involve Cisco asserting that it could not have willfully infringed because it relied upon advice of counsel. Because asserting such an approach to a willfulness defense involves potentially the waiver of the attorney-client privilege for a certain scope of documents and information, an alleged infringer such as Cisco is

faced with a "Hobson's choice" of either (i) having to disclose the contents of privileged

communications concerning the patent in suit, or (ii) foregoing such a defense to willfulness.

The Federal Circuit has cautioned that the parties should not lightly or prematurely be

forced into this decision:

> Proper resolution of the dilemma of an accused infringer who must
> chose between the lawful assertion of the attorney-client privilege
> and avoidance of a willfulness finding if infringement is found, is
> of great importance not only to the parties but to the fundamental
> values sought to be protected by the attorney-client privilege. An
> accused infringer, therefore, should not, without the trial court's
> careful consideration, be forced to chose between waiving the
> privilege in order to protect itself from a willfulness finding, in
> which case it may risk prejudicing itself on the question of
> liability, and maintaining the privilege, in which case it may risk
> being found to be a willful infringer if liability is found.

*Quantum Corp. v. Tandon Corp.,* 940 F.2d 642, 643-44 (Fed. Cir. 1991); *see also Sage Prod.,*

*Inc. v. Decon Indus., Inc.* 1994 WL 791601, *2 (C.D. Cal. 1994) (alleged infringer "is trapped in

a catch-22" when deciding whether to assert the advice of counsel defense). Because the

decision regarding the waiver of the attorney client privilege is so critical, the Federal Circuit has

endorsed bifurcation of trial proceedings regarding the issue of willfulness, so that the parties are

not prematurely faced with this type of critical "Hobson's choice." Cisco, however, is not

requesting a separate trial on this issue. Rather, Cisco requests that the Court adopt a

compromise approach that will protect the interests identified by the Federal Circuit while

maintaining a single trial. Moreover, Cisco is not seeking postponement of *all* discovery

regarding willfulness. Rather, Cisco's proposal is narrowly-tailored to address only the date

upon which Cisco must state whether it will rely on opinions of counsel, if any, and produce all

related documents encompassed in the waiver of the attorney client privilege that is the by-

product of a reliance on the opinion of counsel. Aside from this limited area, discovery may

proceed unhindered. Many courts have adopted procedures for delaying the waiver

accompanied by a reliance of counsel opinion, stopping short of bifurcation, yet providing the

party, here, Cisco, with sufficient protection in the form of time. *See e.g., Kos Phar., Inc. v. Barr*

*Labs., Inc.* 218 F.R.D. 387 (S.D.N.Y. 2003); *William Reber, LLC v. Samsung Elec. Am., Inc.*, 220 F.R.D. 533, 540 (N.D. Ill. 2004); *A.L. Hansen Manuf. Co. v. Bauer Prods., Inc.* 2003 WL 1125911, *6 (N.D. Ill. May 18, 2004).

Cisco should not be forced to make this choice early in the case, particularly prior to a Markman hearing at which the Court determines the scope of the claims and helps define for the parties what really is in dispute and what products might really be at issue. Accordingly, Cisco proposes the inclusion of this provision in the Court's scheduling order so as to set a date certain by which Cisco is to indicate whether it will rely upon an advice of counsel defense or not. This date is close to the end of fact discovery, but would still allow sufficient time – more than two months – for Teles to take necessary discovery concerning the defense.

## Position of Teles AG

*6.        Plaintiffs/Counter-defendants shall respond to willfulness discovery served by Defendants/Counter-plaintiffs per the timelines required by the Federal Rules of Civil Procedure.*

Teles proposes that all discovery – including discovery of willful infringement – should be conducted together as is routine in patent and other cases. Cisco's request to delay an aspect of willfulness discovery until just before the cut-off to serve written discovery is highly unusual and prejudicial to Teles. Such late disclosure may foreclose Teles from deposing the appropriate people who may come to light as a result of the opinion of counsel or, if Teles is permitted to reserve such depositions, it will incur increased costs as a result of having to depose some of the same witnesses more than once.

Accordingly, Cisco should indicate whether they intend to rely on opinion of counsel and discovery should proceed accordingly in the normal course typically followed in patent and other cases. Cisco should not be permitted to wait until the day before the close of fact discovery to decide whether it intends to rely on an opinion of counsel. The separation of issues where

discovery of willfulness would be separated from all the other issues in the case is particularly disfavored by the courts. *John Hopkins University v. Cellpro,* 160 F.R.D. 30, 36 (D. Del. 1996)*; see also, Calmar, Inc. v. Emerson Research*, 850 F. Supp. 861, 866 (C.D. Cal. 1994) ("It is difficult for this Court to see how ordering separate trials and staying discovery of Emson's attorney opinions would provide the most efficient method of handling the instant action. Bifurcation of the issue of willfulness and a stay of discovery would only complicate the instant proceedings and cause needless delay."); *Robotic Vision Sys., Inc. v. View Eng'g, Inc.*, No. CV 96-2288, 1997 U.S. Dist. LEXIS 19157, at *8 (C.D. Cal. Nov. 6, 1997) ("[B]ifurcation of the issue of willfulness would be inefficient and cause needless delay.  Many of the witnesses and evidence needed to address the willfulness issue are the same as that needed to address the liability issue.").  Indeed, such a separation in discovery is likely to cause duplication of effort and confusion than to achieve any type of judicial economy.

A finding of willfulness must be based on the totality of the circumstances.  *See Advanced Cardiovascular Sys., Inc. v. Medtronic*, 265 F.3d 1294, 1308 (Fed. Cir. 2001); *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1354 (Fed. Cir. 1999).  This implies that the evidence of liability and willfulness overlap.  *See A.L. Hansen Mfg. Co.*, No. 03 C 3642, 2004 U.S. Dist. LEXIS 8935, *9 n.3 (N.D. Ill., May 17, 2004) (noting that much evidence establishing the totality of the circumstances including evidence on obviousness would be admitted in the liability phase of the trial).  Consequently, the discovery of information related to liability may be intertwined with discovery of information pertaining to willfulness. To delay discovery on key elements of willfulness therefore would be inappropriate and inefficient claim construction and infringement positions.

**Position of Cisco Systems**

For the reasons stated above, Cisco submits that it is critical in this case to have an orderly, and *early* process for resolution of claim construction issues in this case, akin to that used in several other courts around the U.S., as follows:

*7.       Defendants/Counter-plaintiffs will identify to Plaintiffs/Counter-defendants the claims of the '453 patent on which it relies for its allegations of infringement by June 16, 2006.  On June 16, 2006, Defendants/Counter-plaintiffs will also provide to Plaintiffs/Counter-defendants a chart identifying specifically where each element of each asserted claim is found within each accused products (whether literally or under the doctrine of equivalents), including for each element that such party contends is governed by 35 U.S.C § 112(6), the identity of the structure(s), act(s), or material(s) in the accused product that performs the claimed function.*

*8.       Defendants/Counter-plaintiffs will identify to Plaintiffs/Counter-defendants the claims terms in need of construction by June 30, 2006.*

*9.       Plaintiffs/Counter-defendants will identify to Defendants/Counter-plaintiffs any additional claim terms in need of construction by July 7, 2006.*

*10.      Defendants/Counter-plaintiffs will identify proposed claim construction with cites to the supporting intrinsic record by July 21, 2006.*

*11.      Plaintiffs/Counter-defendants will identify proposed claim construction with cites to the supporting intrinsic record by August 4, 2006.*

*12.      The parties will meet and confer in an effort to narrow the claim construction issues to be presented to the Court by August 11, 2006.*

*13.     The parties will submit to the Court a joint claim chart, including agreed upon constructions, and the relevant intrinsic evidence by August 18, 2006.*

*14.     The parties will simultaneously submit opening claim construction briefs on all disputed issues by September 1, 2006.*

*15.     The parties will simultaneously submit rebuttal claim construction briefs on all disputed issues by September 22, 2006.*

*16.     The Court will hold a claim construction hearing on October 6, 2006 or as soon there after as the Court is available.*

This process, Cisco submits, is a fair way to get a prompt and timely resolution of the claim construction issues in this case, and thereby narrow the issues in dispute. Based on the history of the German proceedings, Cisco expects Teles to attempt to assert in this case a broad claim construction of a type that the German infringement court preliminarily found unsupported by the invention disclosure and the claims at the March 31st hearing. The interpretation of several aspects of the claims of the '453 patent are potentially case dispositive, and at a minimum, could greatly narrow the products in dispute, as well as the overall issues in dispute.

For example, there are only three independent claims in the '453 patent (Claims 1, 22, and 34), and a total of 38 different claims. Claims 1 and 22 are method claims, and Claim 34 is an apparatus claim. As noted above, each one of those claims contains language requiring the switching between networks to occur "during the existing transfer," and a proper Court construction of this element would, Cisco submits, rule out most if not all of Teles' proposed infringement case. Other claims limitations, such as the five different "means plus function" elements of Claim 34, need to be construed by the Court and have the correct corresponding structure so that the parties can have a more definite idea of claim scope.

As this Court is undoubtedly aware, an early claim construction focuses the parties efforts – with respect to both infringement and validity issues – on the real scope of the claims, and the parties are not forced to struggle through fact and expert discovery without having a resolution of disputes concerning claim scope. The schedule that Cisco proposes above will efficiently enable the parties to address and brief the claim construction issues by early Fall 2006, so that the Court can resolve the issues, either by a Markman hearing, or on the papers. Construing the claims pursuant to Cisco's proposed schedule will set a definite framework for this litigation, thereby avoiding unnecessary resource expenditure regarding issues related to non-infringement and invalidity that are not relevant in light of the properly construed claims.

Teles, on the other hand, proposes no schedule at all for deciding the claim construction issues. They seek to postpone for at least five months, any attempt to identify the claim terms in dispute and seek to avoid staking out their position on claim construction as long as possible even though they were required to construe their claims prior to filing suit. Certainly one purpose of doing so might be to enable them to obtain discovery about Cisco's products, and then tailor their claim construction to fit the accused devices, which would be improper.

Teles may claim that the claim construction issues and a Markman hearing should be postponed so that Teles can get discovery to identify which claims it will assert, and to flesh out the scope of its infringement claims. But in accordance with the requirements of Rule 11, Teles must have already formulated its claim construction position for the '453 patent before bringing its infringement claim, and must also have formulated specific reasons why it is asserting infringement against the enumerated Cisco products. Federal Circuit law requires Teles to have conducted a sufficient pre-filing investigation into its own patent and how it should be construed, and to also have a good faith basis for asserting infringement. *View Engineering v. Robotic*

*Vision Systems*, 208 F.3d 981, 986 (Fed. Cir. 2000). Moreover, Courts construe patent claims "in light of the specification, the prosecution history, and the prior art," not on the basis of the accused device, as the claims should be construed "independent of the accused product." *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000) (quoting *Scripps Clinic v. Genentech, Inc.*, 927 F.2d 1565, 1580 (Fed. Cir. 1991)). Teles obviously has access to the specification and the prosecution history—the "intrinsic evidence"—that courts use to construe patents. As a company owned at least in part by the inventor, Mr. Schindler, and as the assignee of the patent-in-suit, Teles clearly has access to additional "extrinsic" resources, such as the inventor himself, which it may use to inform its claim construction position and arguments.

Furthermore, Teles can hardly claim that it lacks information about Cisco's products to disclose its claim construction and infringement contentions early in this case for at least two reasons: First, Teles obtained substantial insight into the subject matter claimed by the patent-in-suit during foreign litigations addressing the validity and infringement of foreign counterparts to the patent-in-suit. Second, there is extensive public information about Cisco's products and its systems available on Cisco's own website, as well as in various publications. Teles repeatedly relied on those public materials for its infringement case in Germany, and Teles certainly has enough information about Cisco's products to disclose its claim construction and infringement positions. Third, Teles owns and has operated various pieces of Cisco's equipment in an attempt to prove infringement of the German and European patent claims. Teles should be allowed no further discovery until it has disclosed its positions concerning the claims it is asserting, construction of the relevant claim terms and the accused products. *See Vivid Technologies*, 200 F.3d at 803-804 ("We conclude that the district court acted within its discretionary authority in

denying discovery of the [allegedly infringing machines] in connection with the claim construction phase of the proceedings.").

As to the timing of the Markman hearing itself, in arguing for a delay of the claim construction process, Teles seems to be suggesting that Cisco's schedule will require the Court to construe the claims without the "context" of the actual dispute over infringement.  Teles has cited *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322 (Fed. Cir. March 23, 2006), along with other cases, as support for its position.  In that case, the Federal Circuit held that while a court should not construe claims with reference to the accused device, s*ee NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002), it nonetheless can be convenient to use the accused product or process to focus the parties' claim construction disputes.  *Wilson Sporting Goods*, 442 F.3d 1326-27.  But Cisco's proposal here does not require discovery to await the Court's claim construction, and sufficient discovery should be done by late 2006 for the parties and the Court to have appropriate "context."  *Wilson Sporting Goods* thus does not aid Teles.  What Teles should not be allowed is to embark on an extended fishing expedition to investigate Cisco's systems prior to having to define the scope of its own property.  Scheduling a *Markman* hearing for in or around October 2006 would afford Teles sufficient time to take discovery concerning Cisco's accused technology and allow the parties to focus their attention to the disputed claim terms in light of the accused technology.

Accordingly, this Court should adopt Cisco's proposed claim construction schedule.

**Position of Teles AG**

Teles submits that the parties and the Court should discuss whether and to what extent a *Markman* hearing is necessary, and if so, the timing for such a hearing at a Progress and

Planning Conference to be held on October 30, 2006, in the United States District Court for the District of Columbia.

Cisco's proposed claim construction and infringement position schedule, outlined in paragraphs 7-16, is premature, highly inefficient and has been rejected by most courts that have addressed the issue. *See American Permahedge, Inc. v. Barcana, Inc.*, 105 F.3d 1441 (Fed. Cir. 1997); *ADC Telecommunications, Inc. v. Siecor Corp.*, 954 F. Supp. 820 (D. Del. 1997); *Johansson v. Rose Displays, Ltd.*, 924 F. Supp. 328 (D. Mass. 1996) *rev'd on other grounds*, 121 F.3d 727 (Fed. Cir. 1997); *Calmac Mfg. Corp. v. Dunham-Bush, Inc.*, 929 F. Supp. 951 (E.D. Va. 1996). In fact, trial courts often prefer to construe claims in the context of dispositive hearings, which avoid any appearance of an advisory opinion that might otherwise result from stand-alone Markman hearings. *See, e.g., MediaCom Corp. v. Rates Tech., Inc.*, 4 F. Supp. 2d 17, 22 n.2 (D. Mass. 1998) (citing cases); s*ee also Thomson Consumer Elecs., Inc. v. Innovatron, S.A.*, 43 F. Supp. 2d 26, 29 n.2 (D.D.C. 1999) ("The preference for early *Markman* hearings poses a problem of priorities. If a party's infringement claim requires a certain construction of disputed terms, *A, B*, and *C*, it would be helpful for the Court to know that -- through briefing on infringement -- when construing the patent. To support a ruling of non-infringement, the Court need only construe one of those terms adversely to the patentee, leaving the other two terms for construction another day.").

Teles should not be required to commit to which patent claims to assert and infringement contentions until after fact discovery. Teles needs fact discovery in order to confirm its understanding of the accused products – including precise technical documents (rather than general documents from Cisco's website) – and narrow the potential dispute between the parties. Cisco has even conceded this fact by stating, "Certainly one purpose of doing so might be to

- 21 -

enable [Teles] to obtain discovery about Cisco's products…"  Under Cisco's proposed schedule, rather than the parties narrowing the issues after informed discovery, they would guess at a wealth of issues and have the Court issue advisory opinions that may or may not address what become the actual dispositive issues in the case.  This is improper.  It is up to the parties to narrow the issues prior to bringing them to the Court, not the other way around.

Moreover, Cisco should not be allowed to rely on either preliminary or final determinations of foreign courts to dictate the procedure or outcome in the present litigation.  *See Glaxo Group Ltd. v. Apotex, Inc.*, 64 Fed. Appx. 751, 755 n.1 (Fed. Cir. 2003) (Canadian judgment construing Canadian equivalent of patent in dispute, applying Canadian patent law, did not control Court of Appeals' determination whether patent was likely infringed.);  *see also Heineken Technical Services, B.V. v. Darby,* 103 F.Supp.2d 476, 479-480 (D. Mass. 2000) (Dismissal of suit seeking declaratory judgment that plaintiff was rightful and proper inventor of technology claimed in defendant's pending U.S. patent application was not warranted, even though German court had found for defendant in parallel suit involving pending German patent application.).  Further, the claim limitation "during the existing transfer" Cisco raises here may not be the only limitation in the '453 patent that Cisco plans to challenge or that may require construction.  A premature claim construction now based on that single limitation will inevitably require the Court to revisit claim construction again and again until all infringement and validity disputes have been identified through informed discovery.

Whether and to what extent the Court should construe the terms of the patent claims cannot be properly determined until the disputes related to such claim construction have crystallized – e.g., the construction of the patent claims will be relevant to disputes concerning (1) infringement by the accused products and (2) whether the claims are invalid because they

encompass the prior art.  Cisco's proposed schedule, however, does not provide time for sufficient infringement discovery, and fails to even mention the issues of patent validity that may implicate claim construction issues.  If Teles and the Court are forced to construe the claims without detailed information about the accused products and Cisco's validity contentions, the Court will be left without the proper context that the Federal Circuit requires for an accurate claim construction.  "While a trial court should certainly not prejudge the ultimate infringement analysis by construing claims with an aim to include or exclude an accused product or process, knowledge of that product or process provides meaningful context for the first step of the infringement analysis, claim construction." *Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*, 2006 U.S. App. LEXIS 9708, *4 (Fed. Cir., April 19, 2006) (*citing Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326-27 (Fed. Cir. 2006)); *see also SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (while a claim is not to be construed in light of the accused device, in an infringement case, it must inevitably be construed in context of the accused device); *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1580 (Fed. Cir. 1991) ("Of course the particular accused product (or process) is kept in mind, for it is efficient to focus on the construction of only the disputed elements or limitations of the claims."); *Multiform Dessicants, Inc. v. Medzan, Ltd.*, 133 F.3d 1473, 1476-78 (Fed. Cir. 1998) (recognizing that infringement may be resolved with the step of claim construction as district court defined "degradable" claim term in light of the mode of action of the accused device); *Pall Corp. v. Hemasure Inc.*, 181 F.3d 1305, 1308 (Fed. Cir. 1999) ("Although the construction of the claim is independent of the device charged with infringement, it is convenient for the court to concentrate on those aspects of the claim whose relation to the accused device is in dispute.").

Significantly, of the 94 district courts that hear patent cases, only 4 have even tried to adopt any procedure akin to what Cisco proposes. This Court has not adopted any such rules. And even the United States District Court for the Eastern District of Texas, which has tried to adopt specialized patent rules, recognizes that such an accelerated schedule is not proper in a case like this involving software limitations, which require substantive discovery to more fully understand the inner workings of the accused device. Judge T. John Ward, of the Eastern District of Texas, explained in *American Video Graphics, L.P. v. Electronic Arts, Inc.*, 359 F. Supp. 2d 558 (E.D. Tex. 2005), that software cases present unique challenges for the parties and the courts because, prior to discovery, plaintiffs usually only have access to the manifestation of the defendants' allegedly infringing source code and not the code itself and that plaintiffs must somehow divine whether the defendants' code infringes.

In sum, Teles proposes that whether and to what extent the Court should schedule claim construction briefing should not be considered until the case has matured through discovery. Specifically, Teles proposes a status conference on October 30, 2006 at which time discovery should have matured and the parties can advise the court at that time how best to proceed with claim construction.

## II.    EXPERT DISCOVERY

17.    All affirmative expert reports shall be delivered by **July 16, 2007**. Any such report shall be in the form and content prescribed by Fed. R. Civ. P. 26(a)(2)(B).

18.    All responding reports shall be delivered by **August 16, 2007** and shall be in the form and content as described above. Reply reports shall be served no later than **August 30, 2007,** and shall be limited to issues raised in responding.

19.     All depositions of any experts shall be completed by **September 28, 2007**.  Each expert deposition will be limited to a single day, unless otherwise agreed to by the parties.

### III.      MEDIATION/ARBITRATION

20.     The parties have determined that neither mediation nor arbitration is desired at this time.  The parties shall revisit the issue and report to the Court no later than the date of the Status Conference set pursuant to paragraph 23..

### IV.      SETTLEMENT

21.     The parties have determined that settlement of the dispute is not possible at this time.

### V.      MISCELLANEOUS

**<u>Position of Cisco Systems</u>**

*22.     The parties shall prepare and submit a joint Protective Order governing the control of confidential information provided by the parties or any third parties by no later than June 23, 2006, or shall present to the court a proposed order indicating any area of disagreement to be decided by the Court.  Until a Protective Order is entered, all confidential documents and information shall be exchanged on an outside counsel only basis, except for Cisco's source code, which will not be produced until the entry of an appropriate Protective Order.*

The parties are currently discussing the scope of the proposed protective order.  A significant issue for Cisco is the protection of its core trade secrets and asset, in the form of the source code for its products.  In various other patent proceedings involving Cisco products, courts have recognized the need for special protections to avoid any risk to Cisco of having Cisco's source code disclosed publicly (whether intentionally or inadvertently), thereby causing

significant harm to Cisco. Such special protections are currently in place in two cases in the

Eastern District of Texas, *QPSX Developments 5 PTY LTD v. Juniper Networks, Inc., et al.*; Civ.

Action No. 2:05-CV-268 (TJW) and *Fenner Investments, LTD., v. Juniper Networks, Inc. et al*,

Civ. Action No. 2:05-CV-00005 (JDL) and Cisco expects to propose similar protections in this

case for its source code. If this Court does not narrow the issues in dispute through an early

Markman hearing as proposed, Cisco could be required to produce literally millions of lines of

irrelevant source code; the veritable "crown jewels" of Cisco's intellectual property for its highly

popular products. Cisco guards this source code zealously spreading different portions of the

source code throughout its network of computers and protecting it with multiple layers of

advanced security protocols. To have this source code in a single location is extremely

troubling. To have this source code in a single location not controlled or policed by Cisco's

security protocols is unimaginable.

     Cisco raises this point only to alert the Court to the issues. Because the parties have at

present only just begun to negotiate the details of the protective order, Cisco undertakes to

continue those negotiations in hopes of resolving the issues without Court assistance. In the

meantime, however, Cisco strongly objects to producing its source code only on an "attorneys'

eyes only" basis, and would request the postponement of any discovery of source code until such

time as any protective order issues can be resolved.

     Teles proposes that the parties submit a joint protective order to the Court by May 31,

2006. While Cisco is certainly agreeable to working with Teles to submit a joint protective

order, Cisco does not believe that it is feasible to do so by May 31, 2006, as issues of

disagreement, specifically as to the treatment of source code, will need to be fully briefed by the

parties. Cisco believes that its proposed date of June 23 allows the parties to negotiate the terms

of a protective order and complete any necessary briefing, while causing no prejudice to either

party.

**Position of Teles AG**

  *22.  The parties shall prepare and submit a joint Protective Order governing the*

*control of confidential information provided by the parties or any third parties by May 31,*

*2006 for consideration by the Court at the conference scheduled for that day.  Until a*

*Protective Order is entered, all confidential documents and information shall be exchanged on*

*an outside counsel only basis.*

  The scope of the protective order should include no more than the routine safeguards

such as "Outside Counsel Only" that are employed in similar cases involving business

confidential information, such as source code.  Such safeguards are sufficient, and any deviation

from them would result in an increase in costs and would prevent Teles from being fully and

fairly represented.

**Position of Cisco Systems**

  *23.  Progress and Planning Conference.  A conference will be held on Monday,*

*December 15, 2006, at _____ a.m., in the United States District Court for the District of*

*Columbia, regarding the progress of the action.  Among the topics that may be discussed at the*

*conference is outstanding discovery disputes and case status.*

  Cisco is amenable to holding a status or progress conference at whatever schedule the

Court deems convenient.  However, we disagree strongly with Teles' proposed approach of not

holding any progress hearing, or holding any Markman or claim construction resolution process,

before October 30, 2006, their suggested date for a status or progress conference.  This would

require Cisco to defend against the undefined moving target, namely all claims of the patent-in-

suit.  If the Court adopts Teles' approach and determines the status or progress hearing will include discussion about whether to hold a Markman hearing, and whether any dispositive motions may be submitted (rather than adopting the schedule set forth by Cisco above), then status or progress hearing should be held in July 17, 2006.  Cisco submits that there is no valid reason for more than five months to go by before the parties and the Court even start thinking about resolution of claim construction issues.  This will only contribute to the wasting of the parties' and the Court's resources.

Cisco also suggests that the Court schedule a status or progress conference, if necessary, on December 15, 2006 to discuss the progress of the case and to address any discovery disputes or other issues that arise by that date.

**Position of Teles AG**

*23.        Progress and Planning Conference.  A conference will be held on Monday, October  30, 2006, at ____ a.m., in the United States District Court for the District of Columbia, regarding the progress of the action.  Among the topics that may be discussed at the conference are: whether or not a Markman hearing is necessary, and if so, the timing for such a hearing; and whether any dispositive motions may be submitted prior to the time specified in paragraph 25, below.*

Teles submits that it is best for the parties to apprise the Court of the progress of the action on October 30, 2006.  Once the Court is apprised of the parties' progress it can decide whether any dispositive motions should be allowed to be submitted prior to the time specified in paragraph 25.  In addition, Teles believes that this status conference is the appropriate time to discuss whether or not a *Markman* hearing is necessary, and if so, the timing for such a hearing. Teles incorporates by reference its position in relation to paragraphs 7-16.

24.    The Court may from time to time schedule conferences as may be required either *sua sponte* or at the request of either party.

**Position of Cisco Systems**

*25.    Case Dispositive Motions.  All opening case dispositive motions, pursuant to the Federal Rules of Civil Procedure, shall be served on or before October 26, 2007.  Opposition briefing shall be served on or before November 9, 2007.  Reply briefs shall be served on or before November 16, 2007.*

The parties do not significantly disagree with respect to the schedule for case dispositive motions following the end of discovery.  However, Teles' position would preclude Cisco (or Teles) from filing potentially case dispositive motions *before* the close of fact discovery, and thus could unnecessarily prolong this case.  Cisco submits that, if there is a case dispositive motion that can be filed earlier in the case, then it should be permitted.  Indeed, it may be particularly appropriate to allow such motions as discovery proceeds in the case to attempt to narrow the issues in dispute.

**Position of Teles AG**

*25.    Case Dispositive Motions.  All opening case dispositive motions, pursuant to the Federal Rules of Civil Procedure, shall be served on or before October 26, 2007.  Opposition briefing shall be served on or before November 9, 2007.  Reply briefs shall be served on or before November 16, 2007.  The Parties request that any decision on case dispositive motions be granted 30 days before the pretrial conference.*

Teles submits that Cisco's basis for seeking to file case dispositive motions *before* the close of fact discovery is improper, premature, and lacking foundation.  Teles is entitled to discover all relevant facts related to Cisco's infringement of the patent at issue.  Cisco has not

provided any exceptional or compelling reasons as to why the parties should deviate from

allowing discovery to proceed as is customary in the majority of patent cases.

      26.    **Pretrial Conference and Trial**.  The Court will schedule the Pretrial Conference

on no earlier than 30 days after ruling on dispositive motions.  The Federal Rules of Civil

Procedure and Local Civil Rule 16 shall govern the pretrial conference.


Respectfully submitted,

| | |
|---|---|
| /s/ John A. Moustakas | /s/ Mark Whitaker |
| John A. Moustakas (#442076) | Matthew Moore, No. 453773 |
| GOODWIN PROCTER LLP | David Long, No. 458029 |
| 901 New York Avenue, N.W. | Mark Whitaker, No. 435755 |
| Washington, DC  20001 | Andreas Stargard, No. 484303 |
| (202) 346-2000 | HOWREY, LLP |
| (202) 346-4444 (fax) | 1299 Pennsylvania Avenue, N.W. |
| jmoustakas@goodwinprocter.com | Washington, D.C. 20004 |
| | (202) 783 – 0800 |
| | (202) 383 – 6610 (fax) |

*Of Counsel:*
John C. Englander (*admitted pro hac vice*)
J. Anthony Downs (*admitted pro hac vice*)
Lana S. Shiferman (*admitted pro hac vice*)
Michael J. McNamara (*admitted pro hac vice*)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000
(617) 523-1231 (fax)

Benjamin Hershkowitz (*admitted pro hac vice*)
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, NY 10022
(212) 813-8800
(212) 355-3333 (fax)