# EXHIBIT B

Certified Translation of a German Document – Ruling by the Federal Supreme Court for Patent Matters of 5 April 2006 in the Matter of Cisco Systems Inc vs. Teles AG

---

p.1

Stationery for rulings of the Federal Supreme Court for Patent Matters

(rubber stamp received…. 2 June 2006 … attorneys Bardehle…..)



(Federal Eagle)

Federal Supreme Court for Patent Matters

IN THE NAME OF THE PEOPLE

Judgment

(docket no.) 4 Ni 61/04(EU)

docket joined with 4 Ni 41/05(EU)

Ordered on 5 April 2006
May
Secretary as
Clerk of the court



In the matter for the nullification of a patent

Parties involved:

1.Cisco Systems Inc, represented by its president and CEO J.T. Chambers, 170 West Tasman Drive, San Jose, California 95134 ( USA)

     petitioner ( 4 Ni 42/05)

represented by patent attorneys licensed engineer CEIPI J.Lang ( Bardehle Pagenburg Dost Altenburg Geissler), 1 Galileiplatz, 81679 Muenchen

2.Quintum Technologies Inc. represented by its CEO Cheng T.Chen, 71 James Way, Eatontown, NJ 07724 (USA)

petitioner ( 4 Ni 42/05)

represented by : patent attorney lic.phys. Dr.H. Heunemann ( Vossius & Partner) 3 Siebertstr., 81675 Muenchen

Vs.

p.2

TELES AG Informationstechnologien, represented by the members of the board Prof.Dr.S.Schindler, J.Bastian, A.Krueger,J.Schwarzer,R.Wegener,O.Schulz, 2-4 Dovestr., 10587 Berlin

respondent

represented by patent attorney Dipl.Phys. Dr.W.Mueller ( Maikowski & Ninnemann ) 54-55 Kurfuerstendamm, 10707 Berlin

regarding the European  patent EP 0 929 884 ( DE 597 00 636 )

the 4th chamber of the Federal Supreme Court for Patent Matters has ruled after a hearing of 5 April 2006 acting with the participation of presiding judge Ms Winkler and the following judges Dipl.Phys. Dr.Hartung, Voit, Dipl.Phys. Dr.Zehendner and Dipl.-Ing(Univ.) Hoeppler  as follows:

I. The European patent EP 0 929 884 is hereby declared void as regards the territory of the Federal Republic of Germany.

II. Respondent to pay the legal fees of the dispute.

III... This judgment is enforceable provisionally if a security in the amount of 120 % of the amount to be enforced has been posted.

p.3

Facts of the matter:

The respondent holds by virtue of registration the European  patent EP 0 929 884 ( the patent at issue ) which has been issued effective for the territory of the Federal Republic,

which has been registered claiming the priorities of the German patent application DE 196 42 063 of 7 October 1996 and of the German patent DE 196 45 368 of 23 October 1996. The patent at issue has been issued in the procedural language German, and is registered with the German Patent and Trademark Office as no. 597 000 636; it consists in its issued form 21 claims which are attacked in their entirety. The claims 1 and 2 of the patent are defined as follows :

1. Method for the transmission of data from a first switch to a second switch which are part of a line-switching network or which have access to a line-switching network, either by line-switching or by packet-switching, consisting of the following steps :
a) formation of a connection via the line-switching network from the first switch to the access point of a packet-switching network,
b) transmission of data by line-switching network from a first switch to an access point for a packet-switching network,
c) packaging of data if there are not existing as data packages and packet-switching transmission of the data packages via the packet-switching network from the access point to the second switch,
d) repeated checking whether a control signal produced by a user of an end appliance or by network management is existing in order to move to a line-switching connection to a second switch,

p.4

e) formation of a line-switching connection from the first switch to the second switch via the line-switching network if the corresponding control signal exists if this is not already existing,
f) change from a line-switching data transmission during an existing connection and transmission of data to a second switch.

2. Method for the transmission od data from a first switch to a second switch which is as well part of a line-switching network as also of a packet-switching network or which has access to such networks, either by line-switching or by packet-switching, consisting of the following steps:
a) packaging of data in the first switch if the data are not already existing as data packets,
b) transmission by packet-switching via the packet-switching network to the second switch,
c) repeated checking whether a control signal produced by a user of an end appliance or by network management is existing in order to move to a line-switching connection to a second switch,
d) formation of a line-switching connection from the first switch to the second switch via the line-switching network if the corresponding control signal exists if this is not already existing,

    e) change from a line-switching data transmission during an existing connection and transmission of data to a second switch

p.5

As regards the other claims, referenced back to claims 1 and 2 either directly or indirectly to claims 3 – thru 21 in the issued form reference is made to the patent document EP 0 929 884 B1.

The respondent has defended the patent at issue in the nullification procedure against the form in which it was issued only in a limited manner in claims 1 thru 16.

With their nullification petition petitioners claim that the object of the patent at issue is not new, even in its limited form as defended and that it is not based on inventor's activity. In order to support their argument petitioners make reference to the following written descriptions; the enumeration as used by petitioner no.1 ( NK with consequent numbering ) , if applicable the numbering as used by petitioner no.2 in brackets and finally the enumeration of the petitioner no.2 ( K with subsequent numbers) :

NK 7 – thru K 21 (page 8 of the document translated)

Petitioners ask

    that the European patent EP 0 929 844 be declared void effective for the territory of the Federal Republic of Germany.

Respondent ask

    that the petitions be dismissed in the extent of the claims 1 thru 16 as issued of the patent at issue ( main petition ),

    additional with the proviso that the patent claims 1 and 2 are worded as follows and that the claims 3 thru 16 remain in the form as issued ( additional petition no.1) :

    1. Method for the transmission of data from a first switch to a second switch which are part of a line-switching network or have access to a line-switching network, either via line-switching or via packet-switching, consisting of the following steps:

    a) formation of a connection via the line-switching network from the first switch to an access point of the packet-switching network *when the packet-switching network is not the X.25 packet-switching part of an ISDN,*

p.9

b) line-switching transmission of data from a first switch to the access point of a packet-switching network,

c) packaging of data if these don't exist yet as data packets and packet-switching transmission of data packets via the packet-switching network from the access point to the second signal,

d) repeated checking whether there is a control signal for transfer to a line-switching connection to the second switch,

e) formation of a line-switching connection from the first switch to the second

f) switch over the line-switching network when there is a corresponding control signal if such a line-switching connection does not already exist,

g) change to a line-switching transmission during an existing connection and transfer of the data to a second switch.

2. A Method for the transfer of data from a first switch to a second switch which are as well part of a line-switching network as of a packet-switching network or have access to such networks *when the packet-switching network is not the X.25 packet-switching part of an ISDN*, either via line-switching or via packet-switching, consisting of the following steps :

a) packaging of data in the first switch if the data are not yet existing as data packets,

b) packet-switching transmission of data packets via the packet-switching network to the second switch,

p.10

c) repeated checking whether there is a control signal for transfer to a line-switching connection to the second switch in case the corresponding control signal is existing if this is not yet existing,

*d)* formation of a line-switching connection via the line-switching network to the second switch if a corresponding control signal is present, if it has not already been present,

*e)* change to a line-switching data transmission during an existing connection and transmission of data to the second switch,

further, additionally, contingent upon the main petition being unsuccessful with the proviso that the claims 1 and 2 are worded as follows and that the claims 3 thru 16 remain in the form in which the patent was issued ( additional petition no.2) :

1. Method for the transmission of data *of a telephony application* from a first switch to a second switch which are part of a of a line-switching network or have access to a line-switching network, either via line-switching or via packet-switching, consisting of the following steps:

a)formation of a connection via the line-switching network from the first switch to an access point of the packet-switching network *when the packet-switching network is not the X.25 packet-switching part of an ISDN,*

b)line-switching transmission of data from a first switch to the access point of a packet-switching network,

p.11

c) packaging of data in the first switch if the data are not yet existing as data packets and transmission of the data packets by packet-switching network from the access point to the second switch,

d) repeated checking whether there is a control signal for transfer to a line-switching connection to the second switch in case  the corresponding control signal is existing if this is not yet existing,

f)  formation of a line-switching connection from the first switch to the second switch via the line-switching network if a corresponding control signal is existing, unless this is not yet existing,

g)  change to a line-switching data transmission during an existing connection and transmission of data to a second switch.

2.Method for the transmission of data *of a telephony application* from a first switch to a second switch which are as well part of a line-switching network as of a packet-switching network or have access to such networks *when the packet-switching network is not the X.25 packet-switching part of an ISDN,* either via line-switching or via packet-switching, consisting of the following steps:

a) packaging of data in the first switch if the data are not yet existing as data packets,

b)transmission of data packages by packet-switching via the packet-switching network to the second switch,

c) repeated checking whether there is a control signal for transfer to a line-switching connection to the second switch in case  the corresponding control signal is existing if this is not yet existing,

p.12

d) formation of  a line-switching connection via the line-switching network to the second switch if the corresponding control signal is existing, unless this is not yet existing,

e)change to  a line-switching data transmission during an existing connection and transfer of data to a second switch.

Further additionally upon the condition that the main petition is not successful with the proviso that the claims 1 and 2 are worded as follows and that the claims 3 thru 16 remain in the form in which the patent was issued ( additional petition no.3 ) :

1. Method for the transmission of data *of a telephony application* from a first switch to a second switch which are as well part of a line-switching network as of a packet-switching network or have access to such networks *when the packet-switching network is not the X.25 packet-switching part of an ISDN,* either via line-switching or via packet-switching, consisting of the following steps:
a) formation of a connection via the line-switching network from the first switch to an access point of a packet-switching network *when the packet-switching network is the internet,*
b) data transmission by line-switching from the first switch to an access point for a packet-switching network,
c) packaging of data in so far as these are not yet existing as data packets and transmission of data packets by packet-switching via the packet-switching network from the access point to the second switch,

p.13

d) repeated checking whether there is a control signal for transfer to a line-switching connection to the second switch in case the corresponding control signal is existing if this is not yet existing,
e) formation of a line-switching connection via the line-switching network to the second switch if the corresponding control signal is existing, unless this is not yet existing,
f) change to a line-switching data transmission during an existing connection and transfer of data to a second switch.

2.Method for the data transmission *of a telephony application* from a first switch to a second switch which are as well part of a line-switching network as of a packet-switching network or have access to such networks *when the packet-switching network is not the X.25 packet-switching part of an ISDN,* either via line-switching or via packet-switching, consisting of the following steps:
a) packaging of data in the first switch if the data are not yet existing as data packets,
b) data packet transmission by packet-switching via the packet-switching network to the second switch,
c) repeated checking whether there is a control signal for transfer to a line-switching connection to the second switch in case the corresponding control signal is existing if this is not yet existing,
d) formation of a line-switching connection via the line-switching network to the second switch if the corresponding control signal is existing, unless this is not yet existing,

p.14

e) change to  a line-switching data transmission during an existing connection and transfer of data to a second switch.

Further additionally upon the condition that the main petition is not successful with the proviso that the claims 1 and 2 are worded as follows and that the claims 3 thru 16 remain in the form in which the patent was issued (additional petition no.4 ) :

1.  Method for the data transmission of *a telephony application* from a first switch to a second switch *when the data firstly are transmitted from at least one telephone to a first switch and when further*
*aa)only one  telephone transmits data to a first switch, and this telephone produces these data as analogue data or as not packaged digital data,*
*bb) if several telephones transmit data to the first switch and if at least one of these telephones produces the data as analogue data or as not packaged  digital data,*
*and when both switches* are part of a line-switching network or have access to such nets, either by line-switching or by packet-switching consisting of the following steps:
*a)*  formation of a connection via the line-switching network from the first switch to an access point of a packet-switching network *when the packet-switching network is the internet,*
*b)*  data transmission by line-switching from the first switch to the access point of a packet-switching network,

p.15

c)  packaging of data if these are not yet existing as data packets and transmission of data packets by packet-switching network from the access point to the second switch,
d)  repeated checking whether there is a control signal for transfer to a line-switching connection to the second switch in case  the corresponding control signal is existing if this is not yet existing,
e) formation of a line-switching connection from the first switch to the second switch via the line-switching network if the corresponding control signal is existing, unless it is not yet existing,
f) change from a data transmission by line-switching during an existing connection and data transmission to the second switch.

2.  Method for the data transmission *of a telephone application* from a first switch to a second switch *when the data are transmitted from at least one telephone to a first switch and when in this process*
aa) *if only one telephone transmits data to the first switch this telephone produces the data as analogue data or as not packeted digital data*

> *bb) if several telephones transmit data to the first switch if at least one of these telephones produces the data as analogue data or as not packaged digital data,*
>
> *and when both switches* are part of a line-switching network as wells of a packet-switching network of have access to such networks *and when the*

*p.15*

> *packet-switching network is the internet,*
> either via line-switching or via packet-switching consisting of the following steps:
> a) packaging of data in the first switch if the data are not existing as data packets,
> b) transmission of data packets by packet-switching via the packet-switching network to the second switch,
> c) repeated checking whether there is a control signal for transfer to a line-switching connection to the second switch in case the corresponding control signal is existing if this is not yet existing,
> d) formation of a line-switching connection from the first switch to the second switch via the line-switching network if the corresponding control signal is existing, unless it is not yet existing,
> e) change to a data transmission by line-switching during an existing connection and transfer of data to a second switch.

The respondent having at first filed 6 additional petitions has during the hearing of 4 April 2006 discontinued pursuing the originally filed additional petitions 4 and 6. She maintains that the patent at issue is patentable in the extent in which it is defended, as limited, maintaining additionally dependent upon the main petition being unsuccessful that the patent is patentable in the extent of the limitations delineated in the additional petitions.

## Reasons for the Ruling

1. The suits are admissible and are firstly in so far justified as the respondent did not defend any more the patent at issue and thereby limited herself in a permissible manner ( cf. BGH  GRUR 1956,409 Spritzgussmaschine I ; BGH GRUR 1960,542 – Flugzeugbetankung ( translator's note: these rulings are quoted by key words, it is pointless to translate these key words, nobody would recognize these rulings )

p.17

The petitions are also admissible and justified and as a consequence the defended patent is declared void effective for the territory of the Federal Republic of Germany because

the patent could not be maintained as valid neither in the form in which it was issued according to the main petition nor in the form acc.to the additional petitions because their objects are not patentable.

2. Expert in this sense would be a development engineer in the field of telecommunications with a degree after successful studies at a university or comparable institution, with particular expertise in the field of data transmission technology via networks.

## As to the main request:

3. The patent claims 1 and 13 acc. to the main request describe – organized by their characteristics -- a procedure with the following specifications:

### Patent claim no. 1

1.1.    1.Method for transmitting data from a first switch to a second switch,
1.2.    which are part of a line-switching network or have access to a line-switching
1.3.    either by line-switching or by packet-switching consisting of the following steps:
1.4.    a) formation of a connection by the line-switching network from the first switch to the access point of a packet-switching network
1.5.    b) transmission  of data from a first switch to the access point of a  packet-switching network
1.6    c) packaging of data if these are not yet existing as data packets
1.7    and transmission of data packets by packet-switching network via the packet-switching network from the access point to the second switch

p.18

1.8.    d)repeated testing whether there is a control signal to change to a line-switching connection to the second switch,
1.8.1  induced by the user of an end appliance or by network management,
1.9    e) formation of a line-switching connection from the first switch to the second switch via the line-switching network if the corresponding control signal exists unless it is not yet existing,
1.10   f) change to a line-switching data transmission during an existing connection
1.11   and data transfer to the second switch.

### Patent claim no.2 :

2.1    2. Method for data transmission from a first switch to a second switch,
2.2    which is as well part of a line-switching network as of a packet-switching network or has access to such networks,

2.3     either by line-switching or packet-switching, consisting of the following steps

2.4     a) packaging of data in the first switch, if the data are not yet existing as data packets,

2.5     b) transmission of data packets by packet-switching via the packet-switching network to the second switch,

2.6     c) repeated testing whether there is a control signal to change to a line-switching connection to the second switch,

2.6.1   induced by the user of an end appliance or by network management,

2.7     d) formation of a line-switching connection via the line-switching network to the second switch if the corresponding control signal exists unless it does not yet exists,

2.8     c) change to a line-switching data transmission during an existing connection

p.19

2.9     and transfer of data to the second switch.

4.The object of the patent claim acc. to the main petition is not based on an inventor's activity. This was accessible for an expert in a pretty obvious manner  from the state of the art acc. to the press release NK22 in connection with his expert knowledge which is also documented by the state of the art.

a)  the press release NK22 concerns a method for the data transfer from a first switch to a second switch ( p.1 of 2, 1st paragraph of the text body: internet telephony servers  - switches – for the routing of fax, voice mail and telephone data – spec. 1.1), which are part of a line-switching network or have access to line-switching networks ( p.1 of 2, 6th paragraph of the text body : the server could switch the transmission back to the public network; the internet telephony servers therefore have – apart from their access to the internet – at least also access to a line-switching network, comp. to this also p.1 of 2, 2d and 5th paragraph of the text body : internet and public networks ( traditional telecommunications network) spec. 1.2). Finally the transmission of data is effected either by line-switching or by packet-switching ( p.1 of 2, 5th and 6th paragraph of the text body: Eventually the network management software will be able to transparently route traffic over either internet or the public network; via line-switching : public network/traditional telecommunications network or by package-switching: Internet – spec. 1.3 ).

Because the method described in NK22 routes the data traffic either by a line-switching network or a packet-switching network ( p.1 of 2,6th paragraph of the text body : transparently route traffic over either Internet or the public network ) and since the choice of the route ( of the network ) depends upon the cost and the quality of the transmission ( p. 1of 2, 2d and 7th paragraph of the text body: cost savings, cost efficiencies, quality, reliability ) the expert finds it appropriate to verify ob the choice of the data transmission route made here meets the requirements of cost savings and transmission quality or whether possibly it is necessary to change the data transmission. Such a change

p.20

to a line-switching data transmission ( public network, traditional telecommunications network = during an existing ( packet-switching) connection  (Internet) and the subsequent ( line-switching) data transmission is taken by the expert for the case of an overload of the internet from NK22, compare p.1 of 2, 6th paragraph of the text body : If the Internet was too congested, for instance, the server could switch back to public network – specifications 1.10 and 1.11. Since the choice of the connection – packet-switching or line-switching is made by network management software ( p.1 of 2, 6th paragraph of the text body : the  network management software will be able to transparently route traffic over either Internet or the public network) the expert deploys such network management in order to check repeatedly whether there is such a control signal for the change to a line-switching connection by a line-switching network emitted by the network management ( specifications 1.8., 1.8.1). In case that there is such a corresponding control signal for a change to a line-switching data transmission the expert will provide by necessity the formation of a line-switching connection by the line-switching network if such a line-switching network is not already existing ( spec. 1.9  ).

Therefore the specs 1.1 thru 1.3,1.8, 1.8.1 and 1.9 thru 1.11 of Claim 1 acc. to the main petition are known or are at least accessible for the expert from NK22.

a)  The expert is because of his technical knowledge familiar with the  formation of a connection as required by Claim 1 from the first switch to the packet-switching network including an access point of  a packet-switching network and the subsequent transmission of data packets acc. to specs. 1.4 thru 1.7 , he installs access to the packet-switching network ( Internet ) described in NK22 according possibilities of  access the internet existing and known to him, as this is described implicitly already in NK22 ( compare p.1 of 2,5[th] paragraph of the text body). As evidence for this expert knowledge which is being applied here reference is made to the treatise K8 which describes switches  on p.10 at fig. 6 and 7 and the corresponding text

p.21

referencing "Integrated Switching" and "Integrated Access" which at least have access to a line-switching network Access to a package-switching network is made by the formation of a connection by  a line-switching network and by line-switching transfer of data to the access point of a packet-switching network ( Fig.7 right column 1st paragraph ACCESS LINE – specs 1.4 and 1.5 ) Data are ( by necessity ) packaged in so far as they are not yet existing as data packets and are subsequently transmitted by packet-switching to a second switch ( p.10 left column under "Integrated Switching", 1st paragraph -- specs 1.6 and 1.7 ). Accordingly there are described switches and access points to packet-switching network in a supplementary manner in NK9, compare particularly figures 1 thru 10.

Thus the expert arrives already without inventor's thinking to the object of patent claim 1 according to the main petition.

b)  The respondent's argument that NK22 does not explicitly a first and second switch as well as a packaging installation may be true, however the expert will apply

because of his expert's knowledge the mentioned installations in order to carry out the method described in NK22, as shown above at 4 b.

The respondent has further argued that the procedure described in NK22, in particular the procedure of "switching back" of a transmission to telecommunications network as mentioned there (compare NK22, p.1 of 2, 6th paragraph of the text body: the server could switch the transmission back to the public network ) would not be able to make an expert to change to a line-switching data transmission during an existing connection acc. to specs. 1.10 of claim 1. In particular it would not become clear how exactly the change would be carried out during an existing connection and whether that change would occur during an existing connection. Also acc. to NK22 the type of data transmission would be determined already before the beginning of the data transmission. Granted that NK22 may - according to its wording – describe only in a wholesale manner a (back-) change of ( packet-switching internet )

p.22

data transmission to a line-switching data transmission. This change however occurs during an existing (packet-switching) connection because an overload of the internet ( and therefore of the existing packet-switching connection ) induces the change acc. to NK22, therefore the change occurs during an existing connection of this kind. Nothing more is required by claim 1 of the patent at issue in spec. 1.10. Whether and how the manner of the data transmission is possibly determined before its beginning does not matter for the change during the existing connection.

Even if however spec. 1.10 would detail further details in regard to the act of changing, the existence of such details would not justify to hold this to be inventor's activity. The expert is aware as regards such a procedure of changing from a line-switching connection to a packet-switching connection – as well as in the case of the reverse procedure – a number of different procedures as well as their details. To document this expert's knowledge one might quote from the state of the art in a supplementary way K8 as well as K9, among others the Japanese print NK25, here fig.3,4,7 and 8 and the corresponding description text, but also the prints dealing with ISDN, namely NK13 and NK14. The last mentioned prints document also – as well as K8 and K9 – the expert's knowledge regarding the terms 'first switch' and 'second switch', access point, line-switching transmission and packet-switching transmission, transmissions in general.

5. The procedure as regards the ancillary patent claim acc. to the main petition is also not suitable for patenting because of a lack of inventor's activity vis-à-vis the state of the art.

a) Claim 2 acc. to the main petition is distinguished from the procedure acc. to claim 1 firstly by the following: acc. to spec. 2.2 the first and second switch are as well a component of a line-switching network as of a packet-switching network or that they have access to such networks. Therefore in this procedure for claim 2 the procedural steps a) and b) acc. to spec. 1.4 and 1.5 of claim 1 are missing. During the first procedural step a) of claim 2

p.23

(spec.2.4) data are packaged in the first switch, in so far as the data are not present as data packages, and in a second step b) the data packages are transmitted by packet-switching by a packet-switching network to the second switch ( spec. 2.5 ). The procedural step b) of claim 2 is followed by steps c) thru e) ( spec. 2.6 thru 2.9 ) with identical wording to the procedural steps d) thru f) acc. to claim 1 ( spec. 1.8 thru 1.11).

b) All parts of this reasoning as regards spec. 1.1 thru 1.3, 1.8, 1.8.1. and 1.9 thru 11 of patent claim 1 acc. to the main petition as described in paragraph 4 are equally applicable for the corresponding specs 2.1 thru 2.3 and 2.6,2.6.1 and 2.7 thru 2.9 of the procedure as regards claim 2.

Since acc. to the procedure for claim two the first and the second switch  are as well part of a line-switching as of a packet-switching network or have access to such networks ( spec.2.2 ) the procedure acc. to claim 2 does not require an access point to a packet-switching network and a data transmission by line-switching from the first switch to this access point. The expert will read those server described in NK22 for the first and second switch acc. to claim 2. A packaging of data in so far as they are not existing as data packages is provided for by the expert naturally in order to be able to transmit these data by packet switching (specs 2.4 and 2.5 ), compare for this the reasoning at paragraph 4b).

Thus the expert has reached without inventor's activity the object of patent claim 2 acc. to the main petition.

c) As regards the respondent's reasoning reference is made to the reasoning at paragraph 4c) which apply accordingly also to the object of patent claim 2 acc. to the main petition.

p.24

### As to the additional petition no.1:

6.The objects of claim 1 and 2 acc. to the additional petition no.1 are not based on inventor's activity.

a) Claim 1 acc to additional petition no.1 – and corresponding to this claim 2 – are distinguished as to the subject matter from claim 1 and claim 2 acc. to the main petition by the fact that spec. 1.4 and 2.2 have the following wording ( modifications are highlighted ):

### Patent claim 1:

1.4      a) formation of a connection thru the line-switching network from the first switch to an access point of a packet-switching network *when the packet-switching network does not constitute the X.25 package-switching part of an ISDN,*

### Patent claim 2:

2.2.    which are as well part of a line-switching network as well of a package-switching
        network or have access to such networks *when the packet-switching network does
        not constitute the X.25 package-switching part of an ISDN,*


b) As discussed above in the context of the main petition – compare paragraph 4a) thru
4c) and 5a) thru 5c) - the described package-switching network described in NK22 (
compare p.1 of 2, header as well as paragraph 1 of the text body ) is the internet,
therefore not the X.25 component of the ISDN. Also those packet-switching networks
mentioned in the list of docs  for the expert knowledge K8, NK9 and NK25are not
limited to the X.25 packet-switching part of an ISDN. The characteristic mentioned n
claims 1 and 2 "when the packet-switching network does not constitute the X.25
package-switching part of an ISDN" can therefore


p.25

not justify the patentability of objects of claims 1 and 2 acc. to the additional petition
no.1.

<u>As to the additional petition no.2:</u>

7.Also the objects of claims claim acc. to the additional petition no.2 are not based on
inventor's activity.

    a) claim 1 acc. to additional petition no. 2 – and correspondingly with this claim 2 –
       are distinguished from claim 1 and claim 2 acc. to the main petition by the fact
       that spec. 1.1 and 1.4 and 2.1 and 2.2. are worded as follows ( modifications are
       highlighted ):

<u>Patent claim 1:</u>

1.1.    1. procedure for the transmission of data *of a telephony application* from the first
        switch to the second switch,

1.4.    a) formation of a connection thru a line-switching network from the first switch
        to an access point of a packet-switching network *when  the packet-switching
        network does not constitute the X.25 package-switching part of an ISDN,*

<u>Patent claim 2:</u>


2.1     2. procedure for the transmission of data *of a telephony application* from the first
        switch to the second switch,
2.2     which is as well part of a line-switching network as well of a packet-switching
        network or has access to such networks *when  the packet-switching network does
        not constitute the X.25 package-switching part of an ISDN,*


p.26

     b)  **Also as regards the object of patent claims 1 and 2 acc. to the additional petition no.2 the reasoning as regards claim 1 and 2 acc. to the main petition at paragraph 4a) thru 4c) and 5a) thru 5c) are applicable in the same manner.**

As discussed above as regards the main petition – comp. the mentioned paragraphs – with the procedure for data transmission  which is known acc. to NK22 in the same manner data of a telephony application are transmitted ( p.1 of 2, 1st paragraph of the text body : internet telephony servers…to route (their) faxes, voice mail and phone calls over the internet ). Also with the data transmissions mentioned in the docs for the expert knowledge K8 data of a telephony application are transmitted ( comp. K8 .10 telephone descriptions in fig.6 and 7 ). Also those docs NK13 and NK14 dealing with ISDN systems refer the expert - already because of the definition of ISDN – to the data transmission of a telephony application. Therefore the element incorporated into claims 1 and 2 "transmission of data *of a telephony application* cannot be the basis of patentability of the objects of claim 1 and 2.

The further element incorporated into claims 1 and 2 "*when  the packet-switching network does not constitute the X.25 package-switching part of an ISDN*", also does not supply a basis for the patentability of the objects of claims 1 and 2 of the additional petition no.2, as has been shown in the reasoning to claims 1 and 2 of the additional petition no2 at paragraphs 6a) and 6b).

<u>As to the additional petition no.3:</u>

8. The objects of claims 1 and 2 acc. to the additional petition no.3 are also not based on inventor's activity.

p.27

     c)  a) Claim 1 acc. to additional petition no.2 – and corresponding with this claim 2 – are distinguished from claim 1 and 2 acc. to the main petition by the by the fact that spec. 1.1 and 1.4 and 2.1 and 2.2. are worded as follows ( modifications are highlighted ):

<u>Patent claim no.1:</u>

1.1    **1. procedure for data transmission *of a telephony application* from the first switch to the second switch,**

1.4    **a) formation of a connection by the line-switching network from the first switch to the access point of a packet-switching network *when the package-switching network is the internet,***

<u>Patent claim no.2:</u>

2.1    **2. procedure for the data transmission *of a telephony application* from the first switch to a second switch**

1.5    2.3    which is as well part of a line-switching network as part of a packet-switching network or does have access to such networks *when the package-switching network is the internet,*

b) As regards the objects of patent claims 1 and 2 acc. to the additional petition no.3 the reasoning made regarding claims 1 and 2 acc. to the main petition at paragraphs 4a) thru 4c) and 5a) thru 5c).

As discussed above for additional petition no.2 – comp. paragraphs 7a) and 7b) – in particular with the procedure for data transmission evident from NK22 data of a telephony application are transmitted (p.1 of 2, 1st paragraph of the text body: internet telephony servers...to route (their) faxes, voce mail and phone calls over the internet). The same applies for the data transmissions which are quoted as an example in the docs for the expert knowledge K8,

p.28

NK13, NK14 and which thereby are known. Therefore the element incorporated into claims 1 and 2 "transmission of data *of a telephony application* cannot be the base for the patentability of the objects of claims 1 and 2 acc. to the additional petition no.3.

As also reasoned regarding the main petition – comp. paragraphs 4a) thru 4c) and 5a) thru 5c) the packet-switching network described in NK22 is the internet ( comp. p.1 of 2, title and particularly 1st paragraph of the text body). The element incorporated into claims 1 and 2 *"when the package-switching network is the internet",*therefore cannot form the basis for the patentability of the objects of claim 1 and 2 acc. to additional petition no.3

<u>As to additional petition no.4:</u>

Also the  objects of claims 1 and 2 acc. to the additional petition no.4 are  not based on inventor's activity.

a)    claim 1 acc. to additional petition no.4 – and corresponding to this claim 2 – are distinguished as to the subject matter from claim 1 and claim 2 acc.to the main petition by the fact that spec. 1.1 and 1.4 and 2.1 thru 2.2. are worded as follows ( modifications are highlighted ):

<u>Patent claim 1:</u>

1.1    1. Procedure for data transmission *by a telephony application* from a first switch to a second switch, *when the data firstly are transmitted  from at least one telephone to the first switch, and thereby*

p.29

*aa) in so far as only one telephone transmits data to the first switch this telephone produces the data as analogue data or as not packaged digital data,*

*bb) in so far as several telephones transmit data to the first switch, at least
one of these telephones produces these data as analogue data or as not
packaged digital data,*

1.2    *and when two switches* are components of a line-switching network or have access
to a line-switching network,

1.3    either by a line-switching network or by a packet-switching network, consisting
of the following steps:

1.4    a) formation of a connection by the line-switching network from the first switch
to the access point of a package-switching network *when the package-switching
network is the internet.*


**Patent claim 2:**

2.1    2.Procedure for the transmission of data *of a telephony application* from the first
switch to the second switch *when the data firstly are transmitted from at least one
telephone to the first switch, and thereby*
        *aa) in so far as only one telephone transmits data to the first switch this
        telephone produces the data as analogue data or as not packaged digital data,*

        *bb) in so far as several telephones transmit data to the first switch, at least
        one of these telephones produces these data as analogue data or as not
        packaged digital data,*

2.2    *and when both switches* are part of a line-switching network as well as of a package-
switching network or have access to such networks *when the package-switching
network is the internet.*


p.30

   b)  Also as regards the objects of patent claims 1 and 2 acc. to the additional petition
       no.4 the reasoning made regarding claims 1 and 2 acc. to the main petition at
       paragraphs 4a) thru 4c) and 5a) thru 5c).

As also discussed as regards additional petitions 2 and 3 – compare paragraphs 7a) and
7b) and 8a) and 8b) – with the procedure for data transmission  described in NK22 and
which therefore is known data of a telephony application are transmitted ( p.1 of 2, 1st
paragraph of the text body: internet telephony servers…to route (their)faxes, voice mail
and phone calls over the Internet ). Therefore the element incorporated into claims 1
and 2 "transmission of data of *a telephony application*" cannot be the basis for the
patentability of the objects of claims 1 and 2 acc. to the additional petition no.4

Since – as is known, comp. the paragraph above – data of a telephony application are
transmitted the expert provides for at least one telephone from which data are
transmitted to a network, in particular to the first switch. Such a procedure is fairly
obvious to the expert by virtue of his expert's knowledge and his expert's abilities, and it
is also referenced by the state of the art, comp. for example K8, p.10 fig. 6 and 7.
Further it was customary to an expert at the date of priority of the patent at issue that
telephones produce the data they produce as analogue data or as not packaged digital

files, this is also documented in K8 ( comp. p.8, right side, left paragraph : the PSTN has been designed and optimized primarily to transport voice signals ( i.e. continuous signal – those are analogue data); and further p.9 left column 2 paragraph reading : voice is presented to the network over the access media – transmitted to the first switch – as digital data ( i.e. a bit stream – meaning as not packaged digital files with f.e. 64 kbits/s). At least one telephone needs to be provided for for a thus configured data production and transmission, at the expert's discretion. The change in wording "when both switches….are part" follows by necessity and does not provide new insight when compared with the applicable wording acc. to the main petition as well as the additional petitions 1 thru 3. Therefore also the  entirety of  the elements dealt with here

p.31

"….when the data are transmitted from at least one telephone to the first switch, and when

aa) in so far as only one telephone transmits data to the first switch this telephone produces the data as analogue data or as not packaged digital data,

bb) in so far as several telephones transmit data to the first switch, at least one of these telephones produces these data as analogue data or as not packaged digital data,

and when both switches…."

cannot be the basis for the patentability of the objects of claims 1 and 2 acc. to additional petition no.4.

Finally it was already argued regarding additional petition 3 - and also already regarding the main petition – ( comp. paragraphs 8a) and 8b) and 4a) thru 4c) and 5a) thru 5c) that the packet-switching network described in NK22 is the internet (comp. p.1 of 2, title and particularly the 1st paragraph of the text body).
Also the element provided for in claims 1 and 2 " when  the packet-switching  network is the internet" cannot be the basis for the objects of claims 1 and 2 of the additional petition no.4.

10. The patent claims 3 thru 16 which follow acc. to the main petition  and the additional petitions 1 thru 4 with identical wording the claims of 1 and 2  share the same fate – to be declared void – of patent claims 1 and 2, each acc. to the main petition and the additional petitions 1 thru 4.

p.32

11.The ruling as to the legal fees is based on sect.84 subs.2 of the Patent Statute in connection with sect.91 subs.1 Civil Procedure Code, the ruling as to the provisional enforceability is based on sect.99 subs.1 of the Patent Statute in connection with sect.709 Civil Procedure Code.

**Winkler, Dr.Hartung, Voit, Dr.Zehendner,Höppler**

---

**Making reference to my professional oath as a translator for the Free State of Bavaria I hereby confirm that the above is a complete and correct translation of Ruling by the Federal Supreme Court for Patent Matters of 5 April 2006 in the Matter of Cisco Systems Inc vs. TELES AG**

**München, den  13 June 2006** ................/...........................
**Dr.Donald Cramer**



