# EXHIBIT C

Certified Translation of a German Document – Ruling by the Federal Supreme Court for Patent Matters of 5 April 2006 in the Matter of Cisco Systems Inc vs. Teles AG

p.1

Stationery for rulings of the Federal Supreme Court for Patent Matters

(rubber stamp received.... 6 June... attorneys Bardehle.....

IN THE NAME OF THE PEOPLE

Judgment



(docket no.) 4 Ni 60/04
connected with
4 Ni 42/05

Ordered on 5 April 2006-06-13
May
Secretary
As Clerk of the Court

In the matter for the nullification of a patent

Parties involved:

1. Cisco Systems Inc, represented by its president and CEO J.T. Chambers, 170 West Tasman Drive, San Jose, California 95134 ( USA)

    petitioner ( 4 Ni 60/04)

represented by patent attorneys licensed engineer CEIPI J.Lang ( Bardehle Pagenburg Dost Altenburg Geissler), 1 Galileiplatz, 81679 Muenchen

2. Quintum Technologies Inc. represented by its CEO Cheng T.Chen, 71 James Way, Eatontown, NJ 07724 (USA)

    petitioner ( 4 Ni 42/05)

represented by : patent attorney lic.phys. Dr.H. Heunemann ( Vossius & Partner), 3 Siebertstr., 81675 Muenchen

Vs.

p.2

TELES AG Informationstechnologien, represented by the members of the board Prof.Dr.S.Schindler, J.Bastian, A.Krueger,J.Schwarzer,R.Wegener,O.Schulz, 2-4 Dovestr., 10587 Berlin

      respondent

represented by patent attorney Dipl.Phys. Dr.W.Mueller ( Maikowski & Ninnemann ) 54-55 Kurfuerstendamm, 10707 Berlin

<u>regarding the patent 196 45 368</u>

the 4th chamber of the Federal Supreme Court for Patent Matters has ruled after a hearing of 5 April 2006 acting with the participation of presiding judge Ms Winkler and the following judges Dipl.Phys. Dr.Hartung, Voit, Dipl.Phys. Dr.Zehendner and Dipl.-Ing(Univ.) Hoeppler as follows:

      I.The German patent DE 196 45 368 is hereby declared void.

      II.Respondent to pay the legal fees of the dispute.

      III.This judgment is enforceable if a security is posted in the amount of 120 % of the amount to be enforced – provisional enforceability.

p.3

## Facts of the matter:

The respondent holds by virtue of registration the German patent 196 45 368 ( the patent at issue )which has been entered into the registry on 23 October 1996 by claiming inner priority of the patent application DE 196 42 063 of 7 October 1996. This patent concerns a method as well as a communication installation for the transfer of data from a telecommunications network and involved 15 claims which are attacked in their entirety. The claims 1 thru 13 of the patent as issued are defined as follows :

1. Method for the transmission of data between a first and a second telecommunications installation, either by line-switching or by packet-switching consisting of the following steps:

    a) formation of a connection from the first telecommunications installation to an access point to a packet-switching network,
    b) data transfer from the first telecommunications installation to the access point to a packet-switching network,
    c) data transmission by packet-switching via the packet-switching network to the second telecommunications installation or to a telecommunications installation which is positioned in front of it,
    d) repeated checking whether a control signal, in particular that of an end appliance or of a router exists to move to a line-switching connection,
    e) formation of a line-switching connection to the second telecommunications installation if the corresponding control signal exists,

p.4

f) change to a line-switching data-transmission and data transmission to the second telecommunications installation.

13. telecommunications end user appliance to be used in a method acc. to claim 1, in particular a telephone with
    a)    a packaging installation (111) in order to package data to be transmitted acc. to the standard IP/TCP,
    b)    an installation (112) in order to organize data in data frames for a transmission by line-switching,
    c)    a guiding installation (114) which allows switching to and from a line-switching and a packet-switching transmission and
    d)    a selection unit (115) which transmits control signals to the guiding installation regarding a packet-switching or line-switching data transmission.

As regards the other claims cross referenced to claims 1 or 13 directly or indirectly in relation to the patent in its issued form reference is made to the patent document of the patent at issue DE 196 45 368 C2.

With their petition for nullification the petitioners claim that the object of the patent at issue is not novel and that it is not based on inventive activity. In order to support their argument the petitioners refer to the following descriptions in writing - the enumeration as used by petitioner no.1 ( NK with consequent numbering ) , if applicable the numbering as used by petitioner no.2 in brackets and finally the enumeration of the petitioner no.2 ( K with subsequent numbers) :

NK 7 – thru K 21 (page 7 of the document translated)

p.7

The petitioners ask

>that the German patent DE 196 445 368 be declared void.

The respondent asks

>that the requests be dismissed in the extent of the claims 1 thru 10 and 13 thru 15 of the patent at issue with the proviso that in the characteristic f) of the issued claim 1 between the words "data transmission" and "and" the following words are inserted: "during an existing connection" (main petition),

additionally upon the condition that the main petition is not successful that patent claim 1 is worded as follows and that claims 2 thru 10 and 13 thru 15 of the patent in its issued form are maintained ( additional petition no.1):

1. Method for the transmission of data between a first and second telecommunications installation either by line-switching or by packet-switching consisting of the following steps:
a) formation of a connection from the first telecommunications installation to an access point to a package-switching network, *when the packet-switching*

p.8.

>*network is not the X.25 packet-switching part of an ISDN,*
>b) data transmission from the first telecommunications installation to the access point of a packet-switching network,
>c) data transmission by packet-switching via the packet-switching network to the second telecommunications installation or to a telecommunications installation positioned before it,
>d) repeated checking whether a control signal, in particular of an end appliance or of a router exists for the change to a line-switching connection,
>e) formation of a line-switching connection to a second telecommunications installation if the corresponding control signal exists,
>f) change to a line-switching data transmission *during an existing connection* and transmission of data to a second telecommunications installation,

further additionally upon the condition that the main petition is not successful with the proviso that the patent claims 1 and 13 are worded as follows and that the claims 2 thru 10 and 14 and 15 of the patent in its issued form are maintained ( additional petition no.2 ):

1. Method for data transmission of *a telephony application* between a first and second telecommunications installation, either by line-switching or by packet-switching, consisting of the following steps:

p.9

    a) formation of a connection from the first telecommunications installation to an access point to a packet-switching network *when the packet-switching network is not the X.25 packet-switching part of an ISDN,*
    b) data transmission from the first telecommunications installation to the access point of a packet-switching network,
    c) data transmission by packet-switching via the packet-switching network to the second telecommunications installation or to a telecommunications installation positioned before it,
    d) repeated checking if there exists a control signal, in particular of an end-user appliance or of a router to change to a line-switching connection,
    e) formation of a line-switching connection to the second telecommunications installation if the corresponding control signal exists,
    f) change to a line-switching data transmission *during an existing connection* and data transfer to a second telecommunications installation.

13. telecommunications end-user appliance in order to be used in a method acc. to claim 1, namely a telephone with

    a) a packaging device (111) to package the data to be transmitted acc. to the standard IP/TCP,
    *b)* an installation (112) to organize the data into data frames for a transmission by line-switching,

p.10    c) a guiding installation (114) which allows a switching to and from between a line-switching and a packet-switching transmission and

        c) a selection unit (115) which produces the control signal to the guiding installation regarding a data transmission by line-switching or packet-switching.

further additionally upon the condition that the main petition is not successful with the proviso that the patent claims 1 and 13 are worded as follows and that the claims 2 thru 10 and 14 and 15 of the patent in its issued form are maintained ( additional petition no.3 ):

    *1.* Method for the data transmission of *a telephony application* between the first and second telecommunications installation either via line-switching or by packet switching consisting of the following steps:
        a) Formation of a connection from the first telecommunications installation to an access point to a packet-switching network *when the packet-switching network is the internet,*
        b) Data transmission from the first telecommunications installation to the access point of the packet-switching network,
        c) Data transmission by packet-switching via the packet-switching network to the second telecommunications installation or to a telecommunications installation positioned before it,
        d) Repeated checking whether a control signal particularly of an end-user appliance of of a router exists for the change to a line-switching connection

p.11

    e) formation of a line-switching connection to the second telecommunications installation if the corresponding control signal exists,
    f) change to a line-switching data transmission *during an existing connection* and data transmission to the second telecommunications installation.

13 telecommunications end-user appliance to be used in a procedure acc. to claim 1, *namely* telephone with
    a) a packaging device (111) to package the data to be transmitted acc. to the standard IP/TCP,
    *b)* an installation (112) to organize the data into data frames for a transmission by line-switching,

p     c) a guiding installation (114) which allows a switching to and from between a line-switching and a packet-switching transmission and

    d) a selection unit (115) which produces the control signal to the guiding installation regarding a data transmission by line-switching or packet-switching.

further additionally upon the condition that the main petition is not successful with the proviso that the patent claims 1 and 13 are worded as follows and that the claims 2 thru 10 and 14 and 15 of the patent in its issued form are maintained ( additional petition no.4 ):

    1. Method for the data transmission of *data of a telephony application* between a first and second telecommunications installation *when the data firstly are transmitted from at least one telephone to the first telecommunications installation and when then*
*aa) if only one telephone transmits data to the first telecommunications installation and if this telephone produces data as analogue data or as not packaged digital data,*
*bb) if several telephones transmit data to the first telecommunications installation and if at least one of these several telephones produces the data as analogue data as not packaged digital data,*
either by line-switching or via packet-switching, consisting of the following steps:
    a) formation of a connection from the first telecommunications installation to an access point to a packet-switching network *when the packet-switching network is the internet,*
    b) data transfer from the first telecommunications installation to the access point for a packet-switching network,
    c) data transmission by packet-switching via the packet-switching network to the second telecommunications installation or to a telecommunications installation positioned before it,
    d) repeated checking whether a control signal in particular one by an end-user application or of a routher exists for the switch to a line-switching connection,

      e) formation of a line-switching connection to the second telecommunications installation if the corresponding control signal exists,

p.13      f) change to a line-switching data transmission *during an existing connection* and data transfer to the second telecommunications installation.

      13. telecommunications end-user appliance to be used in a procedure acc. to claim 1, *namely* telephone with
a) packaging device (111) to package the data to be transmitted acc. to the standard IP/TCP,
b) an installation (112) to organize the data into data frames for a transmission by line-switching,

p      c) a guiding installation (114) which allows a switching to and from between a line-switching and a packet-switching transmission and

      d) a selection unit (115) which produces the control signal to the guiding installation regarding a data transmission by line-switching or packet-switching.

The respondent who had at first filed 6 additional requests in case the main requests would not be successful has in the course of the hearing of 5 April 2006 discontinued maintaining the originally filed additional requests no. 4 and 6. She maintains that the patent at issue in the extent in which it has been defended in a limited manner as suitable to be patented, in case the court should not follow this reasoning the respondent maintains that it is suitable to be patented within the limitations as described in the additional requests.

## Reasons for the Ruling

1. The suits are admissible and justified; they are successful, the patent at issue is declared to be void. The patent at issue cannot be sustained, neither in the form in which it has been issued according to the main request, nor in the form as defended by the additional requests ( filed in case the main request/s would not be successful ). The reason for this is that the objects of these forms of the patent are not suitable for patenting.

p.14

2. Person skilled in the art in this sense would be a development engineer in the field of telecommunications with a degree after successful studies at a university or comparable institution, with particular person skilled in the artise in the field of data transmission technology via networks.

## As to the main petition:

The patent claims1 and 13 acc. to the main petition describe – organized by their characteristics – a procedure for the transmission of data as well as a telecommunications installation with the following specifications:

### Patent claim no. 1

    1.1.    Method for transmission of data from a first to second telecommunications installation,,
    1.2.    either by line switching of by packet switching, consisting of the following steps:
    1.3.    a)formation of a connection from the first switch to an access point of a packet-switching network,
    1.4.    b)transfer of data from the first switch to an access point of a packet-switching network,
    1.5.    c) transfer of data by packet-switching network via the packet-switching network to the 2d switch or to a switch which is positioned before this switch,
    1.6    d)repeated testing whether there is a control signal in particular of an end-user appliance or of a router in order to transfer to a line-switching connection,
    1.7    e) formation of a line-switching connection to the second telecommunications installation if the corresponding control signal exists,
    1.8    f) change from a data transmission by line-switching during an existing connection and data transfer to the second telecommunications installation

p.15

### Patent claim 13:

13.1    13. telecommunications end-user appliance for use in a procedure acc. to claim 1, in particular a telephone, with
13.2    a) a packaging device (111) to package data to be transmitted acc. to the standard IP/TCP,
13.3    b) an installation (112) to organize data in data frames for the purpose of transmission by line-switching,
13.4    c) a guiding device (114) allowing a switching to and from between a data transmission by line-switching and packet-switching,
13.5    d) a selection unit (115) which transmits guiding signals to the guiding device in regard to data transmission either by packet switching or by line-switching.

4. The object of the patent claim no.1 acc to the main petition is not based in inventive activity. This was accessible for an person skilled in the art in a pretty obvious manner

from the state of the art acc. to the press release NK18 in connection with his person skilled in the art knowledge which is also documented by the state of the art.

a) the press release NK18 refers to a method for data transmission between a first telecommunications installation and a second telecommunications installation (p.1 of 2. 1st paragraph of the text body Internet telephony servers - telecommunications installation –as regards the routing of fax data, voice mail data and telephone data – spec. 1.1 ) either by line-switching or packet-switching ( p.1 of 2, 5th and 6th paragraph of the text body: Eventually, the network management software will be able to transparently route traffic over either Internet or the public network; per line-switching: public network/traditional telecommunications network or via packet-switching network or by packet-switching network: Internet spec. 1.2).

p.16

Since the procedure described in NK18 routs the data traffic either via the line-switching network or the packet-switching network ( p.1 of 2, 6th paragraph of the text body : transparently route traffic over either Internet or the public network ) and since the choice of the route ( of the network ) is dependent upon the cost and the transmission quality ( p.1 of 2,2d and 7th paragraph of the text body : cost savings, cost efficiencies, quality, reliability) the person skilled in the art sees himself supposed to check whether the choice of the routing for the data transmission meets the requirements for cost efficiency and transmission quality the person skilled in the art finds himself supposed to check or whether it is necessary to change the way of the data transmission. The person skilled in the art will gather from NK18 the option of a change towards line-switching data transmission (public network, traditional telecommunications network ) during an existing connection and a transmission of the data to a second telecommunications installation in case the internet suffers from overload, comp. p.1 of 2, 6th paragraph of the text body: If the internet was too congested, for instance, the server could switch back to the public network – spec. 1.8.

Since the choice of the connection – either by packet-switching or by line-switching – is made by means of a guiding network management guiding the telecommunications installation ( internet telephony servers/routers ( p.1 of 2, 6th paragraph of the text body: the network management software will be able to transparently route traffic over either Internet or the public network ) the person skilled in the art will deploy such a network management in order to check repeatedly whether there is a control signal f.e. of a router/ server to change to a line-switching connection ( spec.1.6). In case that such a control signal exists for a change to data transmission by line-switching, then by necessity a line-switching connection to the second telecommunications installation will be established ( spec. 1.7 )

Therefore from NK18 the specs 1.1,1.2, 16, 1.7 and 1.8 of the patent claim no.1 as the main petition can be drawn as known or are at least easily obvious to the person skilled in the art.

p.17

b) The formation of a connection required for the procedure acc. to claim 1 from the first telecommunications installation to a packet-switching network involving an access point

to a packet-switching network and the subsequent data transmission acc. to specs. 1.3, 1.4 and 1.5 is customary for the person skilled in the art because of his person skilled in the art knowledge; he will install the access to the packet-switching network described in NK18 ( Internet ) acc. the existing and well known access options to the Internet as this is implicitly dealt with in NK 18 ( comp. p.1 of 2, 5th paragraph of the text body ). As evidence for this person skilled in the art knowledge as it is applied here the document K8 is quoted which describes at p.10 in fig.6 and 7 and the relevant describing texts "Integrated Switching" and "Integrated Access"; these are also procedures for data transmission between first and second telecommunications installations, either by line-switching or by packet-switching. Access to a packet-switching network is effected by creating a connection from the first telecommunications installation to the access point of a packet-switching network and by data transmission from the telecommunications installation to the access point of the packet-switching network ( Fig.7, right column 1, sect. on ACCESS LINE – specs 1.3 and 1.4). Subsequently data are transmitted by packet-switching to the second telecommunications installation or to a telecommunications installation positioned before it ( p.10 , left column, sec. "Integrated Switching", 1st paragraph – spec. 1.5 ).

Thus the person skilled in the art has already reached the object of the patent claim no 1 acc. to the main petition without inventive activity.

c)The respondent's argument that NK18 does not expressly mention a first and second telecommunications installation and an access point may be true; however the person skilled in the art will deploy the mentioned installations already because of his person skilled in the art's knowledge in order to carry out the procedure described in NK18, as already reasoned at paragraph 4b).

p.18

The respondent has further argued that the way to proceed as described in NK18 on the whole, in particular the procedure of "switching back" of the transmission to a telecommunications network ( comp. NK18 p.1 of 2, 6th paragraph of the text body: the server could switch the transmission back to the public network ) could not make the person skilled in the art to change to a line-switching data transmission during an existing connection acc. to spec. 1.8 of claim 1. In particular it would not become clear how the change would be conducted in a concrete manner and whether that change would be effected during an existing connection. Also with NK18 the type of data transmission would be determined before the beginning of the transmission. It may be that NK18 describes acc. to its wording only a switching (back) of the packet-switching internet data transmission to a line-switching data transmission. This change however occurs only during the existing (packet-switching) connection because an overload of the internet ( and thereby of the existing packet-switching connection ) induces the change acc. to NK18; thus the change is effected during the existence of such a connection. The claim no.1 of the patent at issue does not demand more in its spec. 1.8.It is irrelevant for the change during the connection whether and how the type of data transmission is determined possibly before its beginning

Even if spec.1.8 would spell out details to that change these would not meet the requirement of inventive activity. The person skilled in the art is aware of several different ways to proceed as regards the change from a packet-switching data

connection to a line-switching connection – as well as the reverse - ; and the person skilled in the art knows their details. As evidence for this person skilled in the art knowledge it should be quoted as to the state of the art in addition to K8; to be quoted here is the Japanese print NK21, here Fig.3,4,7 and 8 and the corresponding text descriptions, as well as the publications dealing with ISDN, docs NK7 and NK10. These documents show once more the person skilled in the art's knowledge as regarding telecommunications installation, access point, switching of lines and packets and generally as regards connections.

p.19


5. The device acc. to the parallel organized patent claim 13 of the main petition is evident for the person skilled in the art from the state of the art, namely NK 21 ( quotes from the translation NK21a ) in connection with his person skilled in the art knowledge, evidenced by the state of the art.

a) from NK21 telecommunications end devices for use in a procedure as to claim 1 can be drawn as being known ( comp. in particular Fig.3,4,5,7 and 8, p.281 right column last paragraph, p.285 right column, left paragraph until p.286, left column 1st paragraph, p.282 right column no. 2 and 3, p.282 left column second to last paragraph and right column third and second to last paragraph – spec. 13.1 )

Since at least some of the telecommunications devices known from NK21 and can be connected directly to a packet-switching device and since the data transmission is effected as the transmission of data to be packaged the person skilled in the art bases his thinking on the fact that the telecommunications end-user devices have a feature to package data to be transmitted, comp. p.285 right column, second to last and last paragraph. NK21 does not reference a standard according to which the packets are packaged. However the person skilled in the art is aware because of his person skilled in the art's knowledge of a number of standards , in particular the standard used for the internet IP (Internet Protocol)/TCP also called TCP/IP. As reference for this person skilled in the art's knowledge reference is made to the publication K14, p.45 middle column,, 2d and 3d paragraph in the section on "novel telephones with Ethernet-plug-in. There telephones are described which digitalize speech and send speech in the form of data packets to a packet-switching network, among others acc. to the standard IP/TCP (spec.13.2).

Furthermore the telecommunications end-user devices which are known acc. to NK21 have features for the organization of data in data frames for a line-switching transmission, comp. fig 5 in connection with p.283 left column, 3d paragraph. The data frames described there serve for multiplex transmission of data to participants' lines, among others for line-switching ( spec. 13.3.Furthermore the person skilled in the art is aware of the required organization of data in data frames already from the applicable standards for ISDN, only as an example reference is made to K8, in particular p.12 section on "ISDN Architecture and Standards.

b) Also the device described in NK21 provides for a guiding feature ( communication mode switching device 20 ) which allows for a switch back and forth between a packet-switching and a line-switching transmission. (comp.Fig. 3,4, 7 and 8, p.282 right column, 2d and 3d paragraph, p.282 left column second to last paragraph and right column,

third to last and second to last paragraph and correspondingly to Fig.7 and 8 on p.285 and 286 – spec. 13.4) Finally the guiding device, known from NK21, contains a selection unit ( control circuit 45 ), which will provide control signals to the guiding device regarding packet-switching and line-switching data transmission ( comp. Fig.6 p.283 right column last paragraph and p.284 left column 1st and 2d to last paragraph – spec. 13.5).

The guiding device with control circuit which is known acc. to NK21 is primarily described as a device separate from the telecommunications end-user device, however acc. to NK21 other configurations are possible, comp. p.285 left column 2d paragraph. A configuration of guiding device and selection unit in one system together with the telecommunications end-user device – in so far as such a configuration could be seen as contained in the wording of claim 13 in a clear manner – was within reach of the person skilled in the art . He weighs advantages and disadvantages and chooses from available alternatives the one seemingly most advantageous.

Therefore the person skilled in the art has reached the object of patent claim no.13 acc. to the main petition without inventive activity.

c)Respondent argued that in NK21 neither a packaging device nor a device for the organization of data in data frames for line-switching data transmission is expressly mentioned. This may be true but the person skilled in the art is aware by virtue of his expert skills and knowledge

p.21

of these devices as reasoned above at paragraph 5a) in greater detail.

The respondent has further argued by reference to NK21 p.281 right column, second to last paragraph until p.282 left column, 2d paragraph that NK21 deals primarily with the "housing" of end-user devices and in that context with the necessary number of participants' phone lines. These arguments may be convincing in so far as this problem certainly was one of the main issues for the invention described in NK21. This invention which is as described in NK21 known describes beyond this task different solutions and these include in particular a guiding device which allows a switching back and forth between line-switching and packet-switching; also a control circuit which transmits control signals to the control unit regarding a packet-switching or line-switching data transfer. The person skilled in the art views himself by the issue of "housing" as described in NK21 not as prevented to suggest the control unit described in NK21 and the selection unit with a telecommunications end-user device acc. to patent claim 13, as detailed above at paragraph 5b).

As to additional petition no.1:

6. The objects of claims 1 and 13 acc. to the additional petition no.1 are not based on inventive activity.

  a) claim 1 acc. to additional petition no.1 is different from claim 1 acc. to the main petition in regard to the following, spec. 1.3 now reads as follows ( modifications highlighted ):

p.22

## Patent claim no.1

    1.3    a) formation of a connection from the first telecommunications installation to an access point for a packet-switching network, *when the packet-switching network is not the X.25 packet-switching part of an ISDN,*

Claim 13 acc. to additional petition no.1 is unchanged vis-à-vis to claim 13 of the main petition.

    b)  as already reasoned regarding patent claim 1 acc. to the main petition – comp. paragraph 4a) thru 4c) – the packet-switching network described in NK18 (comp. p.1 of 2, tiles and in particular paragraph 1 of the text body ) is the internet and not the X.25 part of an ISDN. Also the packet-switching networks mentioned in the docs for expert knowledge K8 and NK21 are not limited to the X.25 packet-switching part of an ISDN. The element incorporated into claim 1 " when the packet-switching net is not the X.25 packet-switching part of an ISDN" is therefore not suitable to justify the patentability of the object of patent claim no.1

    c)  as for patent claim 13 acc. to additional petition no.1 reference is made to the reasoning as regards patent claim 13 acc. to the main petition – comp. paragraph 5a) thru 5c).

## As to additional petition no.2:

7. Also the objects of claims 1 and 13 acc. to additional claim no.2 are not based on inventive activity.

  a) claim 1 acc. to the additional petition no.2 is different from claim 1 acc. to the main petition in so far that spec. 1.1 and 1.3 read as follows ( modifications highlighted):

p.23

## Patent claim no.1

    1.1    1. Method for data transfer *in a telephony application* between a first and second telecommunications installation.
    1.2    a) formation of a connection from the first telecommunications installation to an access point of a packet-switching network *when the packet-switching network is not the X.25 packet-switching network of an ISDN,*

Claim 13 acc. to additional petition no.2 is different from claim 13 acc. to the main petition because spec.13.1 reads as follows ( modifications highlighted ) :

**Patent claim no.13**

13.1   13. telecommunications end-user device for the use in a procedure add. To claim 1, namely *telephone*, with

   b) Also as regards the object of patent claim 1 acc. to additional petition no.2 the reasoning made as regards claim 1 acc. to the main petition and acc. to additional petition at paragraph 4a) thru 4c) and 6a) thru 6b) in the same manner.

As discussed above in the context of the main petition – comp. the paragraphs listed above - the data transmission procedures which are known because of their being mentioned in NK18 also transmit data of a telephony application ( p.1 of 2, 1st paragraph of the text body : Internet telephony servfers.... to route (their ) faxes, voice mail and phone calls over the internet ). Also with data transmissions mentioned in K8 – referenced as part of the evidence for expert's knowledge – data of a telephony application are transmitted ( comp. K8 p.10 telephone descriptions in Fig. 7and 8 ). Also the docs NK7 and

p. 24

NK10 dealing with ISDN systems refer to person skilled in the art simply because of ISDN's definition to the data transfer of a telephony application. Therefore the element "data transmission of *a telephony application* cannot be the base for the patentability of the object of claim 1.

The further element incorporated into claim 1 "when the packet-switching network is not the X.25 packet-switching network part of an ISDN" can also not justify the patentability of the object of claim 1 acc. to the additional claim no.2 as detailed at paragraph 6a) and 6b).

   c) As to the object of patent claim 13 acc. to additional petition no.2 the reasoning as to claim 13 acc. to the main petition at paragraph 5a) thru 5c) apply in the same manner.

Claim 13 acc. to the additional petition no.2 specifies the telecommunications end-user device now as a telephone. The document K14, quoted as evidence for expert's knowledge names as such a telecommunications end-user device a telephone, comp. p.45 mddle column, 2d and 3d paragraph in the sect. "New telephones with Ethernet connection". The effected concretization of the telecommunications end-user device as a telephone cannot support the claim of patentatbility of the object of claim 13 acc. to additional petition no.2.

**As to additional petition 3:**

The objects of claims 1 and 13 acc. to additional petition 3 are also not based on inventive activity.

a) claim 1 acc. to additional petition 3 is different from claim 1 acc. to the main petition since the wording of spec. 1.1 and 1.3 are as follows ( modifications highlighted ):

Patent claim no.1

    1.1    1. Method for the transmission of data *of a telephony application* between a first and second telecommunications installation,

    1.3    a) formation of a connection from the first telecommunications installation to an access point of a packet-switching network, *when the packet-switching network is the internet,*

Claim 13 acc. to additional petition no.3 is worded unchanged as claim 13 acc. to additional petition 2.

b) as regards the object of patent claim 1 acc. to additional petition no.3 the reasoning as to claim 1 acc. to the main petition and acc. to additional petition no.2 under paragraphs 4a) thru 4c) and 7a) until 7b) apply likewise.

As above discussed in the context of the additional petition – comp. in particular paragraph 7a) and 7b) – there are data of a telephony application transmitted together with data as per the procedure described in NK 18 , a procedure which is therefore known –( p.1 of 2, 1st section of the text body : internet telephony servers…to route (their) faxes, voice mail and phone calls over the internet). The same applies for those data transmission described in the docsK8,NK7 and NK10 and which are therefore known. Thus the element incorporated into claim 1 "data transmission *of a telephony application* cannot justify the patentability of an object of claim 1 acc. to additional petition no.3.

As also discussed in the context of the main petition –comp. paragraphs 4a) thru 4c) – the packet-switching network described in NK18 is the internet ( comp. p.1 of 2, title and in particular the 1st paragraph of the text body). The element incorporated into claims 1 and 2 "when the packet-switching network is the internet

p.26

is therefore unable to justify the patentability of the object of claim 1 acc. to the additional claim no.3w.

c) as regards patent claim 13 acc. to additional petition 3 reference is made to the reasoning regarding patent claim 13 add. To additional claim 2, comp. paragraph 7a) and 7c).

As to the additional petition 4:

Also the objects of claims 1 and 13 acc. to additional petition 4 are not based on inventive activity.

    a) claim1 acc. to additional petition no.4 is different from claim1 acc. to the main petition in so far as the specs 1.1 and 1.3 are worded as follows ( modifications highlighted ):

**Patent claim no.1:**

1.1    1.Method for the transfer of data *of a telephony application* between a first and second telecommunications installation *when the data firstly are transmitted from at last one telephone to the first telecommunications installation and when in this process*
aa) *in so far as only one telephone transmits data to the first telecommunications installation this telephone produces data as analogue data or as not packaged digital data,*
bb) *if several telephones transmit data to the first telecommunications installation at least one of these telephones produces data as analogue data or as not packaged digital data,*

p.27

1.2    a) formation of a connection from the first telecommunications installation to an access point of a packet-switching network *when the packet-switching network is the internet.*

Claim 13 acc. to additional petition no.4 is worded unchanged as claim 13 acc. to additional petition no.2

    b) Also as regards the object of patent claim no.1 acc. to additional petition no.4 the same reasoning applies as to claim 1 acc. to the main petition as detailed at paragraph 4a) thru 4c).

As also already discussed in the context of additional petitions no.2 and 3 – comp. paragraphs 7a) and 7b) and 8a) and 8b) – there are data transmitted in the course of the procedure known from NK18 and there are data transmitted of a telephony application ( p.1 of 2, 1st paragraph of the text body: internet telephony servers....to route (their) faxes, voice mail and phone calls over the internet ) the element incorporated into claim 1 "data transmission of *a telephony application*" is unable to justify the patentability of the object of claim 1 acc. to additional petition no.4 .

Since – as known from NK18, comp. the last paragraph above – data of a telephony application are transmitted, the person skilled in the art provides at least one telephone from which data to the first telecommunications installation can be transmitted. Such a procedure was known and obvious to the person skilled in the art by his expert skills and knowledge and moreover documented by the state of the art, comp. f.e. K8 p.10, fig.6 and 7. Further it was customary knowledge for the person skilled in the art at the date of the patent of issue that telephones transmit the data produced by them as analogue data and not as packaged digital data, this too is described in K8 ( comp. p.8 right column, last paragraph : the PSTN has been designed and optimized primarily to transport voice signals ( i.e. continuous signals – thus analogue data ) and further p.9 left column 2s paragraph : voice is presented to the network over the access media – transmitted to the first telecommunications installation

p.28

as digital data ( i.e. a bit stream – meaning not as packaged digital data with f.e. 64 kbits/s) . To provide for at least one telephone for the production of data thus configured and for their transmission is within the discretion of the person skilled in the art. Thus also the entirety of the elements dealt with here " when the data are transmitted from at least one telephone to the first telecommunications installation and when
aa) if only one telephone transmits data to the first telecommunications installation this telephone produces data as analogue data or as not packaged digital data
    bb) several telephones transmit data to the first telecommunications installation that then at least one of these telephones produces data as analogue data or as not packaged digital data",

cannot justify the patentability of the object of claim 1 acc. to additional petition no.4.

Finally it was detailed to additional petition no.3 – and already as regards the main petition –( comp. paragraph 8a) and 8b and 4a) thru 4c) that the packet-switching network described in NK18 is the internet (comp. p.1 of 2, title and in particular 1st paragraph of the text body). Also the element provided for in claim 1 "when the packet-switching network is the internet" cannot justify the patentability of the object of claim 1 acc. to additional petition 4.

   c) as to patent claim 13 acc. to additional petition 4 reference is made to the reasoning as to patent claim 13 acc. to additional petition n.2 – comp. paragraph 7a) and 7c).

10. Likewise as the patent claims 1 and 13 acc. to the main petition and to additional petitions 1 thru 4 the patent claims 2 thru 12 and 14 thru 16 as attacked by the petitioners suffer the same fate which follow up acc. to main petition and additional petitons 1 thru 4 the patent claims 1 and 13.

p.29

11. The ruling as to legal fees is based on sect. 84 subs. 2 Patent Statute in connection with sect. 91 subs.1 Civil Procedure Code, the ruling as to provisional enforceability is based on sect. 99 Patent Statute in connection with sect. 709 Civil Procedure Statute.

**Winkler, Dr.Hartung, Voit, Dr.Zehendner, Höppler**

Making reference to my professional oath as a translator for the Free State of Bavaria I hereby confirm that the above is a complete and correct translation of Ruling by the Federal Supreme Court for Patent Matters of 5 April 2006 in the Matter of Cisco Systems Inc vs. Teles AG

München, den 13 June 2006
Dr. Donald Cramer


