# EXHIBIT D

Certified Translation of a German Document – Ruling by the Superior Court of Mannheim of 31 March 2006 in the matter of TELES AG Informationstechnologien vs. Cisco Systems Inc

---

p.1

Stationery for rulings of the courts in Baden-Wuerttemberg

(docket no.)  7 O 340/04



ordered on 9 June 2006-06-14
Streib
Secretary
As clerk of the court

Superior Court Mannheim
7th Civil Chamber

IN THE NAME OF THE PEOPLE

Judgment

(rubber stamp received…. 14 June 2006 … attorneys Bardehle…..)

**In the matter of**
**Parties involved:**

TELES AG Informationstechnologien, represented by the members of the board Prof.Dr.S.Schindler, J.Bastian, A.Krueger, J.Schwarzer, R.Wegener, O.Schulz, 2-4 Dovestr., 10587 Berlin

- **Plaintiff** –

Represented by attorneys Herbst/Sendler and colleagues, 26 Meinekestr., 10719 Berlin (476-05/Br/pe)

Vs.

Cisco Systems Inc, represented by its president and CEO J.T. Chambers, 170 West Tasman Drive, San Jose, California 95134 ( USA)

- Respondent

represented by attorneys Bardehle and colleagues , 1 Galileiplatz, 81679 Muenchen

for patent infringement

the 7th civil chamber of the Superior Court of Mannheim has ruled on the basis of the hearing of 31 March 2006 acting thru

> Presiding judge at the Superior court Schmukle
> Judge at the Superior Court Dr.Zuelch
> Judge Dr.Hassmann

as follows:

1. The petition is dismissed.
2. Plaintiff to pay the legal fees of the proceedings.

p.2

3. The judgment is as regards the legal fees provisionally enforceable if a security is posted in the amount of 110 % of the amount to be enforced.

p.3

## Facts of the matter:

The plaintiff sues respondent for abstaining from acting, for information, for accounting and to determine the respondents liability for damages by virtue of infringement of a German and a European patent.

**Plaintiff holds two patents:**

DE 196 45 368 ( att. K2, "the patent at issue I") was filed for by claiming inner priority on 7 October 1996 from DE 196 42 063.6 and published on 16 April 1998. The issuing of the patent was published on 30 December 1999. Patent at issue I was declared void in its entirety in the context of a nullification procedure initiated by respondent and Quintum Technologies Inc. by judgment of the Federal Patent Court of 5 April 2006 ( docket no. 4 Ni 42/05 att. B12 ); the judgment is not yet final. The patent at issue I concerns a method and a communications installation for data transmission in a communications network.

Claim 1 of the patent at issue I is worded as follows:

1. Method for the transmission of data between a first and a second telecommunications installation, either by line-switching or by packet-switching consisting of the following steps:
   a) formation of a connection from the first telecommunications installation to an access point to a packet-switching network,
   b) data transfer from the first telecommunications installation to the access point to a packet-switching network,
   c) data transmission by packet-switching via the packet-switching network to the second telecommunications installation or to a telecommunications installation which is positioned in front of it,
   d) repeated checking whether a control signal, in particular that of an end appliance or of a router exists to move to a line-switching connection,
   e) formation of a line-switching connection to the second telecommunications installation if the corresponding control signal exists,
   f) change to a line-switching data-transmission and data transmission to the second telecommunications installation.

p.4

EP 0 929 884 B1 (patent at issue II) claims the priority of the patent at issue I ( 7/23 October 1996) and was applied for on 7 October 1997. The application was published on 21 July 1999; publication of the reference to the issuance of the patent was made on 27 October 1999. Also the German part of the patent at issue II was declared void in its entirety by judgment of the Federal Patent Court of 5 April 2006 ( docket no. 4 Ni 41/ 05 (EU)) ( att. B 12 ); this judgment too is not final yet. The patent at issue II relates to a method for data transmission in a telecommunications network and a switch for carrying out the procedure:

Claim 2 of the patent at issue is worded as follows:

> "Method for the transmission od data from a first switch to a second switch which is as well part of a line-switching network as also of a packet-switching network or which has access to such networks, either by line-switching or by Packet-switching, consisting of the following steps:
> a) packaging of data in the first switch if the data are not already existing as data packets,
> b) transmission by packet-switching via the packet-switching network to the second switch,
> c) repeated checking whether a control signal produced by a user of an end appliance or by network management is existing in order to move to a line-switching connection to a second switch,
> d) formation of a line-switching connection from the first switch to the second switch via the line-switching network if the corresponding control signal exists if this is not already existing,
> e) change from a line-switching data transmission during an existing connection and transmission of data to a second switch."

As regards the further contents of the two patent documents at issue (patent claims, description, drawings ) reference is made to att. K2 and K1.

Respondent offers complex telecommunications installations which allow the connection to several end appliances like ( analogue or internet-) telephones or telefax appliances. These installations allow it among other things to forward an incoming call from a phone connected to a router to another telephone. As routers in these scenarios as attacked by the plaintiff devices with the name "router 2801" in connection with devices "Cisco 836" are deployed. These routers may be connected with each other as well via the internet or a company network ( both described in the following as "WAN","Wide Area Network ) as via a traditional (PSTN) telephone connection. These installations allow it to conduct phone conversations

p.5


preferably via the WAN by way of the so-called Voice-over-IP (VoIP); such phone conversations are described in the following as "IP-conversations". The functionality of the telephones is supervised by a so-called "Cisco Call Manager" who disposes of information regarding the question whether the communications installations at remote locations are able to receive data transmitted by packet-switching via the WAN.

The installations provide a so-called "PSTN-Fallback"-function which is designed to secure the transmission quality of IP-phone conversations and which excludes that in case of too low transmission quality additional calls are conducted by VoIP and which provides for it that these are realized instead via traditional PSTN-connections. It is possible to configure criteria for the transmission quality, among others by the parameter "maxconn" which determines the maximum amount of IP- telephone conversations which can be conducted at the same time via a router.

Further the installations offer a function named "SRST" ("Survivable Remote Site Telephony"). This also provides for conducting a call via a PSTN-connection if f.e. the connection to the WAN or to the Call Manager is disrupted.

Plaintiff argues that the telecommunication installations use the patents at issue as regards the PSTN-fallback-function and the function SRST. In this context she describes three so-called infringement scenarios which are acc. to her reasoning a use of the communication devices distributed by the plaintiff and made acc. to the determination as documented in the instruction book. As regards the details of the so-called infringement scenarios reference is made to respondent's briefs of 27 and 30 March 2006.

Plaintiff objects against putting the procedure on hold because of the nullification procedure initiated.

Plaintiff at last asked for a ruling as follows:

p.6

I. Respondent is ordered to abstain from the following with the proviso that a fine of up to €250.000 – or in its place commitment to prison or commitment to prison for up to 6 months, the prison term to be applied to the directors of the company,

to abstain from offering or delivering to individuals installations for data transmission with a view towards use in the Federal Republic of Germany if those individuals are not entitled to the use of the German patent DE 196 45 368 and the European patent EP 0 929 884 and if the installations are destined to realize the following procedures:

A. method for data transmission

1. between a first and a second telecommunication installation when
2. the data transmission is effected either by line-switching or by packet-switching.

The following procedural steps are being executed:
3. formation of a connection from the first telecommunication installation to the access point of the packet-switching network,
4. data transmission from the first telecommunication installation to the access point of the packet-switching network,
5. data transmission by packet-switching via the packet-switching network to the second telecommunication installation or to a telecommunication installation positioned before it,
6. repeated checking whether a control signal in particular of an end device or a router is existing to effect the change to line-switching connection,
7. formation of a line-switching connection to the second telecommunication installation if the corresponding control signal exists,
8. change to a line-switching data transmission and transmission of data to a second telecommunication installation,
   when either a)
- data transmitted by packet-switching are the signalising info of a phone call,
- the control signal is produced to effect the change after transmitting these signalling info and before the transmission of language info via the packet-switching network,
- in case a control signal exists a line-switching connection, in particular an ISDN- or PSTN-connection to the second telecommunication installation is formed,
- in particular if the control signal is produced
    I. in the case of insufficient bandwidth in a packet-switching network or
    II. in case if the connectivity of the telecommunication installation to the packet-switching network ceases or to a central control device, in particular to a Cisco CallManager, or
    III. in the case the phone call is not accepted by the end device which is called,
- in particular if the first and second telecommunication installation are affiliate routers,
   or b)
- if packet transmitted data are data of a phone call,

- during the first phone a second phone call is initiated to which between the first telecommunication installation and the second telecommunication installation a data transmission occurs,

p.7

- this additional phone call uses because of a control signal in contrast to a determination made before as to packet switching data transmission a line-switching data transmission,
- in particular if the control signal is produced in the case of insufficient bandwidth in the packet-switching network for thee data transmission of the second phone call,
- in particular if the first and second telecommunication installation are affiliate routers,

or c)
- if the data transmitted by packet-switching are those of a phone call,
- if the control signal is produced in order to effect a change after the transmission of language data via a packet-switching network,
- if in case of a control signal a line-switching connection, in particular an ISDN or PSTN-connection to the second telecommunication installation is formed,
- in particular if the first and second telecommunication installation are affiliate routers.

B. Method for the transmission of data from a first switch to a second switch which is as well part of a line-switching network as also of a packet-switching network or which has access to such networks, either by line-switching or by packet-switching, consisting of the following steps:
1. packaging of data in the first switch if the data are not already existing as data packets,
2. transnsmission by packet-switching via the packet-switching network to the second switch,
3. repeated checking whether a control signal produced by a user of an end appliance or by network management is existing in order to move to a line-switching connection to a second switch,
4. formation of a line-switching connection from the first switch to the second switch via the line-switching network if the corresponding control signal exists if this is not already existing,
5. change from a line-switching data transmission during an existing connection and transmission of data to a second switch
when either a)
- the data transmitted by packet-switching are signalising info of a phone call,
- the control signal is produced to effect the change after sending these signalising info and before the transmission of language data via the packet-switching network,
- if in case of the existence of a control signal a line-switching connection, in particular an ISDN or PSTN-connection to the second switch is formed, in particular if the control signal is produced,
- I. in the case of insufficient bandwidth in the packet-switching network or

II. in case if the connectivity of the telecommunication installation to the packet-switching network ceases or to a central control device, in particular to a Cisco CallManager, or
III. in the case the phone call is not accepted by the end device which is called,
Or b)

p.8.   - if the data transmitted by packet-switching are data of a phone call,
- if during the phone call a second phone call is initiated for which data transmission is effected from the first and the second switch,
- - if this additional phone call uses because of a control signal in contrast to a determination made before as to packet switching data transmission a line-switching data transmission,
- in particular if the control signal is produced for the transmission of data of the second phone call in case of insufficient bandwidth in the packet-switching network ,
- - in particular if the first and second switch are affiliate routers,
- or c)
- - if the data transmitted by packet-switching network are data of a phone call,
- - if the control signal if produced to effect the change to a transmission of language data via the packet-switching network,
- if in case the control signal exists a connection by line-switching, in particular an ISDN or PSTN-connection to the second switch is formed,
- - in particular if the first and second switch are affiliate routers.

II. The respondent is ordered to inform the plaintiff about the extent of those actions described above under 1. and committed since 27 November 1999, to provide for a full accounting thereof detailing in particular
1. all individual offers and products broken down acc. to volume offered, - times offered, and prices offered as well as denominations of types and including names and addresses of the recipients of offers,
2. all individual shipments, broken down according to volume of shipments, - times offered, and prices offered as well as denominations of types and including names and addresses of the recipients
3. all advertising made, broken down according to media, the volume thereof, the distribution time wise and by area,
4. the incurred cost broken down as to different factors of such costs and the profit realized,
while reserving for respondent the right to supply the names and addresses of non-commercial recipients of distribution as well as recipients of offers instead of to the plaintiff to be made to a CPA designated by the plaintiff and this CPA being held to confidentiality towards the plaintiff, if the respondent pay for this CPA and if she empowers this CPA and require him to inform the plaintiff in the case of a concrete request whether a particular distribution recipient is contained in the accounting.

   III.   It is determined that the respondent is required vis-à-vis the plaintiff to reimburse plaintiff for all damages incurred by virtue of the actions designated as 1. above since 27 November 1999 and which may be incurred in the future.

p.9

**Respondent asks**

that the petition be dismissed.

Respondent does not maintain further the additional petition filed in the course of the hearing of 31 March 2006 that the procedure be put on hold in relation to the mentioned nullification procedure, as filed in the brief of 18 May 2006, filed timely.

Respondent argues that there is no indirect patent infringement. The infringement scenarios presented by plaintiff would not make use of the patents at issue. In particular there would not occur in any of these scenarios a change within the frame of the patent from a packet-switching to a line-switching connection. Partly the course of the procedure as alleged would not be executable with the devices distributed by the respondent. In any case would neither the configuration chosen by plaintiff nor the determinations made correspond to a use of their products in accordance with their determination. No use would have to use the products if adjusted in the manner described by the plaintiff nor would he have to use them.

As regards further details of the state of the arguments and briefs reference is made to the briefs exchanged incl. attachments as well as to the transcript of the oral hearing of 31 March 2006. Respondent has filed an additional timely brief of 18 March 2006, plaintiff has filed untimely briefs of 14 March 2006 and 29 May 2005.

p.10

## Reasons of the Decision:

The petition is admissible, however it is unjustified. There is no substantiated allegation of an indirect patent infringement.

### I.

1. the patent at issue I protects, in so far as relevant here, a method for the transmission of data in a telecommunication network. As to the background of the invention it is described that the technology of telecommunications was characterized at the time of priority by a dichotomy between different technologies for connecting and switching, namely between synchronous line-switching technologies and asynchronous packet-switching technologies ( IP-switching ).

Line-switching would be synchronous; data transmission would be effected by and large without time delay. A line-switching connection would be either direct or indirect; there would be formed an exclusive connection, only provided for data transmission on a connection between the two end points with a fixed bandwidth which would be available at full bandwidth at all times. There would be no flexibly disposable transmission capacity for a multitude of services of voice, data and pictures; the transmission channel would even then be occupied if there would be no data exchange. Therefore line-switching connections would be less efficient and expensive. Their advantage would be their connection without delay at fixed bandwidth.

With packet-switching which would be employed mainly for data transmission in the internet, the data to be transmitted would be separated into packets ( translator's note: obvious typo ) of a fixed length which would be provided with a header and they would be transmitted asynchronously, i.e. with a time delay between sender and receiver. Each packet would be transmitted individually and independently of others, i.e. it would be copied again and again via the router from the sender to the receiver. This "routing" would lead to the time delays mentioned, in particular in case of a strong overload of the router. This could be of importance, in particular in the case of internet-telephony if it would make a pleasant connection for conversations impossible. However also other communication services as access to the internet and access to local networks ( Remote Access Service ) would be influenced by the mentioned dichotomy of transmission technologies, since the access to the network in question would be effected via a line-switching ISDN/POTS connection and since it would be limited in this course to allow at any given time only one of the three services mentioned.

The separation of communication services would mirror the structure of service providers. This would be unsatisfactory as well for the user who would have to deal with numerous service providers and technologies as well as for service providers themselves. These service providers would be limited to certain services and would be excluded from other markets. Further problems would arise for telephone companies which would have offer internet rates at advantageous conditions although internet connections would on average last longer than local phone calls.

As to the state of the art a procedure for data transmission between a user terminal and a host computer is known from WO 90/12466 during which in case of an ISDN connection there would exist the option of a change between a packet-switching and a line-switching transmission. Line-switching data transmission would be effected at all times via an ISDN-B-channel, while a packet-switching transmission would be effected via an ISDN-D-channel. A change between line-switching and packet-switching transmission would be induced by the host computer at all times.

2. Against this background the patent at issue I names as task of the invention: to provide for a method for data transmission between a first and a second telecommunication installation as well as a digital communication device and a telecommunications end device in order to carry out the procedure which would allow depending upon the volume of data to be transmitted and upon the user's

demands a flexible data transmission between telecommunication installations, in particular a costefficient data transmission with an improved transmission unit.

This task is to be achieved among others by a procedure with elements of claim 1 which may be organized as follows :

p.12

(1) A method of data transfer is effected between a first and second telecommunication installation.
(2) Data transmission is effected either by line-switching or by packet-switching.

The following procedural steps are being executed :

(3) Formation of a connection from the first telecommunication installation to an access point of a packet-switching network.
(4) Data transmission from the first telecommunication installation to the access point of a packet-switching network.
(5) Data transmission by packet-switching via the packet-switching network to the second telecommunication installation or to a telecommunication installation positioned before it.
(6) Repeated checking whether a control signal in particular of an end device or of a router exists to effect the change to a line-switching connection.
(7) Formation of a line-switching connection to the second telecommunication installation in case the corresponding control signal exists.
(8) Change to a line-switching data transmission and transmission of data to the second telecommunication installation.

Acc. to the description ( column 3 no.55 seq.seq ) the solution acc. to the invention allows a cost efficient ( translator's note: obvious typo ) and at the same time at all times transmissions of satisfactory quality of ( audio-, video-, computer- and control-) data because there would be provided a dynamic and flexible change between line-switching and packet-switching data transmission. Resources would be provided which would either by direction by the user or automatically switch between line-switching and packet-switching. Thus the user would have f.e. the option to send data at first in a cost efficient manner via the internet and then to switch for the transmission of larger data volumes to line-switching without having to interrupt the procedure of telecommunication. It would be an option to switch back and forth of a telecommunication procedure; this would secure that data transmission could be effected in real time.

p.13

3. The patent at issue II describes the background of the invention with identical content as to the description of patent at issue I. Different terminology is used for line-switching

installations and ( in case of packet-switching ) routers being called "switches". As to the state of the art a number of publications are mentioned aside from WO 92/12466 (US-PS 4,996,685) which provide for an alternative data transmission by packet- or line-switching.

As task of the invention is mentioned a method for the data transfer from the first switch to a second switch as well as to provide a switch for the carrying out of the procedure, which will allow – in dependence upon the data volume and the user's demands or of a network management a flexible data transmission between switches, in particular a cost efficient data transmission in real time.

This task is to be solved among other things by a method with the elements of claim 2 which can be organized as follows :

(1) A method of data transfer is effected from a first switch to a second switch.
(2) The switches are as well part of a line-switching network as part of a packet-switching network or have access to such networks.
(3) Data transmission is effected either by line-switching or by packet-switching.

The following procedural steps are executed :

(4) Packaging of data in the first switch if the data are not yet existing as data packets.
(5) Data transmission by packet-switching via the packet-switching network to the second switch.
(6) Repeated checking whether a control signal in particular of an end device or of a router exists to effect the change to a line-switching connection to a second switch.
(7) Formation of a line-switching connection via the line-switching network to the second switch if the corresponding control signal exists if this is not existing yet.
(8) Change to a line-switching data transfer during an existing connection.

p.14

and transfer of data to the second switch.

Acc. to the description of the patent at issue II the solution on the basis of the invention allows to change dynamically to a line-switching connection without interrupting the connection during a packet-switching connection between two switches. This would always be sensible if there exists in front of the switches of the packet-switching network a "data backup" of data packets. Thus a "bypass" would be provided thru which data can be transmitted with a fixed bandwidth and with small time delays, thus by and large in real time, so the data backup would be bypassed. Since a line-switching connection would be formed only if needed the invention would make possible a flexible and most cost efficient data transmission.

II.

**Plaintiff maintains that the following concrete configurations are use of a protected procedure :**

1. With the first scenario two affiliate stations A ( Sender ) and B ( receiver ) are viewed, the plaintiff portrays their configuration and connection as follows :

( follows drawing as p.14 of the document to be translated, judgment Superiour Court of Mannheim ).

p.15

Routers A and B ( Cisco 2801 ) each have a static IP-address. To router A are plugged in ( via adaptor ATA 186 ) the analogue telephones A1 and A2. Via ISDN these two telephones can be reached by the external phone numbers 308 73 946 (A1) and 308 73 947 (A2). Telephone B1 is an analogue telephone with WAN no. 563 and the external phone no. 390 63 563. Telephone B2 is an IP-telephone of the respondent; it has the WAN call no. 790 and the external phone no. 390 63 790. At router B the parameter "maxconn", which quotes the maximal number of permissible simultaneous IP-calls which are to run via the router B, is set on "1".

Acc. to plaintiff's submission A calls B2 via the internal WAN no.563. After forming the connection a WAN-based telephone conversation is being conducted; this represents a packet-switching connection. In the course of this conversation participant A2 tries to call participant B2. To achieve this router B therefore sends the communication signal "invite".The router on the receiver's side however determines that already the highest permissible number of IP-conversations (1) is being conducted, and sends – also via the packet-switching WAN – an error message to router A. Because of this error message router A now tries automatically to form a line-switching connection via ISDN to router B. If successful router B. will forward the call to the telephone B2. This call is conducted completely by line-switching; with the respondent's devices it is not possible to change the type of connection during the line-switching connection.

Plaintiff argues that also those signalisation data which are exchanged during the attempted formation of an IP-conversation ) belong to the "data transmission" within the meaning of the patents at issue. The error message which is being sent because of the excess of the maximum number of concurrent IP-conversations sent from router A to router B would be the control signal which would induce the change to the line-switching network.

2.The second infringement scenario is described by plaintiff as follows:

p.16

( drawing as on p.16 of the translated document )

At the router A an analogue telephone A is plugged in whose internal WAN number is 946 ;via ISDN this phone can be reached by the external phone no. 308 73 946. At router B an IP-phone B (WAN call no 790; external no. 390 63 790 ) is plugged in. Both routers have static IP-addresses.

Acc. to the plaintiff's reasoning caller A tries to form a conversation with access B. For this router A. of the caller sends – in order to form an ISDN conversation – repeatedly a signalisation data packet to router B, however he does not receive an "acknowledgment", thus no "answer" from router B f.e. because the WAN between the routers has broken down. After a time set before or a number of unsuccessful attempts set before router A gives up on the formation of a packet-switching connection and forms – if possible – a line-switching connection. If this is realized the call will again be conduct by line-switching all the way.


3.Also the 3d scenario views acc. to the plaintiff's view the following configuration:

p.17



(drawing as on p.17 of the text in its original, German, form )


At router A is plugged in telephone A ( WAN call no. 946, external call no. 308 73 564 ). At router B. two IP-phones (WAN 564, external call no. 390 53 564 ) and B 2 ( WAN 790. externally 390 63 790 ) are plugged in. At router B. again the parameter "nax-conn is again set at "1").

A calls B1 via an IP-conversation. B1 would like to forward the call to the phone B2. After pushing the button "forward", followed by the internal no. of the phone B 2 (790) the CallManager checks whether the conversation between A and B2 can also be conducted by packet-switching. Since the parameter "max-conn" is set for "1" router A receives from router B an error message. Therefore he tries to form a line-switching connection to router B. If this is successful, the conversation between A and the phone B2 will be conducted by line-switching.

Plaintiff maintains that this would constitute a use of the protected procedures as in the first infringement scenario for the same reasons. Forwarding of an ongoing conversation to another phone would be a normal occurrence in the course of a communication. Within the course of the communication a change would occur from a packet-switching transmission to a line-switching transmission.


p.18


III.

**There is not sufficient substantiation for a direct infringement of the protected scope of the patents at issue.**

1. In the configuration at hand if at all only an indirect patent infringement acc. to sect. 10 subs.1 Patent Statute appears possible as the parties are aware. Protected are data transmission methods which are not carried out by the respondent but from those making use of installations offered by her; respondent also does not offer these procedures but only devices which acc to the plaintiff's allegations are suitable to carry out these procedures.

Acc. to sect. 10 subs.1 Patent Statute the protected scope of a patent includes the offer and distribution of devices which are related to an essential element of the invention, the distribution to third parties for the purpose of using the invention within the area in which the Patent Statute is effective, if that third party knows or if it is obvious under the circumstances that the resources are appropriate for this and that they are designated to be used for the use of the invention. Accordingly the components of the system would have to be suitable in an objective manner as well as in a subjective manner and be destined to carry out the procedures protected by the patents at issue. This however is not the case. The procedures described in the infringement scenarios make no use of the technical teachings of the patents at issue. Thus the further question – also dubious – can remain unanswered whether the plaintiff has met the requirement of sufficient substantiation of the element "being destined" ( comp. BGH GRUR 2005,851 . Antriebscheibenaufzug; BGH GRUR 2004,758 Flügelradzähler; BGH GRUR 2001,228 Luftheizgerät) .

2. The decisive basis in determining what is protected by a German or a European patent is the content of the patent claims ( art.69 subs.1 EPÜ, sect. 14 Patent Statute; comp. f.e. also BGHZ 98,12 = GRUR 1986,803 Formstein; for the European patent BGH GRUR 2004, 1023,1024 – bodenseitige Vereinzelungseinrichtung ). For the determination of the technical content of the patent therefore the key is the content of the patent claim as they have been declared and in supplementing – in the sense of an aid in construing

p.19

    the contents of what has been declared are decisive, if this is expressed in the claims ( BGH GRUR 1999, 909,911 – Spannschraube ). The issue whether a particular direction belongs to the object of a patent's claim is decided by the fact whether this has been reflected in the corresponding patent claim ( BGH GRUR 1989,205 Schwermetalloxidationskatalysator; BGH at the place quoted – bodenseitige Vereinzelungseinrichtung ). The protocol for construing Art.69 EPÜ expresses this thought by stating that the patent claims must not serve only as a directive. This means that the wording of the relevant patent claim is key. Whatever is not clearly included if properly construed so that it can be recognized by the person skilled in the art as belonging to the invention cannot characterize the object of the patent claim. Also the reference to descriptions and drawings of the patent at issue necessary to fully understand the core of the content must not lead to an extension of the protection nor to a limitation of the

object of the patent, as fixed by the wording of the patent claim ( BGH at the quoted place bodenseitige Vereinzelungseinrichtung ).

Construing the contents of the patent acc. to these principles is a question of law. Only the basics of construing as f.e. the meaning of certain terms by the average person skilled in the art are questions of fact ( BGH as quoted - Spannschraube , bodenseitige Vereinzelungseinrichtung ).

3. When determining the meaning of the core of these claims all elements of the claim are to be judged as they correlate with a view towards a unitary meaningful technical theory. As the chamber has already explained in the judgments of 11 March 2005 ) Spannschraube ( docket no. 7 Ö 332/04 and 7 O 342/04 this means for the patents at issue that the mentioning of a data transfer at first by packet-switching ( spec.5 of the two claims 1 ) must have importance for the invention as a first step of a protected procedure. Which meaning this is shown by specs 6 thru 8. If there exists a control signal within the meaning of specs 6 and 7 then a line-switching connection is formed in order to transmit data which had been transmitted by packet-switching before now can be transmitted . There is –as specs 6 and 8 have it a "transition" or a "change to" the newly formed line-switching connection. Together with specs 5

p.20

and the element of an "optional" data transmission by line- or packet-switching (spec.2 ) it follows from this that for the transmission of the desired data after the control signal the newly formed line-switching transfer ( at least partially, comp. judgment of 11 March 2005 docket no. 7 O 342/04; at II.2 of the reasons of the decision ) takes the place of the packet-switching transmission used at first.

The technical point of this change in the transmission technology is mentioned in the descriptions of both patents at numerous places. This has the aim of providing the user of a patented procedure and of its corresponding installations a flexible switching back and forth between the most cost efficient packet-switching transmission which may however have insufficient bandwidth and the expensive and reliable line-switching connection, in order to avoid data backups in the internet by switching to a line-switching transmission ( "Bypass" see patent at issue II cifra 0019 ).

Both patent documents underline at numerous places of their descriptions, in particular however in the circumscription of the invention's core, that a determination of a connection to an data transfer either by packet-switching or by line-switching is to be surpassed. Thus the invention in patent at issue I is summarized as follows :

> "By allowing a dynamic switching back and forth <u>of a telecommunications procedure</u> transmission by line-switching and packet-switching it is secured that a data transmission can always be effected in real time.

> This invention presents a totally new concept in telecommunications technology in so far as a telecommunications connection need not be determined already at its beginning for its entire duration whether the normal internet ( by packet-switching services ) or by ISDN7PSTN phone network ( via line-switching services) is used. The dichotomy until now line-switching – packet-switching is therefore removed for the user."( patent at issue I, column 4 no. 5-18, highlighting added ).

> Accordingly the wording in patent at issue II:

> "The solution according to the invention allows to change during a packet-switching connection between two switches in a dynamic way to a line-switching

p.21

> transmission <u>without interruption of the connection.</u>" ( patent at issue II cifra 0019, highlighting added )

From this reasoning it is clear for the person skilled in the art that for one and the same communication procedure only the type of transmission technology is changed without interrupting the connection. This means that for the same data which have been transmitted by packet switching at first now, after the formation of a line-switching connection induced by the control signal , there shall be available now a line-switching transmission. In case the telecommunication procedure is f.e. a ( at first by way of internet-telephony conducted ) phone conversation, then the electronic signals representing the contents of the conversation are transmitted after the change without interruption of the – naturally viewed – communication procedure by line-switching. Is the transmission of a file the object of the communication procedure then this file is transmitted by line-switching connection. With this communication procedure as it is the basis of the patents at issue there exists a sender who wishes to transmit certain data (described at all times as "the data" ) to the receiver . The core of the transmission procedure as protected by both patents at issue is that it is possible to change the transmission technology from packet-switching to line-switching "during an existing connection" (patent at issue II, spec.8 ), thus without interruption, without a new initiating of a connection by both partners of the communication.

> 3. An infringement of claim 1 of the patent at issue I by all infringement scenarios can be excluded already because in all cases router A without a doubt is not located "behind" a packet-switching network and therefore does not send its data not to an access point of a packet-switching network ( spec.4 ). He is however viewed from the telecommunication devices connected with him himself an access point to the packet-switching network. Therefore the formation of a connection from the router to an access point of a packet-switching network ( spec.3 ) does not take place in the infringement scenarios.

The plaintiff has argued during the hearing specs. 3 and 4 would be realized because the router would be <u>taken into use.</u> With this there would occur a complex exchange of

signalisation data between router A and other servers of packet-switching networks, during which among other things

p.22

router A is assigned an IP-address. Within the brief (untimely filed ) of 14 May 2005 plaintiff has argued in a supplementing way that patent at issue I would not proscribe that only those data could be sent from the first telecommunications installation to the access point of the packet-switching network which subsequently would be sent by packet-switching network to the second telecommunication installation.

This misses the point of the technical doctrine of claim 1 of the patent at issue I. This describes rather a data transmission procedure between a first and a second telecommunication installation. There exists therefore a certain volume of data which is to be transmitted from the first to the second telecommunication installation. Acc. to spec.4 "the data" are to be transmitted from the first telecommunication installation to the access point of a packet-switching network. This however involves data which are to be transmitted acc. to spec.5 before the change in the type of transmission by packet-switching to the second telecommunication installation, thus involving the data to be used and to be transmitted, and not control data or signalisation data which are possibly exchanged during the first use between router A and other WAN servers.

4. With the first and second infringement scenario ( above II:1 and 2.) spec.5 of both patent claims has not been realized because the transmission of user data in a packet-switching fails right from the start. In order to determine that it does not suffice that the transmission of user data by packet switching is not possible the fact that control signals are exchanged by packet-switching does not realize spec.5. Also spec. 5 must be seen in its technical-functional context with the further specs 6 and 8. From this follows that a "transition" from a packet-switching to a line-switching connection and a change from packet-switching transmission to line-switching transmission requires that at least part of the (user) data which are to be transmitted from the first to the second switch are at first transmitted by packet-switching. Also it is be drawn from the sections describing this ( above III.2 ) that by opening this option – change of the way of transmission without interrupting the communication connection – this represents the progress vis-à-vis the state of the art.

p.23

5. In any case there is missing in all three infringement scenarios a change of a packet-switching to a line-switching transmission of "the data" within the meaning of spec.8 of both patent claims pursued. As has already been reasoned in detail above that by the required technical-functional construction of patent claims by paying attention to the interplay of the individual specifications to form one coherent theory it must be demanded that the same user data which are to be transmitted from the first to the second switch are transmitted by packet-switching first, however then – during a continuously existing connection – after the control signal is present ( spec.6) and after the formation of a line-switching connection ( spec.7 ) are transmitted by line-switching connection without an interruption occurring or without a new initiation of a communication procedure

by the partners of the communication. This is not the case in any of the infringement scenarios, also not in the third scenario described at II.3.

However there are user data transmitted in this scenario at first being transmitted by packet-switching from router A, to which phone A is plugged in, to router B or to phone B1. Also the error message ("Internal Server Error") which is being sent because of the excess of the maximum number of calls transmitted by packet-switching from router B to router A does represent a control signal in so far as it induces the formation of a line-switching connection between the two routers. However there is still no change in the type of transmission during the continuation of the communication procedure; it is not "data" which are transmitted by line-switching which had before been transmitted by packet-switching. Forwarding a call to another phone does not represent a decisive dividing line and the termination of the first and the beginning of a new communication procedure. The question whether this communication is being conducted between the same people does not matter. It is of decisive importance whether it involves technically the same communication procedure. This is not the case. The third infringement is structurally and with a view towards the technical doctrine of the patents at issue not different from the first. As shown by the transmission of the error message because the maximum number of conversations transmitted by packet-switching is exceeded the router B can not treat the conversation which is to be conducted between phone A and phone B2 as a continuation of the conversation conducted between phone A and B1;

p.24

he must treat it ( as in the first infringement scenario ) as a new additional conversation which is to be considered when checking the "max-conn" criterion. Accordingly the conversation which is conducted between phone A and phone B2 by line-switching represents right from the beginning a new initiating of a communication procedure by the communication partners.

The third infringement scenario has nothing to do with securing high quality of the data transmission as intended by the patents at issue. The conversation between phone A and phone B1 is not continued, its quality cannot be secured. Under the perspective of securing quality the formation of a line-switching connection is basically unnecessary: the conversation between phone A and phone B2 is conducted by line-switching, although at the latest with putting back the receiver in the cradle at phone B1 there is no communication by packet-switching anymore and that therefore the "max-conn" criterion is no longer met. This too shows that it is not required to include the third infringement scenario into the protected area of the patents at issue.

Iv:

Since therefore the petition is to be dismissed in its entirety for lack of an infringement the issue of a legal maintenance of the protection rights by the petition is not the basis, therefore it is not necessary to put the petition on hold acc. to sect. 148 Code of Civil Procedure. The decision as to fees is based on sect. 91 subs.1 Code of Civil Procedure.

The decision about provisional enforceability is based on sect.sect. 709,108 Code of Civil Procedure


Schmukle, Presiding judge at the Superior Court

Judge Dr.Hassmann is because of vacation unable to sign
Schmukle, Presiding judge at the Superior Court

Dr.Zuelch, Judge at the Superior Court

---

Making reference to my professional oath as a translator for the Free State of Bavaria I hereby confirm that the above is a complete and correct translation of Ruling by the Superior Court of Mannheim of 31 March 2006 in the matter of TELES AG Informationstechnologien vs. Cisco Systems Inc

München, den   14 June 2006   ..................................
Dr.Donald Cramer