IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DISTRICT OF COLUMBIA

_____

|  |  |  |
|--|--|--|
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff/ | ) | Civil Action No. |
| Counterclaim-Defendant, | ) | 1:05-CV-02048 (RBW) |
| | ) | |
| v. | ) | ECF Case |
| | ) | |
| TELES AG INFORMATIONSTECHNOLOGIEN, | ) | |
| | ) | |
| Defendant/ | ) | |
| Counterclaim-Plaintiff. | ) | |
| | ) | |

_____

**PLAINTIFF CISCO SYSTEMS INC.'S MOTION AND
MEMORANDUM IN SUPPORT OF MOTION FOR
<u>ENTRY OF PLAINTIFF'S PROPOSED PROTECTIVE ORDER</u>**

Pursuant to Federal Rule of Civil Procedure 26(c), Plaintiff Cisco Systems, Inc. ("Cisco") moves for entry of a Protective Order, in the form attached hereto as Exhibit A, to govern the exchange of confidential information in this patent case. The parties have agreed on most aspects of the proposed protective order, including the need for some special protection for computer source code, but disagree principally about the level and details of the protection to be afforded to the computer software source code to be produced in this litigation.

<u>**INTRODUCTION AND SUMMARY OF ARGUMENT**</u>

As set forth in the attached Declaration of John N. Stewart, the Vice President and the Chief Security Officer of Cisco Systems, Inc., the products at issue in this patent infringement suit encompass at least 20 different Cisco router and Internet gateway switches that are widely used in this country and internationally to enable both public and private institutions to communicate over the Internet and through other data or telecommunications systems. Cisco's

products are used extensively to receive and transmit confidential information, including confidential governmental information, and Cisco's source code contains special protections to maintain the security of that information. The source code is not provided to Cisco's customers or otherwise publicly disclosed, and Cisco has adopted special security procedures to protect the confidentiality of the code and to restrict access to the code, even within Cisco.

Indeed, maintaining control over the source code for Cisco's Internet Operating System and Call Manager software (collectively "IOS") in these products, and preventing the unauthorized use of, copying of, or access to that source code, is of great importance not only to Cisco, but also to the millions of users of Cisco's products, including multiple government institutions, whose data could be hacked into or stolen. The harm from inappropriate copying, disclosure or use of Cisco's IOS source code – which is the code that Defendants seek in this litigation – could be extensive and far ranging, and also raises national security concerns. The IOS source code also constitutes one of Cisco's most valuable assets, as it comprises literally millions of lines of code that reflect extensive proprietary software development and programming over the years at Cisco. The IOS software at issue here literally is used to "run the Internet," and inappropriate disclosure of even portions of it could breach the security and safety of Internet communications.

Given the importance of preventing any unauthorized disclosure or use of the code, Cisco asks the Court to order that Cisco's source code be produced for review by Defendants' counsel and experts only at a private, secure site within the offices of Cisco's counsel, Goodwin Procter LLP, in Washington, D.C., or at a secure third party facility, with certain restrictions on the ability to copy portions of the code, and with some record-keeping requirements to ensure that – if necessary in the event of an improper use or disclosure – Cisco will be able to go back and

2

confirm what has been disclosed outside the secure facility.  Relevant portions of the Cisco's proposed Order appear at paragraphs 5(f) and (i)-(q) (pages 4-7) of the Order.[1]  Proposed Protective Order, (Shiferman Decl., Ex. A).

At an earlier hearing in this case, Defendants objected to certain of Cisco's proposed security measures on the ground that it would supposedly be inconvenient to Defendants' counsel if they did not have unrestricted 24 hour-a-day immediate access to Cisco's code at their own law firm, and that Cisco's request for certain advance notice before allowing review of the code would also be unworkable.  June 20, 2006 Hearing Tr. at 26 (Shiferman Decl., Ex. B).  We believe that reasonable and timely access can readily be granted at Goodwin's offices in Washington, D.C. (a mile from the office's of Defendants' counsel), and that counsel can work out any access or copying issues that may arise under Cisco's proposal.  The protections in Cisco's proposed order, we believe, provide an appropriate and necessary balance between Cisco's legitimate and important need to maintain control over its source code and to protect its security, while still giving Defendants' counsel and experts appropriate access at a convenient location to enable them to review the source code for discovery purposes.  In short, Cisco asks the Court not to let Defendants' allegations of inconvenience trump the undisputed harm to Cisco, to its customers, to the safety and security of the Internet, and even to the national security, that could result from unauthorized disclosure and use of Cisco's valuable source code.  Equal protection would also be given to whatever source code is produced by Defendant Teles AG.

---

[1] There is no dispute between the parties that Cisco's source code is a trade secret entitled to the protections guaranteed by the entry of a protective order by the Court, and the source code should be viewed only on an "attorneys and experts only" basis.  Moreover, the parties agree that a special protocol for source code is appropriate, and that the protocol may apply equally to source code produced by either party.  Furthermore, the protocol would be limited only to source code.  All other confidential trade secret information would exchanged in the normal course with an appropriate confidentiality designation.

Furthermore, Cisco notes that the protections we are asking for here are essentially the same as the protections granted to Cisco's source code earlier this year in ongoing litigation in the Eastern District of Texas, Marshall Division, in *QPSX Developments 5 Pty Ltd. v. Juniper Networks, Inc., et al.*, Case No. 2-05CV-268 (TJW). Copies of the protective order granted by Judge Ward in that case are attached as Exhibit E to the declaration of John N. Stewart. The parties in that case are using a secure third party site for production and review of the Cisco source code, and have been able to work out most issues regarding the code production by agreement.

## ADDITIONAL BACKGROUND INFORMATION

### A.    The Source Code For Cisco's Products Is A Confidential Trade Secret

Cisco manufactures products including various routers and switches that are heavily used throughout the world for telecommunications and for access to, and operation of, the Internet. *See* Declaration of John N. Stewart in Support of Motion for Entry of Cisco's Proposed Protective Order ("Stewart Declaration"), ¶ 4. Defendant Teles AG ("Teles") has accused a number of Cisco products, including routers and switches, of infringing United States Patent No. 6,954,453 ("the '453 patent"), entitled "Method for Transmitting Data in A Telecommunications Network And Switch for Implementing Said Method".[2] Specifically, in this litigation, Teles has placed at least the following twenty Cisco products routers and switches at issue:

• the 2600 Series Multiservice Platforms *(e.g.,* Cisco 2691 Multiservice Platforms, Cisco 2651XM Multiservice Routers, Cisco 2650XM Multiservice Routers, Cisco

---

[2]    On July 23, 2004, Teles initiated an patent infringement lawsuit against Cisco in Germany, accusing Cisco of infringing the counterpart to the '453 patent. Cisco has since successfully defended itself against Teles' baseless allegations. *See* Shiferman Decl., Ex. F. After filing suit in Germany, six days after the issuance of the '453 Patent in the United States, Teles announced its intent to assert the '453 patent against Cisco in the "short term." *See* Shiferman Decl., Ex. G. Rather than wait for Cisco to file the promised litigation, Cisco filed the instant declaratory judgment. Teles has filed a counterclaim for infringement.

4

2621XM Multiservice Routers, Cisco 2620XM Multiservice Routers, Cisco 2612XM Multiservice Routers, Cisco 2611XM Multiservice Routers, and Cisco 2610XM Multiservice Routers).

• the 2800 Series Integrated Services Routers *(e.g.,* Cisco 2851 Integrated Services Routers, Cisco 2811 Integrated Services Routers, and Cisco 2821 Integrated Services Routers)

• the 3600 Series Multiservice Platforms *(e.g.,* Cisco 3662 Telco Versatile DCN Access Platforms)

• the 3700 Series Multiservice Access Routers *(e.g.,* Cisco 3745 Multiservice Access Routers and Cisco 3725 Multiservice Access Routers)

• the 3800 Series Integrated Services Routers *(e.g.,* Cisco 3845 Integrated Services Routers and Cisco 3825 Integrated Services Routers)

• the 7200 Series Routers *(e.g.,* Cisco 7204VXR Routers and Cisco 7206VXR Routers), and

• the 7500 Series Routers *(e.g.,* Cisco 7507 Routers and Cisco 7513 Routers)

*Id.*, ¶ 3. Each of these routers and switches operates using proprietary Cisco software that has been written and honed over many years of research and effort by Cisco and its programmers and product engineers. *Id.*, ¶ 4. The software within these products includes different executable versions of IOS. *Id.*

The term "source code" is a name given to certain files containing a multitude of instructions written in a human readable format that make up a computer program. *Id.*, ¶ 6. The source code is readable by trained Cisco computer programmers and is written in a structured format allows the programmers to understand the literally millions of lines of code that make up the software that is used to operate Cisco's products, and thus to either modify these files or to

5

add new programs or routines to the Cisco code.  *Id.*  The source code represents some of Cisco's most important and valuable assets.  *Id.*

Third parties, even Cisco's own customers, do not have access to Cisco's valuable source code because, prior to any product being sold, the source code is processed by a compiler into an "executable file" for use by Cisco's products.  *Id.*  The executable file embodies the source code in a manner not accessible or readable and thus not subject to abuse.  *Id.*  An "executable file," rather, is readable only by a computer processor within the product.  *Id.*  Moreover, an executable file cannot be decompiled into the original source code.  *Id.*  If someone were to decompile an executable file, for example an image of the operating system for a Cisco product, a jumble of low level code would result making it virtually impossible to decipher in any meaningful way.  *Id.*  The software distributed on Cisco's products is in this "executable" format, and is not "source code" of the kind at issue here.  *Id.*

### B.      The Importance of Protecting Cisco's Source Code Is Clear

"The security of Cisco's systems, like those of other proprietary software vendors, depends on the source code being kept out of the public view[.]"  *See Paul Roberts*, "Update: More Details Surface on Cisco's Stolen Code," WORD DAILY (May 18, 2004) (Shiferman Decl., Ex. C).  The security of Cisco's systems, and the systems of its customers, partners, and many of the world's Internet users, depends on the confidentiality of the source code associated with Cisco's products.  If any portion of the source code for the operating systems of Cisco's products are made public, not only could Cisco suffer considerable financial damage and loss of sales from unauthorized use and copying of the code, but the potential for persons to misuse the code to hack into Cisco operating systems would create significant security problems for Cisco and for Cisco's many customers throughout the world.  *See* Stewart Decl., ¶ 5.

6

Cisco's customers include the U.S. Government and many major public institutions and private corporations. *Id.* Cisco products are used by many security conscious agencies of the Federal government and Cisco provides special training on its products to enable Federal systems administrators to maintain the security of information handled by Federal agencies. *Id.* Accordingly, our nations' security is also implicated by the potential disclosure of Cisco's confidential source code. The Federal government has recognized that the security of its computers is of utmost importance. *See John Moreff*, Congressional Research Service Report for Congress, "*A Summary of Selected Laws, Executive Order, and Presidential Directive*," April 16, 2004. (Shiferman Decl., Ex. D). The government's policy of enhanced system protection could be place at risk by any security breaches resulting from the, even unintentional, disclosure of Cisco's confidential source code.

Independent security experts agree that disclosure of Cisco's source code "could cause big problems not just for those who use Cisco products but for the entire Internet, since a large volume of Web traffic passes through routers produced by [Cisco.]" "Consequences of Cisco Source Code Theft Unclear," SEARCHSECURITY.COM (May 17, 2004) (Shiferman Decl., Ex. E). Once the source code, or any portion there of, is compromised, there is no easy way to repair the resulting damage to Cisco and the varied users of its products. Because much of Cisco's IOS code is highly integrated, if even portions of Cisco's source code is inadvertently or otherwise disclosed to a third party or made public, the probability of a hacker penetrating Cisco's security measures increases dramatically. The source code could be used by a hacker or an unauthorized user as a "road map" to enable them to breach the security measures built into the products and thus gain access to the information and data being processed and transmitted by the Cisco products. Stewart Decl., ¶ 14. This potential for grave and widespread damage warrants careful

7

protection of Cisco's source code from the risk of intentional or inadvertence disclosure to unauthorized persons.

### C. Cisco Takes The Protection Of Its Source Code Seriously And Has Instituted Numerous Security Measures To Ensure Its Confidentiality

Given the critical importance of protecting its source code, Cisco has employed a number of different security systems and procedures to protect the confidentiality of its source code. *See* Stewart Decl., ¶ 7. These security measures include extra security steps that may not be required for other types of confidential information. *Id.*, ¶ 9. As a first measure of security, for example, Cisco requires employees who may have access to its confidential materials to undergo a thorough background check and agree to abide by a strict confidentiality agreement. *Id.*, ¶ 7. Employees are also expected to adhere to Cisco's code of business conduct, which requires the protection of the confidential and proprietary information of Cisco and its customers, including Cisco's source code. *Id.* Access to Cisco's facilities also is restricted, as Cisco's policies provide for security badges access for employees and registration and escort of guests. *Id.*, ¶ 8. Cisco's policy is not to allow persons without a security badge within Cisco's facilities unless escorted by an individual with a security badge. *Id.*

Cisco's security policies and practices limit access to its source code only to certain employees, and even then on a restricted basis. *Id.*, ¶ 10. Access to the source code is limited to the minimum amount of access that is reasonably necessary for an employee to perform his or her duties. *Id.* Generally, a software engineer with access to an image of the IOS source code typically does not have sufficient permissions to access all of the IOS source code. *Id.* For example, a software engineer working on the code for the image of IOS for the CRS1 product will not typically have access to the code for the image of IOS for other products. *Id.* Similarly,

a software engineer working on the source code for the PIX firewall product will not typically have access to the IOS source code. *Id.*

Cisco also employs security measures with respect to how and where source code is accessed. *Id.*, ¶ 11. In order for an individual to access the source code, the user must access Cisco's systems with appropriate login credentials from an approved location within Cisco's corporate network, which is guarded from the outside Internet by firewalls and intrusion prevention systems. *Id.* The source code is maintained in particular data centers. *Id.* Prior to granting access to the source code stored in a data center, the data center verifies a user's login credentials and the physical address of the computer from which the user is accessing the data center. *Id.* In this manner, Cisco maintains physical control over the computers approved for accessing the source code, as well as control over the login credentials approved for accessing the source code, and insulates those computers from access by outside personnel. *Id.*

Cisco also employs substantial security measures as to where its source code is stored. *Id.*, ¶ 12. As noted above, Cisco's IOS is a critical part of most of Cisco's products. *Id.* A specific image of the IOS source code is used for each product, and from this source code the executable code is compiled for use on the actual physical product itself. *Id.* To minimize security risks, the various images of the IOS source code are stored in a minimum number of locations within Cisco. *Id.* A copy of each released image of the IOS source code (i.e. those images in use by the public) is archived in a closely guarded central data repository. *Id.* A development copy of an image of IOS source code actively under development is also stored in a data center associated with the facility developing the image. *Id.* Each image of the IOS source code is not stored in any other location. *Id.*

As noted above, Cisco's source code is not even available to its customers, as the customers receive only an executable file, not the actual source code. *Id.*, ¶ 13. If a customer's product requires updated software code, Cisco provides the customer with new executable files, and not with the source code. *Id.*

Forcing Cisco to produce its source code without the protection of the requested protocol will cause Cisco to forego all of the careful and necessary security measures that it has undertaken to protect itself and its customers just so that it may defend itself against baseless infringement allegations. The very purpose of protective order is to prevent this type of dilemma.

## **ARGUMENT**

**I. CISCO'S PROPOSED PROTECTIVE ORDER APPROPRIATELY BALANCES TELES' NEED FOR INFORMATION WITH CISCO'S NEED TO PROTECT ITS VALUABLE TRADE SECRETS**

Rule 26(c) states that "a trade secret or other confidential research, development, or commercial information not be revealed or ***be revealed only in a designated way***." Fed. R. of Civ. P. 26(c) (emphasis added). Following the dictate of Rule 26(c) "[a] trial court possesses broad discretion in issuing a protective order and in determining what degree of protection is required." *United States of Am., et al. v. MWI Corporation*, 209 F.R.D. 21, 27 (D.D.C. 2002) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). Here, the parties agree that the entry of a protective order is wholly appropriate. There is no real dispute that Cisco's source code constitutes a trade secret that is subject to the protections of a protective order entered by the Court pursuant to Rule 26(c). *See Dynamic Microprocessor Associates, v. EKD Computer Sales*, 919 F. Supp. 101, 106 (E.D. N.Y. 1996). Rather, the only dispute centers on the "degree of protection" that should be adopted. As Judge Urbina recognized in the *MWI* case, this Court

has "broad" discretion in setting the degree of protection that should be guaranteed to one of Cisco's most valuable asset – its source code. *See* 2098 F.R.D. at 27. Part of the Court's discretion includes "limit[ing] the conditions, time, place, or topics of discovery, or limit[ing] the manner in which the confidential information is to be revealed. *See Campbell v. United States Department of Justice*, 231 F. Supp. 2d 1, 7 (D.D.C. 2002).

To determine the appropriate level of protection, the Court should balance several factors:

> [1] the requestor's need for the information from this particular source, [2] its relevance to the litigation at hand, [3] the burden of producing the sought-after material; and [4] the harm which disclosure would cause to the party seeking to protect the information.

*See id.* at 27-28. As Cisco does not dispute that source code will have to be produced in this litigation, and Teles does not dispute that the source code should be given trade secret protections, the only issue here is whether Teles' counsel's alleged need for convenience in reviewing the documents at their offices outweighs the risk of the potential harm caused to Cisco by Cisco's loss of control over its valuable software and the possible the unauthorized use and disclosure of the source code. It is up to the Court to balance the competing interests of the parties. *See Beam Sys., Inc. v. Checkpoint Sys., Inc.*, 1997 WL 364081, *1 (C.D. Cali Feb. 6, 1997). Here, the balance should tip in Cisco's favor.

### A.   Cisco's Proposal For Secure Review Of The Source Code

First, Cisco's proposal provides reasonable and convenient access for review by Defendant's counsel and experts while minimizing the risk of improper disclosure of confidential source code by providing a secure location for review and reducing the number of people who handle or have potential access to the code. *See* Cisco's Proposed Protective Order, ¶¶ 5(b), (c) and (h) (pages 3-5) (Shiferman Decl., Ex. A). As noted in the Introduction, Cisco's provisions

11

allow each party to make their relevant source code available in a private secure room at the location of the producing party's counsel or a secure independent facility located in the city of the receiving party's main counsel.  *Id.*  More specifically, Cisco will make relevant portions of its source code available for review in a private secure room at the District of Columbia offices of its counsel, Goodwin Procter LLP, or at an alternate third party secure site.  Goodwin Procter's office are located less then one mile from the offices of Teles' counsel, Howrey LLP.[3]  Goodwin Procter will provide Teles' counsel and experts with access to the secure private room during regular business hours and will provide access after business hours upon reasonable notice.

Cisco's proposal further provides that the secure review site "shall be provisioned with all of the tools that are available to employees of the producing party that develop, maintain, or operate the computer source code either as source code or as executable code, including compilers, linkers, debugging programs, and any other tools useful in analyzing the computer source code."  *Id.*  This proposed protocol for the handling of sensitive source code is fair and reasonable.  Teles will be able to use this protocol to get full and fair access to the relevant code, and meet its discovery needs.

> B.   **Cisco's Proposal Does Not Interfere With Teles' Need For Information To Prosecute Its Claim, While Protecting Against The Disclosure Of Cisco's Source Code**

Second, Cisco's proposed protections are reasonable to prevent the real harm that could result from unauthorized disclosure or use of the source code.  Indeed, Teles agrees that source code is entitled to more protection than other types of confidential information.  Cisco's proposal

---

[3]   In the alternative, Cisco will make the relevant portions of its source code available in a private room at an independent third party facility in the District of Columbia or Virginia.

12

guarantees this additional protection, while still providing Teles with information that may be necessary to prosecute its infringement claims against Cisco.[4]

Teles cannot and does not contend that Cisco's proposal interferes with its need for certain information. Rather, Teles seems to oppose Cisco's protocol because it somewhat limits the time of day during which the review could occur. While Cisco's protocol does provide some restrictions (Cisco would, of course, operate under the same restriction while reviewing Teles' source code), the restrictions are minor given the relative security concerns associated with the source code. Teles' counsel could have access to Cisco's source code during regular business hours and also nights and weekends upon reasonable notice so that access to Goodwin Procter's offices could be arranged.

These types of protections are not unique. During litigation, source code production is often conducted under highly restrictive conditions. Morgan Chu and Steven Weiner,*" The Availability of Provisional Relief in Software Patent Cases,* 4 No. 11 J. PROPRIETARY RTS. 5, 6 (Nov. 1992). "In many cases only designated, outside experts may review the code, and in others the source code can be examined only on the [producing party's] premises or at specific times." *Id*. In fact, similar provision were adopted by the United States District Court for the Eastern District of Texas in Civil Action No. 2:05-CV-268-TJW. *See* Stewart Decl., Ex. E.

What's more, Cisco's protocol allows Teles to conduct their analysis of key portions of the source code in their own office, on their own time. The protective order allows Teles to print portions of the relevant source code for review at their own offices, use at depositions and hearings, etc. Teles, on the other hand, would completely take all of Cisco's source code out of Cisco's control. Teles is asserting that its attorneys should be able to copy and house Cisco's

13

entire source code (and possibly several versions of the source code) at Howrey's office without any guarantee of appropriate security and oversight, and without any promise of indemnity to Cisco for inappropriate use or disclosure.  Indeed, Teles is asking Cisco to violate many, if not all, of its necessary security measures and provide Teles with multiple versions of its source code to be housed on a single computer stored in a facility over which Cisco has no control.  The only basis that Teles provides is the convenience of its attorneys and experts.  Teles' perceived concerns about convenience pale in comparison to the security implications involved in Cisco's being forced to relinquish control over the security measures guarding some of its most valuable resources.

## **CONCLUSION**

The security of Cisco's widely-used products depends on the strict protection of Cisco's confidential source code.  Cisco proposes alternative protocols, thus allowing Teles' attorneys and experts the option to review its confidential source code in a secured private room at the offices of Cisco's attorneys, or in the alternative on the premises of secured independent facility.  Cisco's proposed review protocol is both reasonable and necessary in light of the serious risk associated with the potential disclosure of source code associated with Cisco's products.  Any periodic inconvenience to Teles' counsel or experts is outweighed by the potential harm to Cisco and its customers if any disclosure occurred.  Accordingly, Cisco respectfully requests that the Court enter its proposed protective order, including specific protections for source code.

DATED: July 11, 2006

/s/ John A. Moustakas
John A. Moustakas (#442076)
GOODWIN PROCTER LLP
901 New York Avenue, N.W.,
Washington, D.C. 20001
(202) 346-4000
jmoustakas@goodwinprocter.com
**Attorneys for Plaintiff/Counterclaim Defendant Cisco Systems, Inc.**

Of Counsel:

J. Anthony Downs
John C. Englander
Lana S. Shiferman
Michael J. McNamara
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000
jdowns@goodwinprocter.com
jenglander@goodwinprocter.com
lshiferman@goodwinprocter.com
mmcnamara@goodwinprocter.com

Benjamin Hershkowitz
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, NY 10022
(212) 813-8800
bhershkowitz@goodwinprocter.com

## CERTIFICATE OF SERVICE

I hereby certify that true copy of the above document was served upon the attorney of record for each other party through the electronic service by the Court filing system.

/s/ Lana S. Shiferman
Lana S. Shiferman

LIBA/1711802.2