UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CISCO SYSTEMS, INC., )<br>)<br>Plaintiff, )<br>v. )<br>)<br>TELES AG )<br>INFORMATIONSTECHNOLOGIEN, )<br>)<br>Defendant. )<br>)<br>TELES AG )<br>INFORMATIONSTECHNOLOGIEN, )<br>)<br>Counterclaimant, )<br>v. )<br>)<br>CISCO SYSTEMS, INC., )<br>)<br>Counterdefendant. )<br>) | Civil Action No.: 1:05-CV-02048 (RBW) |

**TELES' OPPOSITION TO CISCO'S
MOTION FOR ENTRY OF PROTECTIVE ORDER**

Defendant/Counterclaimant Teles AG Informationstechnologien ("Teles") opposes the Motion for Entry of Protective Order of Plaintiff/Counterdefendant Cisco Systems Inc.'s ("Cisco"). Teles submits, attached as Exhibit 1, a Proposed Protective Order for entry by the Court. In order to resolve the dispute here and limit the required court intervention, Teles' Proposed Order adopts verbatim the language of Cisco's proposed order accept for a few key

issues in Cisco's proposed order that would unnecessarily and substantially increase the costs and repeated court intervention required in this case.[1]

The primary dispute here is whether Cisco's software source code should be produced to Teles' counsel (as is typically the case) or should be provided only for limited inspection at the office's of Cisco's counsel. Although not necessary or required in typical patent litigation involving source code, Teles agrees to protect Cisco's source code from disclosure using multi-layered security safeguards at the office's of Teles' counsel (such safeguards appear to meet – if not exceed – the security provided by Cisco). The Court, therefore, is not being asked to determine whether the source code should be protected. Rather, the only source code issue for the Court to resolve is whether the incremental comfort Cisco might have if its software source code is produced to its counsel (the GOODWIN PROCTER LLP ("Goodwin Procter") law firm), rather than Teles' counsel (the HOWREY LLP ("Howrey") law firm), substantially outweighs the extraordinary cost, invasion of privileged attorney work product and repeated Court intervention required by Cisco's proposed Protective Order.

If entered as written, Cisco's proposed Protective Order that permits only limited inspection of Cisco source code at Goodwin Procter (Cisco's litigation counsel) will improperly invade Howrey's (Teles' litigation counsel) opinion work product (e.g., permit Goodwin Procter to look over the shoulder of Howrey's strategic review and selection of documents and other litigation strategy), will unduly restrict Teles' ability to discover all potential infringing modes by Cisco's products, will create vague subjective standards ("reasonable requests [to] expedite", Cisco counsel will supervise Teles' counsel's review of the source code "in a manner that will not

---

[1] Attached as Exhibit 2 is Cisco's proposed Protective Order; attached as Exhibit 3 is a blackline version highlighting the differences between the two proposed Protective Orders.

interfere with" Teles' counsel's review) that will require repeated Court intervention, and otherwise impose substantial costs and delay in this litigation even though following the typical course – e.g., producing the source code directly to Howrey --  would afford the source code multi-layered security safeguards (apparently greater protection than Cisco itself implements). Specifically, Cisco's proposed Protective Order:

- allows Cisco's attorneys unfettered access to and supervision over Teles' review and work product related to Cisco's source code;

- requires Teles to review Cisco source code at a location other than Teles' outside counsel's District of Columbia offices;

- restricts the time for which Teles may review Cisco's source code;

- requires Teles' outside counsel and expert to give Cisco two, and possibly four, days notice prior to reviewing Cisco's source code;

- significantly and arbitrarily restricts the size of source code excerpts used in court documents so that the parties must seek Court permission to submit all relevant excerpts; and

- prevents Teles from taking any printouts and/or photocopies of source code that it has selected, and instead requires that Cisco ship such printouts and photocopies to Teles after taking up to two days study and review what Teles' counsel selected for printing.

Cisco argues that these restrictions are necessary to guard against potential breaches of "national security" and to ensure the safety of the internet.  But Teles long ago agreed to provide multi-layered security safeguards to source code produced to Teles' counsel.  Teles' counsel is no stranger to the receipt and protection of sensitive, confidential information – e.g., blue prints, schematics, software, etc. – and has strict security safeguards in place to protect such information:

- Security guards and cameras posted at building entrances to control all building access at all times

- Special photo-ID key card must be shown to security guards to enter building, and anyone without such an ID must be logged-in and escorted

- Each floor has electronically locked doors that preclude entry without a special photo-ID keycard that has been granted access to that particular floor

- Source code will reside on a stand-alone computer in a locked room in which only a limited number of personnel have access.

The issue here is not whether the source code will be protected – Howrey's multi-layered security safeguards provide ample protection  Indeed, when compared to the facts averred in Cisco's motion, Teles' counsel will employ greater safeguards to protect source code than what Cisco itself provides -- e.g., Teles' counsel's safeguards include floor-by-floor limited access, a non-networked computer, a secured room).

To ensure the sufficiency of its multilayered security safeguard, by letter dated June 2, 2006, counsel for Teles requested that Cisco identify "concrete examples" of the portions of its source code that require the extraordinary protection that Cisco's Proposed Order seeks for all of the corporation's software.[2]  After a telephone conference with Cisco's counsel, counsel for Teles wrote another letter asking again for information related to Cisco's source code and what security measures would be employed by Goodman Procter.[3]  Cisco's letter in response failed to provide any specific examples of source code that it believes is worthy of its proposed measures of protection and simply indicated that "all relevant source code" to be produced "require the security provisions set forth in Cisco's protective order."[4]  Cisco's letter also merely stated that

---

[2] *See* June 2, 2006 letter from Ms. Lateef to Mr. Downs, attached as Exhibit 4.
[3] *See* June 13, 2006 letter from Mr. Long to Ms. Shiferman, attached as Exhibit 5.
[4] *See* June 14, 2006 letter from Ms. Shiferman to Mr. Long, attached as Exhibit 6.

4

"Goodwin Procter will implement at least the level of security set forth in the protective order, along with any other [unidentified] measures that Cisco requires.[5] Thus, in reality, Cisco's argument basically boils down to the bare assertion that Cisco will have some increased comfort level with it's source code located at the Goodwin Procter law firm because its attorney-client relationship with Cisco has more compulsive power than a *mere* Protective Order duly issued by this Court.

Contrary to Cisco's assertions, this is not a matter merely of convenient access to discovery. Cisco's proposed regimen would unduly trample on Teles' right to full and fair discovery, directly invade the mental impressions of Teles counsel protected by the attorney work-product doctrine, and will create unnecessary and costly discovery disputes. Accordingly, Teles submits an alternative proposed Protective Order to govern the exchange of confidential information in this litigation that provides more than adequate protection of any source code produced in this litigation.

## I. CISCO'S SOURCE CODE WILL RECEIVE SUFFICIENT PROTECTION UNDER THE MULTILAYERED SECURITY SAFEGUARDS TO BE PROVIDED BY COUNSEL FOR TELES

Cisco's motion fails to address the level of protection Teles has told them that Teles is willing to provide – protection which, indeed, provides a greater level of security in many respects than Cisco's proposal offers. Teles' proposed Protective Order fully addresses all of

---

[5] *Id*.

Cisco's concerns over unrestricted access to source-code material in at least the following respects:

- All source code produced in the litigation will be stored on a non-networked password protected computer in a secure and locked room at Howrey's D.C. offices; the computer will be connected only to a single dedicated printer; the computer will create and maintain an electronic log of all access requests (akin to Cisco's proposed logging protocol); access will be limited to attorneys and experts, subject to the Protective Order;

- Howrey requires photo security-badge access for all employees; each security badge is equipped with the security badge holder's photograph and name; to enter the building, each security badge holder is required to present their security badge to the security guards; each entrance/exit to Howrey's office is manned by a security guard who prohibit unauthorized access to the building;

- the Howrey photo security badge is required for access to any floor – this results in an electronic record of each access (to elevators and all doors), including date/time and identity stamps being recorded in real-time; and

- Registration/escort of visitors are required; visitors have their identity recorded by security personnel, and must be escorted throughout the building;

In support for providing its own safeguards, Cisco cites prior incidents of (either accidental or intentional) releases of its confidential source code. Paradoxically, however, Exhibit E to Cisco's motion indicates that the prior "source code theft" occurred *from Cisco's own facilities*. In fact, Cisco had placed the full source code on a *networked* computer at one of its secured facilities, and "hackers broke into the company's network and lifted 800MB of source

6

code for IOS 12.3 and 12.3t. … The hacker could have … slipped through Cisco's defense perimeter."  By comparison, the multilayered protocol to be employed by counsel for Teles already calls for the use of a non-networked computer, thus completely eliminating the putative threat of hackers to which Cisco's networked computer system was – and apparently still is – exposed.

Further, Cisco's security concerns are overstated.  For example, according to Cisco's Chief Technology Officer: "Source code makes it easier for an attacker to find flaws.  But they don't really need it."[6]  And if past source-code thefts are any indication, Cisco's concerns may be out of place, as the article further notes: "source code stolen from Microsoft Corp. a couple of months ago has yet to produce the chaos some were worried about."[7]

Assuming arguendo that Cisco's security concerns are to be taken at face value, the security measures offered by Teles more than meet them.  Accordingly, without more compelling reasons, Cisco's concerns should not be used to restrict Teles' access to source code in the manner proposed by Cisco.

## II. CISCO'S PROPOSED EXTRAORDINARY PROCEDURES ARE UNJUSTIFIED AND IMPROPERLY CURTAIL TELES' RIGHT TO CONDUCT DISCOVERY

Cisco's proposed Protective Order unjustifiably curtails Teles' right to discovery related to Cisco's source code – which is highly relevant to the infringement issues here – by: (1) restricting physical access; (2) restricting the time and duration during which Teles may review code; (3) imposing on Teles the burden to provide Cisco two, and possibly four, days notice prior

---

[6] *See* Exhibit E to Cisco's Motion for Entry of Protective Order.
[7] *Id.*

to reviewing code; (5) mandating that Cisco's attorneys Cisco supervise Teles' outside counsel and expert's review of Cisco's source code; (6) restricting excerpts of source code in court documents to an amount that is insubstantial when compared to the entire source code produced by a producing party; and (7) preventing Teles' counsel from obtaining any printouts or photocopies, even selections, of source code directly, and having Cisco instead ship such selected printouts to Teles.  These restrictions not only will impair Teles' right to full discovery, but necessarily and inappropriately will limit the information available to the trier-of-fact in assessing whether infringement has occurred and its breadth.  Cisco's motion is simply self-serving, unfair, and fails to support such a departure from the normal course of discovery.

     **A.**    **Cisco's Improper Request To "Supervise" Howrey Attorneys' Document Review**

Under Cisco's proposed protective order (*e.g.*, Exhibit 2, paragraphs 5(d), 5(e), 5(g), 5(h), 5(n)), Cisco's attorneys must "supervise" Teles' outside counsel and expert's review of source code.[8]  Teles objects to this requirement as it necessarily treads on Teles' litigation strategy and attorney work product, thus giving Cisco a wholly unfair advantage.  It is black letter law that attorney work product containing the "opinions, judgments, and thought processes of counsel" receives almost absolute protection from discovery and will not be produced unless the party seeking the documents shows an "extraordinary justification" for production.[9]  Attorney work product that contains only non-privileged facts will not be produced unless the party seeking

---

[8] The term "supervised" is moreover vague and will likely lead to discovery disputes over what constitutes "supervised," which the Court would have to resolve, thus creating a predictable additional burden on the parties and on the Court.

[9] *See In Re Sealed Case,* 676 F.2d 793, 809-10 (D.C. Cir. 1982).

discovery satisfies certain conditions justifying production.[10] Fed. R. Civ. P. 26(b)(3) defines those conditions as: (1) a "substantial need" of the materials in the preparation of the party's case, and (2) an inability to collect the "substantial equivalent" of the materials by other means without "undue hardship."[11]

Courts in this district and others have simply found that an attorney's compilation of various documents constitutes opinion work product.[12] These courts base their decision on the proposition that "[i]n cases that involve reams of documents and extensive document discovery, the selection and compilation of documents is often more crucial than legal research."[13] Under this analysis, Teles' review of select lines of Cisco's source code is opinion work product because the choosing of that code, apart from the remaining code, reveals Teles' mental impressions and thought processes.

Other courts have focused on the selectivity of a compilation when determining its status as opinion work product.[14] However, even under this "selectivity" analysis, Teles' selection qualifies as opinion work product.

---

[10] *Id.* at 809.

[11] Fed. R. Civ. P. 26(b)(3).

[12] *See Am. Nat'l Red Cross v. Travelers Indem. Co.*, 896 F. Supp. 8, 13 (D.D.C. 1995) (holding that the act of culling through extensive discovery, in an effort to select and compile the facts, is protected from discovery by the work product doctrine); *see also Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir. 1985), cert. denied, 474 U.S. 903 (1985) (holding that the selection and compilation of documents by counsel falls within the highly-protected category of opinion work product.).

[13] *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 144 (D. Del. 1982).

[14] *See Willingham v. Ashcroft*, No. 02-1972, 2005 U.S. Dist. LEXIS 22258, **16-17 (D.D.C. Oct. 4, 2005) (finding compilation not be opinion work product when, *inter alia*, it was not a case involving the selection and reliance upon a few documents, from a sea of thousands produced); *see also Washington Bancorporation v. Said,* No. 88-3111, 1992 U.S. Dist. LEXIS 16891,

Under Cisco's proposed regime, during each supervised visit, Teles will review a minimal amount of lines of source code in comparison to the millions of lines of produced code[15] Cisco will be privy to what source code Teles is reviewing line by line. This is distinguishable from a scenario where Teles is asserting that the final and total amount of source code that Teles reviews is opinion work product. Under that scenario, the number of lines of code would be so large that it may not be possible for Cisco to glean such a strategy. Here, however, each time Teles reviews Cisco's source code, it is bound to review a small amount of code in comparison to the millions of lines of produced code. It is the selectivity of the reviewed lines of code, <u>at each supervised review</u>, that qualifies Teles' selection as opinion work. Because Cisco cannot show an extraordinary justification for the discovery of this opinion work product, Teles' review should not be supervised.[16]

Finally, some of what Cisco proposes is vague and unworkable. For example, Cisco claims that its protocol would not unreasonably interfere with our review of source code. It's use of the terms "unreasonably interfere" is undefined and far too subjective. Indeed, it is little more than a recipe for instigating disputes between counsel requiring court intervention and unnecessary costs. As for Cisco's claim that the supervised review will not invade Teles'

---

\*\*9-14 (D.D.C. 1992) (finding an index, comprised of thousands of documents and totaling four volumes, not to be selective enough to qualify as opinion work product).

[15] In its Joint Meet and Confer statement, Cisco suggested that it may produce millions of lines of source code. *See* D.E. # 19. Cisco's Position, ¶ 22.

[16] Even if Teles' selection is found to be fact work product, Cisco cannot show that it has a substantial need to know Teles' selection nor that it would suffer undue hardship if it had to collect the substantial equivalent of Teles' selection by other means. Thus, Teles' selection should be protected in this instance and Cisco's attorneys should not be allowed to supervise Teles' outside counsel and expert's review of Cisco's source code.

attorney work product, the claim is not supported by any facts which would guarantee that to be true.

### B. Physical Location of Discovery

Cisco seeks to restrict Teles' access to Cisco's source code by requiring Teles to review the source code at a location other than Teles' outside counsel's District of Columbia offices. Teles opposes this restriction because as argued above, Cisco will not provide any greater security than outside counsel for Teles can and will offer. Cisco's proposed locations are neither convenient nor reasonably related to Cisco's alleged goal – protecting the confidentiality of Cisco's source code. Additionally, during litigation, critical and time-consuming developments (e.g., scheduling conflicts with other litigations) in a case can occur at any time. Under Cisco's proposal, Teles may not always be able to access Cisco's source code when such developments occur. Such a restriction would prevent Teles from being fully and fairly represented. Also, Cisco's proposal requires Teles' outside counsel and expert to travel across town to review the source code. The additional travel time will increase expenses and greatly reduce the efficiency of any review.

### C. Unreasonable and Unnecessary Temporal Restrictions of Discovery Review

Cisco seeks to restrict the time for which Teles may review Cisco's source code from 9 a.m. to 6 p.m. local time, Monday through Friday with no provision for weekend access. This restriction is also unacceptable. To fully and fairly represent Teles, counsel for Teles must have access to Cisco's source code whenever the need arises. Such a need may not (and likely will not) always occur during Cisco's proposed time frame.

For example, both Teles' expert and its outside counsel may have other commitments that will cause them to have to spend some time focusing on this litigation outside of the times proposed by Cisco.  Also, unforeseeable developments in the case, which may create a need for source code review, may arise outside of this time frame.  Under both of these scenarios, if Cisco's extraordinary time restriction is granted, Teles' outside counsel and expert will be limited in their ability to adequately represent Teles.  There should be no limitation on the days and/or times in which Teles can review Cisco's source code.  Teles' outside counsel and expert should have access to Cisco's source code, just like it has access to any other document or thing that Cisco produces, twenty-four hours a day, seven days a week.  In general, Cisco's proposal is plagued by vague statements of access being provided in a reasonable manner with reasonable notice, which in turn will create discovery disputes requiring this Court's intervention.[17]

### D.     Prior Notice to Cisco that Teles Intends to Review Discovery

Cisco also proposes that Teles' outside counsel and expert to give Cisco two, and possibly four, days notice prior to reviewing Cisco's source code.  This requirement is unduly burdensome and unnecessarily limits access to Cisco's source code.  As the case develops, additional portions of the source code will need to be reviewed.  Under Cisco's proposal, Teles would not be able to access the code right away.  Providing a two to four day notice each time will unreasonably slow down the review process and greatly reduce the efficiency of any review.

While notice is often required when a party inspects a business plant, it should not be required when a party reviews source code.  Notice is required when a party inspects a business plant because such an inspection may interrupt business activities.  This is not the case with

---

[17] *See,* Exhibit 2 at paras. 5(d), 5(g), 5(n).

source code.  Cisco's notice requirement is akin to Teles requiring Cisco to provide notice every time Cisco decides to look at Teles' confidential and proprietary production documents.  Such a requirement would not be imposed because it is burdensome and would unnecessarily limit Cisco's access to confidential and proprietary production documents.  Likewise, it should not be imposed with respect to Teles' review of Cisco's source code.

      E.      **Arbitrary Restrictions Relating to Size of Excerpts From Discovery**

Cisco seeks to restrict excerpts of source code in court documents to an amount that is insubstantial when compared to the entire source code produced by a producing party.  Teles opposes this restriction as clearly prejudicial.  Whether excerpts of source code in a court document are insubstantial, when compared to the entire source code produced, is not the issue.  The issue is whether the excerpts are relevant.  <u>Relevant</u> excerpts of source code, no matter the size, should be included in a Court document.  As of today, Teles has no way of knowing how much of the source code will be necessary to prove infringement.  This Court and the parties cannot be deprived of relevant source code due to some arbitrary limit set in Cisco's proposed protective order.  Additionally, Teles takes issue with Cisco's use of the term "insubstantial," as it is vague and likely to lead to many discovery disputes.

      F.      **Prohibition of Obtaining Hardcopies**

Under Cisco's proposed protective order, Teles is prevented from taking any printouts and/or photocopies of source code that it has selected after review.  Instead, Cisco is required to ship such printouts and photocopies to Teles.  This requirement will give Cisco an unfair advantage by providing Cisco with insight into Teles' attorney work product for the same reasons outlined above in response to Cisco's source code provision number 5.  Additionally,

restricting printouts and/or photocopies to any number of pages, let alone five hundred (500), is prejudicial to Teles.[18] The parties should be permitted to print and/or photocopy any <u>relevant</u> amount of source code, no matter how many pages it generates. Five hundred (500) is an arbitrary number and will undoubtedly lead to disputes requiring court time to resolve. Neither party should be deprived of printing and/or photocopying relevant amounts of source code due to some arbitrary limit set in Cisco's proposed protective order.

### III. Other Deficiencies In Cisco's Proposed Protective Order

Other shortcomings of Cisco's proposal are its preclusion of court reporters from having and referring to copies of source code excerpts used in depositions.[19] This restriction will likely lead to incoherent, incomplete and or useless transcripts because the reporter cannot double-check spelling – a particularly important problem with source code, where precise spelling of unusual words, abbreviations, or mathematical and other symbols is crucial. Additionally, Cisco's so-called export-control statement is vague, ambiguous, and confusing, while adding nothing by way of substantive, real-world protection of secret information.[20]

Finally, Cisco's proposed handling of filing confidential information in Court (such as by using labeled envelopes) may be inconsistent with this Court's preferences, as well as its Local Rules, which require electronic filing via ECF.

### IV. CONCLUSION

Cisco' extraordinary procedures are restrictive, unduly burdensome and unnecessary. This is an ordinary case that does not require such extraordinary procedures. In every litigation,

---

[18] *See* Exhibit 2, paras. 5(j), (n)).
[19] *See id.,* para. 5(r)).
[20] *See id.*, para. 5(u).

all companies have something that they consider to be the life blood of the company, whether it is blue prints, schematics or source code. Yet rarely do such trade secrets invoke protective orders with such extraordinary procedures as those proposed by Cisco.

For the foregoing reasons, Teles requests that this Court deny entry of Cisco's Proposed Protective Order, and seeks that Teles' Proposed Protective Order, attached as Exhibit 1, be entered.

Dated: July 17, 2006.

                                          Respectfully Submitted,

                                          /s/ Mark Whitaker
                                          Mathew J. Moore, No. 453773
                                          David W. Long, No. 458029
                                          Mark L. Whitaker, No. 435755
                                          Andreas Stargard, No. 484303
                                          Howrey LLP
                                          1299 Pennsylvania Ave., N.W.
                                          Washington, D.C. 20004
                                          Tel.: (202) 783-0800
                                          Fax: (202) 383-6610

                                          *Attorneys for Teles AG Informationstechnologien*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CISCO SYSTEMS, INC., <br><br> Plaintiff, <br> v. <br><br> TELES AG INFORMATIONSTECHNOLOGIEN, <br><br> Defendant. <br><br> TELES AG INFORMATIONSTECHNOLOGIEN, <br><br> Counterclaimant, <br> v. <br><br> CISCO SYSTEMS, INC., <br><br> Counterdefendant. | Civil Action No.: 1:05-CV-02048 (RBW) |

**[PROPOSED] ORDER**

Before this Court is a Motion for Entry of Protective Order by Cisco Systems, Inc.

After careful consideration, it has been determined that Plaintiff has not met its burden of showing good cause for such a ruling.  Accordingly, IT IS HEREBY ORDERED, that the Protective Order by Cisco Systems, Inc. is DENIED and that the Protective Order by Defendant Teles AG Informationstechnologien is ENTERED.

So ORDERED AND SIGNED this _____ day of _____, 2006

_____
Honorable Reggie B. Walton
United States District Court Judge

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 17, 2006, true and correct copies of the foregoing TELES' OPPOSITION TO CISCO'S MOTION FOR ENTRY OF PROTECTIVE ORDER and PROPOSED ORDER were served upon counsel for the parties via CM/ECF. This will send notification of such filings to the following and the documents are available for viewing and downloading from CM/ECF.

        John A. Moustakas
        GOODWIN PROCTER LLP
        901 New York Avenue, N.W.
        Washington, D.C. 20001
        Tel.: (202) 346-2000
        Fax: (202) 346-4444
        jmoustakas@goodwinprocter.com

*Of Counsel:*
John C. Englander (*admitted pro hac vice*)
J. Anthony Downs (*admitted pro hac vice*)
Lana S. Shiferman (*admitted pro hac vice*)
Michael J. McNamara (*admitted pro hac vice*)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000
(617) 523-1231 (fax)

Benjamin Hershkowitz (*admitted pro hac vice*)
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, NY 10022
(212) 813-8800
(212) 355-3333 (fax)

        /s/ Mark Whitaker