# EXHIBIT 6

GOODWIN | PROCTER

Lana S. Shiferman
617.570.1450
lshiferman@
goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.227.8591

July 14, 2006

**VIA EMAIL AND U.S. MAIL**

David W. Long, Esq.
Howrey LLP
1299 Pennsylvania Avenue, N. W.
Washington, DC 2004-2402

Re:    **Cisco Systems, Inc. v. Teles AG Informationstechnologien --**
         **Civil Action No. 1:05-CV-02048**

Dear David:

We write in response to your letters of June 2, 2006 and July 13, 2006. As an initial matter, it is not correct to say that we have not responded to your letter dated June 2, 2006. As you will recall, Tony Downs responded to your letter when he talked with you about the letter on June 20, 2006 following the scheduling conference with the Court. He understood the conversation to be sufficient as a complete response to the issues raised by your initial letter and that no follow up letter was required.

Your letters of June 2nd and July 13th assert that Cisco should be able to identify specific source code that do not require the security provisions set out in its protective order. This is simply not the case. For example, the source code you reference in your letter dated July 13, 2006, i.e. display of text on an LCD screen, are most likely low level drivers that are not at issue in this case. The accused technology Cisco has been made aware through Teles' prior litigation in Germany, by contrast, includes the software for the PSTN fallback functionality. The PSTN fallback source code is integrated with and not separable from the core switching function of the Internet Operating System ("IOS"), the operating system used to run most of Cisco's products. This relevant source code and the source code used to implement other core switching functions of IOS is exactly the type of source code that requires the protections set out in the protective order attached to Cisco's Motion filed with the Court on Tuesday, July 11, 2006.

Thus, all the relevant source code that could pertain to this matter require the security provisions set forth in Cisco's protective order. Cisco requires these security provisions because it is concerned that an inadvertent leak of its source code could give hackers or other opportunistic third parties the tools to breach Cisco's security provisions by taking advantage of unrecognized bugs or holes in Cisco's security measures. These bugs or holes in Cisco's security measures are, by definition, unrecognized, otherwise they would be repaired. It is exactly for this reason that Cisco cannot identify the pieces of source code that may or may not require the protections outlined in its protective order.

GOODWIN | PROCTER

David W. Long, Esq.
July 14, 2006
Page 2

Cisco relies on the secret nature of its source code in order to protect the information routed through its products. Inadvertent disclosure of any portion of Cisco's source code could cause irreparable harm to the security of Cisco's systems.

With respect to the level of security that Goodwin Procter is to provide at its offices, Goodwin Procter will implement at least the level of security set forth in the protective order, along with any other measures that Cisco requires. We feel no need to disclose all the security measures that Goodwin would employ, or that Cisco might require, as in part the secrecy of all those security measures is another way in which Cisco will protect the security of the code.

Furthermore, one important aspect of the security measures that you seem to ignore is that Goodwin Procter represents Cisco and will be working with Cisco to establish the appropriate security measures, and thus Cisco will continue to maintain its control over the source code even while in Goodwin's offices. Howrey, by contrast, has no relationship with Cisco, and is not beholden to Cisco in any way, but instead is beholden to one of Cisco's competitors. Tony Downs already asked you whether Howrey would be willing to indemnify Cisco for any harm associated with a breach of the confidentiality of its source code if it were placed in Howrey's possession, and you said that Howrey would not be willing to do this. Should the source code be placed in Howrey's offices, Cisco is left with no recourse if its source code is breached. Cisco should not be forced to take this kind of risk with one of its most valuable resources.

Please contact us if you have any further questions or concerns.

Sincerely,

Lana S. Shiferman

cc:    J. Anthony Downs

LIBA/1715055.1