## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CISCO SYSTEMS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>TELES AG<br>INFORMATIONSTECHNOLOGIEN,<br><br>Defendant. | Civil Action No.:<br>1:05-CV-02048 (RBW) |
| TELES AG<br>INFORMATIONSTECHNOLOGIEN,<br><br>Counterclaimant,<br><br>v.<br><br>CISCO SYSTEMS, INC.,<br><br>Counterdefendant. | |

## TELES' OPPOSITION TO CISCO'S MOTION TO STAY
## THIS CASE PENDING REEXAMINATION OF THE '902 PATENT

## Table of Contents

Table of Contents ...................................................................................................i

Table of Authorities ...............................................................................................ii

I.      Introduction .................................................................................................1

        A.      A Stay Should Be Denied In This Case For The Usual Reasons................1

        B.      A Stay Also Should Be Denied In This Case For Unique And Compelling
                Reasons................................................................................................2

II.     Factual Background .......................................................................................3

        A.      Cisco Repeatedly Affirmed That Patent Validity Should Be Litigated In
                This Forum...........................................................................................3

        B.      Cisco's Reexamination Request Raises Nothing New...............................4

        C.      *Inter Partes* Reexaminations Are Disfavored, Rare And Lengthy
                Administrative Nightmares.....................................................................6

III.    Argument......................................................................................................10

        A.      Cisco Has A Heavy Burden Here In Seeking This Extraordinary Relief .11

        B.      A Stay Will Unduly Prejudice Teles And Give Cisco A Clear Tactical
                Advantage ............................................................................................13

        C.      A Stay Will Not Simplify The Issues In This Case .................................16

        D.      A Stay Is Not Proper Given The Posture Of This Case ...........................22

                1.      Cisco knew about the reexam prior art years ago.........................22

                2.      Cisco recklessly filed its reexam request to inject delay here.......24

                3.      Cisco cannot use its own discovery delays to justify a stay now ..26

        E.      Any Stay Should Be Limited In Scope ...................................................31

IV.     Relief Requested............................................................................................34

## Table of Authorities

**Cases**

*Anascape, Ltd. v. Microsoft Corp.,*
    475 F.Supp.2d 612 (E.D. Tex. 2007) .......................................................................15

*Arthrocare Corp. v. Smith & Nephew, Inc.,*
    315 F. Supp. 2d 615 (D. Del. 2004) .........................................................................21

*Arthrocare Corp. v. Smith & Nephew, Inc.,*
    **No.** 01-504-SLR (**D. Del.**) ......................................................................................21

*Atlas Powder Co. v. Ireco Chems.,*
    773 F.2d 1230 (Fed. Cir. 1985)................................................................................33

*Broadcast Innovation L.L.C. v. Charter Commc'ns, Inc.,*
    No. 03-cv-2223, 2006 U.S. Dist. LEXIS 46623 (D. Colo. July 11,  2006)............ 17, 31

*Brown & Williamson Tobacco Corp. v. Philip Morris Inc.,*
    229 F.3d 1120 (Fed. Cir. 2000)................................................................................15

*Enprotech Corp. v. Autotech Corp.,*
    15 U.S.P.Q. 2d (BNA) 1319 (N.D. Ill. 1990) ........................................................ 2, 18

*Ethicon, Inc. v. Quigg,*
    849 F.2d 1422 (Fed. Cir. 1988)................................................................................21

*Freeman v. Minnesota Mining & Mfg. Co.,*
    661 F. Supp. 886 (D. Del. 1987) ..............................................................................27

*Gladish v. Tyco Toys Inc.,*
    29 U.S.P.Q. 2d (BNA) 1718 (E.D. Cal. 1993)................................................. 1, 18, 26

*Gould v. Control Laser Corp.,*
    705 F.2d 1340 (Fed. Cir. 1983)............................................................................. 2, 10

*Hoechst Celanese Corp. v. B.P. Chemicals Ltd.,*
    78 F.3d 1575 (Fed. Cir. 1996)..................................................................................11

*Hybritech Inc. v. Abbott Labs.,*
    849 F.2d 1446 (Fed. Cir. 1988)................................................................................33

*IMAX Corp. v. In-Three, Inc.,*
    385 F. Supp. 2d 1030 (C.D. Cal. 2005) ....................................................................13

*In re Etter*,
    756 F.2d 852 (Fed, Cir. 1985).................................................................................11

*In re Trans Texas Holdings Corp.*,
    No. 06-1599 (Fed. Cir. August 22, 2007)...............................................................20

*In re Yamamoto*,
    740 F.2d 1569 (Fed. Cir. 1984)..............................................................................20

*KSR Int'l Co. v. Teleflex Inc.*,
    27 S. Ct. 1727 (2007) .............................................................................................15

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ...............................................................................................13

*Lectrolarm Custom Services, Inc. v. Vicon Industries, Inc.*,
    2005 WL 2175436 (W.D. Tenn. Sept. 1, 2005)........................................................1

*McKnight v. Blanchard*,
    667 F.2d 477 (5th Cir. 1982) .............................................................................2, 10

*Middleton, Inc. v. Minn. Mining & Mfg., Co.*,
    No. 4:03-cv-40493, 2004 U.S. Dist. LEXIS 16812 (S.D. Iowa Aug. 24, 2004) ..........24

*Nat'l Football League v. Primetime 24 Joint Venture*,
    No. 98 Civ. 3778 1999 U.S. Dist. LEXIS 15261 (S.D.N.Y. Sept. 27, 1999)...............33

*NTP, Inc. v. Research In Motion, Inc.*,
    397 F. Supp. 2d 785 (E.D. Va. 2005).....................................................................21

*Output Tech. Corp. v. Dataproducts Corp.*,
    22 U.S.P.Q. 2d (BNA) 1072 (W.D. Wash. 1991) ....................................................13

*Purolite Int'l v. Rohm & Haas*,
    24 U.S.P.Q. 2d (BNA)1857 (E.D. Pa. 1992) ...........................................................31

*Rohm & Haas Co. v. Brotech, Corp.*,
    24 U.S.P.Q. 2d (BNA) 1369 (D. Del. 1992)............................................................31

*St.-Gobain Performance Plastics Corp. v. Advanced Flexible Composites, Inc.*,
    436 F. Supp. 2d 252 (D. Mass. 2006).....................................................................13

*Telemac Corp. v. Teledigital, Inc.*,
    450 F. Supp. 2d 1107 (N.D. Cal. 2006)...............................................................1, 25

*Unidisco v. Schattner*,
    10 U.S.P.Q. (BNA) 622 (D. Md. 1981)...................................................................13

*Viskase Corp. v. Am. Nat'l Can Co.,*
   261 F.3d 1316(Fed. Cir. 2001) ...................................................................22

*Wayne Automation Corp. v. R.A. Pearson Co.,*
   782 F. Supp. 516 (E.D.Wash. 1991) ...........................................................31

*Whatley v. Nike Inc.,*
   54 U.S.P.Q. 2d (BNA) 1124 (D. Or. 2000) ........................................... 1, 15

*Xerox Corp.* v. *3Com Corp.,*
   69 F.Supp.2d 404 (W.D.N.Y. 1999) ............................................................27

**Statutes**

35 U.S.C. § 301 ..............................................................................................17

35 U.S.C. § 311 ..............................................................................................17

35 U.S.C. § 316 ..............................................................................................20

35 U.S.C. § 318 ...........................................................................................6, 12

35 U.S.C. §314(c) .............................................................................................7

**Other Authorities**

145 Cong. Rec. H6944 ................................................................................vi, 6

**eBay** Inc. v. *MercExchange, L.L.C.,*
   **No. 05-130,** 2005 U.S. Briefs 130 (Mar. 10, 2006) (United States' Amicus Brief) ......12

H.R. 1908 .......................................................................................................12

*Patent Reform Act of 2007,*
   H.R. 1908, 110th Cong. §6(c) (2007) (as passed by House, Sept. 7, 2007) .................10

*Patent Reform Act of 2007,* S.1145, 110th Cong. § 5(b) (2007) .......................................10

**Regulations**

37 C.F.R. § 1.501 ...........................................................................................17

37 C.F.R. 1.915(b)(3) .....................................................................................25

MPEP § 2602 ..................................................................................................17

MPEP § 2642 ..................................................................................................11

MPEP § 2656 ............................................................................................... 17

MPEP § 2686.04 ..................................................................................... 10, 16

MPEP § 707.05 ........................................................................................ 5, 20

## Exhibit List

Ex. 1.      Cisco Complaint of Oct. 18, 2005

Ex. 2.      Teles Letter of Aug. 10, 2006

Ex. 3.      Teles Unopposed Motion to File Amended Counterclaim

Ex. 4.      Joint Motion To Amend Scheduling Order of Oct. 17, 2006

Ex. 5.      Minute Order Granting Unopposed Motion to Leave to File Teles' Answer
            and First Amended Counterclaims of February 13, 2007.

Ex. 6.      Teles Letter of July 25, 2007

Ex. 7.      Teles Letter of August 1, 2007

Ex. 8.      August 8, 2007 Request for Inter Partes Reexamination

Ex. 9.      Teles' U.S. Patent No. 7,145,902

Ex. 10.     Deluca Declaration

Ex. 11.     145 Cong. Rec. H6944 (daily ed. Aug. 3, 1999) (statement of Rep.
            Rohrabacher)

Ex. 12.     Patent Reform and The Patent and Trademark Office Reauthorization for
            Fiscal year 2000, Hearing before the Subcommittee on Courts and
            Intellectual Property of the Committee on the Judiciary , 106th Cong. 4-5
            (1999) (statement of Rep. Campbell)

Ex. 13.     Patent Reform Act of 2007, S.1145, 110th Cong. § 5(b) (2007)

Ex. 14.     Patent Reform Act of 2007, H.R. 1908, 110th Cong. § 6C) (2007) (as
            passed by House, Sept. 7, 2007)

Ex. 15.     Teles U.S. Sales Invoices

Ex. 16.     Press Release -- Teles: Takes over IPGear Ltd.

Ex. 17.     IP Gear Orders of Teles Products

Ex. 18.     Teles Annual Report

Ex. 19.     Sigram Schindler Beteiligungsgesellschaft mbH Shareholder List

Ex. 20.        Petition to make special

Ex. 21.        Teles Letter of Aug. 28, 2007 and Cisco Letter of Aug. 29, 2007

Ex. 22.        Plaintiff Cisco Systems Inc.'s Second Supplemental Response To
               Defendant Teles AG Informationstechnologien's Interrogatory No. 2 of
               August 8, 2007

Ex. 23.        Patent Office Memo of May 3, 2007

Ex. 24.        Notice Of Failure To Comply With Inter Partes Reexamination Request
               Filing Requirements

Ex. 25.        Teles Letter of September 5, 2007.

Ex. 26.        Cisco Letter of September 5, 2007

Ex. 27.        Cisco's Replacement Request For Inter Partes Reexamination of Sep. 7,
               2007

Ex. 28.        Joint Meet and Confer Statement of May 23, 2006

Ex. 29.        Hearing Tr. of June 20, 2006

Ex. 30.        Hearing Tr. of Jan 26, 2007

Ex. 31.        Order of Feb. 15, 2007

Ex. 32.        Cisco Int. Resp. of July 17, 2007

Ex. 33.        Cisco 30(b)(6) Notice to Teles

Ex. 34.        Cisco Noninfringement charts

Ex. 35.        Cisco's Supplemental Interrogatory Response of July 27, 2007

Ex. 36.        Order of Aug. 2, 2007

Ex. 37.        Protective Order

## I.    INTRODUCTION

The Court should deny Cisco's motion that seeks to stay this litigation for ***seven or more years*** while the United States Patent and Trademark Office ("Patent Office" or "PTO") considers Cisco's belated request for an *inter partes* reexamination of Teles' U.S. Patent No. 7,145,902 ("the '902 Patent").  At bottom, *a stay of this litigation will advance nothing* – this Court is the only forum for complete consideration of the evidence of invalidity and all other issues.

### A.    A Stay Should Be Denied In This Case For The Usual Reasons

This Court should deny Cisco's motion for the same reasons courts typically deny stay requests, which are plainly present here, such as:

**Cisco Knew About Prior Art**.  Stays are denied where the party requesting the stay knew about the prior art for some time prior to seeking reexamination.[1]  Here, Cisco knew about this prior art years before seeking reexamination based on foreign validity proceedings Cisco has pursued since 2004.

**Tactical Advantage**.  Stays are denied where the party requesting the stay is seeking a tactical advantage or delay.[2]  Here, Cisco seeks a stay to preclude Teles from obtaining evidence needed to rebut validity challenges Cisco plans to make in the Patent Office.  Cisco also seeks delay that may prejudice Teles' ability to rely on key individuals required to complete trial preparation and testimony.[3]

---

[1] *See, e.g.*, *Lectrolarm Custom Services, Inc. v. Vicon Industries, Inc*., 2005 WL 2175436 (W.D. Tenn. Sept. 1, 2005) (Denying stay where defendant waited a year and a half after learning of the prior art to request reexamination);  *Gladish v. Tyco Toys Inc.*, 29 U.S.P.Q. 2d (BNA) 1718, 1720 (E.D. Cal. 1993) (same).

[2] *See, e.g.*, *Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006) (Denying stay where defendant's failure to comply with the Patent Office's reexam filing requirements led to avoidable delay).

[3] *See, e.g.*,  *Whatley v. Nike Inc.*, 54 U.S.P.Q. 2d (BNA) 1124, 1126 (D. Or. 2000) (Denying a motion to stay based on concerns over fading witness memories).

**Unresolved Issues**.  Stays are denied where many validity or other issues cannot be decided in reexamination.[4]  Here, when asked, Cisco could not identify a single issue or discovery request that would be obviated by reexamination.

**Length of Stay**.  Stays are denied where they would be impractically or prejudicially long.[5]  Here, Cisco seeks a stay that foreseeably could last an unacceptable seven or more years.

### B.    A Stay Also Should Be Denied In This Case For Unique And Compelling Reasons

The Court also should deny Cisco's motion due to several unique circumstances here – not found in the cases on which Cisco relies – that strongly counsel against a stay:

**No New Prior Art**.  Cisco seeks reexamination based on the exact same prior art already considered by the Patent Office.

**Cisco Chose This Forum**.  Cisco chose this forum when it filed its declaratory judgment action, rather than a reexamination request in the Patent Office.  And, up until its surprise motion, Cisco repeatedly affirmed that the parties would address patent validity in this court, rather than the Patent Office.

***Inter Partes* Reexams Are Not Favored**.  Cisco seeks an *inter partes* reexamination that would last seven or more years.  Such *inter partes* reexaminations are seldom used and generally are perceived as a failed experiment that Congress now is seeking to eliminate altogether in the proposed Patent Reform Act of 2007.

**Teles Competes Against Cisco In This Market**.  Teles has been in the U.S. market for a number of years, and recently secured a favorable a distribution agreement

---

[4] *See, e.g.*, *Enprotech Corp. v. Autotech Corp.*, 15 U.S.P.Q. 2d (BNA) 1319, 1320 (N.D. Ill. 1990) (Denying stay where the Patent Office could not rule on the moving party's unenforceability defense).

[5] *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983) (citing *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982)) (Indicating that a stay lasting seven years or more is likely an abuse of discretion).

to increase Teles' U.S. presence.  A stay could delay permanent injunctive relief and force Teles to compete against its own technology that Cisco improperly uses to sell its infringing products.

**Prejudice to the Primary Stakeholder.**  Professor Schindler is the primary inventor, investor, and driving force behind Teles and its success.  He is now 71 years old.  A lengthy stay may deprive him of the fruits of his efforts.  A stay also may deprive Teles and its trial team of Professor Schindler's irreplaceable guidance and testimony in the technology, market, and other matters at issue in this case.

## II.    FACTUAL BACKGROUND

### A.    Cisco Repeatedly Affirmed That Patent Validity Should Be Litigated In This Forum

Until its surprise reexamination request and stay motion, Cisco repeatedly affirmed that the validity of the '902 Patent should be litigated here in this Court, not the Patent Office.

Nearly two years ago, Cisco filed this declaratory judgment action to challenge the validity of Teles' U.S. Patent No. 6,954,453 ("the '453 Patent"), rather than challenge its validity in the Patent Office.[6]  The '453 Patent is the direct parent to the '902 Patent. Accordingly, in early August 2006, Teles gave Cisco a copy of the allowed claims of the '902 Patent, and indicated that the '902 Patent should be added to this case.[7]  Cisco agreed.[8]  Thus, almost a year ago the parties jointly requested and the Court granted an extension of the case schedule so that the '902 Patent validity and other issues would be litigated *in this* case.[9]  After the '902 Patent issued, Cisco again affirmed that the '902

---

[6] Cisco Complaint of Oct. 18, 2005 (Dkt # 1) (Ex. 1).

[7] Teles Letter of Aug. 10, 2006 (Ex. 2) (referring to allowed claims provided to Cisco in interrogatory responses on August 3, 2006).

[8] Teles Unopposed Motion to File Amended Counterclaims ¶ 6 (Dkt # 39) (Ex. 3).

[9] Joint Motion to Amend Scheduling Order of Oct. 17, 2006 (Dkt # 31) (Ex. 4).

Patent's validity should be litigated in this case, and the Court granted Teles' unopposed motion to amend its Counterclaim to do so.[10]

Up until the day Cisco filed its surprise stay motion, Cisco led Teles to believe that the '902 Patent's validity should be resolved in this Court. Teles proceeded accordingly. The parties exchanged and reviewed tens-of-thousands of documents. Because Cisco insisted on a highly burdensome and expensive source code inspection regime, Teles bore the expense of flying its technical expert across the country several times to spend many hours reviewing Cisco's source code in the office of Cisco's counsel here in DC. The parties exchanged interrogatory responses and other discovery. All during this time, Cisco did not breathe a word about reexamination.

Because of substantial deficiencies in Cisco's discovery responses and other issues, Teles warned Cisco that it would seek the Court's assistance to resolve disputes during the status conference scheduled for August 10, 2007.[11] This prompted Cisco to file its surprise reexamination request and stay motion on the eve of that status conference. In retrospect, Cisco's actions are consistent with a conscious strategy of attrition, delay, and gamesmanship culminating in a surprise stay motion that Cisco plainly had in the works for some time.

### B. Cisco's Reexamination Request Raises Nothing New

On August 8, 2007, Cisco filed its surprise request for *inter partes* reexamination of the '902 patent. Cisco's reexamination request presumably raises Cisco's best invalidity arguments, the resolution of which Cisco is willing to be bound.[12] But Cisco's reexam request is based exclusively on the *same exact* prior art references that the Patent

---

[10] Minute Order of Feb. 13, 2007 (Ex. 5).

[11] Teles Letters of July 25, 2007 (Ex. 6) and August 1, 2007 (Ex. 7).

[12] Cisco Br. at 7.

Office already considered when it originally examined the '902 Patent.[13]  In fact, the Patent Office thoroughly considered those particular references several times before granting the '902 Patent over them.

Unlike most issued patents, the '902 Patent apparently benefited from a second level of review under the Patent Office's quality assurance program prior to being granted.[14]

Further, all but one of the prior art references asserted by Cisco also were considered by the Patent Office when it examined and granted the parent '453 Patent. Because the '453 Patent is the direct parent of the '902 Patent, the Patent Office gave particular scrutiny to this prior art when examining the '902 Patent.[15]

The Patent Office also fully considered the relevant filings, arguments, and rulings from the related German proceedings before granting the '902 Patent.[16]

In sum, Cisco's reexamination request does not raise any validity challenges that the Patent Office has not already exhaustively considered multiple times before granting the '902 Patent.  It is unlikely, therefore, that any benefit will be derived from Cisco's rehashed reexam request.

_____

[13] Compare (1) Cisco Reexam Request of Aug. 8, 2007 at 5-6 and 19-20 at Cisco Br. Ex. 1 (listing as prior art a Lucent Press Release and six U.S. patents: Focsaneanu '910 Patent, Jonas '792 Patent, Farese '685 Patent, Arango '078 Patent, Matsukawa '411 Patent, and Yoshida '516 Patent) and (2) the '902 Patent at 1-2 (Ex. 9) (listing those same references as having been considered by the Patent Office).

[14] DeLuca Dec. ¶¶ 12-16 (Ex. 10).

[15] Manual of Patent Examination Procedure ("MPEP") § 707.05 (2006).

[16] See '902 Patent at 2-3 (Ex. 9) (list of references considered by the Patent Office in examining the '902 Patent).

      **C.**    ***Inter Partes* Reexaminations Are Disfavored, Rare And Lengthy Administrative Nightmares**

Demonstrably, *inter partes* reexamination is a failed experiment that Congress may soon eliminate altogether.

Almost eight years ago in the American Inventors' Protection Act of 1999 (PL 106-113), Congress created *inter partes* reexamination with the best of intentions to create an efficient way for patent owners to resolve validity disputes.[17]  Congress also foresaw and sought to avoid such reexaminations placing new burdens on patent owners. [18]  Congress, therefore, enacted several safeguards specifically designed to prevent parties – like Cisco – from abusing the new *inter partes* reexamination as a litigation tactic to burden patent owners.

For example, Congress enacted 35 U.S.C. § 318 that expressly grants **only to the patentee** – *e.g.*, Teles—the right to seek a stay of litigation pending *inter partes* reexamination.[19]  Congress was concerned that *inter partes* reexaminations would improperly give a requestor an unfair second bite at the apple on invalidity.[20]  Congress also was concerned about requestor forum shopping where *inter partes* reexamination would "put the challenger to the patent in the position of being able to choose his or her forum and just create one extra opportunity to challenge."[21]  It is therefore quite ironic

---

[17] 145 Cong. Rec. H6944 (daily ed. Aug. 3, 1999) (statement of Rep. Rohrabacher). (Ex. 11).

[18] *Id.*

[19] 35 U.S.C. § 318 ("Once an order for *inter partes* reexamination of a patent has been issued under § 313, the ***patent owner*** may obtain a stay of any pending litigation …") (emphasis added).

[20] *See* Patent Reform and The Patent and Trademark Office Reauthorization for Fiscal year 2000, Hearing before the Subcommittee on Courts and Intellectual Property of the Committee on the Judiciary , 106th Cong. 4-5 (1999) (statement of Rep. Campbell) (Ex. 12).

[21] *Id.* at 5.

that Cisco cites § 318 as supporting its stay request,[22] because the plain language and legislative history of the statute strongly counsel otherwise.

Congress envisioned that *inter partes* reexamination would be conducted "with special dispatch."[23] Despite such good intentions, however, *inter partes* reexaminations are anything but expedient. As shown in the timeline below, *inter partes* reexaminations foreseeably can last seven or more years.[24] Indeed, of the **249** *inter partes* reexaminations ever granted, **only 8** have been completed.[25] The rest remain stuck somewhere in the *inter partes* quagmire, as shown in the timeline below in which the **red** shading in each stage represents the percentage of *inter partes* reexaminations that have not made it to that stage yet.



**Inter Partes Reexamination Timeline (DeLuca Dec. ¶ 5 (Ex. 10))**

---

[22] *See* Cisco Br. at 3-4.

[23] *See* 35 U.S.C. §314(c).

[24] DeLuca Dec. ¶ 5-7 (Ex. 10).

[25] DeLuca Dec. ¶ 9 (Ex. 10). These eight completed *inter partes* reexams were terminated early on based on lack of motivation by the patent owner to pursue them based on settlement or other reasons. *Id.* ¶ 10.

Indeed, only two *inter partes* reexaminations have made it through to a Board of Patent Appeals and Interferences ("BPAI") Decision (stage 6 above), which decisions sent the reexams **back** to earlier stages within the Patent Office with no end in sight.[26]

The extraordinary length of *inter partes* reexaminations – as compared to *ex parte* reexaminations – arises from the many stages added to the *inter partes* proceedings that allow a requester to participate and inject delay throughout the process. This is shown in the Patent Office's flowcharts below that compare *ex parte* reexamination procedures (left side) and *inter partes* reexamination procedures (right side). In these flowcharts, points where the requester can inject delay are highlight in **red**. Larger illustrations of these flow charts also are attached as Exs. A-C to the DeLuca Dec. (Ex. 10).

---

[26] DeLuca Dec. ¶ 6 (Ex. 10).



***Ex parte* Reexam Procedures  |  *Inter Partes* Reexam Procedures**

Thus, a stay pending completion of *inter partes* reexamination could last seven years or more.[27] Even Cisco's own cited cases indicate that such a "stay extending for seven years or longer is an abuse of discretion."[28]

In sum, despite good intentions, the *inter partes* reexamination experiment has been a complete failure. Even the Patent Office now acknowledges that district court litigation may be a better vehicle to resolve invalidity issues, rather than *inter partes* reexamination.[29] Indeed, because *inter partes* reexaminations have been a total flop, the Senate's current version of the "Patent Reform Act of 2007" will eliminate them altogether.[30] And the House just passed a version of that Act that may preclude court's from staying litigation pending reexamination without the patent owner's consent.[31]

## III.   ARGUMENT

Cisco cannot meet its heavy burden to establish that a stay pending *inter partes* reexamination is warranted here, because:

(1) A stay will unduly prejudice Teles and give Cisco a clear tactical advantage both here and in the Patent Office.

(2) A stay will not simplify the issues in this case.

(3) A stay is not proper given the posture and history of this case.

---

[28] *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983) (citing *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982)).

[29] Manual of Patent Examination Procedure ("MPEP") § 2686.04 (2006).

[30] *See* Patent Reform Act of 2007, S.1145, 110th Cong. § 5(b) (2007) (amendment in the form of a substitute as passed by the Senate Judiciary Committee July 19, 2007). (Ex. 12).

[31] *See* Patent Reform Act of 2007, H.R. 1908, 110th Cong. §6(c) (2007) (as passed by House, Sept. 7, 2007) (Ex. 13) (creating 35 U.S.C. §333(c) to clarify that the commencement of reexamination should be given no weight by courts and should not limit in any way the patent owner's rights to proceed in court).

A.    **Cisco Has A Heavy Burden Here In Seeking This Extraordinary Relief**

Cisco has a particularly heavy burden in seeking a stay here.  That heavy burden arises for many reasons.

**Low Threshold For Granting Reexaminations**.  First, the Federal Circuit, Patent Office, and Congress agree that the mere grant and pendency of reexamination is substantively meaningless and warrants little judicial deference.  One reason is the incredibly "low threshold" [32] under which reexaminations are easily obtained. [33]  Even Cisco concedes (though hides in a footnote) how easily reexamination may be granted, acknowledging that "91 percent of all reexaminations, both *ex parte* and *inter partes*, were granted." [34]

Thus, the Federal Circuit explained that "the grant by the examiner of a request for reexamination is **not probative** of unpatentability":

> The grant of a request for reexamination, although surely evidence that the criterion for reexamination has been met (i.e., that a "substantial new question of patentability" has been raised), does not establish a likelihood of patent invalidity. [35]

The Patent Office similarly explained to the Supreme Court that the "mere pendency of a non-final reexamination proceeding **merits no particular weight** in a

---

[32] *In re Etter*, 756 F.2d 852, 862 (Fed. Cir. 1985) (Nies, J., concurring) ("An infringer may well have evidence which is sufficient to meet the low threshold of a 'substantial new question of patentability,' but not sufficiently persuasive in court to overcome the presumption of validity, including the burden of clear and convincing proof.").

[33] The "substantial new question of patentability" standard applied by the Patent Office is whether "there is a substantial likelihood that a reasonable examiner would consider the prior art patent or printed publication important in deciding whether or not the claim is patentable." MPEP § 2642.

[34] Cisco Br. at 6 n.5.

[35] *Hoechst Celanese Corp. v. B.P. Chems. Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996) (citation omitted) (emphasis added).

district court's equitable calculus ...."[36]  The Patent Office is concerned that litigants –
like Cisco here – may abuse reexamination to gain some tactical advantage in litigation,
stating:

> The existence of such a [reexamination] proceeding by itself **implies
> nothing meaningful** about its likely outcome, and a contrary rule would
> needlessly encourage infringement defendants to request reexamination
> proceedings merely to forestall a permanent injunction.[37]

Congress agrees.  Just this month, the U.S. House of Representatives passed
sweeping changes to the reexamination process to further discourage the type of litigation
gamesmanship Cisco attempts here.  The passed Bill forbids giving any substantive
weight to the grant of reexamination, stating that "[t]he commencement of a post-grant
review proceeding … shall not be cited as evidence relating to the validity of any claim
of the patent in any proceeding before a court."[38]  Further, the passed Bill appears to
forbid courts from staying litigation pending reexamination without the patent owner's
consent, stating that "[t]he commencement of a post-grant review proceeding … **shall
not limit in any way** the right of the patent owner to commence an action for
infringement of the patent."[39]

    **Section 318**.  Second, as discussed above, Congress expressly granted only to **the
patent owner** a right to seek a stay of litigation pending *inter partes* reexamination under
35 U.S.C. § 318 without expressly granting that same right to the accused infringer.  The
statutory language and legislative history indicates that, even though courts may grant
accused infringers such a stay, there is a heavy presumption against doing so.

---

[36] *See eBay Inc. v. MercExchange, L.L.C.,* No. 05-130, 2005 U.S. Briefs 130, at **26-
27 (Mar. 10, 2006) (United States' Amicus Brief) (emphasis added).

[37] *Id.* (emphasis added).

[38] Patent Reform Act of 2007, H.R. 1908, 110th Cong. § 6(c) (as passed by House,
Sept. 7, 2007) (creating 35 U.S.C. §333(c)) (Ex. 13).

[39] *Id.* (emphasis added).

**Clear Hardship**.  Third, long established jurisprudence shows that courts carefully avoid stays that have "even a fair possibility" of prejudicing patent owners. Thus a moving party – like Cisco here – "must make out a **clear case of hardship or inequity** in being required to go forward, if there is **even a fair possibility** that the stay for which [Cisco] prays will work damage to [Teles]."[40]

Thus, whether to grant this extraordinary stay relief must be viewed through the prism of Cisco's particularly heavy burden here.

**B.    A Stay Will Unduly Prejudice Teles And Give Cisco A Clear Tactical Advantage**

Courts properly apply a very tough standard for movants to stay litigation if such a stay might prejudice the patent owner.  Indeed, courts hold that the party requesting the stay like Cisco here, "must make out a clear case of hardship or inequity in being required to go forward, if there is **even a fair possibility** that the stay for which [Cisco] prays will work damage to [Teles]."[41]  Cisco has not shown such hardship or inequity.  In contrast, a lengthy stay may mean that Teles *never* will be adequately compensated by Cisco for its improper use of Teles' patented technology.

**Teles Competes Against Cisco**.  First, Teles is a direct competitor of Cisco in VoIP product sales in the United States.  In 2003, Teles sold its first products in the

---

[40] *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936) (emphasis added); *see also IMAX Corp. v. In-Three, Inc.,* 385 F. Supp. 2d 1030, 1032 (C.D. Cal. 2005) (citing *Landis*, 299 U.S. at 255); *St.-Gobain Performance Plastics Corp. v. Advanced Flexible Composites, Inc.*, 436 F. Supp. 2d 252 (D. Mass. 2006)(stay denied because there was a substantial danger a stay would prejudice the non-movant and the movant had not shown a clear case of hardship absent a stay); *Output Tech. Corp. v. Dataproducts Corp.*, 22 U.S.P.Q. 2d (BNA) 1072, 1074 (W.D. Wash. 1991) (burden on party seeking stay to show hardship if there is hardship to opposing party. … Defendant [i.e., accused infringer] has not made out a case of hardship in going forward with this case.); *Unidisco v. Schattner*, 210 U.S.P.Q. (BNA) 622, 629 (D. Md. 1981) (First and foremost is the burden on the party seeking the stay to make out a clear case of hardship or inequity in being required to go forward if the imposition of a stay might harm the opposing party.).

[41] *See* Page 13 n. 40, *supra*.

United States that embody the patented technology at issue here. Sales of Teles' iGATE products have steadily increased over the period with approximate sales volume so far in 2007 of nearly $1.3m.[42] Working to capitalize on this promising entry into the US market, this past summer, Teles signed a distribution agreement with IP Gear, Inc., an established US-based distributor for high-end VoIP products.[43] IP Gear has already ordered Teles' iGATE products and accessories.[44] A stay now would delay when this Court may permanently enjoin Cisco from infringing Teles' patents, and thus materially harm Teles' financial interests.

**Prejudice to the Primary Stakeholder**. Second, Professor Sigram Schindler, Teles CEO and Chairman of the Board of Directors, is:

- a primary inventor of the patented technology;[45]

- a primary investor in the patent and Teles;[46]

- a primary leader and decision maker of Teles operations and initiatives;

- a primary resource to the litigation team for understanding the technology, prior art and competitive market; and

- a primary witness for depositions, trial or otherwise in this case.

Because Professor Schindler is 71 years old, a lengthy stay may deprive him of the fruits of decades of hard work and investment. A lengthy stay also could deprive Teles from

---

[42] *See, e.g.*, exemplar Teles Sales Invoices (Ex. 15).

[43] *See* Press Release – Teles: Takes over IPGear Ltd. (Ex. 16).

[44] *See, e.g.*, exemplar IP Gear Orders of Teles Products (Ex. 17).

[45] *See* '902 Patent at 1 (naming Prof. Schindler as an inventor of the '902 Patent) (Ex. 1).

[46] Professor Sigram Schindler holds 48.93% of the shares of Teles AG, either directly or indirectly. *See* Teles AG's Annual Report 2006 at 80 (Ex. 18); Shareholder List (Ex. 19).

fully benefitting from him as a key litigation resource and witness, without whom will imperil Teles' ability to fully and fairly protect its technology.[47]

**Unfair Tactical Advantage**.  Third, a stay would give Cisco an unfair tactical advantage in challenging the '902 Patent's validity.  A stay would prevent Teles from obtaining crucial evidence to rebut what Cisco deems its "critical" *KSR* obviousness challenge in reexamination.[48]  The Supreme Court made clear that its *KSR* obviousness analysis still includes secondary indicia of non-obviousness, such as the commercial success of products using the claimed invention.[49]  It is well-established law that the commercial success of the accused infringing products – *e.g.*, Cisco's accused products here – provides relevant evidence on this specific obviousness inquiry.[50]  Indeed, at the time Cisco filed its stay motion, Teles was pursuing discovery from Cisco and third-parties to obtain evidence showing that the commercial success of Cisco's accused infringing products is based on their use of Teles' claimed inventions.

---

[47] *See Whatley v. Nike Inc*., 54 U.S.P.Q. 2d (BNA) 1124, 1126 (D. Or. 2000) ("I am DENYING the motion … based upon … my concerns of prejudice to the defense in the form of mounting potential damages and preservation of witness memories."); *Anascape, Ltd. v. Microsoft Corp.,* 475 F. Supp. 2d 612, 617 (E.D. Tex. 2007) ("However the factor of unfair prejudice to [patent owner] is an important competing concern. …. It does seem that crucial witnesses are more likely to be located if discovery is allowed to proceed now, rather than later. [Patent owner] would be at a severe tactical disadvantage if the entire case were stayed.").  Additionally, and by way of comparison, 37 C.F.R. 1.102(c)(1) provides for expedited examination of patent applications in view of the applicant's age or health.  The Patent Office, therefore, granted such expedited review in a pending patent application based on Professor Schindler's circumstances. *See* Grant of Petition to Make Special (Ex. 20).

[48] Cisco Br. at 2.

[49] *KSR Int'l Co. v. Teleflex Inc.*, 127 S. Ct. 1727, 1734 (2007) (Cisco Br. at Ex.2)  (the obviousness analysis includes "[s]uch secondary considerations as commercial success" and "the[se] factors continue to define the inquiry that controls.")

[50] *See Brown & Williamson Tobacco Corp. v. Philip Morris Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000) ("Our case law provides that the success of an infringing product is considered to be evidence of the commercial success of the claimed invention.").

But a stay will prevent Teles from obtaining such discovery.  As Cisco knows, discovery is not available through the Patent Office reexamination process – the Patent Office has no subpoena power or the power to order discovery.[51]  And Cisco designed its stay request to deprive Teles from such discovery here.  A stay in this case, therefore, gives Cisco an unfair tactical advantage by tying Teles' hands when rebutting Cisco's "critical" invalidity challenge in reexamination.

Indeed, the Patent Office advises using district court litigation and discovery process  – not *inter partes* reexaminations – as the best forum to resolve validity disputes involving such contested evidence, stating:

> A "good cause" [for staying a Patent Office *inter partes* reexamination] might be present, for example, where there is an issue that cannot be decided in the reexamination proceeding but affects the resolution of the proceeding.  Another example is where there is an issue common to the litigation and the reexamination that can best be decided in court due to **the availability in court of discovery and subpoena power** (e.g., an issue heavily dependent on presentation of conflicting/contested evidence by the two parties).[52]

**Limited Patent Life**.  Finally, patents are depreciating assets that have finite terms.  Teles' '902 Patent will expire in about ten years.  Given the current regimen of time required to fully complete *inter partes* reexaminations – foreseeably 7 or more years – Teles' patent rights could be near or past expiring during a stay.

### C.    A Stay Will Not Simplify The Issues In This Case

Cisco's requested reexamination will not simplify the issues in this case for at least five reasons.

---

[51] *See* MPEP § 2686.04 (III).

[52] MPEP § 2686.04 (III) (emphasis added).  The Patent Office, however, will not stay its *inter partes* reexamination if the district court action already is stayed and, thus, a premature stay of a district court action could deprive Teles of evidence to rebut Cisco's supposedly "critical" invalidity argument.  *Id.*  (if "a court stays litigation as to the patent being reexamined, action in the reexamination proceeding would not be suspended").

**No New Prior Art**.  First, the "factor of primary importance" in the cases on which Cisco relies is not present here -- *i.e.*, the court benefitting from the Patent Office's expertise on "prior art and publications **not** before the PTO during its **original** patent examination."[53]  Rather, as discussed above, Cisco's reexamination request is based *exclusively* on the *exact same prior art* that the Patent Office carefully considered multiple times before granting the '902 Patent.[54]  The primary benefit of awaiting reexamination simply is not present here.

**Tiny Fraction Of Case**.  Second, the Patent Office reexamination will address only a tiny fraction of the issues in this case.  Indeed, when the parties met and conferred about Cisco's stay motion (*after* it was filed), Cisco could not identify a single issue or discovery request that would be resolved or withdrawn after reexamination – *e.g.*, not a single prior art reference, invalidity defense, unenforceability defense, noninfringement contention, deposition, document request, interrogatory, etc.[55]  That is because Cisco knows that the Patent Office will not consider infringement, damages or injunctive relief.  Cisco also knows that the Patent Office will not consider all the invalidity issues it seeks to raise here, because reexamination is limited to validity challenges based on patents and publications as prior art.[56]  Thus, the Patent Office will not consider all asserted prior art, enablement, indefiniteness, written description, unenforceability, or other invalidity

---

[53] *Broadcast Innovation L.L.C. v. Charter Commc'ns*, *Inc.,* No. 03-cv-2223, 2006 U.S. Dist. LEXIS 46623, at *16 (D. Colo. July 11, 2006)("the court will gain the benefit of the PTO's particular expertise, **in that** all prior art presented to the court will have been **first** considered by that agency") (emphasis added).

[54] Cisco Reexam Request of Aug. 8 at 5-6 and 19-20 (Cisco Ex. 1).

[55] *See* Teles Letter of Aug. 28, 2007 and Cisco Letter of Aug. 29, 2007 (Ex. 21).

[56] 35 U.S.C. §§ 301 and 311; *see also* 37 C.F.R. § 1.501; Manual of Patent Examination Procedure ("MPEP") §§ 2602 and 2656.

defenses that Cisco has raised in this case (though such challenges appear to have no merit given what little Cisco has disclosed of them so far).[57]  Indeed, Cisco's reexamination request involves only 7 of the 52 potential prior art references that Cisco has raised in this case, and Cisco could not identify a single one of the 45 remaining references that would not be at issue after reexamination.[58]

In sum, a stay is not proper here because few issues will be addressed in reexamination.  Rather, the court is "the only forum for complete consideration of … evidence of invalidity" and other issues.[59]

**Slim Chance Claims Will Be Cancelled/Amended**.  Third, there is essentially no chance that the requested reexamination will result in "the complete invalidation of the asserted claims," as Cisco asserts.[60]  Although the general outcome rate for *inter partes* reexaminations cannot be determined yet (only eight have been completed), the Patent Office's statistics show that *ex parte* reexaminations result in cancellation of all claims only 10% of the time.[61]  Particularly relevant here is that **not a single claim** has ever been canceled in reexamination based exclusively on prior art previously considered

---

[57] *See* Cisco's Second Supp. Response To Interrogatory No. 2 of Aug. 8, 2007 (Ex. 22).

[58] *Id.* at 34-36 (Appendix A) (Ex. 22).

[59] *Gladish v. Tyco Toys Inc.*, 29 U.S.P.Q. 2d (BNA) 1718, 1720 (E.D. Cal. 1993); *see also Enprotech Corp. v. Autotech Corp.*, 15 U.S.P.Q. 2d (BNA) 1319, 1320 (N.D. Ill. 1990) (stay denied where Patent Office will not resolve unenforceability defense).

[60] *See* Cisco Letter of Aug. 29, 2007 (Ex. 21).

[61] The statistical results in *inter partes* reexaminations currently is indeterminate because only 8 of the 249 granted inter partes reexams have been completed, which few completions appear to have occurred in uncontested circumstances or patents without the substantial value at issue here. DeLuca Dec. ¶ 9-11 (Ex. 10).

by the Patent Office, which is the precise long-shot Cisco's reexamination request seeks here.[62]

Cisco erroneously argues that the Supreme Court's *KSR* obviousness decision is a "critical fact" supporting a stay.[63]  The Patent Office, however, has felt no need to rush-in any sweeping changes to its substantive examination process based on *KSR*.  Rather, following the *KSR* decision, the Patent Office simply announced that its examiners should continue applying the obviousness standard they way they had been all along.[64]  Further, millions of patents issued prior to the *KSR* decision.  It is very doubtful that the Patent Office will reexamine all those patents to rehash the same prior art previously considered.  But that is precisely what Cisco's reexamination request seeks here.  Thus, for planning purposes, it is essentially a statistical certainty that – if a stay were granted – after the Patent Office process completed this case will pick-up exactly where it left off with the same claims in suit and little – if any – progress will be made to resolve the parties' dispute here.

Because Cisco knows not all claims will be canceled, it also alludes to potential claim amendments during reexamination.[65]  But patent claims asserted in litigation rarely – if ever – are amended.  Here is why: If a patent claim is amended during reexamination, a patent owner cannot seek any damages on that claim for any time prior to a

_____

[62] DeLuca Dec. ¶ 11 (Ex. 10).

[63] Cisco Br. at 2.

[64] Patent Office Memo of May 3, 2007 (Ex. 23).  The Patent Office recently submitted KSR training guidelines for review by OMB, which guidelines currently are not publicly available.

[65] Cisco Br. at 9-10.

reexamination certificate being issued at the **end** of the reexamination process.[66]  Patent owners, therefore, will not amend claims that they are asserting in litigation because they do not want to lose such significant rights.  The Patent Office cannot amend claims without the patent owner's consent.[67]

In sum, there is essentially no chance that any asserted claim of the '902 Patent will be amended or cancelled during reexamination.

**Different Claim Construction Standards**.  Fourth, reexamination will provide little, if any, guidance on construing the patent claims in this case.  The Federal Circuit recently confirmed that the Patent Office and district courts use completely different claim construction standards, and neither is bound by the other's claim construction ruling.[68]

Indeed, Cisco is exploiting these different standards here.  Specifically, Cisco gave the Patent Office Teles' infringement claim charts served in this case as part of Cisco's argument that the Patent Office should construe the claims broadly to capture and be invalidated by prior art.[69]  But Cisco is **withholding** from the Patent Office Cisco's own noninfringement claim charts served in this case.  Those charts reflect Cisco's narrow claim construction arguments for this Court that may undermine Cisco's position

---

[66] *See* 35 U.S.C. § 316 (amended claims subject to intervening rights) (citing 35 U.S.C. § 252.).

[67] Manual of Patent Examination Procedure ("MPEP") § 2687.01; *see also* MPEP § 2666.01.

[68] *In re Trans Texas Holdings Corp.*, No. 06-1599, slip op. at 11-13 (Fed. Cir. August 22, 2007) ( "claims are given 'their broadest reasonable interpretation, consistent with the specification, in reexamination proceedings.'"); *In re Yamamoto,* 740 F.2d 1569, 1571 (Fed. Cir. 1984) (Patent Office must assume and apply broadest possible claim construction)

[69] Cisco's Reexam Request at Exhibit 2 (Ex. 8).

in the Patent Office. So Cisco is telling the Patent Office to adopt Teles' claim construction, but telling the Court to adopt Cisco's claim construction. Why does Cisco believe it can get away with that? Because of the different claim construction standards.

**Completely Different Proceedings**. Fifth, the Federal Circuit soundly has rejected Cisco's purported concern that district court actions should be stayed pending reexamination to avoid "the risk of inconsistent adjudications."[70] Rather, the Federal Circuit unequivocally explained that "litigation and reexamination are distinct proceedings, with distinct parties, purposes, procedures, and outcomes."[71] Indeed, the very cases on which Cisco relies make clear that district court litigation and Patent Office reexamination involve *different* forums, with *different* standards, relying on *different* evidence that properly and reasonably may lead to *different* results:

> The awkwardness presumed to result if the PTO and court reached different conclusions is more apparent than real. The two forums take different approaches in determining invalidity and on the same evidence could quite correctly come to different conclusions. Furthermore, we see nothing untoward about the PTO upholding the validity of a reexamined patent which the district court later finds invalid. This is essentially what occurs when a court finds a patent invalid after the PTO has granted it. Once again, it is important that the district court and the PTO can consider different evidence. Accordingly, **different results between the two forums may be entirely reasonable**.[72]

Thus, "[c]ourts clearly have the authority to order their cases to trial" rather than await any action in the Patent Office.[73]

---

[70] Cisco Br. at 8.

[71] *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1427 (Fed. Cir. 1988).

[72] *Id.,* at 1428 (emphasis added); *see also Arthrocare Corp. v. Smith & Nephew, Inc.,* 315 F. Supp. 2d 615, 619-20 (D. Del. 2004).

[73] *Arthrocare Corp. v. Smith & Nephew, Inc.,* No. 01-504-SLR (D. Del.) (Order denying stay pending reexamination, Nov. 27, 2002, at 1.); *NTP, Inc. v. Research In Motion, Inc.,* 397 F. Supp. 2d 785, 787 (E.D. Va. 2005) ("A court is under no obligation to delay its own proceedings by yielding to ongoing PTO patent reexaminations,

### D.    A Stay Is Not Proper Given The Posture Of This Case

Cisco selected litigation in this Court as its preferred forum and mechanism for resolving patent validity issues, and has repeatedly affirmed this selection. Cisco's surprise reexamination request and stay motion now represent precisely the type of abusive litigation gamesmanship that Congress, the Patent Office, and the courts disdain.

### 1.    Cisco knew about the reexam prior art years ago

Cisco could have sought reexamination long before now. As shown in the timeline below, Cisco thoroughly researched potential prior art to Teles' inventive technology – and was aware of the exact references on which its reexam request is based – when it prepared and filed the German nullity proceedings against Teles in 2004.



**Timeline – Cisco Knew About Reexam References Long Before Seeking Reexam**

Almost two years ago, however, Cisco chose to forego Patent Office review and file the instant case as a declaratory judgment action against Teles seeking immediate **court** resolution of whether that '453 Patent is invalid (which suited Cisco's litigation

regardless of their relevancy to infringement claims which the court must analyze.") (citing *Viskase Corp. v. Am. Nat'l Can Co.,* 261 F.3d 1316, 1328 (Fed. Cir. 2001).

purpose at that time).  The '453 Patent is the direct parent patent related to the '902 Patent.

Accordingly, over a year ago Teles gave Cisco a copy of the allowed '902 Patent claims

at issue here so that the '902 Patent readily could be added to this case when it issued.[74]

And again, rather than suggesting Patent Office review, Cisco repeatedly confirmed that

this court would be the forum to litigate patent validity.  Indeed, Cisco helped prepare

and file the joint request to extend the case schedule here to ensure that the '902 Patent's

validity would be litigated in this court action, stating:

> The parties jointly ask the Court to extend the existing schedule in this
> action by approximately two months.  The two-month extension is
> necessary in light of Teles' stated intent to amend its counterclaims to
> assert a second patent against Cisco. … **The parties agree that <u>judicial
> efficiency</u> will be served by adding the second patent to the instant
> lawsuit**, rather than commencing a second separate lawsuit in order to
> litigate a related patent.  … Furthermore, the future addition of a second
> patent to this lawsuit will have a material effect on both the scope and
> timing of some discovery.[75]

After the '902 Patent issued, Cisco again confirmed that the '902 Patent should be

litigated in this Court, as memorialized in the unopposed motion to add the '902 Patent to

this case:

> Because Teles had a pending patent application, Counsel for Defendant
> Teles and Counsel for Plaintiff Cisco conferred and agreed that **it would
> be most efficient** to extend the case schedule to permit inclusion of the
> patent in the case once it issued.[76]

Now, after completing two years of expensive litigation and shortly before the end of fact

discovery, Cisco has moved to delay the entire litigation for several years in order to start

over with some – but not all – validity issues in the Patent Office.  It is unseemly that

---

[74] Teles Letter of Aug. 10, 2006 (Ex. 2) (referring to allowed claims provided in
interrogatory responses to Cisco on August 3, 2006).

[75] Joint Motion To Amend Scheduling Order of Oct. 17, 2006 (Dkt. # 31) (Ex. 4)
(emphasis added).

[76] Teles' Unopposed Motion For Leave To File Teles' Answer And First Amended
Counterclaims of Jan. 24, 2007, ¶6 (Dkt. # 39) (Ex. 3) (emphasis added).

Cisco cavalierly flip-flops from arguing that "judicial efficiency" requires litigating validity in this case to Cisco arguing that judicial efficiency requires litigating validity elsewhere.

Cisco's unjustified delay here is nothing like the handful of cases it cites for the proposition that a stay may be proper even though discovery was close to or already completed. This is not a case where an accused infringer was hauled into court with no notice of the patented technology and no opportunity to choose a forum to litigate validity. Rather, Cisco repeatedly made fully informed decisions over the span of years to litigate validity in this Court, rather than the Patent Office.

This case is nothing like the *Middleton* case by Judge Gritzner on which Cisco relies to argue that a stay may be proper even "eight years after the commencement of the case."[77] Judge Gritzner made clear that the delay seemed reasonable in "the unique circumstances" of that case in which the accused infringer justifiably had not "actively pursue[d] the validity issue" until **"a year"** before seeking reexamination based on "numerous prior art references discovered" in that short period.[78] Cisco, however, actively has been litigating the validity of this patented technology (both here and abroad), however, and has known about the exact same asserted prior art equally as long.

### 2. Cisco recklessly filed its reexam request to inject delay here.

Further evidence that Cisco's reexam request is mainly for tactical advantage in litigation is the substantial deficiencies in the reexam request itself that Cisco knew or should have known would delay its progress through the Patent Office. Patent Office regulations clearly state that a reexamination request will not be considered if it fails to

---

[77] Cisco Br. at 10-11 (citing *Middleton, Inc. v. Minn. Mining & Mfg, Co.*, No. 4:03-cv-40493, 2004 U.S. Dist. LEXIS 16812 (S.D. Iowa Aug. 24, 2004)).

[78] *Middleton*, 2004 U.S. Dist. LEXIS 16812, at *8. (emphasis added).

provide a "statement pointing out each substantial new question of patentability …"[79] But Cisco failed to do so. This foreseeably caused the Patent Office to reject Cisco's original reexam request on August 22, 2007, and gave Cisco time to file a corrected request.[80]  Cisco refused to tell Teles specifically when it would file the corrected request, knowing that Teles would need to review that filing in preparing its response to the instant motion.[81]  And Cisco delayed over two weeks before filing a replacement reexamination request on September 7, 2007.[82]  At least one court has held that filing deficiencies in reexamination requests – like Cisco's here – indicate that the litigant was "taking tactical advantage of opportunities for delay" that warranted denying a stay.[83]

And Cisco has continued its scheme of reckless filings in the Patent Office. Cisco ignored the Patent Office's clear instruction to focus any replacement request on a few relevant invalidity questions, rather than the shotgun approach of Cisco's original filing.[84] Cisco defied the Patent Office's instructions by **increasing** the portion of its flawed filing it had to replace from about 650 pages to over 1,300 pages. Thus, as of the filing of this opposition brief, the Patent Office still has not afforded Cisco's reexamination request a filing date.

---

[79] 37 C.F.R. § 1.915(b)(3) ("Content of request for inter partes reexamination").

[80] *See* Notice of Failure To Comply With Inter Partes Reexamination Request Filing Requirements of Aug. 22, 2007 at 1. (Ex. 24).

[81] *See* Teles and Cisco Letters of Sep. 5, 2007 (Teles asking if and when Cisco would file corrected response and Cisco giving vague response) (Ex. 25), (Ex. 26).

[82] Replacement Request For Inter Partes Reexamination of Sep. 7, 2007 (Ex. 27) (Excerpt only).

[83] *Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp. 2d 1107, 1111 (N.D. Cal. 2006).

[84] *See* Notice of Failure to Comply With Inter Partes Reexamination Request Filing Requirements of Aug. 22, 2007, at 6 (Ex. 24) ("It is to be noted that withdrawal of individual references *from a proposed combination* with multiple permutations will reduce the number of combinations that need to be addressed *separately*.").

3.    **Cisco cannot use its own discovery delays to justify a stay now**

Brazenly, Cisco argues that a stay pending reexamination is warranted, because discovery has not progressed.[85]  But Cisco fails to explain that any delayed progress was created principally by Cisco's its own dilatory tactics.

As discussed below, Cisco has done its utmost to frustrate and delay discovery and to increase the burden and expense on Teles.  For example, Cisco created phony discovery issues in an attempt to delay the case.  Cisco also improperly sought to learn the sources and extent of Teles' ability to pay for this continuing litigation.  Cisco continues to withhold its real positions with respect to non-infringement, gambling that this Court will stay the case.  Finally, Cisco also has intentionally withheld its invalidity contentions from Teles.  This fact is plain in light of the massive reexamination request, that was hundreds of pages long, but that Cisco apparently would have us all believe was created in the twelve days between (1)  the date of Cisco's scant invalidity supplement in this case (July 27) and (2)  the date Cisco filed its reexamination request (August 8).  Since Cisco could not have created its 1,300+ page Patent Office filing overnight, it is likely that this reexamination ploy was part of Cisco's strategy for months.

The Court should not permit Cisco to intentionally frustrate and delay discovery, impose burden and expense upon Teles, and then cite the fruits of these dilatory tactics as a reason for yet more delay.  Courts may find a stay unduly prejudicial where the movant appears to seek it for tactical advantage.  For example, where – as here – there is an inexplicable or unjustified delay in seeking reexamination, a stay is often denied.[86]

---

[85] Cisco Br. at 3 and 10-11.

[86] *See, e.g., Gladish v. Tyco Toys, Inc.*, 29 U.S.P.Q. 2d (BNA) 1718, 1719 (E.D. Cal. 1993) ("[Moving party] chose this forum, forced [non-moving] to expend time and money ..., and now, after the litigation has progressed almost a year and ... discovery efforts are bearing fruit, seeks reexamination ... based on prior references known to [moving party] since April of 1992.").

Similarly, a stay should not be granted where it serves the requestors manifested intent to delay proceedings.[87]

**Cisco's Phony Willfulness Issue.**   Cisco attempted to manipulate and engineer a delay in discovery by manufacturing a phony willfulness issue.   Cisco complained to the Court that it would confront a so-called "Hobson's Choice" if it were forced to make an early determination on whether to rely upon opinions of counsel to show that its infringement is not willful.[88]   Cisco cited this purported dilemma as a basis to delay willfulness discovery for a year.[89]

In its briefing and argument at the hearing on this issue, Cisco strongly implied that there were in fact opinions of counsel and related documents that Cisco was seeking to protect.[90]   The Court, therefore, ordered Cisco to "identify on a privilege log any existing opinion of counsel..., but Cisco may wait until May 1, 2007 to elect to rely on such opinions."[91]   Cisco admits in its July 17, 2007 interrogatory responses, however, that "there are no legal opinions identified in Cisco's privilege logs."[92]   Thus, Cisco

---

[87] *See, e.g.*, *Xerox Corp.* v. *3Com Corp.*, 69 F.Supp.2d 404, 407 (W.D. N.Y. 1999) (citing *Freeman v. Minnesota Mining & Mfg. Co.*, 661 F. Supp. 886, 888 (D. Del. 1987) ("To allow [the accused infringer] to now use the reexamination process to get this case stayed would be to allow [an accused infringer] to use the reexamination as a mere dilatory tactic.")).

[88] Joint Meet and Confer Statement of May 23, 2006 at 12-14 (Dkt # 19) (Ex. 28).

[89] *Id.*

[90] *See, e.g.*, Hearing Tr. of June 20, 2006, at pp. 16-17 (Dkt # 29) (Ex. 29) ("Your Honor, If I may, the reason we asked for this, if you are familiar with willfulness, one possible defense is to disclose you attorney opinions that you relied on in saying we don't infringe." ); Hearing Tr. of Jan. 26, 2007, at pp. 4-5 (Ex. 30) ("Either we have to elect to rely on opinions of counsel and take the prejudice that comes with that, or we have to elect not to rely on the opinion and then produce otherwise privileged documents that would not otherwise be produced in this case."); *see also* Joint Meet and Confer Statement of May 23, 2006, at 12-14 (Dkt #19) (Ex. 28).

[91] Order of February 15, 2007 (Dkt. # 40) (Ex. 31).

[92] Cisco Int. Resp. of July 17, 2007, at 7 (Ex. 32).

either (1) violated this Court's Order or (2) never had any such opinions to begin with and the entire issue was phony. In either improper event, Cisco's litigation tactic plainly was designed to waste both this Court's and Teles' time and resources.

**Cisco's Phony Request for Teles Source Code.** Cisco also requested that Teles make Teles' source code available for inspection even though it would have little relevance in this case as compared to the burden of producing it. Teles produced the code after much time, effort and expense on its part to locate a secure facility that could host the code near Cisco's counsel in Boston. Yet Cisco has never made any effort to inspect that code. Cisco's interest clearly was more in causing Teles delay and expense, rather than reviewing this marginally relevant source code.

**Cisco's Improper Discovery On Litigation-Funding.** The motive behind Cisco's litigation tactics also is apparent from its discovery requests. Cisco has maintained an indecorous interest in – and seeks discovery on - Teles' ability to pay for and continue this litigation.[93] This discovery plainly implicates privilege (among other obvious objections) and has almost no – if any – relevance to the substantive issues in this case. Quite obviously, however, this information is extremely valuable to Cisco in calibrating its strategy of intentional attrition.

**Invalidity Contentions.** Throughout discovery Cisco intentionally withheld its true invalidity contentions from Teles. Cisco consistently produced scant discovery responses listing countless validity challenges it never intended to pursue, but that would keep Teles busy. This is evident from Cisco's decision to seek reexamination based on only 7 of the 52 prior art validity challenges that Cisco sought to bury Teles with in this litigation.

---

[93] Cisco's 30(b)(6) Notice to Teles, Topic 49 (Ex. 33).

Cisco steadfastly withheld from its interrogatory responses to Teles the detailed invalidity contentions that Cisco silently was packaging together for its reexamination request.  For example:

- The portion of Cisco's reexamination request on the Farese '685 patent was – by itself – **over 150 pages** long[94]; in sharp contrast to the **mere four lines** Cisco gave Teles on this same patent.[95]

- The portion of Cisco's reexamination request for the Focseneanu '910 patent was **over 200 pages** long,[96] in sharp contrast to the **handful of pages** Cisco previously provided Teles on this same patent.[97]

- The portion of Cisco's reexamination request on obviousness based on just 7 prior art references was **over 300 pages**,[98] in sharp contrast to the mere **three pages** Cisco gave Teles on this issue for the 50+ references it was asserting in this case.[99]

And, as discussed, Cisco's reexamination request is based on *only seven* alleged prior art references.  Cisco's interrogatory response, however, raised *over forty* other prior art references with essentially no explanation about why they qualify as prior art or what Cisco alleges they disclose.  Cisco apparently intended to hide what prior art it actually thought would be at issue in this case in order to burden Teles with the delay and expense of keeping all of those 50+ prior art references at issue in the case.

**Non-Infringement Contentions.**  In over two years of litigation, Cisco has yet to provide Teles with proper noninfringement contentions specifying exactly which claim

---

[94] Cisco's Reexamination Request Excerpts at 67-217 (Ex. 8).

[95] Cisco Supp. Int. Response of July 27, 2007 at 4 and 14-15 (Ex. 35).

[96] Cisco's Reexamination Request Excerpts at 57-63, 108-306 (Ex. 8).

[97] Cisco Supp. Int. Response of July 27, 2007 at 5, 13-14 and Appendix G (Ex. 35).

[98] Cisco's Reexamination Request Excerpts at 311-646 (Ex. 8).

[99] Cisco Supp. Int. Response of July 27, 2007 at 13-15 (Ex. 35).

terms Cisco contends its accused products do not meet.  Indeed, **none** of Cisco's noninfringement claim charts – such as charts for claim 36 of the '902 Patent[100] have changed one iota despite Cisco purportedly "supplementing" them multiple times as hollow promises forestall Teles from seeking Court assistance.  In hindsight, Cisco's tactics are clear:  Cisco withheld the specificity that would have assisted Teles in moving the case forward so that Cisco could argue later for a stay on the eve of being held accountable for its discovery malfeasance.

   **Sample Products and Source Code.**  From very early in this case, Teles has been requesting Cisco to produce samples of the accused infringing products.  During a discovery conference on July 11, 2007, the Court ultimately ordered Cisco to produce various sample products (at cost) to Teles.[101]  Cisco, however, delayed complying with this Order and never provided a single product sample.  Cisco apparently never intended to produce the sample products all along, but delayed doing so long enough to file its reexamination request and stay motion.

   In summary, Cisco has done everything within its power to slow the progress of this case and to increase the expense and burden on Teles.  Cisco's requested stay is just another gambit to further increase the burden, prejudice, and expense on Teles.  Cisco

---

   [100] Cisco's Supplemental Noninfringement Charts of March 5, 2007, June 19, 2007 and July 27, 2007 (Ex. 34).

   [101] *See* Order of August 2, 2007 (Dkt # 46) (Ex. 36) (memorializing discovery teleconference with Court).

should not be further rewarded with additional delay, nor permitted to cite its own delay as a reason for yet further delay.[102]

### E.    Any Stay Should Be Limited In Scope

The facts and circumstances of this case strongly show that a stay is not warranted. In the event that the Court is inclined to grant a stay – which Teles strongly opposes – the stay should be limited in several ways.

**Partial Stay**. First, any stay of this litigation should be limited to only those '902 Patent validity challenges that Cisco did or could have raised in its reexamination request. And, as Cisco consistently argued throughout its stay motion, Cisco should be barred from litigating those validity challenges here.[103] Indeed, Cisco should be precluded from raising such validity challenges whether or not a stay is entered given its failure to properly disclose them in discovery and Cisco's other dilatory tactics.

**Allowable Claims**. Second, any stay should be lifted at the first indication by the Patent Office that any of the asserted claims may be allowable.[104] In that instance, it is likely that this case will proceed on at least the allowed claims, which substantially reduces – if not eliminates – any further benefit in awaiting completion of the reexamination.

---

[102] *See Wayne Automation Corp. v. R.A. Pearson Co.*, 782 F. Supp. 516 (E.D. Wash. 1991) (stay unwarranted because moving party instituted action, notified customers of the suit, allowed non-moving party to conduct extensive discovery).

[103] *See* Cisco Br. at 2 n.3 ("the third party who requested the reexamination may be estopped from making certain invalidity arguments in any subsequent or pending litigation"); *accord id.* at 4, 5, 7 (Cisco argues it "will be bound by the decision of the PTO and will be subject to estoppels effects from the reexamination proceedings").

[104] *See Broadcast Innovation, LLC v. Charter Comm'n., Inc.,* No. 03-CV-2223, U.S. Dist. LEXIS 46623, at *8 (D. Colo. July 11, 2006) (Explaining that a stay can be lifted "when preliminary reports from the Patent Office reveal that some of the claims at issue will survive reexamination.") (*citing Purolite Int'l, Ltd., v. Rohm & Haas Co.*, 24 U.S.P.Q. 2d (BNA)1857, 1860 (E.D. Pa. 1992)); *Rohm & Haas Co., v. Brotech*, Corp., 24 U.S.P.Q. 2d (BNA) 1369, 1372 (D. Del. 1992).

Importantly, even if all asserted claims are deemed allowable, the Patent Office still may proceed with the reexamination as to other claims.  Indeed, because this is an *inter partes* reexamination, even if the Patent Office finds all claims allowable, Cisco could tie-up the proceedings for years through the appeal process for reexaminations. This is a unique and disfavored artifact of the failed *inter partes* reexamination experiment in which the requester – Cisco – can control when the reexamination is completed.  By comparison, in *ex parte*-type reexaminations, only the patentee can appeal the Patent Office decision and, hence, the patentee can control when the reexamination ends.

**Cisco Delay**.  Third, any stay should be lifted if Cisco fails to timely file correct responses in the Patent Office when they are originally due.  This will ensure that Cisco does not – again – inject delay in the Patent Office through misfilings.

**Teles Litigation Counsel**.  Fourth, whether or not the Court grants a stay, clarification of the Protective Order is necessary to ensure that Teles' litigation counsel is not precluded from participating in the reexamination.  Cisco buried in the Protective Order that it drafted a provision in Paragraph 19 that may preclude those with access to certain Cisco's confidential information (such as litigation counsel) from being involved in "reexaminations" of any patents.[105]  At the time Cisco prepared the draft Protective Order, it was not contemplated by nor disclosed to Teles that Cisco would seek reexamination of *the very patents* at issue in this case.

Teles has made substantial investment in ensuring that its litigation counsel in this case understand the technology and prior art at issue here.  Cisco itself argues that "Cisco and Teles will in effect be litigating the validity of the '902 Patent before the PTO…"[106] It would unduly prejudice and increase the costs to Teles if it were now precluded from

---

[105] Protective Order at 15 (¶ 19) (Dkt # 37) (Ex. 37).

[106] Cisco Motion at 2.

using its current litigation counsel and required to retain and bring up to speed new litigation counsel to litigate these same patents and prior art in the Patent Office.[107]

**Preliminary Injunction**. Fifth, any stay should not preclude Teles from seeking a preliminary injunction. Such an injunction now may be necessary for Teles to protect itself from an otherwise highly disfavored *de facto* "compulsory license"[108] to Cisco during the long pendency of any reexamination. As discussed above, a few months ago Teles secured a substantial new opportunity to penetrate the U.S. market. That opportunity, however, may be quashed if Teles is forced to compete against its own technology as embodied in Cisco's accused infringing products. As mentioned above, the reexamination proceeding foreseeably could take over seven years. A stay pending *inter partes* reexamination could postpone permanent injunctive relief many years beyond that contemplated when the '902 Patent originally issued and was added to this case. As a result, Cisco's requested stay now injects into this case a substantially longer time before Teles could seek *permanent* injunctive relief. A stay, therefore, strongly tips the balance in favor of Teles seeking and the Court granting *preliminary* injunctive relief.

In conjunction with the ability to seek preliminary injunctive relief, (1) Teles should have continued access to Cisco's source code (e.g., simply let Teles' counsel and technical experts into the law firm building hosting the source code during business

---

[107] Notably, the same law firm representing Cisco in this case – Goodwin Proctor LLP – also is representing Cisco in its reexamination request before the Patent Office. Cisco's Reexam Request at 647 (Ex. 8).

[108] *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457 (Fed. Cir. 1988) (right to exclude others may not be compensated by payment of monetary damages, which amounts to a compulsory license in the face of continuing infringement); *see also Nat'l Football League v. Primetime 24 Joint Venture*, No. 98 Civ. 3778 1999 U.S. Dist. LEXIS 15261 at *4 (S.D.N.Y. Sept. 27, 1999) (where an infringer is likely to continue to infringe, "the failure to issue a final injunction will ordinarily be tantamount to the creation of a compulsory license[, which] is not . . . a desirable practice"); *Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230, 1233 (Fed. Cir. 1985) ("If monetary relief were the sole relief afforded by the patent statute then injunctions would be unnecessary and infringers could become compulsory licensees for as long as the litigation lasts.").

hours, which entails essentially no cost to Cisco) and (2) Cisco should produce the requested Cisco products that it already should have produced pursuant to this Court's Order prior to filing the instant motion. Without such source code and Cisco products, Teles may be prejudiced in seeking preliminary injunctive relief when rebutting the few noninfringement contentions that Cisco has identified in this case.

## IV.  RELIEF REQUESTED

For the foregoing reasons, the Court should deny Cisco's motion to stay this case pending reexamination of the '902 Patent.  Rather, the Court should enter Teles' Proposed Order accompanying this filing.  This Proposed Order is designed to put this case back on track and in the posture it should have been in the absence of Cisco's motion and other dilatory tactics.

Specifically, the Proposed Order provides that:

● Discovery shall continue immediately;

● Teles immediately may continue its access to Cisco's source code as it had prior to Cisco filing its stay motion;

● Teles shall receive from Cisco within 10 days the product samples Cisco was ordered to produce prior to filing its stay motion;

● Cisco is precluded from raising in this litigation any validity challenges that it could have, but did not raise, in its request for reexamination;

● The parties shall confer and submit to the Court a revised case schedule; and

● The Protective Order is clarified to permit Teles' litigation counsel to assist in the reexamination related proceedings in the Patent Office.

DATED: September 21, 2007                Respectfully submitted,

                                         TELES AG
                                         INFORMATIONSTECHNOLOGIEN
                                         By its attorneys,

                                         /s/David W. Long
                                         David W. Long, No. 458029
                                         Mark L. Whitaker, No. 435755
                                         HOWREY LLP
                                         1299 Pennsylvania Ave., NW
                                         Washington, DC 20004
                                         Tel.: (202) 783-0800
                                         Fax: (202) 383-6610

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on September 21, 2007, true and correct copies of the within and foregoing documents were served upon counsel of record for all parties via CM/ECF.

/s/David W. Long
David W. Long, No. 458029