# EXHIBIT 8

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| PATENT: | 7,145,902 |
| DATE OF ISSUE: | December 5, 2006 |
| DATE OF FILING: | June 22, 2005 as a Divisional of an Application filed October 7, 1997 based on a foreign application filed on October 7, 1996 |
| PATENTEE: | Sigram Schindler et al. |
| TITLE | METHOD FOR TRANSMITTING DATA IN A TELECOMMUNICATIONS NETWORK AND SWITCH FOR IMPLEMENTING SAID METHOD. |

Mail Stop: INTER PARTES REEXAMINATION
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

## REQUEST FOR *INTER PARTES* REEXAMINATION

*Inter Partes* reexamination under 35 U.S.C. §§ 311-318 and 37 CFR 1.913 of

United States Patent No. 7,145,902, "Method for Transmitting Data in a

Telecommunications Network and Switch for Implementing Said Method," which issued

on December 5, 2006, to Sigram Schindler et al. (the '902 patent), is respectfully

requested. A copy of the '902 patent is included herewith as Exhibit 1. The '902 patent

has not been deemed unenforceable. This request is brought on behalf of Cisco Systems,

Inc., a Delaware Corporation ("Requestor").

### A.    CLAIMS FOR WHICH REEXAMINATION IS REQUESTED AND DISCLOSURE OF CONCURRENT LITIGATION

*Inter Partes* reexamination of claims *36,* 37, 41, 54-58, 60-62, 64, 66, *68, 69,* 71,

75, *77,* 79, 82, *84,* 87, 90-91, *92,* 95, 98, *100,* 102, 104, *118,* and 119-125 of the '902

- 1 -

Pages 2-4 omitted, but available upon request.

*Farese, U.S. Patent No. 4,996,685 (Exhibit 9) at Abstract and Col. 11:66-12:5* (invention allowing a host computer "to dynamically change an ISDN access path ... between a packet switched connection and a circuit switched connection ... during the occurrence of the session ..." and "the host computer suitably instructs the Broker PC to change the communication channel during an on-going host session from circuit switched to packet switched as the communications needs of the host computer that occur during the host session change. This change occurs in a fashion that does not disrupt the host session and is substantially, if not totally, transparent to the user.");

*Focsaneanu, U.S. Patent No. 5,610,910 (Exhibit 6) at Abstract, Col. 4:31-33 & Figs. 8 and 13* (describing a new "access module" for telephony and data connections to the Internet and the PSTN: "The invention solves these problems by providing flexible and adaptable multiservice access to the networks. Customer requirements are checked by monitoring traffic on a local access at a connection request and/or during the established connection, and the local access is configured according to the transmission requirements." ... "It is another object of the invention to provide a system which can perform an alternate routing of services among transport networks.");

*Jonas, U.S. Patent No. 6,137,792 (Exhibit 7) at Col. 1:7-10, 2:64-3:2 and Figure 1* ("This invention relates to a method and system for enabling data transmission over a bypass circuit-switched network between two computers connected to a public packet-switched network, such as the Internet ..." "[T]here exists a need for a method and system to enable computer users communicating across the Internet to transmit at least a portion of the communication across a network having a low initial connection cost, such as a circuit-switched public phone network ...");

- 5 -

*Lucent Press Release of 9/17/96 (Exhibit 8)* (describing a new IP telephony server: "the network management software will be able to transparently route traffic over either intra/Internet or the public network. If the Internet was too congested, for instance, the server could switch the transmission back to the public network."); and

*Matsukawa, U.S. Patent No. 5,598,411 (Exhibit 10) at Col. 6:52-57* ("according to the present invention, when a fault is generated in the data communication by packet switching, or when a large amount of delay occurs in the transmission of data by packet switching, the data communication by packet switching is automatically changed to data communication by circuit switching").

In these references and in others discussed below, the prior art teaches the dynamic changing-over from packet-switching to line-switching, with the same purposes, structure and methods, not only between the packet-switched Internet and traditional circuit switched telephone networks, but also between other packet and circuit switched connections. The prior art itself repeatedly suggests various motivations for adopting this change-over, and even suggests that the concept of the mid-connection change-over can be implemented in various different networks. See, e.g., Farese, U.S. Patent No. 4,996,685 (Exhibit 9) at Col. 9:37-43 ("those skilled in the art will clearly realize that the teachings of the present invention can be readily applied to and incorporated within substantially any transmission network that can connect a host computer to a user through two or more separate communications connections that have different attributes ..."). Moreover, the '902 patent itself acknowledges that the technologies used in the alleged '902 invention are not novel. '902 patent at col. 6:45 ("The technologies used are known per se."). The patent also admits that the structure of the claimed switch consists of

- 6 -

Pages 7-18 omitted, but available upon request.

from a packet-switching transmission to a line-switching transmission could be done in response to a control signal, during an existing call, without interruption of the connection or a call set-up procedure. Not only had the problems of packet-switching transmissions been recognized, but it had also been realized that the establishment of a new connection over a line-switched network for alternate transmission of the data was an obvious solution to the problems. Specific technical solutions for creating a bypass line and causing a change-over of the communication had also been identified and disclosed in the prior art, including essentially identical structures of switches for performing the change-over.

Accordingly, Requestor respectfully requests that the Examiner issue a rejection of each of the issued claims of the '902 patent as unpatentable under 35 U.S.C. § 102 and § 103 in view of numerous prior art references provided herewith. Each and every element of the claims under reexamination is found in several and multiple references provided herewith when the claims are given the broad interpretation that Teles has advanced in the concurrent litigation. Therefore, a substantial new question of patentability is raised by these references.

More specifically, for the reasons set forth in the discussion and claim charts below, the following prior art references are anticipatory:

--      U.S. Pat. No. 5,610,910 (Focsaneanu '910) anticipates claims 36, 37, 54, 55, 56, 57, 58, 61, 64, 66, 68, 69, 71, 75, 77, 79, 82, 84, 87, 90, 91, 92, 95, 98, 100, 102, 104, 118, 119, 120, 122, 123, 124, and 125 of the '902 patent under 35 U.S.C. 102(a);

-- U.S. Pat. No. 6,137,792 (Jonas '792) anticipates claims 36, 37, 54, 55, 60, 61, 64, 66, 68, 69, 71, 75, 77, 79, 82, 84, 87, 90, 92, 95, 98, 100, 102, 118, 120, 121, 122, 123, and 124 of the '902 patent under 35 U.S.C. 102(a);

-- U.S. Pat. No. 4,996,685 (Farese '685) anticipates claims 36, 41, 54, 55, 60, 62, 64, 68, 69, 71, 75, 77, 79, and 82 of the '902 patent under 35 U.S.C. 102(a);

-- U.S. Pat. No. 5,732,078 to (Arango '078) anticipates claims 36, 37, 84, 90, 92, 98, 118, 120, 121, 122, 123, and 124 of2 the '902 patent under 35 U.S.C. 102(a);

-- U.S. Patent No. 5,598,411 (Matsukawa '411) anticipates claims 36, 68, 69, 71, 75, 77, 79, and 82 of the '902 patent under 35 U.S.C. 102(a); and

-- U.S. Pat. No. 5,347,516 (Yoshida '516) anticipates claims 36, 37, 54, 55, 56, 58, 62, 64, 68, 69, 71, 75, 77, 79, 82, 84, 87, 90, 92, 95, and 98 of the '902 patent under 35 U.S.C. 102(a).

Additionally, for the reasons set forth in the discussion and claim charts below, various combinations of prior art render the challenged claims invalid for obviousness, specifically:

-- Claim 36 of the '902 patent is obvious under 35 U.S.C. 103(a) over Focsaneanu '910 in view of Jonas '792 or Farese '685 or Arango '078 or Matsukawa '411 or Yoshida '516 and the Lucent Press Release of 9/17/96 ("Lucent");

-- Claim 37 of the '902 patent is obvious under 35 U.S.C. 103(a) over Focsaneanu '910 in view of Jonas '792 or Arango '078 or Farese '685 or Yoshida '516;

-- Claim 41 of the '902 patent is obvious under 35 U.S.C. 103(a) over Focsaneanu '910 in view of Farese '685 and Jonas '792 or Arango '078;

- 20 -

Pages 21-56 omitted, but available upon request.

*Co.*, 948 F.2d 1264, 1268, 20 USPQ2d 1746, 1749 (Fed. Cir. 1991) ("To serve as an anticipation when the reference is silent about the asserted inherent characteristic, such gap in the reference may be filled with recourse to extrinsic evidence"). This principle of filling the "gap" by showing inherent properties of an anticipating reference through extrinsic evidence also does not offend the requirement that reexamination be based on patents or printed publications. "Affidavits or declarations which explain the contents or pertinent dates of prior patents or printed publications in more detail may be considered in reexamination . . . ." *See* MPEP § 2258.

Details of the anticipation of the various claims by each of the references is provided in the following charts, on a claim-by-claim basis:

**1. Detailed Claim Analysis ('902 Patent Claim 36)**

'902 Patent Claim 36 is anticipated under 35 U.S.C. 102(a) and 102(e) by U.S. Patent No. 5,610,910

| | Claim 36 | Focsaneanu '910 |
|---|---|---|
| 36 | A method for transferring data selectively by line switching or by packet switching from a first switch to a second switch, the first switch being part of or having access to a line-switching network and a packet switching network, comprising: | Focsaneanu '910 teaches the method of transferring data selectively by line switching or by packet switching (see Figs. 7 and 8; Col. 7:10-15 and 9:14-22) from a first switch (Access Module Figs. 7, 8 and 13) to a second switch ("Local Switch" of PSTN Network 212 or 216 Fig. 7; or far "local switch" Figs. 4, 5 and 6), the first switch (Access Module) being part of or having access to a line-switching network (PSTN Network Figs. 7, 8 and 13) and a packet switching network (Data Network Figs. 7, 8 and 13). US Patent 7,145,902 (the '902 patent) defines and describes the term "switch" broadly. "A line switch, alias line switching equipment, is called telecommunications apparatus (TK apparatus) in the private sector, and exchanges of the network supplies in the public sector. A packet switch, alias packet switching apparatus, is also called a router, an IP switch or a host computer." '902 patent Col.1:29-33 At the beginning of the DETAILED DESCRIPTION OF |

- 57 -

| Claim 36 | | Focsaneanu '910 |
|---|---|---|
| | | THE PREFERRED EMBODIMENTS OF THE INVENTION section of the specification of Focsaneanu '910, Figures 4, 5 and 6 are discussed. FIG. 4 illustrates "how telephone sets and computers are connected through today's PSTN, which is a circuit switched network of which, in this case, two local switches are shown." Col. 5:47-6:2. FIG. 5 shows diagrammatically how telephone sets and computers are connected through a PSTN in the known ISDN environment. Col.6:3-27. FIG. 6 is an illustration of another known instance where a connection is desired between an ISDN terminal and an ordinary telephone or a computer, both connected through an analog subscriber loop. Col.6:28-44. Figures 4, 5, and 6 each disclose a complete PSTN or Data Network with a first end terminal (CPE) connected to its Local Switch and a second end terminal (CPE) connected to its local switch. The purpose of discussing Figures 4, 5 and 6 at the beginning of the detailed description of the invention is to avoid describing the full PSTN and Data Network in each of the following figures in the patent, which use abbreviated symbols for the PSTN and Data Networks. However, the description in the specification makes clear what is described and disclosed is a full network with a near CPE connected through the PSTN or Data network to a distant local switch and CPE.<br><br>"FIG. 7 illustrates diagrammatically the invention embodied in the actual environment, in which a plurality of different types of CPEs can access a plurality of different types of services provided by service providers which may utilize different types of transport networks, e.g. PSTN 212 and data switched networks 214." Col. 7:10-15. The PSTN and Data Networks in Fig. 7 show the connection of CPEs to the Access Module; however the connection to DTEs at the distant end of the PSTN and Data Networks are not shown in Fig.7. Several embodiments show both the near and distant CPEs attached to the Access Module or local switch of the PSTN and/or Data Networks, for example the embodiments of Figs. 4-6, 9, 10, and 11.<br><br>Figures 8, and 12-15 show details of the Access Module in exploded views, and therefore show abbreviated symbols for the PSTN and Data Networks, however it is clear from the disclosure in the specification that each of |

- 58 -

Pages 59-61 omitted, but available upon request.

| Claim 36 | | Focsaneanu '910 |
|---|---|---|
| | | determining the routing, converting the address and/or the protocol and routing the extracted information content and/or protocol altered information content to appropriate network resources and one or more similar or dissimilar CPEs according to the information stored in the storage, a CPE request, or network status information obtained from the network resources..." |
| 36(d) | d) establishing the line-switching connection through the line-switching network to the second switch in response to said control signal, if the line-switching connection is not yet present; and | Focsaneanu '910 teaches establishing a line-switching connection through the line-switching network (PSTN Network Figs. 7, 8 and 13) to the second switch ("Local Switch" of PSTN Network 212 or 216 Fig. 7; "Local Switch" of PSTN Network 360 Fig. 10; or far "local switch" Figs. 4, 5 and 6) in response to said control signal (from Controller 252 to Processor 246 in response to "identifying circuit" of transceiver 238 Fig. 7), if the line-switching connection is not yet present.<br><br>Focsaneanu '910 teaches that a "request for POTS service, for example by using a DTMF symbol "*" or "#"[which is picked up by the "identifying circuit" of transceiver 238 and transferred to Controller 252 to look up database information and signal Processor 246 Fig. 7], is interpreted as a request for dial tone... [and the] POTS personality is then downloaded to the line interface and the processor provides the physical interface to the user's copper loop. The request for dial tone is passed to the local circuit switch [second switch], e.g. via TR-303 protocol." Col. 10:7-16; Col. 7:67-8:14. A physical line switching connection is established.<br><br>Focsaneanu '910 also teaches that a "change of mode can be ... a result of an automated non-intrusive observation of the channel..." where the Access Module monitors communications activity. 10:20-24. "FIG. 13 shows ... the access module can dynamically select a different network from the one prescribed in the user profile, to carry the packetized data traffic. This alternate selection will not adversely impact the quality of service (QOS). An example of the use of this capability is to route data traffic on PSTN [line switching network] during low traffic load periods....The voice service QOS is maintained by continuous monitoring of the transmission delay." 11:7-15. |

LIBA/1819814.2

| | Claim 36 | Focsaneanu '910 |
|---|---|---|
| 36(e) | e) changing-over from the packet-switching data transfer of the data packets through the packet switching network to a line-switching data transfer in response to said control signal and transferring data over the line switching connection to the second switch. | Focsaneanu '910 teaches (the processor enables) changing-over from the packet-switching data transfer of the data packets through the packet switching network (Data Network Figs. 7, 8 and 13) to a line-switching (POTS) data transfer in response to said control signal (from Controller 252 to Processor 246 in response to "identifying circuit" of transceiver 238 Fig. 7) and transferring data over the line switching connection (PSTN Network Figs. 7, 8 and 13) to the second switch (Local Switch" of PSTN Network 212 or 216 Fig. 7; "Local Switch" of PSTN Network 360 Fig. 10; or far "local switch" Figs. 4, 5 and 6).

"A processor 246 performs a selection and enablement of either POTS service [Line Switching] or data services [Packet Switching] in response to the identifying circuit." Col. 8:12-15.  Focsaneanu '910 discloses dynamically selecting a network to transfer a call from a Data network (packet-switching) to a PSTN network (Line-switching).  A basic change over is first described: "...change of mode can be ... a result of an automated non-intrusive observation of the channel..." where the Access Module monitors communications activity. 10:20-24.  Later in the specification Focsaneanu '910 discloses completing such a change over dynamically: "FIG. 13 shows ... the access module can dynamically select a different network from the one prescribed in the user profile, to carry the packetized data traffic. This alternate selection will not adversely impact the quality of service (QOS). An example of the use of this capability is to route data traffic on PSTN [line-switching network] during low traffic load periods....The voice service QOS is maintained by continuous monitoring of the transmission delay." 11:7-15.

Focsaneanu '910 also discloses dynamic conversion of voice call data for the purpose of completing a call on one network that was started on a different network, dynamic mid call switching.  "The access module also has the capability of providing conversion between packetized voice and PCM to allow for alternate routing. This allows the use of a multiplicity of access and transport networks in the establishment, translation, and completion of a service transaction by the access module under the control of the end user." 13:22-34.  Dynamic mid call switching is further confirmed by the following |

Pages 64-66 omitted, but available upon request.

| Claim 36 | Jonas '792 |
|---|---|
| switching connection to the second switch. | network. |

**'902 Patent Claim 36 is anticipated under 35 U.S.C. 102(a) and 102(e) by U.S. Patent No. 4,996,685**

| | Claim 36 | Farese '685 |
|---|---|---|
| 36 | A method for transferring data selectively by line switching or by packet switching from a first switch to a second switch, the first switch being part of or having access to a line-switching network and a packet switching network, comprising: | Farese '685 teaches "A technique is disclosed for use in conjunction with an ISDN communications system for permitting a host computer, that is executing a host session with a user and is connected through the system, to dynamically change an ISDN access path, that connects the user to the host computer and carries the host session therebetween, between a packet switched connection and a circuit switched connection during the occurrence of the session in order to provide the particular connection that is most suited to the communication requirements of a task currently being executed during the session by the host computer. Any such dynamic change of the ISDN access path is invoked by the host computer, does not disrupt the host session and is substantially transparent to the user." Abstract. <br><br> In Figure 1, an origin end terminal 10 is depicted as the first end terminal, and one or more hosts 70 are depicted as the destination end terminals. <br><br> Figure 1 of Farese '685 also shows a network termination 18 as a first switch and a network termination 40, as a second switch, with an ISDN switch or ISDN network switches 30 located in between, with both network termination devices having or providing access to a packet-switching network consisting of D-Channel connections among the various switches of the ISDN network, and also to a line-switching network consisting of B-Channel connections among the various switches of the network.  See also Cols. 1:27-48; 11:21-25 ("Although, a single ISDN switch is shown at one central office, this switch would in actuality likely be replaced by an ISDN network that contains multiple ISDN switches inter-connected by appropriate end-to-end transport and toll switching facilities."); Col. 11:36-37 ("Host system 70 illustratively contains independent |

- 67 -

| | Claim 36 | Farese '685 |
|---|---|---|
| | | host computers 70-1 and 70-2 ..."). "System 5 can accommodate a multitude of users to dynamically change the ISDN channel (between circuit and packet switched) used by each user in accordance with communication requirements of each corresponding host session thereby dynamically matching the available communication bandwidth to the host task presently being executed for that user." Col. 13:3-13:9. |
| | | Farese '685 teaches "With this arrangement, an ISDN switch can provide either a circuit switched connection or a packet switched connection to a caller. A circuit switched connection, which can only occur on the "B" channel, provides a multiplexed communication path, in e.g. space and/or time division multiplexed fashion, between the calling and called parties that lasts throughout the entire duration of the call. As such, only one call is able to use any given switched connection through the network at any one time. In contrast, a packet switched connection merely relies on queuing packets of data at an ISDN switch for transmission between a caller, frequently a user, and a called party, typically a host computer, and then sequentially transmitting those packets, from point to point within the packet network that forms part of the ISDN as transmission capacity becomes available therebetween. Inasmuch as each user of a packet switched connection merely requires a separate address in a memory of a local switch, e.g. a memory location, to which packets can be transmitted and from which packets can be received and hence consumes relatively few network resources throughout the duration of the call, many different packet switched calls can share all the remaining network facilities, including identical communication paths." Col. 1:47-2:3. |
| 36(a) | a) packetizing the data into data packets in the first switch if the data does not yet exist as data packets; | Farese '685 teaches that, within the User PC, the in-slot terminal adapter 14 performs a packetizing function if necessary. 10:53-55 ("In addition, the terminal adapter also provides the PAD function as defined by CCITT Recommendation X.3. For detailed information regarding this function, the reader is referred to "packet Assembly/Disassembly Facility (PAD) in a Public Data Network,", CCITT Recommendation X.3, 1984 ..." |
| 36(b) | b) transferring | Farese '685 teaches "Within the ISDN, an ISDN access |

- 68 -

Pages 69-106 omitted, but available upon request.

| Claim 66 | Focsaneanu '910 |
|---|---|
| which transferring the data through the packet-switching network comprises transferring the data through the Internet. | the Internet. <br><br> "As personal computers are found in more homes, users of computer networks such as "Internet" by way of telephone networks through modems are increasing in phenomenal numbers." Col. 1:20-23. Today, telephone networks are becoming increasingly more occupied by data traffic which generates no additional revenues to the local exchange carriers. Furthermore, access to worldwide computer networks, such as "Internet" etc. is now being provided by commercial network service providers, such as America Online," "SprintLink" etc. Col. 2:51-54. <br><br> "As discussed earlier, the number of subscribers to "Internet" is growing at a very fast pace and it is expected that growth in the usage of data networks will continue. Access to such data networks through the existing telephone network and subscriber's loop is very inefficient and cumbersome. The invention solves these problems and helps to create one global data network with capabilities which are presently found in local area networks (LANs)." Col. 6:45-53. <br><br> Focsaneanu '910 provides the functionality for sending and receiving information through the packet-switched network and over the internet by providing for in the disclosed invention "the translation of an Internet address to a packet data address for delivery to a packet network user." Col. 13:62-64. |

**'902 Patent Claim 66 is anticipated under 35 U.S.C. 102(a) and 102(e) by U.S. Patent No. 6,137,792**

| | Claim 66 | Jonas '792 |
|---|---|---|
| 66 | The method of claim 35 or 36, in which transferring the data through the packet-switching network comprises transferring the data through the Internet. | As shown in Fig. 1 of the Jonas '792 patent, "…hosts 1 and 2 would transmit data to each other through routers 20 and 21 over the Internet 40." Col. 4:13-14. |

- 107 -

**14. Detailed Claim Analysis ('902 Patent Claim 68)**

'902 Patent Claim 68 is anticipated under 35 U.S.C. 102(a) and 102(e) by U.S. Patent No. 5,610,910

| Claim 68 | Focsaneanu '910 |
|---|---|
| 68 | Switching apparatus for selectively routing a telephone call from a first end terminal to a second end terminal, comprising: | Focsaneanu '910 discloses a switching apparatus (Access Module) for selectively routing a telephone call from a first end terminal (CPE or data terminal, POTS phone, ISDN terminal or fax) to a second end terminal (CPE). See Figs. 4-15. |

Focsaneanu '910 discloses that "the majority access [the] 'Internet' by dial-up telephone connection" as shown in FIG. 1. A telephone, fax, computer and other intelligent agents are typically connected through a publicly switched telephone network and data networks and their interconnections. Terminal equipment at a customer premise consist of a telephone set, fax machine, a personal computer etc., and are collectively called CPE which stands for customer premise equipment. CPE 10 is connected ...to an Access Module (e.g. linecard) 16. The linecard is in turn connected to a local switch 18 that is part of the public switched telephone network (PSTN) 20. The PSTN network provides continuous connection to another subscriber depicted as phone 22 in Fig. 1. Col. 1:31-46. It is well understood that PSTN networks and Data Networks are connected to CPEs, which subscribe to the network's services as shown by Telephone 10 and telephone 22 of Fig. 1.

Fig. 1 "also shows a connection involving a data network. For such a connection, the CPE (e.g. computer) also requires a telephone subscriber's loop to the PSTN by dialup service which connects to a data service provider 26 through its own subscriber's loop 28. The data service provider 26 then provides a data connection through a data network 30 to a database service or other data service subscribers [CPEs]."

"FIG. 7 illustrates diagrammatically the invention embodied in the actual environment, in which a plurality of different types of CPEs can access a plurality of different types of services provided by service providers which may utilize different types of transport networks, e.g. PSTN 212 and data switched networks 214." Col.

- 108 -

| Claim 68 | | Focsaneanu '910 |
|---|---|---|
| | | 7:10-15. The PSTN and Data Networks in Fig. 7 show the connection of CPEs to the Access Module; however the connection to DTEs at the distant end of the PSTN and Data Networks are not shown in Fig.7. Several embodiments show both the near and distant CPEs attached to the Access Module or local switch of the PSTN and/or Data Networks, for example the embodiments of Figs. 4-6, 9, 10, and 11.<br><br>Figures 8, and 12-15 show details of the Access Module in exploded views, and therefore show abbreviated symbols for the PSTN and Data Networks, however it is clear from the disclosure in the specification that each of the PSTN and Data Networks has subscribers with CPEs at the other end. For example, "FIG. 15 shows one embodiment which illustrates ... [a] digital loop... [to] support a voice and a data call simultaneously." Col. 12:51-54. The need to support a voice call only exists if the system is intended to connect the near CPEs shown in Fig. 15 with distant CPEs which are not shown. Another example of a telephone call between near and distant CPEs in the specification describes "...the correlation of an Internet user address with his PSTN address for delivery of voice traffic originated on a computer to a telephone set." Col. 13:64-67. This example illustrates the use of one's computer (first CPE) to send a voice call to a phone (second CPE) connected to a PSTN network. Although Fig. 15 does not explicitly show a distant CPE, the specification discloses a phone call to a second CPE, and Figs. 4-6 show the full PSTN and Data Networks that are abbreviated in Figs. 7, 8, and 12-15. |
| 68(a) | a device that provides access to a packet switching network through which data can be sent for delivery to the second end terminal; | Focsaneanu '910 discloses an Access Module that provides access to a packet switching (Data) network through which data can be sent for delivery to a second end terminal (CPE).<br><br>The '910 patent teaches the Access Module has access to a line-switching network and a packet switching network: "FIG. 7 illustrates diagrammatically the invention embodied in the actual environment, in which a plurality of different types of CPEs can access a plurality of different types of services provided by service providers which may utilize different types of transport networks, e.g. PSTN 212 and data switched networks 214....The access module 208 connects service |

LIBA/1819814.2

Pages 110-215 omitted, but
available upon request.

| Claim 79 | Yoshida '516 |
|---|---|
| | transmitted for a unit time. By indicating the line switch in the call control in response to the call request, the virtual circuit can be set up through the line switch. Use of the line switch improves the throughput of the data but is not economical when a decreased number of data packets are transmitted for a unit time." Col. 1:55-65. The channel changer 29 produces the trigger signal as a channel change signal. Col. 5:56-57. The channel changer is not part of the packet data equipment 11 of the end user, but is part part of the network management system in the "ISDN Access System" of Figure 1. |

### 20. Detailed Claim Analysis ('902 Patent Claim 82)

'902 Patent Claim 82 is anticipated under 35 U.S.C. 102(a) and 102(e) by U.S. Patent No. 5,610,910

| Claim 82 | Focsaneanu '910 |
|---|---|
| 82 | The method as claimed in claim 77, which includes a network management system producing the control signal. | Focsaneanu '910 discloses a control signal produced by a network management system. Although the term "network management system" is not defined in the '902 patent, all of the "network management" functions disclosed in the '902 patent are performed by access module 234 in Fig. 8 of Focsaneanu '910. For example, transceiver 238 identifies traffic on the network and controller 252 performs identification of the type of service requested, address conversion, protocol conversion, rerouting etc., and exchanges packetized data formed at PAD 254 (packet assembly/disassembly) with the data network in accordance with information stored in the database 248. (8:19-26.) Controller 252 accesses the database 248 to perform protocol conversion, rerouting, and "other information which may be required by transport networks for better management." (8:30-33) "Transceiver 606 monitors the traffic coming in from both directions. The access module has a database or access to a database storing the user profile, the available communications resources and the status of these resources. Upon identification of the type of service requested by the user, a processor 610 of the access module determines an intelligent method of handling the customer traffic by consulting the information." Col. |

| Claim 82 | | Focsaneanu '910 |
|---|---|---|
| | | 11:60-67. |
| | | See also claim 42 of the '910 patent: "a controller for determining the routing, converting the address and/or the protocol and routing the extracted information content and/or protocol altered information content to appropriate network resources and one or more similar or dissimilar CPEs according to the information stored in the storage, a CPE request, or network status information obtained from the network resources..." |

**'902 Patent Claim 82 is anticipated under 35 U.S.C. 102(a) and 102(e) by U.S. Patent No. 6,137,792**

| Claim 82 | | Jonas '792 |
|---|---|---|
| 82 | The method as claimed in claim 77, which includes a network management system producing the control signal. | The '792 patent discloses a network management system for managing network traffic flow. "One such method for optimizing a data path is taught in U.S. Pat. No. 5,088,032 to Leonard Bosack entitled 'Method and Apparatus for Routing Communications Among Computer Networks,' which discloses a method of dynamically routing data packets across a computer network (such as the Xerox ETHERNET System or the IBM Token Ring System) having multiple alternative paths." Col. 1:53-60. |

**'902 Patent Claim 82 is anticipated under 35 U.S.C. 102(a) and 102(e) by U.S. Patent No. 4,996,685**

| Claim 82 | | Farese '685 |
|---|---|---|
| 82 | The method as claimed in claim 77, which includes a network management system producing the control signal. | Farese '685 teaches this limitation in the following disclosures.<br>The host computer 70, by determining whether and when to issue the change-over control instructions, and working together if necessary with a second "Broker PC," functions as a network manager for the system. See, e.g., col. 20:62-23:36 & especially 21:68-22:4 ("the "transition requests messages [from the host] are interpreted by the Broker PC as discussed above to dynamically manage the ISDN connection"). |

- 217 -

| Claim 82 | | Farese '685 |
|---|---|---|
| | | Management of the ongoing packet-switching connections by the host computer could involve monitoring the ongoing packet switching traffic and determining whether certain thresholds are exceeded. See, e.g., 23:26-36 ("the host computer could analyze the actual communication occurring between itself and a user and decide, based upon various pre-defined rules that specify specific thresholds for e.g., during and/or amount of communication flowing in each direction between the user and the host computer, which type of access path should be established for any given situation and then, based upon whether these thresholds were exceeded or not, dynamically change the type of ISDN access path accordingly"). See also col. 34:18-25 ("Furthermore, the host computer could employ a suitable algorithm which statistically determines on a global basis, based upon illustratively queues of messages and packets awaiting transport through the ISDN, arrival rates of messages and packets at their destinations and /or ongoing distribution of traffic flow throughout the ISDN, whether a B or D channel ISDN connection should be used in a given situation.") |

**'902 Patent Claim 82 is anticipated under 35 U.S.C. 102(a) and 102(e) by U.S. Patent No. 5,598,411**

| | Claim 82 | Matsukawa |
|---|---|---|
| 82 | The method as claimed in claim 77, which includes a network management system producing the control signal. | Matsukawa '411 discloses that the control signal is produced automatically by Timer T2 in the network management system and not by the user. See col. 1:43-1:47; Col. 1:48-1:52, Col. 4:11-4:45; Col. 5:38-6:10; Col. 6:11-6:26. |

**'902 Patent Claim 82 is anticipated under 35 U.S.C. 102(a) and 102(e) by U.S. Patent No. 5,347,516**

| | Claim 82 | Yoshida '516 |
|---|---|---|
| 82 | The method as | Yoshida '516 discloses and describes a network |

- 218 -

LIBA/1819814.2

Pages 219-304 omitted, but available upon request.

'902 Patent Claim 124 is anticipated under 35 U.S.C. 102(a) and 102(e) by U.S. Patent No. 5,732,078

| Claim 124 | | Arango '078 |
|---|---|---|
| 124 | The method as claimed in claim 118, wherein the switch provides access to the Internet, the packet switching of the IP data packets from the switch is initiated over the Internet, and the method includes changing over at the switch from the packet switching of the IP data packets from the switch, to line switching of the IP data packets from said at least one of the origin end terminals to said destination end terminal. | At 13:55-14:2, the Arango patent states: "Thus, the access points contain a connection to the guaranteed bandwidth network and a connection to the Internet backbone (best effort wide area network). The access points perform the negotiation for setting up the guaranteed, continuous bandwidth communication by exchanging packets via the Internet backbone. The access point performs the IP-to- guaranteed bandwidth network address translation. The access points also establish the guaranteed continuous bandwidth channel on the guaranteed bandwidth network. Furthermore, the access points perform the re-rerouting of selected guaranteed bandwidth packets, so that they are transmitted via the guaranteed bandwidth channel, and routed packets received from the guaranteed bandwidth channel to the appropriate host connected thereto."<br><br>Another device referred to as the access point manager 430 in Figure 8 also maintains a database to facilitate this process, as described in part at 17:29-41: "As noted above, the access point manager 430 keeps track of the available bandwidth on all local end guaranteed bandwidth routers that can be used for time-sensitive communications at the access point. The access point manager 430 provides such bandwidth information to the route controller agent 420 when requested. The access point manager 430 also maintains the IP and guaranteed bandwidth network addresses of all of the local end guaranteed bandwidth routers that it manages. The access point manager 430 also instructs, via the interface handlers 440, the appropriate local end guaranteed bandwidth router in updating its routing table to route packets in the desired manner described above." |

**38. Detailed Claim Analysis ('902 Patent Claim 125)**

'902 Patent Claim 125 is anticipated under 35 U.S.C. 102(a) and 102(e) by U.S. Patent No. 5,610,910

| Claim 125 | | Focsaneanu '910 |
|---|---|---|

LIBA/1819814.2

| | Claim 125 | Focsaneanu '910 |
|---|---|---|
| 125 | The method as claimed in claim 118, which includes the switching multiplexing the data of several origin end terminals over a single line-switched connection. | Focsaneanu '910 discloses multiplexers in each of the embodiments shown in Figs. 8 and 13-15 "for multiplexing functions of signals from other line interfaces 256 by MUX 258." Col. 8:24-26. The line switching device includes a multiplexer for multiplexing data of several origin end terminals over a single line connection through the line-switching network. |

## H.    OBVIOUSNESS IN VIEW OF THE PRIOR ART – OVERVIEW

### 1.    The Law of Obviousness

Recent decisions by the United States Supreme Court, the Federal Circuit, and the Board of Patent Appeals and Interferences have reviewed and strengthened the standards for determining when a claimed invention is invalid as obvious. The Board's decision in *Ex Parte Catan*, 2007 WL 1934867 (July 3, 2007) at *9, quotes the Supreme Court's decision in *KSR Int'l Co. v. Teleflex, Inc.*, 127 S.Ct. 1727, 1734 (2007), as reaffirming that "Section 103 forbids issuance of a patent when 'the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." *See* 35 U.S.C. § 103(a) (1994); and *Graham v. John Deere Co.*, 383 U.S. 1, 13-14 (1966).[20] The ultimate determination of whether an invention is or is not obvious is a legal conclusion based on underlying factual inquiries including: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) objective evidence of nonobviousness. *See Graham*, 383 U.S. at 17-18; and *Miles Labs., Inc. v. Shandon Inc.*,

---

[20] Similar conclusions were reached by the Board in *Ex parte Smith*, 2007 WL 1813761 (June 25, 2007) at *8-11, which also upheld the Examiner's final rejection of proposed claims on obviousness grounds.

LIBA/1819814.2

Pages 307-310 omitted, but available upon request.

Details of the obviousness of the various claims by each of the combination of references is provided in the charts provided below, on a claim-by-claim basis.

### 1. Detailed Claim Analysis ('902 Patent Claim 36)

Claim 36 of the '902 patent is obvious under 35 U.S.C. 103(a) over Focsaneanu '910 in view of Jonas '792 or Farese '685 or Arango '078 or Matsukawa '411 or Yoshida '516 and the Lucent Press Release of 9/17/96 ("Lucent");

| | Claim 36 | Focsaneanu '910 in view of Jonas '792, Farese '685, Arango '078, Matsukawa '411, Yoshida '516 and Lucent |
|---|---|---|
| 36 | A method for transferring data selectively by line switching or by packet switching from a first switch to a second switch, the first switch being part of or having access to a line-switching network and a packet switching network, comprising: | **Focsaneanu '910**<br><br>Focsaneanu '910 teaches the method of transferring data selectively by line switching or by packet switching (see Figs. 7 and 8; Col. 7:10-15 and 9:14-22) from a first switch (Access Module Figs. 7, 8 and 13) to a second switch ("Local Switch" of PSTN Network 212 or 216 Fig. 7; or far "local switch" Figs. 4, 5 and 6), the first switch (Access Module) being part of or having access to a line-switching network (PSTN Network Figs. 7, 8 and 13) and a packet switching network (Data Network Figs. 7, 8 and 13).<br><br>US Patent 7,145,902 (the '902 patent) defines and describes the term "switch" broadly. "A line switch, alias line switching equipment, is called <u>telecommunications apparatus</u> (TK apparatus) in the private sector, and <u>exchanges</u> of the network supplies in the public sector. A packet switch, alias packet switching apparatus, is also called <u>a router, an IP switch or a host computer</u>." '902 patent Col.1:29-33<br><br>At the beginning of the DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS OF THE INVENTION section of the specification of Focsaneanu '910, Figures 4, 5 and 6 are discussed. FIG. 4 illustrates "how telephone sets and computers are connected through today's PSTN, which is a circuit switched network of which, in this case, two local switches are shown." Col. 5:47-6:2. FIG. 5 shows diagrammatically how telephone sets and computers are connected through a PSTN in the known ISDN environment. Col.6:3-27. FIG. 6 is an illustration of another known instance where |

| | Claim 36 | Focsaneanu '910 in view of Jonas '792, Farese '685, Arango '078, Matsukawa '411, Yoshida '516 and Lucent |
|---|---|---|
| | | a connection is desired between an ISDN terminal and an ordinary telephone or a computer, both connected through an analog subscriber loop. Col.6:28-44. Figures 4, 5, and 6 each disclose a complete PSTN or Data Network with a first end terminal (CPE) connected to its Local Switch and a second end terminal (CPE) connected to its local switch. The purpose of discussing Figures 4, 5 and 6 at the beginning of the detailed description of the invention is to avoid describing the full PSTN and Data Network in each of the following figures in the patent, which use abbreviated symbols for the PSTN and Data Networks. However, the description in the specification makes clear what is described and disclosed is a full network with a near CPE connected through the PSTN or Data network to a distant local switch and CPE.<br><br>"FIG. 7 illustrates diagrammatically the invention embodied in the actual environment, in which a plurality of different types of CPEs can access a plurality of different types of services provided by service providers which may utilize different types of transport networks, e.g. PSTN 212 and data switched networks 214." Col. 7:10-15. The PSTN and Data Networks in Fig. 7 show the connection of CPEs to the Access Module; however the connection to DTEs at the distant end of the PSTN and Data Networks are not shown in Fig.7. Several embodiments show both the near and distant CPEs attached to the Access Module or local switch of the PSTN and/or Data Networks, for example the embodiments of Figs. 4-6, 9, 10, and 11.<br><br>Figures 8, and 12-15 show details of the Access Module in exploded views, and therefore show abbreviated symbols for the PSTN and Data Networks, however it is clear from the disclosure in the specification that each of the PSTN and Data Networks has subscribers with CPEs at the other end. For example, "FIG. 15 shows one embodiment which illustrates ... [a] digital loop... [to] support a voice and a data call simultaneously." Col. 12:51-54. The need to support a voice call only exists if the system is intended to connect the near CPEs shown in Fig. 15 with distant CPEs which are not shown. Another example of a telephone call between near and |

Pages 313-644 omitted, but available upon request.

| | Claim 124 | Focsaneanu '910 in view of Jonas '792 and Arango '078 |
|---|---|---|
| | | bandwidth network and a connection to the Internet backbone (best effort wide area network). The access points perform the negotiation for setting up the guaranteed, continuous bandwidth communication by exchanging packets via the Internet backbone. The access point performs the IP-to- guaranteed bandwidth network address translation. The access points also establish the guaranteed continuous bandwidth channel on the guaranteed bandwidth network. Furthermore, the access points perform the re-rerouting of selected guaranteed bandwidth packets, so that they are transmitted via the guaranteed bandwidth channel, and routed packets received from the guaranteed bandwidth channel to the appropriate host connected thereto." Another device referred to as the access point manager 430 in Figure 8 also maintains a database to facilitate this process, as described in part at 17:29-41: "As noted above, the access point manager 430 keeps track of the available bandwidth on all local end guaranteed bandwidth routers that can be used for time-sensitive communications at the access point. The access point manager 430 provides such bandwidth information to the route controller agent 420 when requested. The access point manager 430 also maintains the IP and guaranteed bandwidth network addresses of all of the local end guaranteed bandwidth routers that it manages. The access point manager 430 also instructs, via the interface handlers 440, the appropriate local end guaranteed bandwidth router in updating its routing table to route packets in the desired manner described above." |

**38. Detailed Claim Analysis ('902 Patent Claim 125)**

Claim 125 of the '902 patent is obvious under 35 U.S.C. 103(a) over Focsaneanu '910 in view of Jonas '792 or Arango '078 and Lucent

| | Claim 125 | Focsaneanu '910 in view of Jonas '792, Arango '078 and Lucent |
|---|---|---|
| 125 | The method as claimed in claim | **Focsaneanu '910** Focsaneanu '910 discloses multiplexers in each of the |

- 645 -

| Claim 125 | Focsaneanu '910 in view of Jonas '792, Arango '078 and Lucent |
|---|---|
| 118, which includes the switching multiplexing the data of several origin end terminals over a single line-switched connection. | embodiments shown in Figs. 8 and 13-15 "for multiplexing functions of signals from other line interfaces 256 by MUX 258." Col. 8:24-26. The line switching device includes a multiplexer for multiplexing data of several origin end terminals over a single line connection through the line-switching network.<br><br>**Jonas '792**<br>Jonas '792 meets all of the claim limitations of claim 118 above. See claim 118 analysis.<br><br>**Arango '078**<br>Arango '078 meets all of the claim limitations of claim 118 above. See claim 118 analysis.<br><br>**Lucent**<br>One of ordinary skill in the art would recognize that a multiplexer device would be required to use "existing fax machines and telephones" over the same network. |

## I.    CERTIFICATION OF SERVICE ON PATENTEE

It is certified that a copy of this *Inter Partes* Reexamination Request has been served in its entirety on the patent owner as provided in 37 CFR § 1.33(c) on August 8, 2007. The name and address of the party served is as follows: Vincent M. DeLuca and Richard C. Auchtertonie, Novak, Druce, DeLuca & Quigg LLP, 1300 I Street, N.W., Suite 400 East Tower, Washington, D.C. 20005, A courtesy copy is being sent to Matthew J. Moore, Howrey LLP, 1299 Pennsylvania Ave., N.W., Washington, D.C. 20004.

LIBA/1819814.2

**J.     CERTIFICATION THAT ESTOPPEL DOES NOT PROHIBIT THE PRESENT *INTER PARTES* REEXAMINATION**

It is certified that the estoppel provisions of 37 CFR 1.907 do not prohibit this reexamination.

**K.     STATEMENT IDENTIFYING THE REAL PARTY IN INTEREST**

The real party in interest is the Requestor, Cisco Systems, Inc., a Delaware corporation.

**L.     REQUESTOR'S CORRESPONDENCE ADDRESS**

Direct all communications in this matter to the Requestor at the following address: Byron Cooper, Goodwin Procter LLP, Exchange Place, Boston, MA 02109.

**M.     CONCLUSION**

Substantial new questions of patentability of claims 36, 37, 41, 54-58, 60-62, 64, 66, 68, 69, 71, 75, 77, 79, 82, 84, 87, 90-92, 95, 98, 100, 102, 104, and 118-125 of the '902 patent is raised in view of the art cited and discussed above.

Accordingly, the Requester respectfully submits that reexamination of the Schindler '902 patent is warranted in view of the showing in this Request that substantial new questions of patentability are presented. Early notice of the grant of this Request is earnestly solicited.

Respectfully submitted,

CISCO SYSTEMS, INC.

Electronic signature: /Byron Cooper/
Byron Cooper
Registration No. 39,484

Customer No. 051414

Date: August 8, 2007

Exhibit 1 omitted, but available upon request.

# EXHIBIT 2

## Teles' Supplemental Response
## to Cisco's Interrogatory Nos. 1, 2, 3, 6, and 7

This portion of Exhibit 2 omitted, but available upon request.

## EXHIBIT A

# Preliminary Claim Chart (June 19, 2007)

## Exemplary Scenarios

Below are example scenarios in which the accused Cisco products infringe the '902 and '453 Patents. These are given for illustration purposes, and it should be understood that other scenarios may infringe the patents, such as different events or other combinations of accused Cisco products. For example, the packet-switched network is shown as the internet, but also could be a WAN. The line-switched network is shown as ISDN, but also could be other line-switched networks such as the PSTN or POTS. In addition, the telephones interfaced with Routers A and B could be represented by either analog telephones interfaced with the Router through Analog Telephone Adapters (ATA's), voice interface cards, high density network modules (NM-HDA's) or through a PBX or similar-type device interfaced with a Router. Similarly, the telephones interfaced with Routers A and B could be IP telephones interfaced with the Routers or interfaced to the routers by way of LAN. Additionally, a mix of analog and IP telephones could be interfaced with Routers A and B by way of appropriate interfaces. To interface to the ISDN, the Routers use an ISDN module or device. To interface to PSTN, the Routers can be realized by using integrated FXO or NM-HDA's, or similar modules or devices. In the scenarios below, the Routers use Call Manager Express, but similar functionality may result when using Cisco Call Manager.

**Scenario 1:**

Several telephones are connected to a Cisco Router A, including analog Telephones A1 and A2 that are connected to the Cisco Router A through a Cisco Analog Telephone Adapter (ATA). Router A also is connected to a packet-switched network (e.g., the Internet) and a line-switched network (e.g., ISDN through a Cisco ISDN module). Several telephones at another location are connected to Cisco Router B, including an analog Telephone B1 (connected through a Cisco ATA) and a Cisco IP Telephone B2. Router B also is connected to the Internet and ISDN (through a Cisco ISDN module). At some point, Router B reaches its limit on the maximum number of simultaneous IP connections it will allow – e.g., the limit is reached when a call is made from Telephone A1 to Telephone B1. A person then uses Telephone A2 to call a person at Telephone B2. After Router A transmits call data to Router B (e.g., a SIP Invite Request), Router B transmits an "Internal Server Error" to Router A. Router A then changes over the call from the Internet to the ISDN for the remainder of the call.



**Scenario 2:**

Several telephones (not depicted) are connected to a Cisco Router A, including an analog Telephone A that is attached to Router A through a Cisco analog telephone adapter (ATA). Router A also is connected to a packet-switched network (e.g., the Internet) and a line-switched network (e.g., ISDN through a Cisco ISDN module). Several telephones (not depicted) at another location are connected to Cisco Router B, including Cisco IP telephone B. Cisco Router B also is attached to the Internet and ISDN (via a Cisco ISDN module).

A person uses Telephone A to dial another person at Telephone B. Router A transmits data to Router B (e.g., a SIP Invite Request). Due to congestion or other problems with the Internet, Router A does not receive a response from Router B. Router A then changes over the call from the Internet to the ISDN for the remainder of the call.



This portion of Exhibit 2 omitted, but available upon request.

a packet-switching transfer to a second end terminal.

**CORRESPONDING STRUCTURES:** Structure disclosed in the '453 Patent for performing the claimed function include structure disclosed in the '453 Patent in Figures 1, 3 and 4 and columns 3, 7-9, 11 (e.g. switch 7a, switch 7, network management system, control device 71 or change-over control device 711).

**Intrinsic/Extrinsic Evidence:**

'453 Patent at Figs. 1, 3 and 4; cols. 3, 7, 8 and 9

'902 Patent at Claims 71, 79, 87, 95, and 100.

Cisco Voice over IP Fundamentals.

---

Exhibit E, pp. 2-6, 9-18).

With respect to the exemplary scenarios reference is made to the above.

**Exemplary Scenario 1:**

The means to produce control signal is represented by Router A automatically producing a control signal in response to receiving an "Internal Server Error" from Cisco Router B.

**Exemplary Scenario 2:**

The means to produce control signal is represented by Router A automatically producing a control signal in response to failing to receive a confirmation message from Router B.

**Exemplary Scenario 3:**

The means to produce control signal is represented by Router A automatically producing a control signal in response to receiving an "Internal Server Error" from Cisco Router B.

---

| '453 Patent: Claim 36 | Claim Construction and Intrinsic/Extrinsic Evidence | Infringement |
| --- | --- | --- |
| The switch of claim 34, wherein the data received from the first end terminal are analog data. | The terms in this limitation should be construed according to their ordinary meaning to a person of skill in the art in light of – but without improperly importing limitations from – the intrinsic and extrinsic evidence. | The limitations of Claim 34 are met, as discussed above. The accused devices have structure wherein the data received from the first end terminal are analog data. For example, as shown in Exhibit B (p. 2), data received from the first end terminal are analog data (e.g., data received from a non-IP telephone located at |

Exhibit A – Preliminary Claim Chart (June 19, 2007) – Page 79 of 81

| | |
|---|---|
| **Intrinsic/Extrinsic Evidence:**<br><br>'453 Patent at Figs. 1, 3 and 4; cols. 7-8<br><br>'902 Patent at Claim 61. | "Headquarters" or "Branch Offices").<br><br>With respect to the exemplary scenarios, reference is made to the above.<br><br>**Exemplary Scenario 1:**<br><br>It is understood that the architecture of Scenario 1 could be modified such that telephones A1 and A2 are analog phones interfaced with Router A through a PBX, which would transmit analog signals to Router A.<br><br>It is further understood that Router A and the ATA's of phones A1 and A2 could be considered the switch. Additionally, analog telephones could be interfaced to Router A by way of a voice interface card or a NM-HDA.<br><br>**Exemplary Scenario 2:**<br><br>It is understood that the architecture of Scenario 2 could be modified such that phone A was an analog phone interfaced to Router A through a PBX, which would transmit analog signals to Router A.<br><br>It is further understood that the ATA of phone A and Router A could be considered the switch. Additionally, analog telephones could be interfaced to Router A by way of a voice interface card or a NM-HDA.<br><br>**Exemplary Scenario 3:**<br><br>It is understood that the architecture of Scenario 1 could be modified such that telephones A1 and A2 are analog phones interfaced with Router A through a PBX, which would transmit analog signals to Router A.<br><br>It is further understood that the ATA's of phones A1 and A2 and Router A could be considered the switch. Additionally, analog telephones could be interfaced to Router A by way of a voice |

| | interface card or a NM-HDA. |
|---|---|

| '453 Patent: Claim 38 | Claim Construction and Intrinsic/Extrinsic Evidence | Infringement |
|---|---|---|
| The switch of claim 34, wherein the data received from the first end terminal are digital, non-packetized data. | The terms in this limitation should be construed according to their ordinary meaning to a person of skill in the art in light of – but without improperly importing limitations from – the intrinsic and extrinsic evidence.<br><br>**Intrinsic/Extrinsic Evidence:**<br><br>'453 Patent at col. 9. | The limitations of Claim 34 are met, as discussed above.<br><br>The accused devices have structure wherein the data received from the first end terminal are digital, non-packetized data.<br><br>As shown in Exhibit B (p. 2), data received from the first end terminal may be digital, non-packetized data (e.g., telephone located at "Headquarters" or "Branch Offices"). See generally, Cisco IP Communications Voice/Fax Network Module (Exhibit C); Cisco 1700, 2600, 2800, 3700 And 3800 Series Voice Gateway Router Interoperability With Cisco Call Manager (Exhibit B); PSTN Fallback for Cisco 7200 and 7500 Series Router (Exhibit D). |

Exhibit A – Preliminary Claim Chart (June 19, 2007) – Page 81 of 81

The remainder of Exhibit 2 and all subsequent exhibits omitted, but available upon request.