# EXHIBIT 12

# PATENT REFORM AND THE PATENT AND TRADEMARK OFFICE REAUTHORIZATION FOR FISCAL YEAR 2000

---

# HEARING

BEFORE THE

## SUBCOMMITTEE ON COURTS AND INTELLECTUAL PROPERTY

OF THE

## COMMITTEE ON THE JUDICIARY
## HOUSE OF REPRESENTATIVES

ONE HUNDRED SIXTH CONGRESS

FIRST SESSION

---

MARCH 25, 1999

---

## Serial No. 51



RECEIVED
OCT 5 - 2000
HOWREY & SIMON

Printed for the use of the Committee on the Judiciary

---

U.S. GOVERNMENT PRINTING OFFICE
62–505                              WASHINGTON : 2000

---

For sale by the U.S. Government Printing Office
Superintendent of Documents, Congressional Sales Office, Washington, DC 20402
ISBN 0-16-060781-7

## COMMITTEE ON THE JUDICIARY

HENRY J. HYDE, Illinois, *Chairman*

F. JAMES SENSENBRENNER, JR., Wisconsin
BILL McCOLLUM, Florida
GEORGE W. GEKAS, Pennsylvania
HOWARD COBLE, North Carolina
LAMAR S. SMITH, Texas
ELTON GALLEGLY, California
CHARLES T. CANADY, Florida
BOB GOODLATTE, Virginia
ED BRYANT, Tennessee
STEVE CHABOT, Ohio
BOB BARR, Georgia
WILLIAM L. JENKINS, Tennessee
ASA HUTCHINSON, Arkansas
EDWARD A. PEASE, Indiana
CHRIS CANNON, Utah
JAMES E. ROGAN, California
LINDSEY O. GRAHAM, South Carolina
MARY BONO, California
SPENCER BACHUS, Alabama
JOE SCARBOROUGH, Florida

JOHN CONYERS, JR., Michigan
BARNEY FRANK, Massachusetts
HOWARD L. BERMAN, California
RICK BOUCHER, Virginia
JERROLD NADLER, New York
ROBERT C. SCOTT, Virginia
MELVIN L. WATT, North Carolina
ZOE LOFGREN, California
SHEILA JACKSON LEE, Texas
MAXINE WATERS, California
MARTIN T. MEEHAN, Massachusetts
WILLIAM D. DELAHUNT, Massachusetts
ROBERT WEXLER, Florida
STEVEN R. ROTHMAN, New Jersey
TAMMY BALDWIN, Wisconsin
ANTHONY D. WEINER, New York

THOMAS E. MOONEY, SR., *General Counsel-Chief of Staff*
JULIAN EPSTEIN, *Minority Chief Counsel and Staff Director*

---

### SUBCOMMITTEE ON COURTS AND INTELLECTUAL PROPERTY

HOWARD COBLE, North Carolina, *Chairman*

F. JAMES SENSENBRENNER, JR., Wisconsin
ELTON GALLEGLY, California
BOB GOODLATTE, Virginia
WILLIAM L. JENKINS, Tennessee
EDWARD A. PEASE, Indiana
CHRIS CANNON, Utah
JAMES E. ROGAN, California
MARY BONO, California

HOWARD L. BERMAN, California
JOHN CONYERS, JR., Michigan
RICK BOUCHER, Virginia
ZOE LOFGREN, California
WILLIAM D. DELAHUNT, Massachusetts
ROBERT WEXLER, Florida

MITCH GLAZIER, *Chief Counsel*
BLAINE MERRITT, *Counsel*
VINCE GARLOCK, *Counsel*
DEBBIE K. LAMAN, *Counsel*
ROBERT RABEN, *Minority Counsel*
EUNICE GOLDRING, *Staff Assistant*

4

to continue that use, then do not let the use expand. Limit it to the scope.

The real issue here is small commercial user, somebody else patents it. The small commercial user sells to Behemoth Corporation. Then Behemoth Corporation then takes what was 10 units a month and makes 1,000 units a month.

So, if you need to have that prior commercial use, then it seems, out of some sense of fairness, although I confess again, it does convince me, but if that is the notion out of some sense of fairness or equity, then do not let it be expanded. Limit it to the scope of its present prior commercial use. That was my first point.

Second, I do not understand why we continue to need the 18-month disclosure if we take your route, Mr. Chairman, on a 20-year maximum from date of application. The argument for the 18-month disclosure for those patents not filed overseas, the argument was this is to prevent the submarine patent.

The inventor who hides his or her invention waiting for somebody else to commercialize it. Then when somebody else has put in all of the effort to commercialize it, surfaces and gets the patent because they were the first to file; having hidden it all of these years by motions to extend and other dilatory tactics.

You have taken care of that, it seems to me, by saying that in no event are you going to get more than 20 years from the date of filing. What you say then is 3 years is presumptively—any more than 3 years in the Patent Office is presumptively dilatory.

So, you end up with a 17-year effective patent term. That seems fine. But that, to me, solves the submarine patent issue. The last point on this one, and then I have only final point. If I am wrong on that, Lord knows I could be, you nevertheless make one slight, I think, overdraft in that you say 18 months' disclosure will apply if you file overseas, which is fair.

Overseas, there is mandatory disclosure after 18 months. So, why should not Americans have the publication as well. But you say not only if you file overseas, but unless you give up your right ever to file overseas—let me repeat that. It is not just if you file overseas, but if you fail to give up your right ever to file overseas, that is required in your draft. That is not necessary, it seems to me, because if you are filing overseas, fine. Then it is going to be publicly disclosed.

So, there is no reason why you should not have to disclose it here in America after 18 months. If you decide to file overseas many years from now, under economic conditions that are changed, you should not have to—that possibility now at this point by promising forever not to file overseas.

So, it is a small wording changing. It can be adjusted I think. Lastly, oh, I do not have any lastly. I do if you give me one more minute. I have already extended now. Maybe I should not throw myself on the mercy so early in this process.

Mr. COBLE. It is early in the day, so we will be tolerant.

Mr. CAMPBELL. I am grateful and it is reexamination. I have talked to small inventors and high tech firms. There is concern. I do not think this is unworkable. I think it can be worked out. There is concern that the reexam process should not be another

5

bite at the apple, but should very clearly stay patent infringement litigation.

Otherwise, what you are doing is just setting up a new way to challenge a patent. If the idea of the bill is to expedite and make more efficient challenges to the grant of a patent under prior art, which is the purpose of the reexam, then you ought to stay litigation during the pendency of that reexam.

Otherwise, you put the challenger to the patent in the position of being able to choose his or her forum and just create one extra opportunity to challenge. You ought to at least stay the proceedings.

That is it and thank you for your time, Mr. Chairman.

Mr. COBLE. I thank you. I apologize. I did not identify your District, Tom. You represent the 15th District in California. I feel this is a California caucus, Mr. Berman, you and Dana.

Dana, good to have you with us. You represent the 45th District in California. Mr. Rohrabacher, if you could within 5 minutes we would be appreciative because we have a full day ahead of us.

Mr. ROHRABACHER. I will do my very best. Thank you very much, Mr. Chairman. I apologize for being here a little bit late. Here we are trying to champion new technologies, and how dependent we are upon them, and my computer froze up. I have got my old copy with all of my scratches on it to go from. So, anyway you understand that.

I appreciate very much the cooperation that we have developed in these last few months. There has been considerable progress that has been made. I do believe that the differences between the two positions that emerged over the last few sessions of Congress has been narrowed considerably.

I think that this is due to the fact that there is now, instead of a spirit of adversity, an adversarial spirit, there is a spirit of cooperation that is being felt on both sides of the issue. I should not say both sides because there are not just two sides; just the spirit of cooperation of all of those involved. Acting Commissioner Dickinson is a breath of fresh air. He is serving as a facilitator rather than a confrontationalist. That has helped as well.

He came over to my office and reached out and asking my opinion and things such as that. That was very, very positive on his part. Of course, I especially appreciate you, Mr. Chairman, that you have done your best to try to provide information so we can find out if there are areas where we can work together and areas where we disagree.

Because of that, because of your initiative, we have actually been able to make that progress. With that said, I would like to go over a few of the concerns, but acknowledge that we have come quite a distance and I very optimistic.

One of my areas of concerns deals with title II. I am sure that Tom—I will not just reiterate what Tom said about it because Tom is especially focused on the idea that trade secrets are so contrary to what the Founding Fathers had in mind in terms of patent protection.

The Founding Fathers had two ideas in mind for the patent system. The purpose was number one, to protect the inventor so the inventor could receive a benefit. Thus, there would be more people