# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CISCO SYSTEMS, INC., | ) |
| | ) |
| Plaintiff/ | )    Civil Action No.: |
| Counterclaim-Defendant, | )    1:05-CV-02048 (RBW) |
| | ) |
| v. | ) |
| | ) |
| TELES AG INFORMATIONSTECHNOLOGIEN, | ) |
| | ) |
| Defendant/ | ) |
| Counterclaim-Plaintiff. | ) |

## CISCO'S REPLY IN FURTHER SUPPORT OF ITS MOTION
## TO STAY THIS CASE PENDING REEXAMINATION OF THE '902 PATENT

Marva R. Deskins (#D00266)
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, DC  20001
(202) 346-2000
(202) 346-4444 (fax)

*Of Counsel:*
J. Anthony Downs (*Pro Hac Vice*)
Lana S. Shiferman (*Pro Hac Vice*)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000
(617) 523-1231 (fax)

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................1

ARGUMENT....................................................................................................2

  1.     Both of the patents-in-suit in this lawsuit – the '453 patent and the '902 patent – are now the subject of pending reexamination petitions before the Patent Office. Every one of the thirty-seven (37) claims asserted by Teles against Cisco in this lawsuit is now before the Patent Office on reexamination..............................................................................................2

  2.     The Patent Office is required by statute to act on the reexamination requests by November 30, 2007 and December 7, 2007, respectively, and to determine by then whether Cisco has raised a "substantial question of patentability" based on the cited prior art. At that time, the Patent Office will also issue an "Office Action" stating the grounds for rejecting the claims, if they are to be rejected...................................................................................3

  3.     The German Patent Court has already ruled that Teles' European counterpart patents are invalid, after finding them obvious based on similar prior art, so Cisco's invalidity arguments are clearly strong. The prior art and arguments raised by Cisco in the U.S. reexamination requests must be considered by the Patent Office, even if the art was previously cited........................4

  4.     As required by Federal statute, the '902 reexamination request will move "with special dispatch," giving both parties the opportunity to argue the invalidity issues to the Patent Office in detailed briefs. ........................................5

  5.     If the Patent Office rejects the original claims of the '902 or '453 patent, Teles will either have to drop the claims from this lawsuit, or amend them. This occurs in a very high percentage of reexaminations. Either way, the nature and scope of this litigation will be changed significantly. ................................6

  6.     The parties and this Court will save significant time and resources if this case is stayed pending the reexamination of the '902 and '453 patents..............8

  7.     Teles has grossly exaggerated the length of the proposed stay.................................11

  8.     Teles suffers no real "hardship," and Cisco gains no "unfair tactical advantage" from the requested stay...........................................................................13

  9.     Teles ignores the very real costs of parallel proceedings, including unnecessary expenditure of the Court's and the parties' time and resources, and potentially inconsistent results. ..........................................................................15

i

**10.**   **Cisco filed the '902 Reexamination Request in a timely fashion.** ............................16

**11.**   **The relevant factors thus all favor a stay here.** ...........................................18

**12.**   **Teles makes a series of additional unsupported, false or grossly misleading statements in its Opposition that should be rebutted.** ..................................21

**13.**   **The other ancillary issues that Teles has tried to inject into this Motion to Stay are not relevant to the stay issue, and should not be decided without Teles properly seeking relief by motion.** ......................................................23

    **a.**   **The Court should reject Teles' attempt to use Cisco's Motion to Stay to argue specific discovery disputes.** ......................................23

    **b.**   **Teles' attempt to modify the protective order should be denied.** .................25

**14.**   **The Court should stay this case in its entirety.** ..........................................27

# TABLE OF AUTHORITIES

## Cases

*ASCII Corp. v. STD Ent. USA, Inc.*, 844 F. Supp. 1378 (N.D. Cal. 1994) ............................9, 19

*Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 914 F. Supp. 951 (W.D.N.Y. 1996)........................11

*Broadcast Innovation, LLC v. Charter Comm'n., Inc.*, Civ. Action No. 03-CV-2223, 2006 WL 1897165 (D. Colo. July 11, 2006) .............................................................................20

*EchoStar Techs. Corp. v. TiVo, Inc.*, No. 5:05 CV 81 DF, 2006 WL 2501494 (E.D. Tex. July 14, 2006).................................................................................................. *passim*

*Emhart Indus., Inc. v. Sankyo Seiki Mfg., Co., Ltd.*, 3 U.S.P.Q.2d 1889 (N.D. Ill. 1987)...............................................................................................................10

*Ethicon v. Quigg*, 849 F.2d 1422 (Fed. Cir. 1988) ..............................................................1, 20

*eSoft, Inc. v. Blue Coat Sys., Inc.*, ___ F.Supp.2d ___, 2007 WL 549843 (D. Colo. Feb. 16, 2007) ................................................................................................ *passim*

*Gioello Enters., Ltd. v. Mattel, Inc.*, No. C.A. 99-375 GMS, 2001 WL 125340 (D. Del. Jan. 29, 2001).......................................................................................................8

*Gladish v. Tyco Toys, Inc.*, 29 U.S.P.Q.2d 1718 (E.D. Cal. 1993)...........................................18

*Gould v. Control Laser Corp.*, 705 F.2d 1340 (Fed. Cir. 1983).........................................18, 19

*GPAC, Inc. v. D.W.W. Enters., Inc.*, 144 F.R.D. 60 (D. N.J. 1992) .........................................16

*Graham-White Mfg. Co. v. Ell-Con Nat'l, Inc.*, Civ. Action No. 6:05-0396, 2006 WL 2716439 (D. S.C. Sept. 22, 2006)........................................................................1, 19

*Grayling Indus., Inc. v. GPAC Inc.*, 19 U.S.P.Q.2d 1872 (N.D. Ga. 1991) ...............................18

*Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339 (Fed. Cir. 2000)...............................................28

*High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.,* 49 F.3d 1551 (Fed. Cir. 1995)...............................................................................................................28

*Ingro v. Tyco Indus., Inc.*, 227 U.S.P.Q. 69 (N.D. Ill. 1985)....................................................19

*In re Pabst Licensing, GmbH*, No. MDL 1278, 2000 WL 554219 (E.D. La. May 4, 2000).......................................................................................................27

LIBA/1834315.4

*KLA-Tencor Corp. v. Nanometrics, Inc.*, No. C-05-03116 JSW,
2006 WL 708661 (N.D. Cal. Mar. 16, 2006).................................................................15, 20

*KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727 (April 30, 2007) ................................................7

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936) ................................................................14

*Loffland Bros. Co. v. Mid-Western Energy Corp.*, 225 U.S.P.Q. 886
(W.D. Okla. 1985) ................................................................................9, 18

*MercExchange, LLC v. eBay, Inc.*, 500 F. Supp. 2d 556 (E.D. Va. 2007) ..........................13, 29

*Middleton, Inc. v. Minn. Mining & Mfg. Co.*, No. 4:03-CV-40493,
2004 WL 1968669 (S.D. Iowa Aug. 24, 2004).................................................8, 19

*Mikohn Gaming Corp. v. Acres Gaming Inc.*, 50 U.S.P.Q.2d 1783 (D. Nev. 1998).................27

*Motorola, Inc. v. Interdigital Tech. Corp.*, No. Civ.A. 93-488-LON,
1994 WL 16189689 (D. Del. Dec. 19, 1994).................................................................27

*Motson v. Franklin Covey Co.*, No. Civ. 03-1067, 2005 WL 3465664
(D. N.J. Dec. 16, 2005) ................................................................................18

*Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.*, No. C 06-2252,
2007 WL 627920 (N.D. Cal. Feb. 26, 2007) .................................................10, 11, 15

*NTP, Inc. v. Palm, Inc.*, Civ. Action No. 3:06CV836, slip. op.
(E.D. Va. March 22, 2007) (Spencer, J.) .................................................................1, 2, 15

*Patlex Corp. v. Mossinghoff*, 758 F.2d 594 (Fed. Cir. 1985)....................................................13

*Perricone v. Unimed Nutritional Servs., Inc.*, No. Civ. A 301CV512,
2002 WL 31075868 (D. Conn. July 18, 2002) ................................................................11

*Photoflex Prod. Inc. v. Circa 3 LLC*, No. C 04-03175, 2006 WL 1440363
(N.D. Cal. May 24, 2006) ................................................................................28

*SmartSignal Corp. v. Expert Microsystems, Inc.*, No. 02 C 7682,
2006 WL 1343647 (N.D. Ill. May 12, 2006) ................................................................26

*Softview Computer Products Corp. v. Ergo View Tech. Corp.*,
56 U.S.P.Q.2d 1633 (S.D.N.Y. 2000)................................................................. *passim*

*Sony Comp. Ent. Amer. Inc. v. Dudas*, 2006 WL 1472462
(E.D. Va. May 22, 2006).................................................................................9

LIBA/1834315.4

*Teradyne, Inc. v. Hewlett-Packard* Co., No. C-91-0344, 1
993 U.S. Dist. LEXIS 14601 (N.D. Cal. Jan. 7, 1993) ...........................................................11

*VDATA, LLC v. Aetna, Inc.*, 2006 WL 3362889 (D. Minn. Nov. 21, 2006) ...........................14

*Visto Corp. v. Seven Networks, Inc.,* 2006 WL 3741891 (E.D. Tex. Dec. 19, 2006).................26

## Statutes, Regulations & Legislative Materials

35 U.S.C. § 283 ................................................................................................................8

35 U.S.C. § 284 ..............................................................................................................14

35 U.S.C. § 303(a) .......................................................................................................3, 4

35 U.S.C. § 305 ................................................................................................................3

35 U.S.C. § 311(a) ..........................................................................................................17

35 U.S.C. § 312(a) ............................................................................................................3

35 U.S.C. § 314(a) .......................................................................................................6, 7

35 U.S.C. § 314(b)(2) ......................................................................................................6

35 U.S.C. § 314(c) ......................................................................................................5, 21

35 U.S.C. § 315(c) ............................................................................................................9

35 U.S.C. § 317(b) ............................................................................................................9

35 U.S.C. § 318 ..............................................................................................................19

37 C.F.R. § 1.935 .............................................................................................................4

MPEP § 2686.04 (I) (2006) ...........................................................................................4, 5

145 CONG. REC. S14720 ...................................................................................................9

145 CONG. REC. S13259 ...................................................................................................9

145 CONG. REC. E1789-90...................................................................................................9

H.R. Rep. No. 1307 Part 1, 96th Cong., 2d Sess. 4 (1980), *reprinted in*
1980 U.S.C.C.A.N 6460-63 ..........................................................................................19, 20

v

H.R. Rep. 5075, 96th Cong., 1st Sess. § 310 (1979) ....................................................................20

S. Rep. 1679, 96th Cong., 1st Sess. § 310 (1979) .......................................................................20

S. Rep. 2446, 96th Cong., 2d Sess. §310 (1980) ........................................................................20

Patent Reform Act of 2007, S. 1145, 110th Cong., 1st Sess. (2007)............................................22

Patent Reform Act of 2007, H.R. 1908, 110th Cong., 1st Sess. (2007) ................................20, 22

Pub. L. 106-113 § 4608, 113 Stat. 1501A-572 (1999) ..................................................................3

**Miscellaneous**

AIPLA Report of the Economic Survey (2007) ........................................................................16

## INTRODUCTION

This Reply Brief first addresses some basic points about *inter partes* reexaminations and about Cisco's Motion to Stay that remain uncontested and that demonstrate why this Court should grant a stay of this case pending the U.S. Patent Office's final decision on Cisco's request for *inter partes* reexamination of the '902 patent. The rest of the brief then makes a point-by-point response to Teles' Opposition and the many overstatements, mischaracterizations and ancillary issues raised there.

At bottom, Cisco's Motion does not seek "extraordinary relief," as Teles contends, but is instead a normal and timely request for a stay pending an *inter partes* reexamination of the principal patent in suit, the '902 patent. Such stays are routinely granted, and have been granted recently by courts around the country. *See, e.g., EchoStar Techs. Corp. v. TiVo, Inc.*, No. 5:05 CV 81 DF, 2006 WL 2501494, at *1 (E.D. Tex. July 14, 2006) (Cisco Ex. 3); *NTP, Inc. v. Palm, Inc.*, Civ. Action No. 3:06CV836, slip. op. at 5 (E.D. Va. March 22, 2007) (Spencer, J.) (Cisco Ex. 4); *eSoft, Inc. v. Blue Coat Sys., Inc.*, ___ F.Supp.2d ___, 2007 WL 549843, *2 (D. Colo. Feb. 16, 2007); *Graham-White Mfg. Co. v. Ell-Con Nat'l, Inc.*, Civ. Action No. 6:05-0396, 2006 WL 2716439, at *2 (D. S.C. Sept. 22, 2006); *Softview Computer Products Corp. v. Ergo View Tech. Corp.,* 56 U.S.P.Q.2d 1633, 1635 (S.D.N.Y. 2000). And, contrary to Teles' false implication at page 6 of its Opposition that only the patentee may seek a stay, this Court clearly has the power to grant a stay requested by Cisco, the party who filed the reexamination requests. *See, e.g., Ethicon v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988); *EchoStar,* 2006 WL 2501494 (granting stay sought by defendant/Requester). The four factors cited in Cisco's original Motion as being relevant to the granting of a stay all favor a stay here. *See* Cisco's Motion to Stay at 4-5 (D.I. 47).

As the Eastern District of Texas stated in the *EchoStar* case, "an *inter partes* reexamination can have no other effect but to streamline ongoing litigation. For these reasons, courts have an even more compelling reason to grant a stay when an *inter partes* reexamination is proceeding with the same parties, which is precisely the case here." *EchoStar,* 2006 WL 2501494 at *3. In that case, as here, although some discovery had been conducted and "a great deal of activity" in the litigation had occurred, the Court found that "[i]t would be an egregious waste of both the parties' and the Court's resources if the *Markman* and summary judgment proceedings went forward and the claims were subsequently declared invalid or were amended as a result of the reexamination proceeding." *Id.* at *4. The Eastern District of Virginia reached the same conclusion recently in the *NTP* case. *See NTP, Inc. v. Palm, Inc.*, Civ. Action No. 3:06CV836, slip. op. at 5 (E.D. Va. March 22, 2007) (Spencer, J.) (Cisco Ex. 4) (recognizing "significant benefits" to staying litigation pending the outcome of a reexamination).

## ARGUMENT

**1.      Both of the patents-in-suit in this lawsuit – the '453 patent and the '902 patent – are now the subject of pending reexamination petitions before the Patent Office. Every one of the thirty-seven (37) claims asserted by Teles against Cisco in this lawsuit is now before the Patent Office on reexamination.**

Cisco's '902 *inter partes* reexamination request challenges the validity of the 33 claims of the '902 patent that Teles has asserted against some 200+ Cisco products. Moreover, since Cisco filed the Motion to Stay, Cisco has also filed a request for reexamination of the '453 patent with the Patent Office, thus also putting at issue all the asserted claims of the '453 patent as well. *See* Cisco Ex. 5 (textual portion of '453 request). ***Thus, <u>all</u> the patent claims upon which this case is based are now before the Patent Office in the pending requests for reexamination.*** The

U.S. Patent Office has confirmed the filing and afforded a filing date of August 30, 2007, for the '453 reexamination request, which is an *ex parte* request.[1]  *See* Cisco Ex. 6.

Furthermore, since Cisco filed its Motion to Stay, the Patent Office has confirmed a September 7, 2007 filing date of the '902 patent's *inter partes* reexamination request.  *See* Cisco Ex. 7.  Teles points out that the Patent Office issued a letter highlighting certain issues with Cisco's original reexamination filing.  But the Patent Office has now explicitly determined that the technical issues pertaining to the formatting of the original reexamination filing have been resolved, and the reexamination will proceed.  *Id.*  Teles' attacks on the *bona fides* of Cisco's reexamination request for the '902 patent are baseless.[2]

**2.     The Patent Office is required by statute to act on the reexamination requests by November 30, 2007 and December 7, 2007, respectively, and to determine by then whether Cisco has raised a "substantial question of patentability" based on the cited prior art.  At that time, the Patent Office will also issue an "Office Action" stating the grounds for rejecting the claims, if they are to be rejected.**

Under 35 U.S.C. §§ 303(a) & 312(a), the Patent Office must make a determination as to whether Cisco has raised a "substantial question of patentability" within three months of the filing dates.[3]  Here, that means the Patent Office will issue its determination by November 30, 2007 for the '453 patent, and by December 7, 2007 for the '902 patent, if not earlier.

---

[1] In an *ex parte* reexamination request, the third party requesting the reexamination (here Cisco), cannot participate in the back and forth with the Patent Office during the reexamination.  Rather, the reexamination is carried out "ex parte," i.e., only between the patent owner and the Patent Office.  35 U.S.C. § 305.  Cisco was precluded from challenging the '453 patent on an *inter partes* basis because the filing date of the '453 application predated the time when *inter partes* reexaminations are allowed.  *See* Pub. L. 106-113 § 4608, 113 Stat. 1501A-572 (1999).

[2] *See, e.g.*, Opposition at 25, in which Teles accuses Cisco of a "scheme of reckless filings in the Patent Office," and asserting that "Cisco defied the Patent Office's instructions by **increasing** the portion of its flawed filing it had to replace from about 650 pages to over 1,300 pages."  The Patent Office's acceptance of the revised filing belies Teles' contentions.  The additional pages were necessary because the Patent Office required individualized charts for each ground of invalidity for each of the 33 asserted claims.  Cisco promptly responded to the Patent Office's comments, and the request has been accepted for filing.  *See* Cisco Ex. 7.

[3] For example, § 312(a) states, with respect to *inter partes* reexaminations, that "Not later than 3 months after the filing of a request for inter partes reexamination under section 311, the Director shall determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request.…"

Also, at the same time or shortly thereafter, the Patent Office will issue an "Office action," in which the Patent Office will identify to Teles and to Cisco the grounds for rejecting the claims at issue.  The Federal regulations governing *inter partes* reexaminations state:  "The order for *inter partes* reexamination will usually be accompanied by the initial Office action on the merits of the reexamination."  37 C.F.R. § 1.935.  This means that this Court is likely to know, by early December 2007, whether the Patent Office is rejecting the '902 claims, and if so, on what basis.

**3.    The German Patent Court has already ruled that Teles' European counterpart patents are invalid, after finding them obvious based on similar prior art, so Cisco's invalidity arguments are clearly strong.  The prior art and arguments raised by Cisco in the U.S. reexamination requests must be considered by the Patent Office, even if the art was previously cited.**

Teles does not dispute that its European patents have been held invalid based on similar prior art.  Teles even concedes that the Patent Office is ***likely*** in this case to find that Cisco's prior art raises a substantial question of patentability.  Opp. at 11.  There is no genuine dispute that Cisco's invalidity challenges are very real, and that the reexaminations will proceed.

Nonetheless, Teles tries to disparage the merits of Cisco's invalidity arguments by asserting that the cited art for the '902 reexamination request was previously considered by the Patent Office.  Opp. at 4-5, 17.  However, 35 U.S.C. § 303(a), clearly states that this is immaterial:  "***The existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office***."  (Emphasis added.)  Teles can have no excuse for failing to cite this statutory provision to the Court.

Moreover, Teles' assertion that the Examiners previously considered the cited art "multiple times" during the '902 prosecution is a gross distortion of the record, for reasons

4

discussed in the footnote below.[4]  In fact, the Examiner did not state in the '902 prosecution that

he considered the cited anticipatory art, or that he considered the combinations of art now relied

upon by Cisco to also prove the claims invalid as obvious.  Moreover, in the '453 reexamination

request, Cisco relies in part upon new prior art that Teles did not cite to the Patent Office.  But,

in any event, even if Teles is correct, and the reexamination requests raise no new question of

patentability, then the Patent Office will quickly tell us by denying the Requests for

Reexamination, or by dismissing Cisco's arguments in its initial Office actions, all by December

2007.

> **4.      As required by Federal statute, the '902 reexamination request will move
> "with special dispatch," giving both parties the opportunity to argue the invalidity issues to
> the Patent Office in detailed briefs.**

The federal statute governing reexamination proceedings specifically provides that *inter*

*partes* reexaminations shall be "***conducted with special dispatch within the [Patent] Office***."  35

U.S.C. § 314(c) (emphasis added).  The Patent Office's Manual of Patent Examining Procedure

(MPEP), also explicitly states that a stay of pending litigation will cause a pending request to be

given highest priority:

> "Where a request for reexamination indicates that it is filed as a result of an order
> by a court, *or that litigation is stayed for the purpose of reexamination, all aspects
> of the proceeding will be expedited to the extent possible. Cases will be taken up
> for action at the earliest time possible, and time periods set in actions may be
> extended only upon a strong showing of sufficient cause (see MPEP § 2665).*
> ***Action on such a proceeding will take precedence to any other action taken by
> the examiner in the Office***."

---

[4] For example, Teles' attorney, Mr. DeLuca, who prosecuted the '902 patent, states in his Declaration that the Patent Office indicated during the '902 prosecution that it had considered two patents (referred to as "Farris" and "Jones") after the claims had initially been allowed, and that the Examiner called him to discuss the claims in light of that art. DeLuca Decl. at 12-17 (Teles Ex. 10).  **But neither Farris nor Jones is relied upon in Cisco's reexamination request.**  Mr. DeLuca's Declaration nowhere mentions any of the art now cited by Cisco or points to any part of the file history where this art was discussed by the Patent Office or discussed in Cisco's combinations for obviousness purposes.  Cisco's '902 reexamination request document, which was attached as Exhibit 1 to Cisco's Motion, at pages 11-18, sets forth the file history in detail and describes the lack of consideration by the Patent Office of Cisco's prior art and the cited combinations.

MPEP § 2686.04 (I) (2006) (emphasis added). To facilitate and speed up the reexamination process, the U.S. Patent Office in 2005 set up a special reexamination unit consisting of specially trained, dedicated examiners. *See* Cisco Ex. 8 (Patent Office Press Release). The Patent Office places a priority on the timeliness and correctness of decisions in reexamination proceedings. *Id.* The use of "skilled examiners assigned to a single unit will enhance the quality and reduce the time of reexaminations." *Id.*

During the *inter partes* reexamination process, both parties will be able to submit briefs to the Patent Office concerning the prior art and the arguments for invalidity. Cisco, as the challenger, must file its response to any submission by Teles within 30 days of service of Teles' filing. 35 U.S.C. § 314(b)(2). The specially trained examiners in the Patent Office, who are familiar with the technology at issue, will reach a conclusion as to the validity of the claims, after considering the arguments of both parties. If the examiners reject a claim, it may be amended by Teles during the process to attempt to "get around" the prior art. *See* 35 U.S.C. § 314(a).

**5.    If the Patent Office rejects the original claims of the '902 or '453 patent, Teles will either have to drop the claims from this lawsuit, or amend them. This occurs in a very high percentage of reexaminations. Either way, the nature and scope of this litigation will be changed significantly.**

Teles tries to disparage Cisco's chances of success on the reexamination by proclaiming that there is a "Slim Chance Claims Will Be Canceled/Amended." Opp. at 18. The statistics published by the U.S. Patent Office in 2007 for *ex parte* reexaminations prove otherwise. Even in those *ex parte* cases, where the party challenging the patent had no opportunity to argue its position during the reexamination, *the Patent Office rejected the patent claims as written in the issued patent in 74% of the cases*, and confirmed the claims as originally written only in 26% of the cases. *See* Cisco Ex. 9, at 2, ¶ 9 (June 30, 2007 *Ex Parte* Reexamination Filing Data). The rejection of the claims by the Patent Office required the patent owner to narrow the scope of the

6

claims by amendment in **64%** of the cases and resulted a complete and final rejection of all the claims in **10%** of the cases.  *Id.*[5]  During reexamination, an amendment can only narrow the scope of the claims, not broaden them.  *See* 35 U.S.C. § 314(a) ("no proposed amended or new claim enlarging the scope of the claims of the patent shall be permitted").[6]

In light of this 74% number, and particularly in light of the facts (i) that Teles' European patents have already been invalidated, and (ii) that, after the '902 patent was issued, the United States Supreme Court issued its seminal decision in *KSR Int'l Co. v. Teleflex, Inc.*, 127 S. Ct. 1727 (April 30, 2007), there is a very high likelihood that the challenged claims of the '902 and '453 patents will be invalidated or that Teles will be forced to amend the claims to narrow their scope.  In *KSR*, the Supreme Court "reject[ed] the rigid approach of the Court of Appeals" on obviousness, and made it significantly easier to invalidate an issued patent.  127 S. Ct. at 1739.  Recent decisions by the Board of Patent Appeals confirm that the Supreme Court's rejection of the Federal Circuit's existing test for obviousness has a material impact on the way the Patent Office is reviewing the patentability of claims.  The Board of Appeals cases and the impact of the *KSR* case on the particular claims at issue here is briefed in Cisco's '902 Reexamination Request (Cisco Ex. 1) at 306-08.[7]

---

[5] The 2007 statistics for *inter partes* reexaminations show that, of the eight reexamination requests that have reached the final certificate, seven have resulted in all claims being cancelled.  Only one has passed the reexamination with the original claims remaining as issued in the patent.  *See* Cisco Ex. 10 at 1, ¶ 7.

[6] The Patent Office statistics also disprove Teles' bald assertion that "claims asserted in litigation rarely – if ever – are amended."  Opp. at 19.  Teles says a patent owner involved in litigation would never amend a claim during reexamination because the concept of "intervening rights" would limit the patent owner's entitlement to damages prior to the date of the reexamination certificate.  Opp. at 19-20.  But presumably, even a patent owner in litigation would rather amend claims to keep the patent alive than have the claims rejected in their entirety.  Better to have a shortened damages period than no damages at all.  With amendments made in 64% of the reexaminations, amendments are clearly made on a routine basis.

[7] At pages 11-12 of its Opposition, Teles relies on an Amicus Brief filed by the Patent Office in *eBay, Inc. v. MercExchange, L.L.C.*, No. 05-130, to argue that the pendency of reexamination proceedings should be given "no particular weight" in determining whether to grant a stay.  Preliminarily, in *eBay*, the issue before the Supreme Court involved the standards to be used in deciding whether to grant a **_permanent injunction after a judgment of infringement in a patent case_**, not a stay of an ongoing case pending reexamination.  The issue that the Patent

**6.      The parties and this Court will save significant time and resources if this case is stayed pending the reexamination of the '902 and '453 patents.**

Either way, if the claims are invalidated or amended, the effect on this lawsuit is significant.  If the claims are entirely invalidated, they would no longer be at issue in this lawsuit, and would not need to be addressed for *any* purposes—infringement, claim construction, definiteness, validity, etc.  The '902 patent, or the '453 patent, or groups of claims within the patents, could thus be removed from this case.  And, if the claims are amended to make them narrower, this is likely to materially affect the infringement case.  A narrower claim is one in which Teles would have to add new limitations that are not present in the current claims.  As a result, Teles may not be able to allege infringement against Cisco, or against whole classes of the more than 200+ Cisco accused products, based on the amended claims.  This could greatly narrow the number of claims in dispute.  And in turn, this could reduce the scope of discovery, reduce the need for expert reports, summary judgment motions, etc., and ultimately reduce the scope of trial, if the case gets that far.

Courts have thus repeatedly recognized the "high likelihood that results of the PTO's reexamination would have a dramatic effect on the issues before the Court, up to and including dismissal of the entire action if the patent claims are found to be unpatentable."  *Middleton, Inc. v. Minn. Mining & Mfg. Co.*, No. 4:03-CV-40493, 2004 WL 1968669, at *10 (S.D. Iowa Aug. 24, 2004); *see also Gioello Enters., Ltd. v. Mattel, Inc.*, No. C.A. 99-375 GMS, 2001 WL 125340 *1 (D. Del. Jan. 29, 2001) (noting potential effect of reexamination on infringement claims);

---

Office was addressing in *eBay* was thus far different from the issue raised here.  The Amicus Brief simply repeats the unremarkable proposition that a non-final reexamination decision should not influence a decision under 35 U.S.C. § 283 about whether or not to issue a permanent injunction after a court or jury has already found the patent to be valid and infringed.  To the contrary, as evidenced by the numerous cases cited throughout this motion, courts all over the country have repeatedly recognized that the pendency of a reexamination request is, indeed, a very material fact in determining whether to stay a patent case *before* there has been any court finding of invalidity or infringement.

*ASCII Corp. v. STD Ent. USA, Inc.*, 844 F. Supp. 1378, 1380-81 (N.D. Cal. 1994) (same);

*Loffland Bros. Co. v. Mid-Western Energy Corp.*, 225 U.S.P.Q. 886 (W.D. Okla. 1985) (same);

*EchoStar*, 2006 WL 2501494, at *4 (recognizing *inter partes* reexamination "will have a

dramatic effect on future litigation."); *Softview*, 56 U.S.P.Q.2d at 1636 ("[A] stay will

***necessarily simplify the issues***.") (emphasis added).

 Even if the Patent Office does allow some claims to survive the reexamination, either as

amended or as originally filed, there would still be significant impact on the litigation, and a

narrowing of the issues to be tried.  Again the Federal statute is clear:  if an *inter partes*

reexamination request is granted, Cisco subjects itself to estoppel effects –

> (c)  *Civil Action* – A third-party requester whose request for an inter partes
> reexamination results in an order under section 313 [finding a substantial new
> question of patentability] is estopped from asserting at a later time, in any civil
> action arising in whole or in part under section 1338 of title 28, the invalidity of
> any claim finally determined to be valid and patentable on any ground which the
> third-party requester raised or could have raised during the inter partes
> reexamination proceedings."

35 U.S.C. § 315(c); *see also* 35 U.S.C. § 317(b) (describing further estoppel effects).  The

purpose of this provision is apparent, in that an *inter partes* reexamination was intentionally

meant to be an alternative to litigation, in order to enable the Patent Office to decide validity

issues in a way that resulted in more efficient litigation.  *See* 145 Cong. Rec. S14720 (the *inter*

*partes* reexamination procedure "is intended to reduce expensive patent litigation in U.S. district

courts…"); 145 Cong. Rec. S13259 (same);145 Cong. Rec. E1789-90 (same); *see also*

*EchoStar*, 2006 WL 2501494 at *3 (Cisco Ex. 3) ("*inter partes* reexamination can have no other

effect but to streamline ongoing litigation"); *Sony Comp. Ent. Amer. Inc. v. Dudas*, 2006 WL

1472462 *4 (E.D. Va. May 22, 2006).  Notably, Teles completely ignores and does not even cite

section 315(c) and its estoppel effect.

9

With respect to infringement issues as well, it does not make sense to proceed with further discovery, depositions, expert reports, *Markman* hearings, etc., until this Court knows finally whether any of Teles' claims survive, what the claim language will be, and what claims will ultimately be asserted against Cisco, and against which products (if any).  It is only after the reexamination proceedings that the parties and the Court will know the scope of the claims, and thus the real scope of the issues on which to proceed.  As numerous courts have recognized, the effect of reexamination proceedings on the issues is very real, even in the absence of claim amendments:

> "Additionally, a stay has been found to benefit the district court proceedings upon the completion of a reexamination:
>
> 1.  All prior art presented to the Court will have been first considered by the PTO, with its particular expertise;
>
> 2.  Many discovery problems relating to prior art can be alleviated by the PTO examination;
>
> 3.  In those case resulting in effective invalidity of the patent, the suit will likely be dismissed;
>
> 4.  The outcome of the reexamination may encourage a settlement without the further use of the Court;
>
> 5.  The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation;
>
> 6.  Issues, defenses, and evidence will be more easily limited in pretrial conferences after a reexamination; [and]
>
> 7.  The cost will likely be reduced both for the parties and the Court."

*EchoStar*, 2006 WL 2501494, at *2 (Cisco Ex. 3); *eSoft, Inc*, ___ F.Supp.2d ___, 2007 WL 549843, at *2; *Emhart Indus., Inc. v. Sankyo Seiki Mfg., Co., Ltd.*, 3 U.S.P.Q.2d 1889, 1890 (N.D. Ill. 1987); *Softview*, 56 U.S.P.Q.2d at 1635.

Courts have also acknowledged that a stay pending reexamination can affirmatively assist the Court in resolving the case.  For one thing, the additional clarity about the scope of the claims that the reexamination prosecution history may provide favors a stay.  *See Nanometrics, Inc. v.*

*Nova Measuring Instruments, Ltd.*, No. C 06-2252, 2007 WL 627920, at *1 (N.D. Cal. Feb. 26, 2007). And, the Patent Office is the expert on patents and judging patentability. "The patent reexamination procedure was intended to provide the federal courts with the additional expertise of the PTO." *Perricone v. Unimed Nutritional Servs., Inc.*, No. Civ. A 301CV512, 2002 WL 31075868, at *2 (D. Conn. July 18, 2002). "[T]he specialized expertise the PTO can bring to bear on the question of whether prior art undermines the validity of the patent's claims would unquestionably help this court resolve [this] case expeditiously, efficiently, and - most importantly - correctly." *eSoft*, ___ F.Supp.2d ___, 2007 WL 549843, at *3. A stay pending a reexamination will help the Court to gain the benefit of the Patent Office's expertise. *Perricone*, 2002 WL 31075868, at *2; *EchoStar*, 2006 WL 2501494, at *4; *Bausch & Lomb, Inc. v. Alcon Labs., Inc.*, 914 F. Supp. 951, 953 (W.D.N.Y. 1996) ("Because the PTO is considered to have expertise in deciding issues of patentability many courts have preferred to postpone making final decisions on infringement until the PTO rules on issues before it.").

In short, Teles cannot really dispute that a stay will reduce the burden on the Court, thereby promoting judicial efficiency. "Since the reexamination process may narrow and perhaps eliminate issues concerning the patents' validity, the court should not expend unnecessary judicial resources by trying to resolve these claims now." *Teradyne, Inc. v. Hewlett-Packard* Co., No. C-91-0344, 1993 U.S. Dist. LEXIS 14601, at *23 (N.D. Cal. Jan. 7, 1993).[8]

### 7. Teles has grossly exaggerated the length of the proposed stay.

Given the weight of authority in favor of a stay of litigation pending the filing of an *inter partes* reexamination request, Teles tries to exaggerate the alleged prejudice it might suffer,

---

[8] Lastly on this point, the legislative history that Teles cites as supposedly advocating against a stay, *see* Opposition at 6-7, in fact says precisely the opposite, and points out that a stay of pending litigation would be appropriate when an *inter partes* reexamination is filed. *See* Teles Ex. 12 at 4-5 (Rep. Campbell: "If the idea of the bill is to expedite and make more efficient challenges to the grant of a patent under prior art, which is the purpose of the reexam, then you ought to stay litigation during the pendency of that reexam.").

starting by raising the spectre of "delay." The very first line of Teles' Opposition states that Cisco "seeks to stay this litigation for *seven or more years*" while the Patent Office considers the '902 reexamination request (emphasis in original). This is, not surprisingly, completely false.

Teles seems to have pulled this "seven or more years" number out of the ether. Teles' only support is the Declaration of its own prosecuting attorney, Vincent DeLuca. But even Attorney DeLuca's Declaration does not support, or even argue, that the stay in this case will be "seven or more years." Instead, all he does is give ranges of past times for certain filings, based on an analysis of certain reexamination filings. *See* DeLuca Decl. (Teles Ex. 10) at ¶¶ 4-9 & Ex. D. And Mr. DeLuca's ranges must be considered highly suspect at best, for he omits any consideration of the *average* or *median* times taken at each stage by the individual reexamination requests. Indeed, you could use the statistics from the chart at ¶ 6 of his Declaration to argue for the low end of his time range, which would appear to suggest that a stay in this case could be as short as only *7.2 months* (from the left column: 13 days, plus 0 days, plus 0.4 years, plus 1.9 months) to the time the Patent Office makes its final determination and a right of appeal notice is issued. What is clear is that Teles and its attorney, Mr. DeLuca, are manipulating data to create a misleading record.

Indeed, Teles appears to have intentionally omitted the <u>official</u> U.S. Patent Office statistics for *inter partes* reexaminations (the fact that Mr. DeLuca provides the Patent Office statistics for *ex parte* reexaminations suggests he is very aware of the corresponding *inter partes* statistics). The Patent Office official statistics for *inter partes* reexaminations, dated as of June 30, 2007, which we attach hereto as Exhibit 10, show that the median pendency of *inter partes* requests that have gone to a certificate is about 2.5 years, with the average being slightly below that. For *ex parte* reexaminations, the median pendency is less than two years (18.2 months),

with an average of 23.4 months. *See* Cisco Ex. 9. Teles also fails to take into account the fact

that, in 2005, the Patent Office reorganized its reexamination unit in order to complete

reexaminations in "less than two years," so the data based on reexaminations from before 2005

may no longer be valid. *See* Cisco Ex. 8.

As noted above, the many cases that have considered the time period for an *inter partes*

reexamination have not considered it an obstacle to granting a stay. But we need not speculate

here as to what will happen in this particular case. The Court can be kept apprised of the status

of the pending reexaminations. *See eSoft*, ___ F.Supp.2d ___, 2007 WL 549843 at *2 ("During

the course of a stay, the court retains jurisdiction to respond to changing factual circumstances

with appropriate orders."). And, for the reasons noted above, the Court should have an early

assessment from the Patent Office, in the next few months, about the merits of Cisco's

arguments.

**8.    Teles suffers no real "hardship," and Cisco gains no "unfair tactical advantage" from the requested stay.**

Teles tries to argue that no stay should be granted at all because a "lengthy stay may

mean that Teles *never* will be adequately compensated by Cisco for its improper use of Teles'

patented technology." Opp. at 13; *see also id.* at 16 ("patents are depreciating assets"). As noted

above, Teles exaggerates the length of the stay. But even more important, Teles ignores that *if*

Teles' claims are valid, and *if* Teles is able to prove that Cisco infringes, Teles will ultimately be

able to recover damages for the infringement, including whatever damages are appropriate

during the time of the stay. *See, e.g., Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 603 (Fed. Cir.

1985); *MercExchange, LLC v. eBay, Inc.*, 500 F. Supp. 2d 556, 570 (E.D. Va. 2007). Even if

Teles is now starting to enter the U.S. marketplace and has just recently signed up a new

distributor,[9] Teles can still be made whole through a claim for any alleged lost profits.  *Softview*, 56 U.S.P.Q.2d at 1636 (granting stay in spite of patent owner's claim that it will lose market share, because "[i]f the patent is ultimately found to be valid and infringed, plaintiffs will be responsible to [patent owner] for damages – perhaps treble damages, 35 U.S.C. § 284 – for *all* the infringing mechanisms that it has sold.  Thus, it does not appear that staying the action will result in financial damage to [patent owner].").  When monetary remedies are available, "undue prejudice is sufficiently ameliorated."  *VDATA, LLC v. Aetna, Inc.*, 2006 WL 3362889, at *5 (D. Minn. Nov. 21, 2006).[10]

Teles also asserts that a "lengthy stay" may deprive Teles shareholder Mr. Schindler "of the fruits of decades of hard work and investment."  Opp. at 14.  But the patent owner is Teles, not Mr. Schindler, so Mr. Schindler (even as a large shareholder of Teles, which is a public company in Germany), has no direct right to damages himself.  Moreover, Teles provides no evidence that Mr. Schindler, even if he is 71, is in any way ill or infirm or unavailable to continue to assist Teles in defending itself during the reexamination process, or even after the reexamination.

Teles is also wrong to assert Cisco would gain a "clear tactical advantage" because a stay would supposedly "prevent Teles from obtaining crucial evidence" relating to the commercial

---

[9] Teles' announcement in the Opposition that it "competes against Cisco" in the United States is the first time such a contention has surfaced in this case.  Teles says it "signed a distribution agreement with IP Gear," although the Teles press release dated July 24, 2007, just days before the Motion to Stay was filed, indicates the North American sales agreement has yet to be signed.  Opp. at 14 & Teles Ex. 16.  Clearly, Teles' "competition" with Cisco is apparently at the infant stages at best.  The invoices that Teles attaches as Teles Exs. 15 & 17 only reflect a few transactions with Teles' new distributor, not any sales to final users/customers.  Moreover, those invoices and the data reflected in the invoices was not produced as part of discovery before the stay was entered.  Nor has Teles ever produced in discovery its agreement with IP Gear or any further evidence of U.S. sales.

[10] The cases cited in footnote 40 at page 13 of Teles' Opposition are unavailing as any potential harm to Teles will be remedied by monetary damages should Teles be able to prove that the asserted claims are valid and infringed.  Moreover, the primary case upon which Teles relies, *Landis v. N. Am. Co.*, 299 U.S. 248 (1936), does not even address a stay in the context of a pending reexamination.

success of the alleged invention.  Opp. at 15-16.  Teles has it backwards.  **Teles** claims to be the

pioneer and inventor of this technology, which it says it has embedded into its own products, and

those products have long been for sale in Europe.  Teles thus has total control over the evidence

concerning its own products and their commercial success.  To the extent Cisco's products are

even relevant, there is ample public information available about the extent of Cisco's sales, the

nature of Cisco's products and their capabilities (including thousands of pages on Cisco's public

web site, and many published reports about the industry).  Moreover, Cisco gains no "unfair

advantage" over Teles as a result of the stay, as Cisco will likewise be limited in its ability to

take discovery from Teles to challenge Teles' claims of "commercial success" during the stay

period.

**9.    Teles ignores the very real costs of parallel proceedings, including unnecessary expenditure of the Court's and the parties' time and resources, and potentially inconsistent results.**

Teles' Opposition also ignores the real costs that would be imposed on the Court and

Cisco if the litigation were not stayed.  "It would be a painful tragedy – for everyone involved –

if this litigation were allowed to move forward during the PTO's reexamination, only to be

rendered meaningless by that agency's final action." *NTP, Inc. v. Palm, Inc.*, Civ. Action No.

3:06-CV-836, slip. op. at 5 (Cisco Ex. 4).  Parallel reexamination and district court proceedings

are inefficient for the Court because "[w]aiting for the outcome of the re-examination could

eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate the trial

by providing the Court with the opinion of the PTO and clarifying the scope of the claims."

*Nanometrics*, 2007 WL 627920, at *3; *KLA-Tencor Corp. v. Nanometrics, Inc.*, No. C-05-03116

JSW, 2006 WL 708661, at *4 (N.D. Cal. Mar. 16, 2006).  Rather than "benefiting the parties and

the public interest," proceeding in parallel would disserve the Court, the parties, and the public

by wasting the Court's limited resources.[11]  And, if the Court does not stay this case and

proceeds in parallel with the reexamination, the Court also runs the risk of inconsistent

adjudications.  *See Softview*, 56 U.S.P.Q.2d at 1636.

> **10.    Cisco filed the '902 Reexamination Request in a timely fashion.**

This Court should also reject Teles' attempt to argue that Cisco improperly delayed in

filing the '902 reexamination, so therefore no stay should be granted.  Teles says that Cisco

"knew about the reexam prior art years ago" and "[a]lmost two years ago Cisco chose to forego

Patent Office review and file the instant case as a declaratory judgment action."  Opp. at 22.[12]

Contrary to Teles' assertions, Cisco acted in a timely fashion in preparing and filing the *inter

partes* reexamination request against the '902 patent, and it did so within six months of when the

'902 patent was added to this case.

Critically, Teles' argument that Cisco knew of the prior art for "years" ignores that ***the

'902 patent was not issued by the Patent Office until December 5, 2006***, so Cisco could not

have sought reexamination on <u>any</u> basis before then.  Teles also ignores that Cisco's original

declaratory judgment action concerned only the '453 patent, and that Cisco sought a declaratory

judgment only because Teles issued a press release the day after the '453 patent issued on

October 11, 2005, explicitly threatening that it was going to sue Cisco.  *See* Cisco's Original

---

[11] Moreover, the monetary costs to Cisco to defend itself in this litigation will be substantial. This year, the average estimated cost of defending a patent infringement suit (with alleged damages over $25 million) is $5 million.  *Am. Intell. Prop. L. Ass'n*, 2007 Report of the Economic Survey at 25 (2007) (excerpts attached as Cisco Ex. 11).  In this district, the average estimated cost of patent infringement litigation approaches $6 million and can be as high as $7 million.  *See id.* at I-91.  And, those costs are purely monetary, and fail to reflect the additional expenses and time commitments to corporate executives and engineers surrounding major patent litigation.  In contrast, an *inter partes* reexamination, inclusive of an appeal to the federal courts, has an average estimated cost of $448,000 – a fraction of the cost of litigation.  *See id.* at I-113.

[12] The unremarkable fact that Cisco initiated this case in the form of a declaratory judgment, upon direct threat from Teles, does not weigh against a stay.  *See Softview*, 56 U.S.P.Q.2d at 1636-37 (granting stay upon motion of declaratory judgment plaintiff); *GPAC, Inc. v. D.W.W. Enters., Inc.*, 144 F.R.D. 60, 63 (D. N.J. 1992) (same).

Complaint [D.I. 1] at 2, ¶¶ 6-7 & Ex. B.  Cisco clearly could not have sought reexamination of the '902 patent at that time.[13]

Another central fact ignored by Teles is that the Supreme Court did not issue its important decision in the *KSR* case until April 30, 2007.  As noted above, *KSR* altered the law that the Federal Circuit and the Patent Office had been applying to determine whether a claimed invention was obvious.  After the *KSR* decision, Cisco prepared the '902 reexamination request – which had to be quite lengthy (over 1,000 pages) to conform to Patent Office rules, and filed it, as expeditiously as possible.  Teles' suggestion that Cisco sat on its reexamination request for "years" is meritless.  Finally, it is worth pointing out that, under the relevant Federal statute, "Any third-party requester ***at any time*** may file a request for inter partes reexamination by the Office of a patent on the basis of any prior art cited under the provisions of section 301."  35 U.S.C. § 311(a) (emphasis added).

The question whether a reexamination request is "untimely" for purposes of a Motion to Stay is usually considered not in light of the amount of time after the patent has issued, but rather in view of the status of the litigation at the time the Motion was filed.  It is undisputed that Cisco's Motion for Stay, in this case, was filed ***before*** this Court had taken, or was required to take, any action with respect to the substance of Teles' infringement claims or of Cisco's invalidity or other defenses.  The '902 patent has only been a part of this case since January 24, 2007.  The Court has faced no substantive motions concerning either the '902 or '453 patents; it has not conducted any tutorial about the technology or the claims; the parties have not briefed or

---

[13] Nor did Cisco "choose" to be a defendant on the '902 patent.  Teles informed Cisco that it was going to sue Cisco on the '902 patent after it issued and proposed that its claims be asserted in the context of this existing case, rather than in separate case.  Cisco consented because it did not make sense to have the related '902 patent be the subject of separate litigation in a separate case, not because it "chose" to litigate rather than file a reexamination request.  Cisco's position is that the patents should be treated together:  with both patents in reexamination, then both patents should be stayed and this case stayed in its entirety, rather than having separate, overlapping and unnecessarily duplicative and expensive proceedings that would waste the Court's and the parties' time.

argued any claim construction issues; the Court has not held a *Markman* hearing or construed any of the claims; there have been no motions for preliminary injunction or summary judgment. The parties have produced documents and answered written discovery requests, but substantial discovery remains. For example, there have been no depositions and no expert reports or expert discovery of any kind. Teles itself postponed a 30(b)(6) deposition that Cisco noticed for June 4, 2007, and also postponed individual depositions that Cisco noticed of key Teles personnel for July. And importantly, Teles has also actively resisted setting any schedule for claim construction briefing or a *Markman* hearing in this case. *See e.g.*, Cisco Ex. 12 (6/20/06 Hearing Tr. at 7-9). In short, the posture of this case counsels in favor or a stay.[14]

### 11.    The relevant factors thus all favor a stay here.

Contrary to Teles' unsupported assertion that "Cisco has a particularly heavy burden in seeking a stay[,]" which Teles contends is some sort of "extraordinary relief," Opp. at 11, in fact courts have repeatedly recognized that there is a "liberal policy in favor of granting motions to

---

[14] Numerous courts have granted stays even though some discovery has occurred. *See, e.g., Softview*, 56 U.S.P.Q.2d at 1636 (granting stay after substantial discovery because "much remains to be done before the case is ready for trial"); *Loffland Bros. Co. v. Mid-Western Energy Corp.*, 225 U.S.P.Q. 886 (W.D. Okla. 1985) (granting stay after substantial discovery, a pretrial conference, and the setting of a trial date); *eSoft, Inc. v. Blue Coat Sys., Inc.*, ___ F.Supp.2d ___, 2007 WL 549843, at *5 (D. Colo. Feb. 16, 2007) (granting stay even though stay defendant had filed six summary judgment motions in the case, noting that while discovery was nearing completion, a trial date had not been set, the patentee had not yet responded to the summary judgment motions, and therefore the interests of justice would be served by the stay); *Motson v. Franklin Covey Co.*, No. Civ. 03-1067, 2005 WL 3465664, at *2 (D. N.J. Dec. 16, 2005) (granting stay despite discovery being complete and summary judgment motion having been served). Indeed, Courts have granted stays in cases that have progressed much further then the instant case. *See, e.g., Grayling Indus., Inc. v. GPAC Inc.*, 19 U.S.P.Q.2d 1872 (N.D. Ga. 1991) (granting stay even though close to trial); *Gould v. Control Laser Corp.*, 705 F.2d 1340 (Fed. Cir. 1983) (upholding stay entered five years into litigation and twenty days before scheduled trial).

Teles cites *Gladish v. Tyco Toys, Inc.*, 29 U.S.P.Q.2d 1718 (E.D. Cal. 1993), to argue that a stay should be denied where discovery has progressed for a year and there was an "unjustified delay in seeking reexamination." Opp. at 26 & n.86. The circumstances in *Gladish* are different in many important respects, which Teles conveniently ignores. In *Gladish*, the patent owner, not the accused infringer, filed the reexamination request of its own patent after realizing that the patent that he asserted in pending litigation may be invalid in view of three newly discovered prior art references. In addition to the reexamination, Gladish simultaneously filed a motion for preliminary injunction, which was withdrawn when the same three references "raised issues of the patent's validity." *Gladish*, 29 U.S.P.Q.2d at 1719. Only after these significant setbacks and progression of discovery, which uncovered additional validity issues, did Gladish move for a stay of the litigation pending the outcome of the reexamination proceedings. *Id.* at 1719-20. Given those unique circumstances, *Gladish* does not counsel against a stay in the instant case.

stay" pending the outcome of reexamination.  *See, e.g., ASCII*, 844 F. Supp. at 1381; *Ingro v.*

*Tyco Indus., Inc.*, 227 U.S.P.Q. 69, 71 (N.D. Ill. 1985); *see also Gould v. Control Laser Corp*.,

705 F.2d 1340, 1342 (Fed. Cir. 1983).  "Courts frequently note that '[t]he legislative history

surrounding the establishment of the reexamination proceeding *evinces congressional approval*

*of district courts **liberally** granting stays*.'  Further, '[w]hen a district court stays patent validity

proceedings before it until completion of a reexamination proceeding, that stay must be accepted

*if the purpose of the reexamination statute is to be preserved*.'" *eSoft*, ___ F.Supp.2d ___, 2007

WL 549843, at *2 (internal citations omitted and emphasis added); *Gould*, 705 F.2d at 1342.

Following this liberal policy, "Courts have ***routinely*** stayed infringement actions pending the

outcome of reexamination proceedings." *Softview*, 56 U.S.P.Q.2d at 1635 (emphasis added);

*Graham-White*, 2006 WL 2716439, at *2.

     Without citing even a single case, Teles wrongly asserts that there is a "heavy

presumption against" granting stays.  Opp. at 12.  For this proposition, Teles points only to 35

U.S.C. § 318, where Congress granted "patent owners" the right to obtain a stay of any pending

litigation.  While it is true that § 318 is directed to patent owners, courts have expressly rejected

the idea that an accused infringer is not entitled to a stay of litigation pending the outcome of a

reexamination.  *Middleton*, 2004 WL 1968669, at *2-3.  In fact, it is commonly recognized that

courts have an "inherent discretionary power to issue a stay" that is in no way affected by § 318.

*Id.* at *2.  "Although the reexamination procedure does not provide for an automatic stay of

pending district court proceedings involving the same claims, *see* H.R. Rep. No 1307 Part 1, 96th

Cong., 2nd Sess. 4, *reprinted in* 1980 U.S.C.C.A.N. 6460, 6463, there is no question that a district

court in which an infringement action has been filed has the discretion to stay the infringement

action pending the outcome of the reexamination proceeding."[15]  *Softview*, 56 U.S.P.Q. at 1635; *Ethicon*, 849 F.2d at 1426-27.[16]

　　　For all the reasons stated above, nothing in this case counsels against following the liberal policy toward granting stays pending the outcome of reexamination proceedings.  A stay here would "simplify the issues and streamline the trial, thereby reducing the burden on, and preserving the resources of both the parties and the Court."  *KLA-Tencor*, 2006 WL 708661 at *2.

---

[15] "Early drafts of the reexamination statute expressly provided for a stay of court proceedings during all reexamination proceedings.  *See* S. Rep. 1679, 96th Cong., 1st Sess. § 310 (1979); H.R. Rep. 5075, 96th Cong., 1st Sess. § 310 (1979); S. Rep. 2446, 96th Cong., 2d Sess. §310 (1980).  However, an express provision was ultimately deemed unnecessary because courts already had the power to stay civil actions 'to prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure."  *Broadcast Innovation, LLC v. Charter Comm'n., Inc.*, Civ. Action No. 03-CV-2223, 2006 WL 1897165, *3 & n.5 (D. Colo. July 11, 2006) (citing H.R. Rep. No. 1307 Part 1, 96th Cong., 2d Sess. 4 (1980), *reprinted in* 1980 U.S.C.C.A.N 6460-63 ("The bill [35 U.S.C. §§ 301-307] does not provide for a stay of court proceedings.  It is believed by the committee that stay provisions are unnecessary in that such power already resides with the Court to prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure.  It is anticipated that these measures provide a useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner.")).

[16] Teles misinterprets § 333(c) of H.R. 1908, the Patent Reform bill that recently passed in the House.  This bill is, of course, not an enacted statute.  Teles argues that "the passed Bill appears to forbid courts from staying litigation pending reexamination without the patent owner's consent…."  Opp. at 12.  Contrary to Teles interpretation, section 333(c) does not limit the Court's inherent right to stay litigation pending the outcome of a reexamination.  In fact, section 333(c) does not even address stays.  Section 333(c)(1) simply states that "[t]he commencement of a post-grant review proceeding (1) shall not limit in any way the right of the patent owner to commence an action for infringement of the patent."  Teles Ex. 14 at 47.  This section is meant to reaffirm patent owners' right to initiate a patent infringement action even if the patent is already the subject of post-grant review and does not have any impact on an accused infringer's right to move for a stay of pending litigation upon the filing of a reexamination.

LIBA/1834315.4

**12.    Teles makes a series of additional unsupported, false or grossly misleading statements in its Opposition that should be rebutted.**

Throughout its Opposition, Teles makes assertions that Cisco submits are incorrect and unfounded.  We do not have the space in this Reply to address every such assertion, but a few are worth rebutting because they are particularly egregious.

**a.    *"Inter partes reexams are disfavored, rare and lengthy administrative nightmares."  "the inter partes reexamination experiment has been a complete failure."  "[i]nter partes reexaminations have been a total flop."***

Teles asserts at pages 6-10 of its Opposition, and earlier in summary form at page 2, that *inter partes* reexaminations are "rare, a "nightmare," a "total flop," and a "complete failure." Teles is wrong, for a host of reasons.  <u>First</u>, the federal statutes authorizing *inter partes* reexaminations remain the law of the land, together with the explicit statements in the statutes requiring the Patent Office to act with "special dispatch."  *See, e.g.,* 35 U.S.C. § 314(c).  This Court should take the federal statutes as they are, not as they might become in the future, nor as Teles might wish them to be.  <u>Second</u>, Teles does not identify the basis for its assertions that reexams are "disfavored," are a "nightmare," are a "total flop," and are a "complete failure."  Who has these opinions?  Certainly not the parties filing the *inter partes* reexaminations, nor the U.S. Patent Office, nor the Federal Circuit.  <u>Third</u>, *inter partes* reexamination filings are not "rare."  In fact, as shown by the Patent Office statistics for *inter partes* filings, the number of filings has increased each year, most likely as it becomes clear that the Patent Office is taking the *inter partes* proceedings very seriously and that claims are being invalidated or amended at a high rate.  For example, there were 70 filings in the entire year 2006, but there are already 90 filings in just the first half of 2007, and more filings have been made since that time.  *See* Cisco Ex. 10 at ¶ 3 (*Inter Partes* Reexamination Filing Data).

Furthermore, contrary to Teles' assertion, the proposed bills in the House and Senate seeking to "reform" the patent laws do _not_ seek to "eliminate [*inter partes* filings] altogether," or "preclude court's [sic] from staying litigation pending reexamination without the patent owners' consent." Opp. at 10. Of course, neither of the proposed bills constitute the law of the land, and they are still in committee. But even beyond that, Teles has mischaracterized the bills. The Senate Bill would <u>keep</u> all pending *inter partes* reexamination filings intact, but would adopt going forward a new procedure of "post issuance" opposition filings, akin to the European system. Patent Reform Act of 2007, S. 1145 at 28:20-40:8, 110th Cong., 1st Sess. (2007) (Cisco Ex. 13). The House Bill would keep *inter partes* filings as well, and allow them to continue in the future together with the proposed new opposition proceedings. Patent Reform Act of 2007, H.R. 1908 at 35:24-50:10, 110th Cong., 1st Sess. (2007) (Cisco Ex. 14). The House Bill also says nothing about precluding a stay of litigation in any context. *Id*. There is no support whatsoever for Teles' contentions concerning this proposed legislation.

    **b.**    "*[N]ot a single claim has ever been canceled in reexamination based exclusively on prior art previously considered by the Patent Office.*

At page 18 of its Opposition, Teles makes the unequivocal assertion that: "***not a single claim has ever been canceled in reexamination based exclusively on prior art previously considered by the Patent Office,*** which is the precise long-shot Cisco's reexamination request seeks here." (Emphasis added). Teles cites the DeLuca Declaration at ¶ 11. But the DeLuca Declaration says something very different, as it is based only an examination of *inter partes* reexamination filings, plus only those *ex parte* reexamination petitions filed *in the last two years* (i.e., on or after August 1, 2005), and even then only those that have resulted in a reexamination certificate (meaning that claims were allowed). And even then the most Attorney DeLuca could

say is that it "appears" that none of the claims in that limited subset of cases were rejected based exclusively on prior art of record.  *See* DeLuca Decl. (Teles Ex. 10) at ¶ 12.

> **c.    *The Patent Office has "already exhaustively considered [Cisco's prior art] multiple times before granting the '902 patent."***

Teles' assertion at page 5 of the Opposition that the Patent Office has "already exhaustively considered [Cisco's prior art] multiple times before granting the '902 Patent" is totally unfounded, for the reasons discussed above.  Cisco's '902 reexamination request document, which was attached as Exhibit 1 to Cisco's Motion, at pages 11-18, sets forth the file history in detail and describes the lack of consideration by the Patent Office of Cisco's prior art and the cited combinations.  Notably, neither Teles' Opposition nor the DeLuca Declaration identifies any Patent Office document or filing with respect to the '902 claims in which the Examiner discussed the prior art relied upon by Cisco, or considered the obviousness combinations proposed by Cisco as the basis for the reexamination request.

**13.    The other ancillary issues that Teles has tried to inject into this Motion to Stay are not relevant to the stay issue, and should not be decided without Teles properly seeking relief by motion.**

> **a.    The Court should reject Teles' attempt to use Cisco's Motion to Stay to argue specific discovery disputes.**

Toward the end of its Opposition, Teles improperly attempts to inject ancillary discovery disputes into this Motion, by asserting that "Cisco cannot use its own discovery delays to justify a stay now."  Opp. at 26.  First of all, Cisco is doing no such thing.  Discovery disputes aside, the fact remains that no depositions have been taken, no expert reports prepared or expert depositions taken, no claim construction issues briefed, no *Markman* hearing scheduled, no summary judgment motions filed, and no trial scheduled in this case, all completely independent of Teles' discovery issues.  And, Teles fails to note that Teles itself has explicitly affected the

23

current status of this case by refusing to limit the number of asserted claims and maintaining its

refusal to set a schedule for claim construction briefing, which would force the litigation

forward.  Teles also lengthened the schedule in this case by deciding to add the '902 patent into

this case.

    Moreover, Teles mischaracterizes the course and conduct of discovery in this case, and

falsely accuses Cisco of intentional misconduct.  Cisco submits that, not only are the various

charges false, for reasons touched on in the footnote below, [17] but that:  (i) the discovery disputes

---

[17] Cisco cannot allow Teles' mischaracterizations to stand without rebuttal.  As such, Cisco provides this brief statement in response to some of Teles' accusations in order to clarify the record before this Court.

Cisco Acted Properly With Respect to the "Willfulness Issue":  During the discussion over the schedule for this case, Cisco asked for a date, prior to the close of discovery, by which it would have to give notice whether it would rely upon opinion of counsel as a defense to Teles' allegation of willful infringement.  That date, because it was always to occur before discovery closed, could have no effect on the overall schedule for the case (and thus could not create the "delay" that Teles now complains about).  Cisco asked for the time in order to evaluate and determine whether to rely upon an opinion of counsel.  The notice date ultimately adopted was May 1, 2007, well before the close of fact discovery, and on that date Cisco did not elect to rely upon opinion of counsel.  Teles claims that "Cisco attempted to manipulate and engineer a delay by manufacturing a phony willfulness issue" when no opinion existed.  Opp. at 27.  During the time period between when the '902 patent was added into this case and the notice date, Cisco made the determination that it would not seek or rely upon opinion of counsel, and duly notified Teles of that fact.  There was nothing improper about Cisco seeking a schedule that gave it an adequate time to determine whether to obtain and rely upon separate opinion of counsel.  At no time did Cisco indicate that an opinion of counsel in fact existed.  Teles' accusations are baseless.

Cisco Acted Properly with Respect to the Teles Source Code:  Teles says that Cisco failed to inspect Teles' source code after Teles produced it.  Again, this incident has nothing to do with delay in this case.  Moreover, Teles fails to tell the Court that it did not make its source code available for review in Boston, as required by the Stipulated Protective Order, until July 11, 2007, and did not inform Cisco of the direct contact for viewing arrangements until July 24, 2007 – less than three weeks before Cisco filed the '902 reexamination and this Court entered a temporary stay.  What is more, Teles' production came after many months of delay and *9 months after Cisco made its source code available.*  If Cisco's counsel had not been busy with other matters when the Teles code was finally produced, and if the stay had not been granted, Cisco would have inspected the Teles code at a convenient time.

Cisco Has Supplemented Its Invalidity and Non-Infringement Contentions:  Cisco did not "intentionally withhold its true invalidity contentions from Teles."  The prior art relied upon in the reexamination was cited in Cisco's invalidity interrogatory responses.  On August 8, 2007, Cisco supplemented is invalidity contentions, providing detailed invalidity charts for a number of references and incorporating its *inter partes* reexamination request filed earlier that day.  All this was before the stay was granted.  At the time of the temporary stay, four months of discovery remained, so Teles would have had the detailed contentions well in advance of the close of fact discovery.  There was nothing improper about Cisco's supplementation.  With respect to Cisco's non-infringement positions, Teles ignores that on July 27, 2007, Cisco supplemented its non-infringement contentions, detailing in 12 pages of narrative form why its accused products do not meet certain specific limitations of the asserted claims and do not practice the three alleged infringement scenarios described by Teles.

24

are completely ancillary to the motion for stay pending before this Court, and should not be considered here; and (ii) one of the major efficiencies from a stay is that the Court need not become entangled in discovery disputes that may never need to be addressed or decided based on the outcome of the reexaminations.  Furthermore, Teles, not surprisingly, fails to inform the Court of its *own* numerous discovery delays and deficiencies, which Cisco has raised with both Teles and the Court and which Cisco was prepared to argue on August 10, 2007.[18]

In the end, Teles' attempt to turn ordinary disputes regarding the scope of discovery into something more is unsuccessful.  Cisco has complied with its discovery obligations and will continue to do so, should the stay be lifted.  The existence of these mutual and multiple discovery disputes, however, is only further evidence that this action should be stayed.

> **b.    Teles' attempt to modify the protective order should be denied.**

At page 32 of the Opposition, Teles also attempts to inject into this Motion to Stay the ancillary issue of whether the Court should rewrite the Protective Order to allow Teles' litigation

---

Cisco's Product Samples:  Teles again misconstrues the facts in its attempt to make Cisco appear dilatory.  Cisco never refused to produce or allow inspection of its products; it only said that Teles was not entitled to product samples without paying for them.  Teles refused to pay.  Accordingly, on July 11, 2007, after a hearing, the Court ordered that the requesting party could *elect* to inspect or pay cost for product samples.  Teles Ex. 36.  Following the hearing, Teles did not immediately notify Cisco of its election.  Moreover, it was not until August 2, 2007, that Teles provided Cisco with the requisite configuration details necessary to build the requested product sample.  As it takes at least three weeks for Cisco to acquire the configured product from its suppliers, production had not occurred at the time this Court stayed the proceedings on August 10, 2007.  Again, there was no delay, and Teles of course could have obtained Cisco's widely available products at any time simply by purchasing them.

[18] Without detailing every Teles deficiency in this motion (as this is not the appropriate forum), Cisco points to two of Teles' major deficiencies:

Teles Has Failed To Provide Infringement Contentions That Detail How *Each* Accused Product, Component and/or Software Infringes The Asserted Claims:  Months into discovery, Teles has failed to provide Cisco with its detailed infringement contentions, identifying specifically how *each* of the accused products infringe the asserted claims and which part of the accused products allegedly practice the invention of the asserted claims.  Moreover, Teles has refused to identify the portions of the Cisco source code (or even a single portion) that allegedly infringe the asserted claims, even though Teles has had access to Cisco's source code since December 2006.

Teles Has Not Yet Complied With The Court's Order That It Must Produce Its Emails:  Almost two years into this litigation, Teles has yet to produce its emails.  After months of false promises that emails would be produced imminently, Teles suddenly claimed that German law prevented their production.  It was only upon the involvement of the Court that Teles agreed to begin to collect, review and produce emails on a rolling basis.  Even with the Court's Order, at the time of the stay, Teles' production of emails had yet to begin.

counsel – who have had access to Cisco's highly confidential documents and who have been reviewing in great detail Cisco's trade secret source code – to participate in the reexamination. This Court should not make such a change to the Protective Order, and it certainly should not do so as a result of Teles' two-paragraph assertions in the Opposition.[19]  Such a change would be highly prejudicial to Cisco.

Paragraph 19 of the Protective Order clearly states that any persons who have access to or receive certain Cisco confidential information are *precluded* from participating in any ongoing prosecution of any patent application related to the patents-in-suit and/or any reexamination of the patents-in-suit.  *See* D.I. 37, ¶19.[20]  This type of provision, sometimes known as a prosecution bar, is common in Protective Orders implemented in patent cases.  A prosecution bar prevents those who have obtained a party's most confidential information from using this confidential and trade secret information when prosecuting new patents or responding to reexamination filings on its existing patents.  *See Visto Corp. v. Seven Networks, Inc.,* 2006 WL 3741891, at *5-8 (E.D. Tex. Dec. 19, 2006) ("The purpose of the prosecution bar is to prevent outside counsel from using, even inadvertently, confidential information obtained in the lawsuit for purposes outside the lawsuit (*e.g.* drafting claims during patent prosecution).").  Otherwise, persons who have had access to confidential information would be able to misuse that information to direct the strategy and direction of prosecution or reexamination.

---

[19] The Protective Order provides that "Any party may move at any time to modify the terms of this Protective Order."  *See* Protective Order at ¶ 31 [D.I. 37].  As such, if Teles wishes to modify the terms of the Protective Order, Teles must file a proper motion with the Court, rather than improperly inject this miscellaneous issue into Cisco's Motion to Stay.  Should Teles file such a motion, as the party requesting a modification, Teles would bear the burden showing good cause.  *See SmartSignal Corp. v. Expert Microsystems, Inc.*, No. 02 C 7682, 2006 WL 1343647 *2 (N.D. Ill. May 12, 2006) ("It is the burden of the party seeking to modify the protective order to demonstrate good cause.  This burden is especially high where a protective order is agreed to by the parties before its presentation to the court.") (internal citations omitted).

[20] Teles makes the preposterous charge that "Cisco buried" Paragraph 19 in the protective order.  Opp. at 32.  Cisco did no such thing.  When this language was added to the draft Protective Order, it was clearly red-lined.  Teles had every opportunity to review it and read its clear language.  Teles agreed to the Protective Order, as written.

Here, Teles' litigation counsel are privy to Cisco's most confidential product information, including but not limited to, Cisco's source code. They gained access to that information by agreeing to abide by the clear terms of the Protective Order. Should Teles' litigation counsel now be allowed to participate in the reexamination, information learned from Cisco's own confidential documents could be the basis for claim amendments during reexamination, strengthening Teles' infringement case. Courts have recognized this serious problem and as a result have enforced previously-entered prosecution bars. "[I]t is clear that the advice and participation of the [litigant's] counsel in preparation and prosecution of patent applications related to the patents in suit is an intensely competitive decisionmaking activity and would be informed by access to the [adversary's] confidential information. *Counsel's ability to file new claims in existing and pending patents based on the confidential information discovered during the course of this litigation **poses an unacceptable opportunity for inadvertent disclosure and misuse**.*" *In re Pabst Licensing, GmbH*, No. MDL 1278, 2000 WL 554219, at *4 (E.D. La. May 4, 2000) (emphasis added).[21] Teles' proposed modification to the Stipulated Protective Order would eviscerate the protections that both parties agreed to. Moreover, Teles already has separate counsel, Attorney Vincent DeLuca, to represent it in the Patent Office proceedings.

**14. The Court should stay this case in its entirety.**

As already detailed in *Cisco's Response To The Court's Order Of August 22, 2007,* [D.I. 52], and for the reason detailed above, Cisco believes that if the Court grants the pending Motion to Stay, then this case should continue to be stayed in its entirety, with no exception made for the

---

[21] *See also Mikohn Gaming Corp. v. Acres Gaming Inc.,* 50 U.S.P.Q.2d 1783, 1786 (D. Nev. 1998) ("No matter how much good faith [counsel] might exercise, it is unrealistic to expect that his knowledge of [the adversary's] secret technology would not or could not influence the nature of his advice to [his client]."); *Motorola, Inc. v. Interdigital Tech. Corp.*, No. Civ.A. 93-488-LON, 1994 WL 16189689, at *5 (D. Del. Dec. 19, 1994) ("Attorneys who were to view [their adversary's] voluminous confidential information and then later prosecute the patents would have to constantly challenge the origin of every idea, every spark of genius. … The level of introspection that would be required is simply too much to expect….").

'453 patent claims or issues concerning infringement, damages and injunctive relief. As the Court is aware, the '902 patent is a divisional of the '453 patent and they share the same inventors and specification. Both patents and all of the asserted claims are now the subject of reexamination proceedings. As such there is no issue in this case that would not be impacted by the reexamination. Where, as here, there are no claims in the litigation that are "completely unrelated to patent infringement" the case should be stayed in its entirety. *See Photoflex Prod. Inc. v. Circa 3 LLC*, No. C 04-03175, 2006 WL 1440363 *2 (N.D. Cal. May 24, 2006) (finding that claim for copyright, false designation of origin and unfair competition are sufficiently unrelated to patent infringement to warrant a partial stay).

No carve-out to the stay should be provided for a preliminary injunction, or (more accurately) for continuing discovery just in case Teles might decide to file a preliminary injunction, as Teles requests at 33-34. Teles' 453 patent issued almost two years ago, and Teles has had access to Cisco's source code for nine months, yet Teles has not made any move to file a preliminary injunction. Cisco's products have always been available to Teles through purchase on the open market. Teles' delay in seeking preliminary relief alone would be enough to preclude a preliminary injunction. *See High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.,* 49 F.3d 1551, 1557 (Fed. Cir. 1995) (internal citations omitted). But even beyond that, no preliminary injunction can be awarded if Cisco raises a substantial question of the invalidity of the asserted claims. *See Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1351 (Fed. Cir. 2000) ("If the alleged infringer raises a substantial question concerning validity, i.e., asserts an invalidity defense that the patentee cannot prove 'lacks substantial merit,' the preliminary injunction should not issue.") (internal citation omitted). By December 2007, when the Patent Office is likely to grant the requests for reexamination, we will have explicit confirmation that

28

there are substantial questions of the validity of Teles' claims. There is thus no reason to continue with any discovery under these circumstances, and the Court's current complete stay should remain in place.[22] Teles' request to have continuing access to Cisco's source code, coupled with its request to allow those attorneys with access to the code to participate in the reexamination, would be particularly harmful and prejudicial to Cisco.

The Court should also reject the other items that Teles is trying to tack on to this Motion for Stay, as reflected in Teles' Proposed Order, as unnecessary, outside the scope of the motion, and unfounded as a matter of law.

DATED: October 5, 2007                    Respectfully Submitted,

                                          CISCO SYSTEMS, INC.
                                          By its attorneys,
                                          /s/ J. Anthony Downs_____
                                          Marva R. Deskins (#D00266)
                                          GOODWIN PROCTER LLP
                                          901 New York Avenue, N.W.
                                          Washington, DC  20001
                                          (202) 346-2000
                                          (202) 346-4444 (fax)

                                          *Of Counsel:*
                                          J. Anthony Downs (*Pro Hac Vice*)
                                          Lana S. Shiferman (*Pro Hac Vice*)
                                          GOODWIN PROCTER LLP
                                          Exchange Place
                                          Boston, MA 02109
                                          (617) 570-1000
                                          (617) 523-1231 (fax)

---

[22] Teles also argues that a preliminary injunction may now be appropriate due to its "changing competitive position" in light of its "new opportunity to penetrate the U.S. market." Opp. at 33. Teles conveniently ignores that by its own admission it has been involved in the U.S. market since 2003 (Opp. at 13-14), yet Teles did not move for a preliminary injunction at the commencement of this case. Even with a recent small entry into the market, Teles cannot establish the kind of irreparable injury needed for an injunction, nor that the balance of harms would favor enjoining Cisco's hundreds of millions of dollars in sales of accused products in favor of Teles' as-yet-undocumented small level of sales in the United States. *See, e.g., MercExchange, LLC v. eBay, Inc.*, 500 F. Supp. 2d 556, 590-91 (E.D. Va. 2007).

29

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on October 5, 2007 true and correct copies of the within and foregoing documents were served upon counsel of record for all parties via CM/ECF.

/s/ J. Anthony Downs
J. Anthony Downs
