IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CISCO SYSTEMS, INC., <br><br> Plaintiff, <br> v. <br><br> TELES AG INFORMATIONSTECHNOLOGIEN, <br><br> Defendant. <br><br> ——————————————————————— <br><br> TELES AG INFORMATIONSTECHNOLOGIEN, <br><br> Counterclaimant, <br> v. <br><br> CISCO SYSTEMS, INC., <br><br> Counterdefendant. | Civil Action No.: <br> 1:05-CV-02048 (RBW) |

**TELES' SUR-REPLY TO CISCO'S MOTION TO STAY
THIS CASE PENDING REEXAMINATION OF THE '902 PATENT**

The Court should deny Cisco's motion that seeks to prolong its unlawful exploitation of Teles' patented technology during this critical time in the VoIP market. Such a stay would effectively exclude Teles from the U.S. market based on missed opportunities now.

A.   **A Stay Prejudices Teles By Prolonging Cisco's Infringement**

Cisco's Reply raises a new argument that harm caused by Cisco willfully exploiting Teles' VoIP technology during the stay may be remedied after the fact by speculative "lost profits." But that is no cure. As Cisco knows, now is the key time for VoIP competitors to establish themselves in the U.S. market. Telephone subscribers are scrambling to switch-over from legacy phone lines to the type VoIP digital telephony offered by Teles and related to Teles' U.S. patents. The VoIP market is growing rapidly, as shown in market studies below.[1]



**Next 4 Years: VoIP Will Rise To Be 80% of Entire Telephony Market** | **Next 4 Years: U.S. VoIP Market Has Most Rapid Growth**

Indeed, outside the Court, Cisco champions the "tremendous" immediate growth opportunities in the VoIP industry over the next few years, stating:

---

[1] *World VoIP market: Telephony services' wide transformation*, IDATE News 371 (May 3, 2006) at 2 (Ex. 38).

> In a recent report by the Telecommunications Industry Association (TIA), residential VoIP consumers more than tripled in 2005. The TIA also predicted a **compounded annual growth rate of more than 40% through 2009**. This would account for more than 18 million consumer VoIP connections. This shows that packet voice is not only **growing rapidly**, it is here to stay. This is just one example in the consumer space of the adoption of this technology. The adoption in small, midsize, and large businesses has also been **tremendous**. [emphasis added][2]

Plainly this immediate opportunity to capture the significant customer base switching to VoIP suppliers will be gone even a few years from now after such customers have switched and become entrenched with their newly selected VoIP providers. This lost opportunity includes not only the initial sales to new customers, but the follow-on sales to them of additional or auxiliary equipment and services as they expand their VoIP use. The substantial harm caused by Cisco's exploiting Teles' claimed invention during this transitory marketing opportunity cannot be remedied after the fact by speculative "lost profits." The Court should deny the stay Cisco seeks to unlawfully gain marketing position by exploiting Teles' patented technology during the stay and permanently harm Teles by immeasurable lost opportunities during this critical VoIP period.

### B.    Cisco Does Not Meet Its Heavy Burden Here

Cisco's motion relies on vague generalities and speculation while running from the specific facts and equities of this case. If such hollow motions carried the day, then courts would always automatically grant stays, and accused infringers would flood the Patent Office with reexamination requests to invoke automatic stays that delay their day of reckoning. But that is not the case. Court's typically deny stay motions,[3] and *inter*

---

[2] *Voice over IP Fundamentals* (Cisco Press 2d. ed. 2007) at p. xx (Ex. 39).

[3] *See Visto Corp. v. Good Tech., Inc.*, 2:06-CV-39, 2007 U.S. Dist. LEXIS 72234 (E.D. Tex., Sept. 27, 2007) (stay denied where indefinite delay could prejudice patent owner and simplification of the issues was speculative); *Ecolab, Inc. v. FMC Corp.*, 05-CV-831, 2007 U.S. Dist. LEXIS 39189 (D. Minn., May 30, 2007) (denying a stay where there was an inexplicable or unjustified delay in seeking reexamination and stay would serve simply to delay proceedings); *Gladish v. Tyco Toys*, S-92-1666 WBS/JFM, 1993 U.S. Dist. LEXIS 20211(E.D. Cal., Sept. 16, 1993) (stay denied where movant delayed seeking reexam after knowledge of prior art and there was concern witnesses memories

*partes* reexaminations are rarely sought – *e.g.*, less than 300 such reexams have ever been filed in the nearly eight years since they have been available;[4] in contrast, over 16,000 district court patent cases were filed during that same time period.[5]

Cisco apparently hopes that merely suggesting a stay will be tempting to a court facing a crowded docket – an excuse to make this case one less thing to worry about. Thus Cisco raises new arguments in its Reply that try to dodge or put-off Cisco's heavy burden here rather than confront the merits of its motion. In contrast, Teles relies on the Court to consider the specific equities and facts in this case that compel denying a stay.

**Wait For Nothing**. First, to prolong the time it can exploit Teles' patents, Cisco now argues that the Court should delay ruling on its surprise motion until after the Patent Office decides whether to grant reexamination and then issues an initial Office Action. Such an initial Office Action is the Patent Office Examiner's tentative view after it considers only Cisco's arguments without any arguments or evidence from Teles – *i.e.*, akin to a court's view on an opening brief before hearing from the other side.[6] As explained in Teles' Opposition brief (pages 11-12), initial reexamination determinations are substantively meaningless and should be given little judicial deference. This includes

---

may fade and evidence may be lost during PTO proceeding); *Biax Corp. v. Fujitsu Computer Sys. Corp.*, 2:06-CV-364, 2007 U.S. Dist. LEXIS 12973 (E.D. Tex., Feb. 26, 2007)(stay denied where indefinite stay period could prejudice patent owner); *Lexington Lasercomb I.P.A.G. v. GMR Prods., Inc.*, 442 F. Supp. 2d 1277, 1278 (S.D. Fla. 2006) (stay denied because it would "prolong for an indefinite period of time, the instant litigation"); *St.-Gobain Performance Plastics Corp. v. Advanced Flexible Composites, Inc.*, 436 F. Supp. 2d 252 (D. Mass., 2006) (stay denied to avoid prejudice to patent owner where accused infringer failed to demonstrate clear hardship absent a stay); *Amphenol T&M Antennas, Inc. v. Centurion Int'l, Inc.*, No. 00 C 4298, 2001 U.S. Dist. LEXIS 13795 (N.D. Ill., Sept. 5, 2001) (stay denied where, *inter alia*, it would prejudice the patentee but unclear if reexam would have any effect on the case).

[4] Patent Office Inter Partes Reexam Statistics (Cisco Ex. 10).

[5] Judicial Center Statistics at Table 4.7 (Ex. 40).

[6] Manual of Patent Examination Procedure ("MPEP") §§ 2654, 2660.

rejections in initial Office Actions or anything else less than a final reexamination certificate. Indeed, the Patent Office advises courts that a "**non-final** reexamination proceeding" – *e.g.*, one with an initial Office Action but not a final reexamination certificate – "merits no particular weight" in court.[7]

This is not surprising. The Patent Office's statistics show that an Examiner's *ultimate* decision usually does not survive appeal within the Patent Office – *e.g.*, Examiner rejections are completely affirmed less than half the time.[8] Any rejections in an *initial* Office Action (which Cisco suggests awaiting for here) are even less reliable. Because the Court should give very little weight to any reexamination grant or initial claim rejection, the Court need not await them. Waiting simply daisy-chains unnecessary delay that prolongs Cisco's continued willful infringement at Teles' expense with little benefit to the decision to be made here.

**Legislative History**. Second, Cisco's Reply wrongly states that the Senate's current patent reform bill keeps *inter partes* reexamination. Cisco cites the *old* Senate Bill that was superseded by amendments that include the current Bill section "Repeal Of Optional Inter Partes Reexamination Procedures."[9]

**Length of Stay**. Third, after first telling the Court that the length of reexamination "could be a year,"[10] Cisco now tells the Court that "the median pendency of *inter partes* requests that have gone to a certificate is about 2.5 years."[11] Those Patent

---

[7] *See eBay Inc. v. MercExchange, L.L.C.*, No. 05-130, 2005 U.S. Briefs 130, at **26-27 (Mar. 10, 2006) (United States' Amicus Brief).

[8] *See* Patent Office 2006 Annual Report at Table 14 (Ex. 41) (Out of 2,874 BPAI appeals of Examiner rulings, only 1,256 were completely affirmed; 1,001 were reversed and 348 were affirmed-in-part).

[9] *See* Senate Amend. As Adopted July 12, 2007 at 1, 30 (Teles Ex. 13) ("complete substitute" of original bill); Initial Senate Bill of Apr. 18, 2007 (Cisco Ex. 13).

[10] Aug. 10 Hearing Tr. at 6 (Dkt # 49).

[11] Cisco Reply at 12.

Office statistics are consistent with Mr. DeLuca's in Teles' Ex. 10, and actually confirm that only 8 out of 272 *inter partes* reexaminations have completed.[12] Cisco does not dispute that those 8 completed *inter partes* reexaminations involved uncontested matters abandoned at early stages in the process.[13] With such **uncontested** and **truncated** reexaminations still taking about **2.5 years**, Cisco's newly cited statistics are further evidence that the **contested** *inter partes* reexamination Cisco seeks here foreseeably could last **seven** or more years.

### C. A Stay Will Not Simplify The Issues In This Case

Cisco's requested reexamination of the '453 Patent will not simplify the issues in this case for essentially the reasons set forth in Teles Opposition brief as to the '902 Patent reexamination request (Teles Opp. at 16-21).

**No New Prior Art.** Similar to the '902 Patent, Cisco's '453 Patent reexamination request is based on the *exact same* prior art already considered by the Patent Office before granting the '453 and/or '902 Patents.[14] Cisco erroneously argues that "the Examiner did not state in the '902 prosecution that he considered the cited [prior] art." That is not true. That exact prior art is listed in the '902 Patent as "References Cited" precisely because the Patent Office specifically considered them.[15] Indeed, the file

---

[12] Patent Office Inter Partes Reexam Statistics (Cisco Ex. 10).

[13] *See* DeLuca Dec., ¶¶11-12 (Teles Ex. 10).

[14] Compare (1) Cisco '453 Patent Reexam Request of Aug. 30, 2007 at 1 (Cisco Reply Br. Ex.5) (listing reexamination prior art references) and (2) the '453 Patent at 1-2 (Ex. 42) and '902 Patent at 1-2 (Teles Ex. 9) (listing those same references as having been considered by the Patent Office in either or both Teles patents).

[15] MPEP § 1302.12

history includes Patent Office forms that the Examiner initialed or signed to officially prove that he specifically "considered" that prior art.[16]

To prop-up the dubious merits of its reexamination requests, Cisco's Reply injects confusion by erroneously arguing that the German Patent Court found Teles' European patents "obvious."[17] The German court did no such thing. Nor would it: the German patent system is based on a patentability standard different from the U.S. "obviousness" standard. This is a key reason U.S. courts find such foreign proceedings have little relevance and can only cause confusion when considering the validity of U.S. patents.[18] In any event, the Examiner of Teles' U.S. patents specifically stated that he considered the "German decision holding patent invalid/nullified" when granting the '902 Patent.[19]

In sum, the Patent Office fully considered the exact same prior art that Cisco seeks to rehash in its reexamination requests. There is no benefit in waiting for the Patent Office to rehash them again, but substantial harm is caused by Cisco exploiting Teles' patented technology during that time.

**Slim Chance Claims Will Be Cancelled/Amended**. Although conceding there is little chance (only 10%) that all claims will be canceled in reexamination,[20] Cisco raises a new argument that "the Patent Office required the patent owner to narrow the

---

[16] See '902 Patent File History Excerpts at 026895, 026897, 026901, 026950, 028590, 028971-72 (Ex. 43). The prosecution history is replete with the Examiner's consideration and comment on these references, all of which can be provided if the Court so desires.

[17] Cisco Reply at 4.

[18] See Heidelberger Druckmashinen AG v. Hantscho Commercial Products Inc., 21 F.3d 1068, 1072 n. 2 (Fed. Cir. 1994) ("Theories and laws of patentability vary from country to country...uniformity in theory and practice has not been achieved."); see also Oki America, Inc. v. Advanced Micro Devices, Inc., No. C 04-03171, 2006 U.S. Dist. LEXIS 82654, n. 2 (N.D. Cal., Nov. 13, 2006) ("Courts in the United States do not defer to decisions in foreign courts or patent offices on questions of validity.")

[19] '902 Patent File History at 028972 (Ex. 43); '902 Patent at 1-3 (Teles Ex. 9).

[20] Cisco Reply at 7.

scope of **the claims** by amendment in 64% of the cases."[21]  That is not true.  Those Patent Office statistics actually state that 62% of *ex parte* reexaminations resulted in "Certificates **with claims changes**" – *i.e.*, in 62% of the reexam certificates, **some** but not necessarily **all** claims were changed (*e.g.*, one or more claims).[22]  Although a patent owner may amend **some** claims during reexamination, a patent owner will not amend the **litigated claims** because doing so throws out substantial rights.[23]  It is no surprise, therefore, that Cisco cannot cite anything showing that **litigated** patent claims are amended during reexamination.  Cisco also fails to cite anything showing that patent claims are canceled or amended based solely on prior art previously considered by the Patent Office – the precise long-shot Cisco seeks here.

    D.      A Stay Is Not Proper Given The Posture Of This Case

Cisco's Reply raises a new argument claiming that this case should be stayed pending reexamination of the '453 Patent.  But Cisco selected this Court as its preferred forum for challenging that patent's validity (as well as the '902 Patent's validity), and cannot insist on the Patent Office route now: Cisco "chose its route and must now deal with the consequences of its decision."[24]

Nearly two years ago, Cisco filed this declaratory judgment action to challenge the '453 Patent's validity in this court, rather than in the Patent Office.[25]  About a year ago Teles and Cisco agreed to include the '902 Patent in this '453 Patent litigation, rather than Teles filing a separate action on the '902 Patent.  Cisco should not be permitted to

---

[21] *Id.* (emphasis added).

[22] Patent Office Ex Parte Reexamination Filing Data (2006) at 2, ¶ 9 (Cisco Ex. 9).

[23] *See* Teles Opp. at 19.

[24] *Sony Computer Entm't Am., Inc. v. Dudas*, No. 1:05cv1447, 2006 U.S. Dist. LEXIS 36856, **17-18 (E.D. Va., May 22, 2006) (affirmed Patent Office stay of *inter partes* reexamination (not stay litigation)).

[25] Cisco Complaint of Oct. 18, 2005 (Dkt # 1) (Teles Ex. 1).

use its agreement to join the '902 Patent into this case as a basis to do now what it could not do otherwise – e.g., now seek a stay the '453 Patent causes of action. Specifically, Cisco could not now seek a stay of just the '453 Patent litigation were it maintained as a separate action not only for reasons given for the '902 Patent, but also because, *inter alia*, this case would be close to trial absent the delay caused by adding the '902 Patent.

For the foregoing reasons, the Court should deny Cisco's stay that attempts to prolong its unlawful exploitation of Teles' patented technology and would effectively exclude Teles from the U.S. market. The Court should grant the relief set forth in Teles' Opposition brief (see page 34) to put this case on track for a timely and just resolution of all disputes here.

DATED: October 23, 2007

Respectfully submitted,

TELES AG
INFORMATIONSTECHNOLOGIEN
By its attorneys,

/s/ David W. Long
David W. Long, No. 458029
Mark L. Whitaker, No. 435755
HOWREY LLP
1299 Pennsylvania Ave., NW
Washington, DC 20004
Tel.: (202) 783-0800
Fax: (202) 383-6610