**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————————

|  |  |  |
|---|---|---|
| | ) | |
| CISCO SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff/ | ) | Civil Action No. |
| Counterclaim-Defendant, | ) | 1:05-CV-02048 (RBW) |
| | ) | |
| v. | ) | ECF Case |
| | ) | |
| TELES AG INFORMATIONSTECHNOLOGIEN, | ) | |
| | ) | |
| Defendant/ | ) | |
| Counterclaim-Plaintiff. | ) | |
| | ) | |

———————————————————————————

**CISCO'S OPPOSITION TO**
**TELES AG'S MOTION TO MODIFY THE PROTECTIVE ORDER**

Plaintiff Cisco Systems, Inc. ("Cisco") hereby opposes Defendant Teles AG's ("Teles")

Motion to Modify the Stipulated Protective Order to allow Teles' litigation counsel – who have

had access to Cisco's highly confidential documents and who have been studying in great detail

Cisco's trade secret source code – to participate in the reexamination.  This Court should not

rewrite the Protective Order in this way, as Cisco relied upon the protections guaranteed by the

Stipulated Protective Order when producing its highly confidential information in this case, and

Teles' proposed revision is contrary to well-established law that has been adopted repeatedly by

courts across the country.

Here, Teles' litigation counsel only gained access to Cisco's confidential information by

knowingly agreeing to abide by the terms of the Stipulated Protective Order.  That Order

contains a "prosecution bar" in Paragraph 19, so that Teles' attorneys who receive, see, view or

have access to Cisco's confidential information are prohibited from participating in the

prosecution or reexamination of the patents-in-suit or related patents.  Should Teles' litigation

counsel now be allowed to reverse course and participate in the reexamination, information

learned from Cisco's own confidential documents could be the basis for claim amendments

during reexamination.  In essence, the information that Teles' litigation counsel has learned from

studying Cisco's source code and other documents could provide counsel with a road map for

ensuring that any amendments proposed by Teles in the reexamination to get around the prior art

would still "read on" Cisco's accused products.  This would give a huge and unfair advantage to

Teles and would directly harm Cisco.  Cisco would never have agreed to allow Teles' counsel to

see Cisco's highly confidential information under such terms, nor would the well-established law

have given Teles' counsel any right or ability to participate in the reexamination after viewing

Cisco's information.

Teles' claims of undue prejudice from the terms of the Protective Order, which it agreed

to, are also unsupported.  Teles already has other attorneys representing it in the Patent Office

who are familiar with the prior art (*e.g.,* attorney Vincent DeLuca and his firm).  Indeed, Teles

repeatedly argued in its opposition to the Motion to Stay that the prior art relied upon by Cisco in

the reexamination was previously cited art, that raised nothing new, and that had been dealt with

by Teles before.[1]  Teles says it will be deprived of litigators in the reexamination, but Paragraph

19 of the Stipulated Protective Order allows Teles to utilize other litigating attorneys in the

Howrey firm, so long as they have not had access to Cisco's confidential information and are

appropriately walled off.  Teles is also a public company in Germany whose web site reports a

2006 annual revenue of 28.2M Euro, or approximately $41.4 million.  It has the resources to

---

[1]  *See* Teles' Opposition to Cisco's Motion to Stay, D.I. 50, at 4-5; Teles' Sur-Reply in Opposition to Cisco's
Motion to Stay, D.I. 56, at 5-6.

respond to the reexamination, and it has had had several months since the reexamination was

filed on August 8, 2007[2] to get Mr. DeLuca and its other attorneys up to speed to respond to the

reexamination.

As the party requesting a modification of the Stipulated Protective Order, Teles bears the

burden showing good cause. *See SmartSignal Corp. v. Expert Microsystems, Inc.*, No. 02 C

7682, 2006 WL 1343647, at *2 (N.D. Ill. May 12, 2006) (Declaration of Marva Deskins,

"Deskins Decl.," Exhibit 1); *Murata Mfg. Co. v. Bel Fuse, Inc.,* 234 F.R.D. 175, 179-80 (N.D.

Ill. 2006) (citing factors and finding no good cause). As Courts have recognized, "This burden is

especially high where a protective order is agreed to by the parties before its presentation to the

court," as is the case here. *SmartSignal*, 2006 WL 1343647, at *2. Teles has failed to meet this

burden.

### A. Teles Knowingly Agreed to the Stipulated Protective Order with the Prosecution Bar, Before the '902 Patent Was Even Disclosed to Cisco

Teles does not dispute that Paragraph 19 of the Stipulated Protective Order bars Teles'

counsel who have had access to Cisco's highly confidential information from prosecuting patents

or participating in reexaminations of Teles' patents-in-suit or related patents. *See* D.I. 37, ¶19.

Likewise, under Paragraph 19, Cisco's counsel who have had access to Teles' highly

confidential material could be barred from participating in the prosecution or reexamination of

certain Cisco patents. This type of provision, sometimes known as a "prosecution bar," is

common in Protective Orders implemented in patent cases. A prosecution bar prevents those

counsel who have obtained an opposing party's most confidential information from prosecuting

his or her client's new patents or responding to reexamination filings on the client's existing

---

[2] A Replacement Request was filed on September 7, 2007.

patents, so as to protect against the potential misuse of the opposing party's confidential information. *See, e.g., Mikohn Gaming Corp. v. Acres Gaming Inc.,* 50 U.S.P.Q. 2d 1783, 1786 (D. Nev. 1998).

At page 2 of its Memorandum, Teles provides an incorrect and misleading recitation of the facts that led up to Teles' agreement to the terms of Paragraph 19 of the Stipulated Protective Order. As shown in the documents attached to the Deskins Declaration as Exhibits 2-5, the parties exchanged drafts of proposed orders in May 2006. On May 30, 2006, Cisco provided Teles' counsel Mr. Long and Mr. Whitaker with a revised draft that included, in red-lined form, the current language of Paragraph 19, containing the prosecution bar. Deskins Decl., Exhibit 4. Teles acknowledged receipt of the draft and thereafter included the language of Paragraph 19 in its own drafts. When the parties reached an impasse over certain other provisions of the Stipulated Protective Order that related to the protections to be afforded to computer source code, Cisco filed its Motion for Entry of Protective Order, on July 11, 2006. D.I. 24. Cisco's proposed protective order included Paragraph 19. D.I. 24, Exhibit A to Shiferman Declaration, at 16-17. Teles then submitted a response, in which it too submitted its proposed protective order, ***also including Paragraph 19***. D.I. 25, Exhibit 1 to Whitaker Declaration, at 12. This Court held a hearing on the disputed issues on October 20, 2006, and ordered the parties to submit a protective order consistent with the outcome of the hearing. On November 3, 2006, the parties agreed to and submitted the final order for Court, again including Paragraph 19, D.I. 36 at 15-16, and the Court entered the Stipulated Protective Order on November 9, 2006.

Not once during this entire process did Teles or its counsel contest or object to the terms of the prosecution bar of Paragraph 19. They had multiple opportunities to review the language, consider its plain language and meaning, and object. They made no objection, and instead

include Paragraph 19 in the proposed order Teles submitted to the Court.  Teles now tries to

disparage Paragraph 19 as mere "boilerplate" (Memorandum at 2), but the prosecution bar is

nothing of the sort.  Rather, it provides important protections to the parties who are producing

highly confidential information from potential misuse by the receiving party.

Moreover, Teles writes as if Cisco was somehow pulling a fast one on Teles by including

Paragraph 19 during the negotiations in May 2006, and then later filing a "surprise" request for

reexamination of the '902 patent.  This is completely unfounded.  Teles' counsel from the

Howrey firm are experienced patent counsel; they knew what they were agreeing to when they

included Paragraph 19 in the proposed order Teles submitted to the Court.  Moreover, the

parties' negotiations over the Stipulated Protective Order occurred more than a full year before

Cisco filed its request for reexamination of the '902 patent on August 8, 2007.  Indeed, Teles

first informed Cisco of their intent to move to amend to add new claims (later issued in the '902

patent) in an interrogatory response on August 3, 2006, and a letter on August 10, 2006, *after* the

parties had already submitted to the Court the agreed-upon language of Paragraph 19 in the

proposed Stipulated Protective Order.  The '902 patent itself did not even issue until December

5, 2006.  There is no evidence whatsoever that Cisco somehow had a plan or ulterior motive to

fool Teles' sophisticated patent attorneys at Howrey into signing a Stipulated Protective Order

that included the prosecution bar of Paragraph 19, just so that more than a year later Cisco could

file the reexamination request for an as-yet-unissued '902 patent.[3]

---

[3]  The statement by Teles at page 5 of its Memorandum that "Cisco watched over two years as Teles invested
considerable resources getting its Howrey litigation team up to speed on the technology and prior art involved in
Cisco's validity challenges in this case" may sound like good rhetoric, but it is unfounded as a matter of fact.
Cisco did not even learn of the potential issuance of the '902 patent until August 2006, and Teles did not disclose
which claims it would assert until January 26, 2007.  Even then, it took considerable time for Cisco to analyze the
prosecution history and consider the validity of the 36 claims Teles chose to assert.  Cisco's analysis was further
impacted by issuance of the Supreme Court's decision on obviousness in *KSR Int'l Co. v. Teleflex, Inc.*, 127 S.Ct.
1727, on April 30, 2007.  At the time Cisco filed for the '902 reexamination on August 8, 2007, Teles was

In short, Teles' counsel knew and agreed that, by signing onto the Stipulated Protective Order, they would be barred from participating in any potential future reexamination of the patents-in-suit during the pendency of this lawsuit, and two years thereafter, no matter who filed the reexamination request. Thus, it was entirely foreseeable to Teles when the Protective Order was entered that, when a reexamination was filed, the Howrey attorneys who had access to Cisco's confidential reexamination would be barred from participating in the reexamination.

**B.**      **The Law Is Clearly Against Allowing Teles' Counsel Who Have Had Access to Cisco's Highly Confidential Information To Participate In the <u>Reexamination of the Patents-In-Suit</u>**

Courts have repeatedly recognized that allowing a patent owner's counsel who has access to a patent defendants' confidential information to participate in prosecution or reexamination of the patents-in-suit creates a serious problem and, as a result, they have imposed and enforced prosecution bars. "[I]t is clear that the advice and participation of the [litigant's] counsel in preparation and prosecution of patent applications related to the patents in suit is an intensely competitive decisionmaking activity and would be informed by access to the [adversary's] confidential information. *Counsel's ability to file new claims in existing and pending patents based on the confidential information discovered during the course of this litigation **poses an unacceptable opportunity for inadvertent disclosure and misuse**.*" *In re Papst Licensing, GmbH*, No. MDL 1278, 2000 WL 554219, at *4 (E.D. La. May 4, 2000) (emphasis added) (Deskins Decl., Exhibit 6).

---

complaining that Cisco had not disclosed enough of its invalidity contentions. *See, e.g.,* D.I. 46. Moreover, Teles itself repeatedly argued in opposing the Motion to Stay that Cisco's prior art was nothing new, and had been previously cited by Teles' patent prosecution counsel to the Patent Office. *See* D.I. 50, at 4-5; D.I. 56, at 5-6.

Also without basis is Teles' assertion that the parties had "litigated the issues related to validity in this Court for almost two years." Memorandum at 1. But, as this Court is aware, in this case to date there has been no real litigation of invalidity issues. There have been no fact depositions, no expert reports on invalidity, no third party discovery, no briefs on invalidity issues, and no substantive invalidity issues raised with the Court.

In *Visto Corp. v. Seven Networks, Inc.,* No. 2:03-CV-333, 2006 WL 3741891, at *7 (E.D. Tex. Dec. 19, 2006) (Deskins Decl., Exhibit 7), the Court explicitly recognized the importance of a prosecution bar in the context of reexamination proceedings, and rejected the argument that reexaminations are different. *Id.* ("Visto's argument that a reexamination proceeding is different from the prosecution of a new application is not persuasive"). A reexamination, the Court found, is "a part of the prosecution history of the very patent asserted in the case." *Id.* And, the "purpose of the prosecution bar is to prevent outside counsel from using, even inadvertently, confidential information obtained in the lawsuit for purposes outside the lawsuit (*e.g.* drafting claims during patent prosecution). This is true even if the result of the reexamination is narrower claim language." *Id.*

Other cases, as well, explicitly recognize the propriety and necessity of language in a protective order that prevents patent owners' counsel who have had access to the opponent's confidential information from participating in the prosecution/reexamination of the very patents-in-suit. *See, e.g., Mikohn Gaming,* 50 U.S.P.Q. 2d at 1786 ("No matter how much good faith [counsel] might exercise, it is unrealistic to expect that his knowledge of [the adversary's] secret technology would not or could not influence the nature of his advice to [his client]."). In the case of *Motorola, Inc. v. Interdigital Tech. Corp.*, No. Civ. A. 93-488, 1994 WL 16189689, at *4 (D. Del. Dec. 19, 1994) (Deskins Decl., Exhibit 8), the Court considered a situation in which "DS&M attorneys [proposed as litigation counsel] are prosecuting patents that are directly at issue in the present litigation." It held that "Attorneys who were to view [their adversary's] voluminous confidential information and then later prosecute the patents would have to constantly challenge the origin of every idea, every spark of genius. … The level of introspection that would be required is simply too much to expect…." *Id.* at *5. The Court then went on to

bar all attorneys who had received confidential information under the protective order from prosecuting any patent application for their client relating to the subject matter of the patents in suit during the pendency of the case and for one year after its conclusion. *Id.* at *7.

Teles provides no legal authority or support for its position that its litigation counsel, who have had direct access to Cisco's highly confidential information, should be allowed to participate in the reexamination of Teles' patents-in-suit. Teles' Motion only relies upon a single case. Memorandum at 6. But that case, *MedImmune, Inc. v. Centocor, Inc.*, 271 F. Supp. 2d 762 (D. Md. 2003), is completely inapposite to the circumstances in the present case, and in fact explicitly recognizes that it does *not* apply to situations where, as here, the attorney is seeking to participate in the prosecution of "patents on the exact same subject matter of the litigation." *Id.* at 775 n.14.

In *MedImmune*, Mr. Olstein, counsel for the accused infringer MedImmune sought access to confidential material produced by Centocor, the exclusive licensee, and the Universities, who were the patent owners and plaintiffs (collectively "patent owners"). *Id.* at 773. Before any confidential information was shown to Mr. Olstein, the patent owners objected to Mr. Olstein having access to the their confidential material, arguing that he was a "competitive decision-maker" based solely on his role prosecuting patents for MedImmune in the general biotech field. *Id.* The Court concluded that the fact that Olstein prosecutes patents for MedImmune (and other clients) in the *general* biotech field does not make him a competitive decision-maker. *Id.* at 774-75. ***Most notably, Olstein, as counsel for the accused infringer, was not involved in the prosecution of the patents-in-suit or any related applications.*** Even still, the Court noted that this "issue [was] a 'close-call.'" *Id.* at 773.

Unlike the situation in *MedImmune*, here Teles' counsel, who have long had access to Cisco *most* confidential information directly related to Cisco's accused products, seek to participate in a reexamination of the very patents that are the subject of the instant litigation. Having studied Cisco's source code, Teles' counsel seek permission to assist in the reexamination and possible amendment of the very claims being asserted against Cisco's source code utilized in its products. The situation in the present case thus exemplifies the circumstances where a prosecution bar is most necessary, as the courts cited above have repeatedly recognized. Indeed, the *MedImmune* Court recognized this crucial distinction, noting that a situation, like the present case, where a "patent counsel was currently prosecuting patents on the exact same subject matter of the litigation" results in a contrary finding. *Id.* at 775 n.14 (citing *Mikohn Gaming Corp.*, 50 U.S.P.Q. 2d 1783 (D. Nev. 1998)).

**C.     Cisco Would Be Significantly Harmed If Teles' Litigation Counsel, Who Have Been Studying Cisco's Highly Confidential Source Code and Detailed Information About Cisco's Accused Products, Were Allowed to Participate <u>in the Reexamination</u>**

As noted above, Cisco relied on the agreed-upon terms of the Stipulated Protective Order, including Paragraph 19, when it produced significant volumes of highly confidential documents and information to Teles' counsel in this case, and it would be seriously prejudiced if Teles' counsel were now allowed to reverse its prior agreement to Paragraph 19, and to participate in the pending reexamination filings. Indeed, Teles' counsel seeks to lift the stay of this litigation, have continuous access to Cisco's source code and confidential documents to pursue Teles' affirmative case against Cisco, and also to be able simultaneously to propose amendments and participate in reexamination strategy that could result in the re-writing and strengthening of

Teles' claims against Cisco's own products.[4]  This is precisely the kind of misuse of confidential information that the courts have repeatedly rejected.

As set forth in the Declaration of John N. Stewart, Cisco's Vice President and Chief Security Officer ("Stewart Decl."), among the highly confidential information that Cisco produced to Teles' counsel is Cisco's computer source code for the IOS operating system used in many Cisco products.  Stewart Decl. ¶ 3.  Teles' counsel have acknowledged in previous filings that they have spent many hours studying Cisco's IOS source code and analyzing how they will use that code to contend that the '902 and '453 patents read on Cisco's products.[5]  Teles' counsel also has access to highly confidential Cisco documents about the development, features and history of Cisco's 200-plus accused products.  *Id.* at ¶ 4.  It cannot be seriously disputed – and Teles does not try to dispute – that knowledge of Cisco's IOS source code and its internal documentation could be used essentially as a "road map" to enable Teles' counsel to tailor new patent claim language that could read directly on Cisco's many products.

Teles says wrongly that the potential use of Cisco's highly confidential information to draft claim amendments in a reexamination cannot hurt Cisco because "the scope of patent claims cannot be broadened during reexamination – they can only be narrowed."  Memorandum at 6.  In a reexamination, a patent owner such as Teles has a right to propose amendments during the reexaminations to try to get around the cited art and avoid invalidation of the patents-in-suit.  Because Teles' litigating counsel already have a detailed "road map" of Cisco's products through their access to Cisco's highly confidential information, they can be sure that any amendment

---

[4]  Even if the stay pending reexamination is not lifted, Cisco will suffer the same harm.  Teles' counsel has been studying Cisco's source code and even copying portions of it, so they will continue to have access to portions of the source code even if the stay remains in place.  Moreover, Teles has paper copies of tens of thousands of Cisco's other non-source code, highly confidential documents concerning the many accused products in this case.

[5]  *See* Teles' Opposition to Cisco's Motion to Stay, D.I. 50 at 4.

they propose – even if it is a narrowing amendment – will still be able to "read on" Cisco's

products. They will be guided in their proposed claim amendments – whether intentionally or

unintentionally – by the confidential information they have learned through their access to

Cisco's confidential information. The District Court in the *Visto Corp.* case cited above,

recognized this and ***rejected*** the assertion that reexaminations are different because amendments

only narrow the scope of the patents. *Visto Corp.,* 2006 WL 3741891, at *7.

  The problem is very real, because we already know from the Patent Office's findings in

the first Office Action in the '902 reexamination that the Patent Office has made an initial

determination that all of the claims asserted by Teles against Cisco in this case are invalid.

Deskins Decl., Exhibit 9, Office Action dated November 27, 2007. The Patent Office found that

Teles' claims were "anticipated" under 35 U.S.C. § 102 by six different prior art patents cited by

Cisco, and as a result the Patent Office has "rejected" those claims. "Anticipation" means that

the Patent Office has found that every single limitation of Teles' claims was disclosed in the

prior art, and therefore the claim is not patentable. 35 U.S.C. § 102. This means that, in order to

overcome the Patent Office's rejection of the claims, Teles will have to either amend the claims

to add a new limitation that is not found in the prior art patents, or demonstrate that the Patent

Office was incorrect in its conclusion about the art. For example, the Patent Office has found

that Claim 36 of the '902 patent, a method claim that contains identified elements (a) through (e),

is anticipated by each one of the Focsaneanu, Farese, Jonas, Arango, Matsukawa and Yoshida

prior art patents. Deskins Decl., Exhibit 9, Office Action at 2-3. For Teles to attempt to amend

its claims to distinguish these prior art references, it will have to change the language of elements

(a) through (e) or add a new limitation on top of (a) through (e), thus making the claim

"narrower." It may have various options for amendments or additions to the claims, and the

options might reflect for example different types of software processes or hardware connections

to be used in connection with the current elements (a) through (e).  In identifying the various

options and choosing between those options, Teles' litigation counsel would be seeking to

choose an amendment that will enable it to try to continue to assert its claims against Cisco.

Counsel's knowledge of Cisco's highly confidential source code and other highly confidential

information concerning the secret details of Cisco's products will, intentionally or

unintentionally, give it a "road map" that will enable counsel to know which options to choose,

and which not to choose.  This would be, as courts have repeatedly recognized, an impermissible

and improper use of an opponents' highly confidential information.

Moreover, allowing Teles' counsel to participate in the reexamination and determine

strategy for responding to the prior art will also infect other prosecutions of Teles patents, even if

the litigating counsel are not directly involved.  Teles has another patent application pending in

the Patent Office that is based on the same specification and disclosure as the '902 and '453

patents.  If litigation counsel participates in the reexamination, and chooses amendments or

proposed claim language to get around the art there and still read on Cisco's products, such claim

language could and likely would also be used by Teles in prosecuting its other patent application.

Allowing counsel to participate in any of these patent prosecutions or reexaminations thus

creates too much of a risk of misuse of Cisco's highly confidential information.[6]

---

[6]  This Court should also reject Teles' argument that Cisco has somehow waived its rights to protect against the
improper use of its confidential information because it provided certain of Teles' infringement contentions to the
Patent Office.  Memorandum at 7.  The information at issue are simply Teles' *contentions*, they are not Cisco's
confidential information, and they do not contain any Cisco source code.  Providing this information to the Patent
Office to show how broadly Teles construes its patents, and thus how those patents are clearly invalid, is
completely different from agreeing that Teles' counsel with access to Cisco's source code and other highly
confidential documents can use those materials as a road map to guide the reexamination and/or propose
amendments that read on Cisco's products.  Cisco has from the beginning of this case sought assiduously to
protect against the improper use and disclosure of its highly confidential information, and has not waived the right
to continue to do so here.

In the end, Teles' argument boils down to an unsupported assertion that it does not have the "resources" to handle the unspecified cost of having other counsel handle the reexamination. This ignores, of course, that Teles' already has another lawyer and his law firm representing it in the Patent Office, and the fact that they are already familiar with the cited art. In the end, Teles has failed to show good cause, and the potential harm to Cisco clearly outweighs whatever burden Teles may bear. As the Court ruled in the *Papst* case, "The risk of inadvertent disclosure of the Non-Papst parties' confidential information clearly outweighs the impairment, if any, of the Papst parties' ability to litigate this action. … Although the Court is confident that counsel for the Papst parties maintains the highest ethical and professional standards, the risk of inadvertent disclosure and misuse and the difficulty of distinguishing the source of the Papst parties' basis for filing new claims are great." *In re Papst Licensing,* 2000 WL 554219, at *4. And, as other courts have recognized, "[i]n a patent case, maintaining the integrity of the protective order is an especially serious concern. 'Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information.'" *Motorola,* 1994 WL 16189689, at *2 (quoting *Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc.*, 682 F. Supp. 20 (D. Del. 1988)).

## Conclusion

For all the reasons stated above, Cisco submits that Teles has failed to demonstrate

good cause for its request to modify the Stipulated Protective Order.  Wherefore, Cisco

respectfully requests that this Court deny Teles' motion to modify the Stipulated Protective

Order.

DATED: January 15, 2008                                     Respectfully Submitted,

                                                            CISCO SYSTEMS, INC.
                                                            By its attorneys,

                                                            /s/ J. Anthony Downs
                                                            Marva Deskins (#D00266)
                                                            GOODWIN PROCTER LLP
                                                            901 New York Avenue, N.W.
                                                            Washington, DC  20001
                                                            (202) 346-2000
                                                            (202) 346-4444 (fax)

                                                            J. Anthony Downs
                                                            Lana S. Shiferman
                                                            GOODWIN PROCTER LLP
                                                            Exchange Place
                                                            Boston, MA 02109
                                                            (617) 570-1000
                                                            (617) 523-1231 (fax)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 15, 2008, a true and correct copy of the
within and foregoing documents was served upon counsel of record for all parties via CM/ECF.

                                                            /s/ J. Anthony Downs
                                                            J. Anthony Downs

LIBA/1857997.1                          14