# EXHIBIT 6

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 554219 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

▷In re Papst Licensing, GmbH, Patent Litigation
E.D.La.,2000.
Only the Westlaw citation is currently available.
United States District Court, E.D. Louisiana.
In re PAPST LICENSING, GmbH, PATENT LITIGATION
No. MDL 1278.

May 4, 2000.

MEMORANDUM AND ORDER

SEAR, District J.

*Background*

*1 On October 13, 1999, the Panel on Multi-District Litigation transferred to this Court four related patent cases from the Northern District of Illinois, the Northern District of California, the District of Columbia and the District of Delaware, pursuant to 28 U.S.C. § 1407. Each of the cases involve a number of patents and licensing agreements related to computer hard disk drives, licensed by Papst Licensing, GmbH and Georg Papst ("Papst parties") to several hard disk drive manufacturers and their customers ("Non-Papst parties").

All parties in the this multi-district litigation submit that a comprehensive protective order is necessary to protect the parties' confidential business, financial and technical information. The Papst and Non-Papst parties assert that they agree on most of the details of the proposed protective order. The parties, however, have not submitted to the Court a joint proposed protective order because the parties differ strongly on the issue of whether certain counsel with access to confidential information should be able to prosecute related patent applications.

The Non-Papst parties urge the Court to adopt a modified version of the protective order, entered on July 9, 1999, by the district court for the District of Columbia. That protective order includes the following provision:
Confidential Information of a Furnishing Party may be disclosed only to: Outside Counsel for any Receiving Party in the Proceeding, except any Welsh & Katz attorneys or employees who receive Confidential Information under this Protective Order shall not prosecute, supervise or assist in the prosecution of any patent application on behalf of Georg Papst or Papst Licensing, GmbH or any entity related to Georg Papst or Papst Licensing, GmbH pertaining to the subject matter of the patents in suit during the pendency of this case and for one year after the conclusion of this litigation, including any appeals.

The Non-Papst parties argue that the provision is necessary because an unacceptable risk of inadvertent disclosure or misuse of the Non-Papst parties' confidential information arises from the participation of Papst parties' counsel in patent prosecution activities. In support of that assertion, the Non-Papst parties provide, among other documents, the following: (1) the declaration of Professor Martin J. Adelman, explaining a patent applicant or owner's ability to obtain new and broader exclusionary rights by adding additional claims to new, continuation-in-part, continuation and reissue patent applications and distinguishing between "new matter" and "new claims" in various patent application types; (2) a copy of portions of the transcript from a February 25, 1999 hearing in the Northern District of California in which Papst parties' counsel, Jerold B. Schnayer of Welsh & Katz, Ltd., testified as to a patent applicant or owner's ability to add additional claims to existing or pending patents so long as the basis of that new claim is not confidential information; and (3) a copy of a September 23, 1994 protective order stipulated to by Papst Licensing, GmbH, in its patent infringement suit against Western Digital Corporation, prohibiting persons with access to designated confidential prosecution bar information from prosecuting disk drive patent applications during the pendency of that suit and for one year after its conclusion.

*2 The Papst Parties oppose the adoption of the Non-Papst parties' proposed restriction, arguing that it unilaterally and unfairly restricts only counsel from Welsh & Katz without justification. The Papst parties assert that the Non-Papst proposal seeks merely to limit the Papst parties' choice of counsel. In support of that assertion, the Papst parties point out that the proposed provision allows counsel of the Non-Papst parties' direct competitors, who prosecute patents, access to allegedly confidential information. Accordingly, the Papst parties argue that the only hardship the Non-Papst parties would suffer from a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

rejection of their proposal would be that the Papst parties' counsel of choice would be allowed to represent its long-time client in this litigation and in the prosecution of certain patent applications.

In addition to their opposition to the Non-Papst parties' proposal, the Papst parties submit their own proposed restriction:

Outside counsel of record having access to Confidential Information from any party in The Litigation, shall not draft, file or prosecute, or assist in the drafting, filing or prosecution of new patent applications or new continuation-in-part applications on behalf of the parties during the pendency of The Litigation before this District Court, during the pendency of the individual actions upon remand to their respective District Courts and for one calendar year thereafter. New patent applications and new continuation-in-part applications are those applications which contain new disclosures not contained in patent applications which are or were pending anytime before this Protective Order becomes effective.

The Papst parties assert that a similar restriction was adopted by the district court in the Northern District of California, after an evidentiary hearing in which that court determined that a restriction on Welsh & Katz attorneys only and over all existing patent prosecutions was unreasonable.

*Discussion*

Rule 26(c) of the Federal Rules of Civil Procedure allows a district court to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense, including ... that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." Rule 26(c) requires that the party seeking to protect allegedly confidential information show good cause for such an order. The good cause requirement of Rule 26(c) demonstrates that the burden is upon the movant to show the necessity for the issuance of a protective order. The Rule " 'contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." ' [FN1] Because the interest in protecting allegedly confidential information conflicts with the broad discovery mandate of Rule 26(b)(1), allowing access to all non-privileged information "reasonably calculated to lead to the discovery of admissible evidence," the courts seek to balance these interests in determining a motion for protective order.[FN2]

> FN1. *In re Terra International, Inc.,* 134 F.3d 302, 305 (5th Cir.1998) (quoting *United States v. Garrett,* 571 F.2d 1323, 1326 n. 3 (5th Cir.1978)) (further citation omitted).
>
> FN2. *See Brown Bag Software v. Symantec Corp.,* 960 F.2d 1465, 1470 (9th Cir.1992).

*3 Specifically, "the court must balance the risk of inadvertent disclosure against the risk that the protective order will impair the prosecution or defense of the other party's claims."[FN3] In balancing these important competing interests, the court seeks to determine whether access to the confidential information creates "an unacceptable opportunity for inadvertent disclosure."[FN4] In determining whether an unacceptable risk of inadvertent disclosure exists, the court must consider "the facts on a counsel-by-counsel basis, and cannot [make the determination] solely by giving controlling weight to the classification of counsel as in-house rather than retained."[FN5]

> FN3. *Id.*
>
> FN4. *U.S. Steel Corp. v. United States,* 730 F.2d 1465, 1468 (Fed.Cir.1984).
>
> FN5. *Id.*

The primary consideration in making this determination is whether the attorney with access to the confidential information is involved in "competitive decisionmaking," that is, whether the attorney's "activities, association, and relationship with a client ... are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor."[FN6]

> FN6. *Id.* at 1468 n. 3.

Several district courts have determined that competitive decisionmaking also includes advice and participation in prosecuting patent applications related to the patents in suit. For example, in *Mikohn Gaming Corp. v. Acres Gaming Inc.,*[FN7] the district court for the District of Nevada addressed whether counsel's role as lead trial and patent prosecution counsel for the

Case 1:05-cv-02048-RBW   Document 60-9   Filed 01/15/2008   Page 4 of 5

Not Reported in F.Supp.2d                                                                                                Page 3
Not Reported in F.Supp.2d, 2000 WL 554219 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

defendant created an unacceptable risk of inadvertent disclosure of the plaintiff's confidential information. Because that court determined that counsel's patent prosecution activities involved patents at issue in the suit, the court determined that the advice rendered by the defendant's counsel was "intensely competitive" and that the risk of inadvertent disclosure outweighed the impairment of the defendant's ability to litigate the suit, especially in light of the defendant's retainer of other experienced patent counsel.[FN8] The court explained that

FN7. 50 U.S.P.Q.2d 1783 (D.Nev.1998).

FN8. See *Mikohn,* 50 U.S.P.Q.2d at 1786.

Were he given access to [the plaintiff's] technology, [counsel] would be in the "untenable position" of having to either refuse his client legal advice on competitive design matters or violate the protective order's prohibition against revealing [the plaintiff's] technical information.... No matter how much good faith [counsel] might exercise, it is unrealistic to expect that his knowledge of [the plaintiff's] secret technology would or could not influence the nature of his advice to [the defendant]. This is so whether the advice relates to a pending application or a future application....

"Attorneys who were to view [the plaintiff's] voluminous confidential information and then later prosecute the patents would have to constantly challenge the origin of every idea, every spark of genius. This would be a sisyphean task, for as soon as one idea would be stamped "untainted," another would come to mind. The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical the ... attorneys may be."[FN9]

FN9. *Id.* (quoting *Motorola, Inc. v. Interdigital Technology Corp.,* 1994 U.S. Dist. LEXIS 20714 (D.Del.1994)).

*4 Similarly, in *Interactive Coupon Marketing Group, Inc. v. H.O.T! Coupons, L.L.C.,*[FN10] the Northern District of Illinois court ordered that all plaintiff's counsel privy to defendant's confidential information "shall not participate in the prosecution of any patent application for plaintiff relating to the subject matter of the patents in suit during the pendency of this case and for one year after the conclusion of this litigation, including appeals."[FN11] Although the court found that competitive decisionmaking extends to "the manner in which patent applications are shaped and prosecuted," it cautioned that it is not appropriate "to disqualify patent prosecution from an active role in its client's litigation as a matter of course."[FN12] The court reasoned that the appropriate inquiry was "whether the firm's prosecution activities are likely to be shaped by confidential information about competitors' technology obtained through the discovery process" and explained that "[t]he concern is whether the firm's involvement in developing a patent prosecution strategy will be informed by such information to the competitors' detriment."[FN13]

FN10. 1999 WL 618969 (N.D.Ill.1999).

FN11. *Interactive Coupons,* 1999 WL 618969 at *3.

FN12. *Id.*

FN13. *Id.*

Here, after considering the parties' voluminous submissions, the determinations of the district courts to which the individual cases in this multi-district litigation shall be returned and the applicable case law, I find that the Non-Papst parties meet their burden of showing good cause for the proposed restriction. The risk of inadvertent disclosure of the Non-Papst parties' confidential information clearly outweighs the impairment, if any, of the Papst parties' ability to litigate this action. Despite the Papst parties' arguments to the contrary, it is clear that the advice and participation of the Papst parties' counsel in preparation and prosecution of patent applications related to the patents in suit is an intensely competitive decisionmaking activity and would be informed by access to the Non-Papst parties confidential information. Counsel's ability to file new claims in existing and pending patents based on the confidential information discovered during the course of this litigation poses an unacceptable opportunity for inadvertent disclosure and misuse. Although the Court is confident that counsel for the Papst parties maintains the highest ethical and professional standards, the risk of inadvertent disclosure and misuse and the difficulty of distinguishing the source of the Papst parties' basis for filing new claims are great.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-02048-RBW   Document 60-9   Filed 01/15/2008   Page 5 of 5

Not Reported in F.Supp.2d                                                                                          Page 4
Not Reported in F.Supp.2d, 2000 WL 554219 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

Furthermore, I find that the Non-Papst parties proposed restriction works the least burden on the parties involved in this multi-district litigation. The parties have operated under an identical restriction imposed by the District of Columbia court for many months, and numerous third parties have consented to the disclosure of their confidential information in express reliance on that restriction. To alter the restriction significantly after thousands of documents have been produced would likely create significant disputes and delays.

*5 Moreover, despite their numerous grounds for objecting to the Non-Papst parties' proposed restriction, the Papst parties fail to address the underlying risk of inadvertent disclosure or misuse and have not persuaded the Court that the Papst parties' ability to litigate the actions in this multi-district litigation will be substantially impaired. The Papst parties have stipulated to similar restrictions in other patent infringement cases and have continued to litigate this matter for months under the restrictions imposed by the July 9, 1999 D.C. protective order.

Accordingly, I find that the Non-Papst parties have met their burden of showing good cause for their proposed restriction and that the risk of advertent disclosure and misuse clearly outweighs the impairment, if any, on the Papst parties' ability to litigate this matter. Nevertheless, because the risk of inadvertent disclosure or misuse is identical whether counsel for the Papst parties is a member or associate of the Welsh and Katz firm or is inside or retained counsel, where the Papst parties' counsel with access to the information sought to be protected gives advice or participates in the prosecution of patents related to the patents in suit, the restriction applies to all counsel for the Papst parties prosecuting, supervising or assisting in the prosecution of patent applications related to the subject matter of the patents in suit. This restriction, however, applies only to information that embodies product design information which is classifiable as confidential and which is of the type that can be included in a patent application and form the basis, or part of the basis for a claim or claims. Such information shall be designated "Confidential-Prosecution Bar Material."

Finally, the Papst parties fail to show good cause for their proposed restriction, limiting all counsel's ability to prosecute all new and continuation-in-part patents, regardless of their relation to the patents in suit. The Papst parties make no argument that any risk of inadvertent disclosure of the Papst parties' confidential information exists.

Accordingly,

IT IS ORDERED that the parties shall submit jointly to the Court on or before May 24, 2000, a proposed protective order, restricting the Papst parties' counsel, inside and retained, as well as their employees, with access to confidential prosecution bar materials, from prosecuting, supervising or assisting in the prosecution of any patent application on behalf of Georg Papst or Papst Licensing, GmbH or any entity related to Georg Papst or Papst Licensing, GmbH pertaining to the subject matter of the patents in suit during the pendency of this case and for one year after the conclusion of this litigation, including any appeals.

IT IS FURTHER ORDERED that the parties, in preparing the joint protective order, shall rely to the greatest extent possible on the July 9, 1999 D.C. protective order.

E.D.La.,2000.
In re Papst Licensing, GmbH, Patent Litigation
Not Reported in F.Supp.2d, 2000 WL 554219 (E.D.La.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.