# EXHIBIT 7

Slip Copy  Page 1
Slip Copy, 2006 WL 3741891 (E.D.Tex.)
(Cite as: Slip Copy)

**H**Visto Corp. v. Seven Networks, Inc.
E.D.Tex.,2006.
Only the Westlaw citation is currently available.
United States District Court,E.D. Texas,Marshall Division.
VISTO CORPORATION
v.
SEVEN NETWORKS, INC.
No. 2:03-CV-333-TJW.

Dec. 19, 2006.

Samuel Franklin Baxter, Attorney at Law, Marshall, TX, Gary Scott Kitchen, Theodore Stevenson, III, Kristi Jean Thomas, McKool Smith, Dallas, TX, Greg Travis Warder, Imran A. Khaliq, James Bruce McCubbrey, Michelle Gillette, Robert D. Becker, Ronald S. Katz, Shawn G. Hansen, Manatt Phelps & Phillips LLP, Palo Alto, CA, for Visto Corporation.
Henry Charles Bunsow, David L. Bilsker, Howrey Simon Arnold & White, Chris Kao, Kirkland & Ellis, Dean A. Morehous, Jr., Thelen Reid & Priest, Korula T. Cherian, Howrey LLP, Thomas C. Mavrakakis, Winston & Strawn, San Francisco, CA, Sidney Calvin Capshaw, III, Elizabeth L. Derieux, Brown McCarroll, Longview, TX, Ahmed Kasem, Robert E. Camors, Jr., Robert E. Krebs, Thelen Reid & Priest LLP, San Jose, CA, Andrew Y. Piatnicia, James Charles Pistorino, Jason T. Anderson, Howrey LLP, East Palo Alto, CA, Christopher L. Kelley, Daniel T. Shvodian, James F. Valentine, Louis L. Campbell, Matthew E. Hocker, Howrey Simon Arnold & White, Menlo Park, CA, for Seven Networks, Inc.

### *MEMORANDUM OPINION AND ORDER*

T. JOHN WARD, United States District Judge.

**1. Introduction.**

*1 Several post-trial motions are pending in this patent infringement case. For the reasons expressed in this opinion, the court grants in part and denies in part Seven's renewed motion for judgment as a matter of law. In light of the finding of willful infringement, the court declares the case exceptional and awards enhanced damages. The court denies the motion for a new trial, rejects the allegations of inequitable conduct, and issues a permanent injunction in favor of the plaintiff in this case. The court further finds that Visto's attorneys violated the Protective Order in this case and then attempted to conceal those violations. Under these circumstances, the court stays the injunction pending appeal.

**2. Background.**

The parties to this case are competitors in the mobile email market. After a hotly contested trial, a jury found Seven liable for willful patent infringement of three United States patents related to data synchronization methods and systems. The jury awarded damages and rejected all of the defendant's claims of patent invalidity. Thereafter, the court conducted a bench trial on the allegations of inequitable conduct, and the case is now before the court on post-trial motions. Each of these motions is discussed below.

**3. Seven's renewed motion for judgment as a matter of law/motion for new trial.**

After the verdict, Seven filed a renewed motion for judgment as a matter of law and a motion for new trial. That motion (# 385) is granted in part and denied in part. The court grants the motion insofar as it is related to claim 11 of the '192 patent. There is insufficient evidence to support a verdict that the accused products satisfy the limitation of "comprising one of an HTTP port and an SSL port."In a supplemental claim construction order, the court construed the term "HTTP port and SSL port" to mean "any port that is used to transfer information or communicate using Hyper Text Transfer Protocol (HTTP) and any port that is used to transfer information or communicate using Secure Sockets Layer (SSL) protocol ."*See* Order Dkt. # 340. Despite Visto's arguments to the contrary, the evidence in this case is undisputed that the accused products do not use the HTTP or SSL protocols. In the words of Visto's expert, the term protocol means "the exact formatting, the syntax, and the semantics of the connection that's being made."(Tr. Transcript April 25, 2006, at 29:14-30:3.). Visto's expert conceded that the accused products use Seven's own protocol, rather than HTTP or SSL. Claim 11 requires a port that is used to transfer information or communicate using specific protocols. Viewing the evidence in the light most favorable to the

jury's verdict, Visto has not met its burden to demonstrate infringement of claim 11 of the '192 patent. Seven's motion for judgment as a matter of law on this point is granted.

The court denies the balance of the motion for judgment as a matter of law. Under the court's claim construction, sufficient evidence exists to support the jury's finding of infringement of the "independently modifiable copy" limitation. The jury could have rationally found, given Visto's expert's testimony, that a copy existed and only the format had changed. Testimony elicited on cross-examination from Seven's expert also supports the jury's verdict. In addition, ample evidence supports the jury's determination that the accused products contain workspace elements and use a global server under the court's claim constructions of those terms. The court accordingly rejects the defendant's remaining arguments concerning non-infringement of the asserted claims.

*2 Seven also moves for judgment as a matter of law that the patents are invalid. These arguments are centered on Lotus Notes. Seven has not shown that judgment as a matter of law is appropriate. The patents-in-suit are presumed valid, and Seven bore the burden of proof at trial to demonstrate anticipation by clear and convincing evidence. To overcome the jury's verdict, Seven must establish that no reasonable jury could have failed to find invalidity. FED. R. CIV. P. 50. The court agrees with Visto that the jury could have failed to credit the fact and expert testimony concerning the capabilities of Lotus Notes and the installations of that software. Moreover, the record includes conflicting expert testimony concerning whether Lotus Notes met the translation limitation of the '708 patent, the global server limitation of the '221 patent, and, at a minimum, the smart phone limitation of the '192 patent. The court resolves these conflicts in favor of the verdict and denies Seven's motion for judgment as a matter of law on these points.

Seven's motion asserts several additional grounds for judgment as a matter of law and/or new trial. The court rejects all of these arguments. As to damages, the jury was properly instructed as to the *Georgia-Pacific* factors, and it had expert testimony from which it could have concluded that a very high royalty rate was appropriate in this case. On the question of willfulness, contrary to Seven's pre-trial stipulation, Mr. Nguyen testified that Seven did seek an opinion of counsel and was relying on it in this case. The court remains persuaded that the rulings it made at trial on this point were proper. A new trial and/or judgment as a matter of law is not required because of counsel's argument or any unfair prejudice flowing from this testimony. The jury had sufficient evidence from which it could have found willful infringement.

Finally, Seven filed two supplemental motions for judgment as a matter of law or new trial. These motions focus on the reexamination proceedings involving the patents-in-suit. The court has carefully reviewed these motions and denies Seven's renewed motion for judgment as a matter of law or, in the alternative, supplemental motion for new trial (# 411). The court also denies Seven's second renewed motion for judgment as a matter of law, and for other relief (# 418). The court is not persuaded that the USPTO's grant of a second reexamination for the '192 patent to consider the collective set of Lotus Notes references entitles Seven to judgment as a matter of law or a new trial. Likewise, the court is not persuaded that the USPTO's grant of a reexamination of the '221 patent entitles Seven to judgment as a matter of law or a new trial.

**4. Inequitable conduct.**

The court now turns to the question of inequitable conduct. Seven contends that the inventors and/or the prosecuting attorneys failed to disclose material information concerning Lotus Notes to the USPTO. Inequitable conduct requires a breach of the duty of candor that is both material and committed with an intent to deceive the USPTO. *Li Second Family Ltd. P'ship v. Toshiba Corp.,* 231 F.3d 1373, 1378 (Fed.Cir.2000). Breach of the duty of candor may include submission of false material information or failure to disclose material information. *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.,* 863 F.2d 867, 872 (Fed.Cir.1988). As a general rule, however, there is no duty to conduct a prior art search, and thus there is no duty to disclose art of which an applicant could have been aware. *Frazier v. Roessel Cine Photo Tech, Inc.,* 417 F.3d 1230, 1238 (Fed.Cir.2005); *FMC Corp. v. Hennessy Indus., Inc.,* 836 F.2d 521, 526 n. 6 (Fed.Cir.1987).

*3 The court rejects Seven's defense of inequitable conduct. The court has considered the arguments made by Seven concerning whether the inventors committed inequitable conduct in the prosecution of the original applications. Seven's argument is essentially that the inventors should have been aware of potentially invalidating applications of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Lotus Notes and should have disclosed those applications to the USPTO at the time of the original prosecution. Seven has not persuaded the court that Visto's inventors knew about the materiality of the prior art or withheld any art with the intent to deceive the USPTO. A finding of inequitable conduct is not warranted.

The court has also considered the arguments made with respect to the prosecution of the reexamination proceedings. Seven has not shown by clear and convincing evidence that the prosecuting attorneys intended to deceive the USPTO during the reexamination proceedings. The primary references at issue are the Grous and Brown references. Grous is a magazine article that illustrates InterNotes. Brown is a reference manual that touts itself as the Official Guide to Lotus Notes. It is not disputed, however, that the USPTO was apprised of Lotus Notes during the reexamination and that Visto actually disclosed a large number of materials published by Lotus Corporation to the USPTO. After considering all of the evidence, and given the timing of the conclusion of the reexamination proceedings, the court cannot find, by clear and convincing evidence, that Visto's attorneys intended to deceive the USPTO by failing to disclose Grous or Brown, or any of the other cited pieces of art. The court accordingly rejects Seven's defense of inequitable conduct. Visto's motion to strike the supplemental report of Dr. Goldberg and portions of the pre-hearing brief (# 423) is denied.

**5. Visto's motion for entry of judgment on the jury verdict and for enhanced damages.**

The court grants Visto's motion for entry of judgment on the jury verdict and for enhanced damages (# 394). In light of the finding of willful infringement, the court declares the case exceptional and will enhance damages and award attorneys' fees. *SRI Int'l., Inc. v. Advanced Technology Labs, Inc.*, 127 F.3d 1452, 1468 (Fed.Cir.1997). The court awards double damages and, in doing so, has considered the factors set forth in *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed.Cir.1992). These factors include (1) whether there is evidence of copying; (2) whether there was a good-faith belief of non-infringement; (3) litigation behavior; (4) the defendant's size and financial condition; (5) the closeness of the case; (6) the duration of the misconduct; (7) the existence of remedial action; (8) the defendant's motivation; and (9) whether the defendant concealed its conduct. *Id.* at 827-28. Although the parties are competitors and the defendant had a motivation to succeed in the market at the expense of the plaintiff, the issues in this case were close and there is some evidence to support the defendant's belief of non-infringement. The asserted claims of the '192 patent did not even exist until shortly before trial, and the defendant's invalidity defense asserted against the other two patents was strong. The strength of this defense was confirmed by Visto's own expert, Mr. Beckhardt, who gave very damaging testimony concerning anticipation by Lotus Notes. In all, under the totality of the circumstances, the court concludes that an enhancement of double damages is appropriate.

**6. Visto's motion for permanent injunction.**

*4 The court grants Visto's motion for permanent injunction (# 379). In *eBay v. MercExchange,* the Supreme Court held that the traditional four-factor test for permanent injunctive relief applies to patent cases. *eBay Inc. v. MercExchange, LLC,* --- U.S. ----, 126 S.Ct. 1837, 1839, 164 L.Ed.2d 641 (2006). The Court recited the test as follows:
According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.* Bearing these factors in mind, the court now turns to the facts of this case to assess the propriety of permanent injunctive relief.

**A. Irreparable injury.**

Visto has demonstrated irreparable injury. The parties to this case are direct competitors, and this fact weighs heavily in the court's analysis. Intellectual property enjoys its highest value when it is asserted against a direct competitor in the plaintiff's market. In *Tivo v. EchoStar Communications Corp.,* 446 F.Supp.2d 664, 669 (E.D.Tex.2006), Judge Folsom found irreparable harm because "[t]he availability of the infringing products leads to loss of market share for Plaintiff's products." Seven's arguments to the contrary, focusing on the large market share of

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Research in Motion, are not persuasive. The court finds that Visto will suffer irreparable injury absent an injunction.

**B. Inadequacy of legal remedies.**

Visto has also demonstrated the inadequacy of legal remedies. It is true that the jury awarded a large damages verdict. Those damages, however, are designed to compensate Visto fairly and reasonably for its past injury. Under the jury's verdict, Seven is willfully using its competitor's intellectual property and a threat of continued infringement exists under this record. Although future damages may compensate Visto for an *approximate* loss, that does not make them adequate in the sense that they are a suitable proxy for injunctive relief. What makes legal remedies inadequate under the circumstances of this case is the inability to calculate the plaintiff's future losses with precision. An injunction against the continued use of the plaintiff's intellectual property is the proper remedy to prevent future infringement.

**C. Balancing of hardships.**

The court has considered the balance of hardships. The court agrees with Visto that if no permanent injunction is entered, Visto will lose goodwill, potential revenue, and the very right to exclude that is the essence of the intellectual property at issue. Although Seven will be harmed by an injunction, the balance of hardships favors Visto in this case.

**D. Public interest.**

*5 The question presented by this factor is whether the public interest would be disserved by an injunction. There has been no persuasive showing that the public interest would be disserved by an injunction. In fact, the public interest would be served by issuing an injunction to protect the patent rights at issue.

After considering the traditional equitable factors, the court concludes that a permanent injunction is proper in this case. The plaintiff's motion for entry of a permanent injunction (# 379) is therefore granted. Visto's motion to strike the Thexton declaration (# 440) is denied.

**7. Protective Order issues.**

Seven argues that Visto's attorneys violated the Protective Order in this case. Throughout this case and even after the bench trial on inequitable conduct, Seven has urged the court to impose various remedies, from the dismissal of the lawsuit to the denial of any injunctive relief. The court has carefully evaluated the evidence presented to it and finds that Visto's attorneys violated the court's Protective Order and that a stay of the injunction pending appeal is the appropriate remedy.

On April 2, 2004, the court issued a Protective Order in this case to guard against the improper use and dissemination of confidential information produced in discovery. The Protective Order explicitly states:
17. Limitations On Use and Disclosure. Except to the extent expressly authorized in this Order, *Protected Information shall not be used or disclosed for any purpose other than the preparation and trial of this action* and any appeal therefrom....

(emphasis added). The purpose for this provision is plain-it is to allow discovery in the case to move forward and to prevent a party from using its opponent's confidential technical and financial information for purposes other than the prosecution or defense of the lawsuit.

Notwithstanding the general prohibition on use and disclosure of confidential information, the parties to this case recognized that certain activities present an unacceptable risk of the inadvertent use or disclosure of sensitive information. To this end, the Protective Order contains a prosecution bar. The relevant language provides:
15. Individual attorneys who are outside counsel to whom information that is designated CONFIDENTIAL-ATTORNEYS' EYES ONLY or CONFIDENTIAL-ATTORNEYS' EYES ONLY-COMPUTER SOURCE CODE from any adverse party in this litigation has been disclosed, *shall not draft, file, prosecute, or assist in the drafting, filing, or prosecution of any new or currently pending patent applications that bear a reasonable relationship to patents which are the subject matter of this litigation* on behalf of any party to this litigation or any party affiliated with any party to this litigation until eighteen (18) months after the date of the last disclosure to such individual attorney of CONFIDENTIAL-ATTORNEYS' EYES ONLY or CONFIDENTIAL-ATTORNEYS' EYES ONLY-COMPUTER SOURCE CODE from any adverse party in this litigation.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*6 (emphasis added).

During the prosecution of this case, Mr. Greg Warder ("Warder"), one of Visto's outside counsel, received information designated Attorneys' Eyes Only under the Protective Order. At the relevant times, Warder was employed by Manatt, Phelps & Phillips, LLP ("Manatt"). After he received Attorneys' Eyes Only information, Warder participated in certain patent prosecution activities. Manatt assigned him to prosecute a portion of the continuation application that matured into the '679 patent.[FN1] When Seven learned of Warder's prosecution activities, it immediately notified Seven of its belief that a possible violation of the Protective Order had occurred. Visto did not dispute that Warder's prosecution of the continuation application violated the Protective Order. Visto maintained, however, that Warder's participation in the prosecution of the continuation application was inadvertent.

> FN1. Visto did not assert the '679 patent in this case.

Shortly thereafter, on May 11, 2005, Seven filed an Emergency Motion for Protective Order and Application for an Order to Show Cause arising out of Warder's prosecution of the continuation application. In that motion, Seven reiterated its position that Visto's outside counsel had violated the Protective Order because Warder had viewed Seven's Attorneys' Eyes Only information and had participated in the prosecution of the continuation application. The parties resolved Seven's motion by stipulating that "Mr. Greg Warder of the Manatt firm will not prosecute patents of the kind specified in the protective order for the period of time specified in the protective order, and the provisions of the protective order remain in place."*See* Dkt. # 163, Agreed Motion to Withdraw Certain Discovery Motions, filed May 12, 2005.

After the stipulation, Seven learned that Warder's activities before the USPTO extended beyond the prosecution of the continuation application. He had been participating in the ongoing reexamination proceedings involving the '192 patent. Visto had not previously disclosed this to Seven. Seven learned this when Visto produced reexamination documents signed by Warder and tendered to the USPTO. All of these documents pre-dated the parties' stipulation. After the parties' stipulation, however, Warder stopped signing documents submitted to the USPTO in the reexamination. The Manatt firm transferred responsibility for this task to Ms. Pamela Merkadeau ("Merkadeau").

Seven attempted to raise Warder's involvement in the reexamination proceedings with the court. This occurred in the context of another motion related to the Protective Order.[FN2] By way of background, Seven learned through deposition testimony that a lawyer on Visto's trial team, Michelle Gillette, disclosed certain expert reports covered by the Protective Order to officers of Visto. These persons had not previously signed the required Protective Order undertakings. As the briefing unfolded, the Manatt firm claimed the unilateral right to designate and redact certain portions of the documents before showing them to its witnesses. Although the issue before the court primarily concerned the disclosure of Seven's financial information, certain aspects of the briefing specifically addressed Warder's prosecution of the '192 reexamination. In particular, Seven objected to Warder's participation in the '192 patent reexamination proceedings.[FN3] In a surreply brief, Visto responded that "Seven brings an allegation of an additional violation of the Protective Order into this matter without justification. In fact, *the parties resolved the referenced issue with a stipulation and order.*"(emphasis added).[FN4]

> FN2.*See* Dkt. # 206, Seven's Motion for a Finding of Contempt, Application for an Order to Show Cause, and Request for Other Relief for Violation of the Protective Order.
>
> FN3.*See* Seven's Reply Memorandum in Support of its Motion for a Finding of Contempt, Application for an Order to Show Cause, and Request for Other Relief for Violation of the Protective Order, at 5.
>
> FN4.*See* Visto's Surreply to Seven Network's Motion for a Finding of Contempt, Application for an Order to Show Cause, and Request for Other Relief for Violation of the Protective Order, at 7.

*7 During the bench trial on Seven's defense of inequitable conduct, it became clear that Warder had substantively participated in the prosecution of the reexamination even after the parties' May 12th

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

stipulation. Warder's involvement was obscured, however, by Manatt's instructions to Merkadeau to sign documents submitted to the USPTO. Seven challenges Warder's conduct as a violation of the Protective Order issued in this case. The court agrees with Seven that the prosecution bar covers reexamination proceedings and that Visto's outside counsel violated the provisions of the Protective Order.

Visto's primary argument is that a reexamination proceeding is not a new or currently pending patent application and is therefore not covered by the prosecution bar. According to Visto, the prosecution bar would preclude an attorney's participation in new or continuation applications, but not reexamination proceedings. This court has squarely rejected arguments to the contrary, made in the context of a prosecution bar contained in a Protective Order. *See Microunity Systems Engineering, Inc. v. Dell, Inc.,* 2:04-CV-120 (Order, Dkt.# 156) ("The Court finds that the Protective Order entered in this case is clear. The Protective Order includes a Prosecution Bar that applies equally to reexaminations as it does to new applications filed with the USPTO.").[FN5]

> FN5. Unlike this case, the attorneys for Microunity approached the court for guidance *before* becoming involved in the reexamination.

In the context of the prosecution bar, Visto's argument that a reexamination proceeding is different from the prosecution of a new application is not persuasive. Throughout the reexamination proceedings, Visto and the examiner consistently referred to Visto as the applicant, within the plain language of the Protective Order. The Protective Order provides that outside counsel "shall not draft, file, prosecute, or assist in the drafting, filing, or *prosecution of any new or currently pending patent applications* that bear a reasonable relationship to patents which are the subject matter of this litigation ..." Protective Order, ¶ 15 (emphasis added). In the court's view, under the language of the Protective Order, participation in the reexamination is the prosecution of a patent application that is not only "reasonably related" to the patents-in-suit, it is a part of the prosecution history of the very patent asserted in the case. The purpose of the prosecution bar is to prevent outside counsel from using, even inadvertently, confidential information obtained in the lawsuit for purposes outside the lawsuit (*e.g.* drafting claims during patent prosecution). This is true even if the result of the reexamination is narrower claim language. Accordingly, Warder violated the Protective Order by participating in the reexamination of the '192 patent and by continuing to do so after the parties' stipulation. To make matters worse, Manatt concealed that violation from Seven to evade detection of that conduct.

The next question is one of remedy. The challenged conduct does not rise to inequitable conduct before the USPTO, and the court will not declare the patent unenforceable. It must be remembered that the effect of the reexamination was to *narrow* certain claim language. The jury found that the claims as narrowed still covered the accused systems and methods. A holding that the patent is unenforceable would unnecessarily penalize the client for its attorneys' conduct.

*8 Nevertheless, the violation of the Protective Order causes the court to exercise its equitable discretion in a manner adverse to Visto. As a result, although the court has granted an injunction in Visto's favor, the court will stay that injunction pending the disposition of any appeal. Resolution of this issue renders it unnecessary to determine the merits of Seven's other requests for a stay of the injunction.

In addition to a stay of the injunction, the court will also bar Ms. Gillette and Mr. Warder from further receipt of confidential information in this case or any other case on the court's docket involving Visto Corporation. With respect to Ms. Gillette, the court finds that she unilaterally redacted documents that had been marked both Attorney's Eyes Only and Confidential pursuant to the Protective Order and showed those documents to Visto personnel, including Mr. Jean Tripier, Visto's Chief Operating Officer, and Mr. Tim Robbins, Visto's General Counsel. These disclosures were not in accordance with the terms of the Protective Order. The individuals had not signed the required undertakings before receiving the confidential information. In addition, disclosure to Mr. Robbins was made without advance notice. To compound matters, after Seven objected to the disclosures, Visto produced undertakings signed by the witnesses, but the witnesses did not *date* their signatures. Although Visto urges that it operated in good faith to redact Seven's confidential information, a lawyer operating under the terms of a Protective Order issued by this court has no right to resort to self-help when he or she views the provisions of that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

order to be burdensome or onerous. The proper remedy is to approach the court. The court will therefore bar Ms. Gillette from receipt of any further information under the Protective Order. With respect to Mr. Warder, the briefing suggests he is no longer with the Manatt firm; however, this prohibition will extend to him should he become involved in future litigation in this court on behalf of Visto. Further relief on Seven's motion for a finding of contempt, application for an order to show cause, and request for other relief (# 206) is denied. Likewise, further relief on Seven's emergency motion for protective order and to compel (# 442) is denied.

E.D.Tex.,2006.
Visto Corp. v. Seven Networks, Inc.
Slip Copy, 2006 WL 3741891 (E.D.Tex.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.