# EXHIBIT 8

Not Reported in F.Supp.  
Not Reported in F.Supp., 1994 WL 16189689 (D.Del.)  
(Cite as: Not Reported in F.Supp.)

Page 1

Motorola, Inc. v. Interdigital Technology Corp.  
D.Del.,1994.  
Only the Westlaw citation is currently available.  
United States District Court,D. Delaware.  
MOTOROLA, INC., Plaintiff,  
v.  
INTERDIGITAL TECHNOLOGY CORPORATION, Defendant.  
INTERDIGITAL TECHNOLOGY CORPORATION, Plaintiff,  
v.  
MOTOROLA, INC., Defendant.  
No. Civ.A. 93-488-LON.

Dec. 19, 1994.

Jeffrey B. Bove, of Connolly, Bove, Lodge & Hutz, Wilmington, Delaware; Gary M. Hoffman, Howard N. Feldman, of Dickstein, Shapiro & Morin, Washington, D.C.; for Plaintiff, of counsel.  
Richard K. Herrmann, of Bayard, Handelman & Murdoch, Wilmington, Delaware; Robert G. Krupka, and Linda S. Resh, of Kirkland & Ellis, Chicago, Illinois; for Defendant, of counsel.

*MEMORANDUM OPINION*

LONGOBARDI, J.

I. NATURE AND STAGE OF THE PROCEEDINGS

*1 This suit involves patent claims relating to the mobile telephone industry. On October 8, 1993, Motorola filed a civil action seeking declaratory relief, *Motorola, Inc., v. Interdigital Technology Corporation,* Civil Action ("C.A.") No. 93-488-LON. On October 12, 1993 Interdigital Technology Corporation, ("ITC"), filed a patent infringement claim arising out of the same patents, *Interdigital Technology Corporation v. Motorola, Inc.,* C.A. No. 93-5430, in the Eastern District of Pennsylvania. On February 17, 1994, the Eastern District case was transferred to this Court and designated C.A. No. 94-73.On September 22, 1994, the two actions were consolidated, with 93-488 designated as the lead case.

Presently before the court is Motorola's letter of September 21, 1994, ("Motorola letter") and ITC's response letter of September 23, 1994, regarding the dual roles performed by the firm Dickstein, Shapiro & Morin ("DS & M"). DS & M is lead trial counsel for ITC in this action, and as such is entitled by the protective order to receive Motorola's confidential information. DS & M also prosecutes patents for ITC in the PTO. Motorola seeks to amend the protective order in this case to ensure that no DS & M attorneys who prosecute patent applications for ITC in the patents in suit have access to Motorola's confidential information. On September 28, 1994, both parties argued this issue before the Court.

II. FACTS

On October 8, 1993, Motorola filed its claim in this present action. Docket Item ("D.I.") 1. One week later, on October 15, 1993, DS & M became attorneys of record for several ITC patent applications, "including four United States continuation or divisional applications which take their parentage from the patents in suit."D'Amico Affidavit, at 2-3. Prior to October 15, 1993, Kenyon & Kenyon had been attorney of record for these patent applications.

On March 4, 1994, a protective order was entered in this case. D.I. 35. The protective order provided that DS & M was to have access to Motorola's confidential information.[FN1]The protective order did not specifically deny access to DS & M attorneys who prosecuted patent applications for ITC. The Court accepts as true Mr. D'Amico's representation that to date, none of the DS & M attorneys who have drafted claim revisions to any of the four continuation/divisional applications had access to Motorola's confidential information while preparing those revisions. D'Amico Affidavit ¶ 6.

> FN1."Confidential Information shall be given, shown, disclosed, made available or communicated only to: ... (a) ... (i) Partners and associates of Dickstein, Shapiro & Morin, and stenographic, clerical, and/or paralegal employees of those attorneys whose functions require access to Confidential Information."

Motorola claims that, at the time the protective order was entered, Motorola "reasonably believed" that Kenyon & Kenyon was the law firm responsible

Case 1:05-cv-02048-RBW   Document 60-11   Filed 01/15/2008   Page 3 of 8

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1994 WL 16189689 (D.Del.)
(Cite as: Not Reported in F.Supp.)

for prosecuting any patent applications in this case. Motorola letter at 3. Moreover, Motorola alleges that on at least two occasions, DS & M concealed the fact that they were prosecuting patents for ITC. On February 9, 1994, both parties argued the issue of whether Mr. Bramson, in-house counsel for ITC, should have access to Motorola's confidential information under the protective order. Motorola implies that DS & M should have disclosed its patent prosecution representation at that time. Later, on August 10, 1994, ITC and Motorola entered into a stipulation which enabled two lawyers from Cushman, Darby & Cushman ("CD & C") (co-counsel for ITC) to obtain access to confidential information under the protective order. As a condition for this access, the two CD & C attorneys agreed "to refrain from prosecution of patent applications directed to mobile digital telephone communication equipment and processes during the pendency of this case and until one year after the conclusion of this litigation."D.I. 69. Again, Motorola implies that ITC should have disclosed its patent prosecution representation at this time.

*2 ITC denies these allegations of improper concealment. Mr. Hoffman of DS & M states, "during the course of the parties' negotiations over Robert Bramson's access to certain Motorola documents, I believe I told counsel for Motorola that DS & M was prosecuting patents for ITC."Hoffman Affidavit at 4, ¶ 7. With respect to the CDC stipulation, Mr. Hoffman states that ITC consented to the stipulation in order to save time and expense, not because it agreed with Motorola's position. Hoffman Affidavit at 4-5, ¶ 8.[FN2] Moreover, counsel for ITC seem to have been guided at all times by their belief that no restriction exists on an outside counsel's ability to prosecute patent applications involving the technology related to the patents at issue. D'Amico Affidavit ¶ 9; Hoffman Affidavit ¶ 3; D.I. 86, at 109 (Mr. Bove stating that in his mind, there was always a clear distinction between inside and outside counsel).

> FN2. Mr. Hoffman's statement is supported by Mr. Bove's letter of August 8, 1994 to Mr. Hermann of Bayard, Handelman & Murdoch (local counsel for Motorola): "So the record is clear, we are providing this [CD & C] Stipulation at Motorola's request in order to avoid burdening the Court with what we perceive is a improper position taken by Motorola."ITC letter, Exhibit G.

For purposes of this opinion, the Court accepts as true the representations by ITC's various attorneys that there was no intentional concealment of DS & M's dual role. Nevertheless, an important issue is now before the Court which the Court is compelled to resolve.

III. Discussion

In a patent case, maintaining the integrity of the protective order is an especially serious concern. "Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information."*Safe Flight Instrument Corp. v. Sundstrand Data Control, Inc., 682 F.Supp. 20 (D.Del.1988)*. Motorola argues that its confidential information will be inadequately protected if DS & M attorneys who have access to the confidential information also prosecute ITC patents. Motorola fears that it is impossible for DS & M attorneys to compartmentalize the knowledge gained from reviewing Motorola's confidential documents and that the confidential knowledge gained will inevitably be used in prosecuting ITC's patent applications. Such use would violate the protective order's prohibition against use of the confidential information for any use other than the present litigation.

To supports its contention that there is no prohibition against outside counsel performing these dual roles, ITC relies upon *In re Certain Amorphous Metal Alloys,* No. 337-TA-143 (U.S.I.T.C.1983)., and its progeny, *In re Certain Magnetic Switches,* 1993 ITC LEXIS 143 (U.S.I.T.C.1993).*Amorphous Metal* is factually similar to the present case. Two firms were acting as trial counsel for respondents and each firm had access to complainant's confidential information. The first firm assisted their client's in-house patent agents in preparing patent applications. The second firm did not prosecute their client's patent applications, but prosecuted patents for other clients in the same subject matter. *Amorphous Metal* at 1 n. 2. Complainant argued that these firms could not possibly respect the protective order and still zealously prosecute the patent applications.

*3 The International Trade Commission allowed both firms to gain access to the confidential information. The Commission based its decision upon the following factors: an in-house/outside counsel distinction, faith in the attorneys ability to respect the protective order while pursuing future patent

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-02048-RBW   Document 60-11   Filed 01/15/2008   Page 4 of 8

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1994 WL 16189689 (D.Del.)
(Cite as: Not Reported in F.Supp.)

prosecutions, the lack of a present conflict, and the burden to the clients if the attorney's were disqualified from the litigation. While *Amorphous Metal* formulates and addresses the important issues present in this dispute, the Court declines to reach the Commission's result. To some extent this is due to factual differences between *Amorphous Metals* and the present case, but to some extent the Court simply disagrees with and declines to follow the Commission's reasoning.

"[T]he goals of full disclosure of relevant information and reasonable protection against economic injury 'are in tension and each must be fairly balanced against the other.' " *Safe Flight,* 682 F.Supp. at 23 (quoting *E.I. Du Pont de Nemours & Company v. Phillips Petroleum Company,* 219 U.S.P.Q. 37 (D.Del.1982) (Latchum, J.)). After carefully weighing the relevant factors, which are discussed below, the Court holds that the DS & M attorneys who have received confidential information from Motorola under the protective order shall not prosecute any ITC patent applications relating to the broad subject matter of the patents in suit during the pendency of this case and until one year after the conclusion of the present litigation, including appeals.

A. The In-house/Outside Counsel Distinction

In their letter and at argument, Counsel for ITC present the Court with a general rule: courts split on whether inside counsel may receive confidential information while at the same time continue to prosecute patents, but outside counsel are always able to do both. In *Amorphous Metal,* the Commission gave its reasons for viewing in-house counsel differently from outside counsel:

> Traditionally and in the instant investigation, in-house counsel have been excluded from protective orders not because of an inherent untrustworthiness, but because of their close ties with the corporate client. Although in-house counsel serve as legal advisors, their employment often intimately involves them in the management and operation of which they are a part. The two roles of legal advisor and corporate official will often merge; when they do, the efficacy of the protective order is greatly diminished. Furthermore, because they are in regular contact with technical personnel, in-house counsel are in a significantly different position with regard to opportunities for inadvertent transmission of confidential information than are outside counsel.

*Amorphous Metal* at 5.

The Court declines to rest its decision upon a bright-line distinction between "in-house" and "outside" counsel. Access to confidential information "should be denied or granted on the basis of each individual counsel's actual activity and relationship with the party represented, without regard to whether a particular counsel is in-house or retained."*U.S. Steel Corp. v. United States,* 730 F.2d 1465, 1469 (Fed.Cir.1984).*U.S. Steel* was decided eight months after the Commission's opinion in *Amorphous Metal,* and involved a CIT decision which had relied upon a bright-line distinction to deny in-house counsel access to confidential information. The Federal Circuit held that "status as in-house counsel cannot alone create that probability of serious risk to confidentiality and cannot therefore serve as the sole basis for denial of access."*U.S. Steel,* 730 F.2d at 1469.

*4 The critical inquiry is whether the attorney in question is in a position that creates a high risk of inadvertent disclosure. In discussing access for in-house counsel, courts look for involvement in competitive decision making or scientific research in determining whether an individual would have a difficult time compartmentalizing his knowledge. *Carpenter Technology Corp. v. Armco, Inc.,* 132 F.R.D. 24, 27-28 (E.D.Pa.1990) (granting access to one individual and denying access to another individual based upon involvement in competitive decision making and scientific research); *U.S. Steel Corp. v. United States,* 730 F.2d 1465, 1468 (Fed.Cir.1984) (discussing the need to retain outside counsel to gain access to confidential information if in-house counsel is involved in competitive decision making). These are activities which define the scope and emphasis of a client's research and development efforts. The process of prosecuting patent applications also involves decisions of scope and emphasis, as was argued by Mr. Krupka at the September 28 hearing: "They can make the claims read on new products and new directions where we project sales to be most critical. And they can forget about the ones that relate to products that are going to die."D.I. 86, at 126. [FN3]

> FN3.*Amorphous Metal* did not address this aspect of the patent prosecution process. The Commission was satisfied that no danger existed because the outside counsel had no direct contact with the client's technical personnel. *Amorphous Metal* at 6.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-02048-RBW   Document 60-11   Filed 01/15/2008   Page 5 of 8

Not Reported in F.Supp.                                                                                                                    Page 4
Not Reported in F.Supp., 1994 WL 16189689 (D.Del.)
(Cite as: Not Reported in F.Supp.)

Moreover, this court has implied in the past that prosecution of patents could be grounds for denying access. In *Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F.Supp. 20 (D.Del.1988) (Roth, J.), the Court denied plaintiff's request that defendant's in-house counsel be denied access: "The defendant has represented to this Court that its in-house counsel neither conduct scientific research *nor prosecute patents.* These attorneys simply do not face [plaintiff's president's] prospect of having to distil one's own thoughts from a competitor's thoughts during the course of future ... work."[FN4] *Id.* The court also relied upon the fact that defendant's in-house counsel would be segregated to avoid "the possibility of conscious or unconscious abuse of confidential information."*Id.* at 23.

> FN4. The Court had previously denied Plaintiff's request that Plaintiff's President be granted access because of the President's heavy involvement in research and decision making. *Safe Flight,* 682 F.Supp. at 22.

There can be no question that DS & M attorneys who receive confidential information and then later prosecute patents will have to distil and compartmentalize the confidential knowledge they have gained. The inquiry must shift, therefore, to the dangers of inadvertent disclosure and the possible protections that may exist against such disclosure.

B. Inadvertent Disclosure

DS & M attorneys are prosecuting patents that are directly at issue in the present litigation. DS & M does not deny that it is theoretically possible for them to abuse the confidential information received, but argue that they understand their ethical duty and will act in conformance with it. The Commission adopted this position in *In re Certain Amorphous Metal Alloys,* No. 337-TA-143, at 3 (U.S.I.T.C.1983): "[I]n the event that a conflict is posed as a result of knowledge gained under a protective order, we would expect that counsel would refer the matter to other counsel. We therefore believe that it is appropriate to presume that respondents' counsel will respect the integrity of the confidential information released under a protective order."

*5 The Court does not question the ethics of the DS & M attorneys, nor does it doubt that DS & M attorneys would respond appropriately if a conflict were "posed" to them. The issue is not deliberate disclosure, however, but *inadvertent* disclosure. In *Safe Flight,* the Court denied Plaintiff's President access to defendant's confidential information because of the dangers posed by inadvertent disclosure. "Accepting that [plaintiff's president] is a man of great moral fiber, we nonetheless question his human ability during future years of research to separate the applications he has extrapolated from [defendant's] documents from those he develops from his own ideas."*Safe Flight,* 682 F.Supp. at 22.

"Inadvertence, like the thief-in-the-night, is no respecter of its victims. Inadvertent or accidental disclosure may or may not be predictable. To the extent that it may be predicted, and cannot be adequately forestalled in the design of a protective order, it may be a factor in the access decision."*U.S. Steel Corp.,* 730 F.2d at 1468. DS & M is currently prosecuting applications relating to the very patents at issue in this litigation. Attorneys who were to view Motorola's voluminous confidential information and then later prosecute the patents would have to constantly challenge the origin of every idea, every spark of genius. This would be a sisyphean task, for as soon as one idea would be stamped "untainted", another would come to mind. The level of introspection that would be required is simply too much to expect, no matter how intelligent, dedicated, or ethical the DS & M attorneys may be.

C. Hardship to Client

Courts have also considered the hardship to the client if counsel is disqualified or restricted in some manner. *See U.S. Steel Corp. v. United States,* 730 F.2d 1465, 1469 (Fed.Cir.1984) ("forcing USS to rely on newly retained counsel would create an extreme and unnecessary hardship"); *Safe Flight Instrument Corp. v. Sundstrand Data Control,* 682 F.Supp. 20, 22 (D.Del.1988) (denying access to Plaintiff's president would not unduly hamper plaintiff ability to assess litigation); *In re Certain Amorphous Metal Alloys,* No. 337-TA-143, at 3 (U.S.I.T.C.1983) ("disqualification imposes too great a burden on respondents in this case"). ITC has urged the Court to consider the cost it will incur if DS & M's representation is limited in any way. *See* D.I. 86, at 110 (representations by Mr. Bove regarding ITC's concern regarding costs). ITC's hardship is certainly a factor to be balanced against Motorola's need to protect its confidential information, but it is just one factor.

Case 1:05-cv-02048-RBW    Document 60-11    Filed 01/15/2008    Page 6 of 8

Not Reported in F.Supp.                                                                Page 5
Not Reported in F.Supp., 1994 WL 16189689 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

It is important to note that DS & M has not been prosecuting these particular ITC patent applications for a long period of time. This is not a situation where a client decided that it would be efficient to retain trial counsel who had prosecuted the particular patent in the past. In fact, DS & M did not become attorney of record for these particular patent applications until one week after the filing of Motorola's suit. This creates the appearance of a situation where a client felt it would be efficient to have trial counsel prosecute the patent application in the future. This creates far too great a risk that any efficiency will be to some extent the result of inadvertent use of confidential information.

*6 This conflict was created by ITC after the initiation of litigation, and could have been avoided altogether by ITC. Under these circumstances, the Court will take hardship into account in fashioning its remedy, but does not consider the hardship severe enough to deny relief altogether.

D. Timing of the Remedy

In *Amorphous Metal,* the Commission recognized that a danger existed, but decided that there was not a present conflict, only a mere possibility of future conflict. *Amorphous Metals* at 8. As a result of this conclusion, the Commission chose not to deny access, but rather indicated that it would investigate in the future if the complainant could "show that subject matter directly related to the confidential information appeared in a patent application after release under a protective order."*Amorphous Metal* at 6 n. 13.In effect, the Commission promised to remedy the injury after it occurred, while complainant was asking the Commission to prevent the injury from occurring. Given the voluminous information supplied to date by Motorola under the protective order, the ongoing dual role of the DS & M attorneys, and the need to closely guard confidential information in the patent area, this Court believes a conflict exists at the present time and will act to prevent the possibility of injury to Motorola.

E. Scope of the Remedy

All DS & M attorneys or employees who have received confidential information from Motorola under the protective order in this case shall not prosecute any patent application for ITC relating to the broad subject matter of the patents in suit during the pendency of this case and for one year after the conclusion of this litigation, including appeals.

This remedy is broad enough to protect Motorola's confidential information, yet seeks to minimize the hardship to both ITC and DS & M. The prohibition applies only to ITC patent applications that are the subject matter of this litigation, not all ITC patent applications. The prohibition applies only to patent prosecutions for ITC, not for all other clients.[FN5]Finally, there is a time limit on the prohibition similar to the limit requested by Motorola for the CDC attorneys. *See* D.I. 69.

> FN5. The Court presumes that DS & M's ethical duty to its client, ITC, would prevent DS & M from prosecuting patent applications for other clients that are of similar subject matter as ITC's patents in this case. Therefore, Motorola's confidential information should not be threatened by any representation of a third party which DS & M may undertake.

DS & M has represented that to date, only Mr. D'Amico has worked on patent application matters and then subsequently reviewed confidential information. *See* D'Amico Affidavit. Because he has had access to Motorola's confidential information, he is subject to the Court's prohibition. Going forward, DS & M shall set up a Chinese Wall to separate the ITC patent application attorneys from the Motorola litigation attorneys who have received confidential information. This shall ensure that, with the exception of Mr. D'Amico, ITC shall continue to receive the same services from the same DS & M attorneys that ITC has received in the past.

*ORDER*

NOW, THEREFORE, for all the reasons stated by the Court in its Memorandum Opinion of December 19, 1994, IT IS ORDERED that:

*7 1. The protective order, Docket Item 35, shall be amended to provide that any Dickstein, Shapiro & Morin ("DS & M") attorneys who have received confidential information from Motorola under the protective order shall not prosecute any InterDigital Technology Corporation patent applications relating to the broad subject matter of the patents in suit during the pendency of this case and until one year after the

Case 1:05-cv-02048-RBW   Document 60-11   Filed 01/15/2008   Page 7 of 8

Not Reported in F.Supp. Page 6
Not Reported in F.Supp., 1994 WL 16189689 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

conclusion of the present litigation, including appeals.

    2. DS & M shall set up a Chinese wall to ensure that the Court's order is effectively enforced.

D.Del.,1994.
Motorola, Inc. v. Interdigital Technology Corp.
Not Reported in F.Supp., 1994 WL 16189689 (D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 9