# Exhibit 23

*Excerpts from Tony Downs' Brief Including Signature Page*

UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.

Before The Honorable Theodore R. Essex
Administrative Law Judge

In the Matter of

CERTAIN SEMICONDUCTOR CHIPS WITH
MINIMIZED CHIP PACKAGE SIZE AND            Investigation No. 337-TA-605
PRODUCTS CONTAINING SAME

COMPLAINANT TESSERA, INC.'S RESPONSE TO RESPONDENTS'
JOINT MOTION FOR STAY

Tessera respectfully submits the following brief for Administrative Law Judge Essex's consideration responding to the arguments advanced this morning by Respondents in support of a stay pending reexamination.

I.  INTRODUCTION

> While reexamination would substantially simplify this case if the PTO finds that all allegedly infringed claims of any of the patents are cancelled, this historically happens in only 12% of reexaminations requested by a third party. . . . [T]o adopt a per se rule that patent cases should be stayed during reexamination because some of the relevant claims may be affected . . . would not promote the efficient and timely resolution of patent cases, but **would invite parties to unilaterally derail timely patent case resolution by seeking reexamination.** Some of the claims may change in this case, but the Court is of the opinion that **the interests of justice will be better served by dealing with that contingency when and if it occurs**, rather than putting this case indefinitely on hold. (*Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662-663 (E.D. Tex. 2005) (denying motion to stay) (emphases added))

The Asserted Patents are due to expire in about two years, and all of the parties (as well as numerous third-parties) are present and ready to proceed with the hearing. Respondents do not dispute these facts, and have instead urged the Court to disregard these circumstances,

> than in a district court. Respondents should not be able to deprive complainant of the only practical means of enforcing its patent in the last two years before it expires. *If the case goes to hearing now, respondents will have a fair hearing and an opportunity to prove that the patent is invalid, not infringed, or unenforceable. If the case is suspended, only respondents can benefit, even if complainant succeeds on the merits* (*Microsphere Adhesives* at 1 (emphasis added)).

There is one distinction to be drawn between *Microsphere Adhesives* and the case at bar. In *Microsphere Adhesives*, the motion to stay was based on a reexamination in which the reexamination had been ordered but no rejections stood outstanding. However, this is a distinction without a difference. As the PTO has made clear, until the reexamination process has **concluded** adverse to Tessera, it should not prejudice this proceeding and the two should proceed in parallel. *See* 2/14/08 PTO Decision Refusing to consider Supplemental Response re '419 reexamination ("The existence of concurrent litigation and inter partes reexamination for the same patent is regarded as being rather normal and not undesirable"; "***Congress believed that concurrent litigation and inter partes reexamination involving the patent in litigation could be trusted to continue without prejudice to a patent owner or to a third party in one proceeding based upon circumstances in the other proceeding***") (emphasis added) *see also* Ex. 1(attached slide presentation).

Put simply, this is not a situation where the equities hang in the balance and fine distinctions must be drawn. The equities are solidly in Tessera's favor. If the reexamination proceedings ultimately result in invalidation of all of the Asserted Claims, the Commission's rescinding of its order granting relief will prevent significant harm from befalling Respondents. On the other hand, staying the proceedings now will have the ***irreversible*** effect of denying Tessera effective relief because it is unlikely that the PTO reexamination proceedings will conclude before both of the Asserted Patent expire. Indeed, Respondents' arguments regarding prejudice ***assume*** that a preliminary exclusion order will be issued and later withdrawn because

4

> [T]he intent of Congress was to permit concurrent inter partes reexamination and litigation until a point in time in which one proceeding or the other was finally concluded with no further appeal possible, thereby raising certain estoppels at that point in time as to the other proceeding. Apparently, Congress believed that concurrent litigation and inter partes reexamination involving the patent in litigation could be trusted to continue without prejudice to a patent owner or to a third party in one proceeding based upon circumstances in the other proceeding . . . . [T]he existence of concurrent litigation and inter partes reexamination for the same patent is regarded as being rather normal and not undesirable . . . . (2/14/08 PTO Decision Refusing to consider Supplemental Response re '419 reexamination)

### IV. THE '326 CLAIMS ARE NOT FINALLY REJECTED – SOME ARE NOT EVEN INITIALLY REJECTED

In contrast to the action on the '419 patent, the action received today on the '326 patent is an initial office action. This is the very start of a process that will likely take about 30 months even before any appeals, and during which the patent remains in full force.[9] At this point, the patent office has not even heard Tessera's side of the story. Tessera has not yet submitted any argument whatsoever to the patent office in connection with the '326 patent.

Respondents' counsel this morning represented that there is at least a 75% chance, based on *ex parte* reexam statistics, that this patent would eventually be invalidated. Rough Transcript at 17. This representation was manifestly incorrect. According to the actual statistics from the patent office, only 10% of patents that undergo ex parte reexamination have all their claims cancelled. See Patent Office Statistics, September 30, 2007, attached as Exhibits 3 and 4. Respondents counsel thus overstated the statistics by more than a factor of seven. Once again, Respondents continue their pattern of telling the Judge the facts Respondents want to be true, rather than the facts that actually are so.

---

[9] This 30 month period is, in fact, woefully shorter than the actual length of time reexaminations take. This figure is based on the 11 – out of 261 – *inter partes* reexaminations that have proceeded to issuance of a certificate after appeal rights have been exhausted.

14

making such an analysis. The least prejudice to all the parties is to have the issues resolved quickly, and the quickest way to get them resolved is to move ahead with this trial, which will proceed to a conclusion *much* more quickly than the reexamination will. In order to avoid the clear prejudice to Tessera, the Court should move ahead and address the invalidity arguments already prepared for argument before it. Nothing is gained by "deferring" to the PTO for some indefinite time, when the only definite thing that can be concluded is that the delay will clearly prejudice Tessera.

Tessera respectfully requests that Respondents' last minute motion for a stay of this action be denied.

Dated: February 25, 2008

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP
Wayne M. Barsky
H. Mark Lyon
Frederick S. Chung
Y. Ernest Hsin
Jason C. Lo
Sarah E. Piepmeier
1881 Page Mill Road
Palo Alto, CA 94304
Telephone:   (650) 849-5300
Facsimile:   (650) 849-5007

IRELL & MANELLA, L.L.P.
Benjamin W. Hattenbach
Kenneth Weatherwax
1800 Avenue Of The Stars, Suite 900
Los Angeles, CA 90067-4276
Telephone:   (310) 203-7937
Facsimile:   (310) 203-7199

17

GOODWIN PROCTER LLP
J. Anthony Downs
Scott L. Robertson
David N.M. Young
901 New York Avenue, N.W.
Washington, DC 20001
Telephone:  (202) 346-4000
Facsimile:  (202) 346-4444

MILLER & CHEVALIER CHARTERED
F. David Foster
James B. Altman
David F. Nickel
Jacqueline L. Ferrand
655 Fifteenth Street, N.W., Suite 900
Washington, DC 20005
Telephone:  (202) 626-5800
Facsimile:  (202) 626-5801

*Attorneys for Complainant Tessera, Inc.*