## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CISCO SYSTEMS, INC.,        ) | |
|                 ) | |
|        Plaintiff,      ) | |
| v.                ) | Civil Action No. 05-2048 (RBW) |
|                 ) | |
| TELES AG            ) | |
| INFORMATIONSTECHNOLOGIEN, ) | |
|                 ) | |
|        Defendant.     ) | |

**FILED**

AUG 2 9 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## AMENDED ORDER

Currently before the Court is Cisco's Motion to Stay This Case Pending Reexamination of the '902 Patent . Upon consideration of the pleadings, the supporting memoranda submitted by the parties, the arguments counsel presented to the Court at the hearings on January 24, 2008, and March 14, 2008, it is hereby this 29th day of August, 2008,

**ORDERED** that Cisco's Motion to Stay This Case Pending Reexamination of the '902 Patent is **GRANTED**.   It is further

**ORDERED** that a status conference shall be held on September 12, 2008 at 12:00 p.m. in courtroom 16 before the Honorable Reggie B. Walton, E. Barrett Prettyman United States Courthouse, 333 Constitution Avenue N.W., Washington, DC 20001.  It is further

**ORDERED** that this order shall be deemed a final order subject to appeal.

**SO ORDERED.**

/s/_____
REGGIE B. WALTON
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

CISCO SYSTEMS, INC.                  :
        PLAINTIFF,                   :
                                     :
  VS.                                :        C. A. NO.  05-2048
                                     :
                                     :
TELES AG                             :
INFORMATIONSTECHNOLOGIEN,            :
        DEFENDANT,                   :
_____          :

                        WASHINGTON, D. C.
                        JANUARY 24, 2008

               TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE REGGIE B. WALTON

FOR THE PLAINTIFF:          J. ANTHONY DOWNS, ESQ.
                            (BY TELEPHONE)
                            MARVA DESKINS, ESQ.


FOR THE DEFENDANT:          DAVID LONG, ESQ.


COURT REPORTER:             PHYLLIS MERANA
                            6816 U. S. COURTHOUSE
                            3RD & CONSTITUTION AVE, N.W.
                            WASHINGTON, D. C.  20001

1                      P-R-O-C-E-E-D-I-N-G-S

2          THE DEPUTY CLERK:  CIVIL ACTION 05-2048, CISCO

3    SYSTEMS, INC. VERSUS TELES AG INFORMATIONSTECHNOLOGIEN.

4          COUNSEL, CAN YOU PLEASE COME FORWARD AND IDENTIFY

5    YOURSELVES FOR THE RECORD.

6          MR. LONG:  YOUR HONOR, DAVID LONG WITH HOWREY ON

7    BEHALF OF TELES AG.

8          WITH ME TODAY IS RYAN CORLE, AN ASSOCIATE WITH OUR

9    FIRM.  I'LL NOTE HE IS ADMITTED IN THE DISTRICT OF COLUMBIA,

10   BUT NOT THIS COURT.  IF IT IS OKAY WITH THE COURT, CAN HE

11   SIT AT THE TABLE?

12         THE COURT:  VERY WELL.

13         MR. LONG:  THANK YOU.

14         MS. SHIFERMAN:  YOUR HONOR, LANA SHIFERMAN FROM

15   GOODWIN PROCTER ON BEHALF OF CISCO.  ON THE PHONE IS TONY

16   DOWNS, ALSO FROM GOODWIN PROCTER.  AND I HAVE WITH ME MARVA

17   DESKINS.

18         MR. DOWNS:  GOOD MORNING, YOUR HONOR.  THIS IS

19   TONY DOWNS.  I AM STANDING BY THE PHONE IN SAN FRANCISCO.

20         THE COURT:  GOOD MORNING.  I APOLOGIZE FOR THE

21   DELAY.  I WAS HERE AND READY TO GO, BUT WE WERE NOT READY IN

22   COURT FOR ME TO TAKE THE BENCH.  SO I APOLOGIZE.

23         IT IS KIND OF DIFFICULT, IT SEEMS TO ME.  THE

24   PROTECTIVE ORDER DOES CONTAIN A PROVISION THAT SPECIFICALLY

25   DEALT WITH REEXAMINATION PROCEEDINGS AND THAT TELES'

1   COUNSEL, IF THERE WAS A REEXAMINATION PROCEEDING, WOULD NOT

2   BE ABLE TO PARTICIPATE IN THAT PROCEEDING.

3         I HAVE REAL CONCERNS ABOUT MODIFYING AN AGREEMENT

4   THAT WAS REACHED THAT, AT LEAST IN PART, I AM SURE

5   PRECIPITATED CISCO'S PRODUCTION BY WAY OF DISCOVERY OF

6   CONFIDENTIAL INFORMATION.  AND IT IS KIND OF DIFFICULT FOR

7   ME TO CONCLUDE THAT, UNDER THOSE CIRCUMSTANCES, I SHOULD

8   ALTER THE PROTECTIVE ORDER.  BUT I WILL HEAR FROM COUNSEL.

9         MR. LONG:  THANK YOU, YOUR HONOR.  DAVID LONG ON

10   BEHALF OF TELES.

11         I UNDERSTAND, YOUR HONOR, WHEN IT CAME TO THE

12   PROTECTIVE ORDER, IT DIDN'T HAVE WHAT'S CALLED LIKE A

13   GENERAL PROSECUTION BAR, AND AT THE TIME, IT WAS NOT AN

14   ISSUE.

15         HOWREY IS TELES' LITIGATION COUNSEL.  I DON'T

16   PARTICIPATE IN PROSECUTION, OR JUST VERY LITTLE MYSELF.  SO

17   IT WASN'T AN ISSUE.  AND, NOTABLY, THAT PROTECTIVE ORDER HAD

18   A PROVISION IN IT THAT SAID IT COULD BE MODIFIED AT ANY

19   TIME.

20         IN FACT, IT DIDN'T HAVE ANY PARTICULAR BURDEN WITH

21   MODIFICATION.  SO WE DIDN'T CONTEST THIS PROSECUTION BAR AT

22   THE TIME BECAUSE IT REALLY WASN'T AN ISSUE.  WHEN YOU LOOK

23   AT WHERE WE WERE AT --

24         THE COURT:  IT SEEMS TO ME THE QUESTION REALLY

25   BECOMES TO WHAT EXTENT COULD CISCO CONCEIVABLY BE PREJUDICED

1   BECAUSE OF YOU HAVING OR YOUR FIRM HAVING KNOWLEDGE OF THIS

2   CONFIDENTIAL INFORMATION.

3          MR. LONG:  YES, YOUR HONOR.  EXACTLY.  IN FACT,

4   THAT'S WHY PART OF OUR PROPOSAL IS THAT WE NOT PARTICIPATE

5   IN AMENDING OR ADDING ANY CLAIMS.

6          I DOUBT THAT WILL HAPPEN ANYHOW, BUT THAT

7   ADDRESSED THE ONLY CONCERN THAT WE SAW IN THE BRIEFING

8   INITIALLY THAT CISCO HAD.

9          SO WHEN WE LOOK AT, FOR EXAMPLE, THE CASE

10  LAW -- AND I REALLY DON'T THINK THIS IS A CASE LAW ARGUMENT,

11  BECAUSE THE CASE LAW IS ALL OVER.  IT ULTIMATELY JUST PLACES

12  IT IN YOUR HONOR'S SOUND DISCRETION.

13         BUT THE U.S. STEEL CASE THAT WE CITE TALKS ABOUT

14  YOU SHOULDN'T HAVE A CATEGORICAL BAR AGAINST CLASSES OF

15  ATTORNEYS.  YOU SHOULD REALLY APPLY IT TO THE FACTS OF CASE.

16         IN FACT, WHEN YOU LOOK AT -- I THINK IT WAS THE

17  SMART SIGNAL CASE THAT CISCO ITSELF CITES, THAT CASE   CITES

18  A FEDERAL CIRCUIT DECISION.  IT WAS AN UNPUBLISHED FEDERAL

19  CIRCUIT DECISION THAT SAID:  DENYING ACCESS TO OUTSIDE

20  COUNSEL ON THE GROUND THAT THEY PROSECUTE PATENTS IS THE

21  TYPE OF GENERALIZATION COUNSELED AGAINST IN U.S. STEEL.  THE

22  FACTS, NOT THE CATEGORIES, MUST INFORM THE RESULT.

23         NOW, THAT'S IN THE CASE BEFORE YOUR HONOR.  THE

24  KEY IS:  WHAT ARE THE FACTS?

25         THE COURT:  DID THAT CASE, OR ANY CASES THAT YOU

1  RELY UPON, HAVE ANY CIRCUMSTANCES WHERE CONFIDENTIAL

2  INFORMATION HAD BEEN PRODUCED AND THE PARTY WHO HAD PRODUCED

3  THAT WAS TAKING THE POSITION THAT LITIGATION COUNSEL SHOULD

4  NOT, BECAUSE OF THAT, BE ABLE TO PARTICIPATE IN PROCEEDINGS

5  WHEREBY, CONCEIVABLY, THAT PRODUCED INFORMATION MIGHT GIVE

6  THEM A TACTICAL ADVANTAGE?

7       MR. LONG:  YES, YOUR HONOR.  THERE HAVE BEEN

8  CASES.  IN FACT, IN THOSE CASES, WHAT THE COURT HAS

9  SAID -- FOR EXAMPLE, THERE IS A MEDIMUNE CASE WHERE THE

10  COURT MADE THE POINT THAT LITIGATION COUNSEL -- AND THAT'S

11  THE PARTICULAR FACTS WE ARE LOOKING AT HERE -- WE'RE

12  LITIGATION COUNSEL -- IS NOT A COMPETITIVE DECISION-MAKER.

13  "OTHER THAN HIS ROLE AS PATENT PROSECUTOR FOR MEDIMUNE,

14  THERE IS NO OTHER INDICATION THAT WOULD WARRANT DENYING HIM

15  ACCESS TO CONFIDENTIAL INFORMATION.  HE DID NOT PARTICIPATE

16  IN INTERNAL DECISION-MAKING," ET CETERA.

17       THERE IS ANOTHER CASE.  IT'S TRADING TECHNOLOGIES

18  VERSUS E-SPEED FROM THE NORTHERN DISTRICT OF ILLINOIS.  IN

19  THAT CASE, THE COURT REFUSED TO BAR THE PLAINTIFF'S

20  ATTORNEY, WHO IS PRIMARY A LITIGATOR, FROM BEING INVOLVED IN

21  PROSECUTING PATENTS BECAUSE SUCH AN ATTORNEY IS GENERALLY

22  ONLY INCIDENTALLY INVOLVED IN PATENT APPLICATIONS AND ACTS

23  AS AN ADVOCATE, NOT AS A DRAFTER.

24       THAT IS OUR CIRCUMSTANCE HERE.  WHEN YOU LOOK AT

25  CASES -- AND THIS IS WHAT WE PUT IN OUR BRIEFING AS WELL.

1    THE PROSECUTION BAR IS MEANT TO GO AFTER COUNSEL WHO

2    ROUTINELY PROSECUTE PATENT APPLICATIONS ON BEHALF OF A

3    CLIENT.  THAT MEANS THEY, FOR EXAMPLE, DRAFT ALL THE

4    LANGUAGE AND ALL THE FIGURES THAT GO INTO A PATENT, AND A

5    CONCERN IS IF THEY ARE DOING THAT AND DRAFTING THAT INITIAL

6    PATENT APPLICATION, THEY MAY NOT BE ABLE TO DISCERN WHAT

7    THEY LEARNED FROM THEIR CLIENT VERSUS WHAT THEY MAY HAVE

8    SEEN FROM CONFIDENTIAL INFORMATION.

9         THAT'S NOT THE CASE HERE.  WE ARE TALKING ABOUT

10   THE 902 PATENT.  IT HAS BEEN DRAFTED.  IT'S BEEN WRITTEN.

11   WE CAN'T AMEND THE SPECIFICATION.  WE ARE NOT GOING TO

12   PARTICIPATE IN ANY AMENDMENTS OF THE CLAIMS IF THAT WERE TO

13   HAPPEN.

14        SO WHEN YOU LOOK AT THE FACTS OF OUR CASE, WHICH

15   IS WHAT THE FEDERAL CIRCUIT SAYS YOU SHOULD DO, ALL WE ARE

16   ASKING TO DO IN THE PATENT OFFICE IS WHAT WE'RE DOING HERE.

17        CISCO HAS RAISED PRIOR ART.  THEY SAID THE CLAIMS

18   WERE INVALID.  WE WOULD ARGUE IN THIS COURT, JUST AS WE WANT

19   TO ARGUE IN THE PATENT OFFICE, THAT THAT IS WRONG.  THAT THE

20   CLAIMS AREN'T INVALID BASED ON THE PRIOR ART.

21        THE EXACT SAME THING WE'RE DOING IN THIS COURT, WE

22   WANT TO DO IN THE PATENT OFFICE.  AND WE'RE NOT GOING TO

23   PARTICIPATE IN ANY CLAIM AMENDMENTS.

24        SO WE JUST WANT TO DO IN THE PATENT OFFICE WHAT WE

25   ARE DOING HERE.  EVEN CISCO ITSELF HAS SAID, AT LEAST IN THE

1   STAY BRIEFING, THAT THE REEXAM IS JUST GOING TO CONTINUE

2   LITIGATION IN THE PATENT OFFICE RATHER THAN HERE.

3       SO THAT'S ALL WE WANT TO DO.  IN FACT, YOU WILL

4   SEE THE PREJUDICE WE HAVE, BASED ON WHAT CISCO SUBMITTED TO

5   THE COURT IN THE SURREPLY, WHICH IS TELES HAS HAD TO ASK THE

6   PATENT OFFICE FOR SOME MORE TIME BECAUSE TRYING TO WORK WITH

7   JUST THE PROSECUTION COUNSEL, THEY HAVE NOT BEEN ABLE TO GET

8   UP TO SPEED AND HAVE A FAIR CHANCE TO RESPOND TO THE OFFICE

9   ACTION.  SO THEY GOT A TWO-WEEK EXTENSION IN THE HOPE THAT

10  WE CAN HELP THEM WITH THEIR ARGUMENTS ON THE REEXAMINATION

11  BECAUSE WE HAVE BEEN WORKING ON THIS CASE FOR YEARS.

12      ANOTHER THING TO LOOK AT IN THE PARTICULAR FACTS

13  OF THIS CASE IS OUR CLIENT IS A SMALL GERMAN-BASED COMPANY.

14  ENGLISH IS NOT THEIR PRIMARY LANGUAGE.  THEY DO SPEAK

15  ENGLISH, OFTEN BETTER THAN ME WITH MY ALABAMA UPBRINGING.

16  BUT, IN ANY EVENT, WHEN WE TALK WITH THEM, A LANGUAGE

17  BARRIER CAN SOMETIMES COME IN.

18      SO WHEN YOU COUNSEL A CLIENT IN WHICH ENGLISH IS

19  NOT THEIR PRIMARY LANGUAGE, THE TIME IT TAKES TO DISCUSS

20  ESPECIALLY TOUGH, TECHNICAL ISSUES CAN BE A LOT LONGER THAN

21  WITH SOMEONE IN WHICH ENGLISH IS THEIR PRIMARY LANGUAGE.

22      SO WE ARE FACING THOSE BARRIERS.  WE HAVE ALREADY

23  DONE THAT.  WHEN THIS CASE WAS FILED, CISCO CLAIMED THAT THE

24  PATENTS WERE INVALID.  WE LOOKED AT ARGUMENTS THAT THEY MADE

25  IN GERMANY.  THAT INVOLVED GETTING TRANSLATIONS OF THE

1    GERMAN DOCUMENTS AND READING THE PATENTS THAT THEY DID THERE

2    AT THE VERY OUTSET OF THE CASE.

3         AND THE CLIENT HAS FLOWN HERE TO THE U.S. TO TALK

4    WITH US ABOUT IT BECAUSE SOMETIMES YOU JUST NEED TO SIT

5    RIGHT NEXT TO EACH OTHER AND POINT AT FIGURES AND TALK ABOUT

6    IT.  WE HAVE GONE TO GERMANY -- ALL OF THAT EXPENSE -- TO

7    TRY TO UNDERSTAND THE TECHNOLOGY AND TRY TO UNDERSTAND THE

8    VALIDITY.

9         IN FACT, WE HAD THE HARDEST TIME GETTING CISCO TO

10   TELL US WHY THEY THOUGHT THE CLAIMS WERE INVALID.  SO WE'RE

11   ALSO TRYING TO FIGURE OUT WHAT THEIR ARGUMENTS ARE.

12        SO WE SPENT A LOT OF TIME.  AND FOR A SMALL

13   COMPANY LIKE TELES, THAT EXPENSE AND LOSS OF AN INVESTMENT

14   IN AN ATTORNEY IS SUBSTANTIAL.

15        AND, AGAIN, AS FAR AS HARM TO CISCO, ALL WE'RE

16   GOING TO DO IS MAKE ARGUMENTS TO THE PATENT OFFICE THAT WE

17   WOULD MAKE HERE, TOO, WHICH IS THAT THE CLAIMS DON'T READ ON

18   THIS PRIOR REFERENCE FOR THE FOLLOWING REASONS.

19        WE HAVE BEEN ADVISING THE CLIENT ALL ALONG WHY WE

20   DIDN'T THINK THE CLAIMS WERE INVALID.  FOR PURPOSES OF THIS

21   CASE, WE'RE JUST GOING TO CONTINUE THAT IN THE PATENT

22   OFFICE.  WE'RE NOT GOING TO AMEND CLAIMS.  WE'RE NOT GOING

23   TO DO ANY OF THE THINGS THAT ARE THE TYPE OF HARM THAT THE

24   COURTS THAT HAVE ENFORCED THE PROSECUTION BAR FOUND TO BE AN

25   ISSUE.

1        THE COURT:  YOU ARE SURE THERE ARE NOT GOING TO BE

2   AMENDED CLAIMS?

3        MR. LONG:  THE ONLY REASON WHY I CAN'T SAY FOR

4   SURE IS, FIRST OF ALL, I NEVER DO THAT, BUT WHAT I CAN SAY

5   IS THAT WE WILL NOT PARTICIPATE IN ANY CLAIM AMENDMENTS AT

6   ALL OR ADDING ANY NEW CLAIMS.

7        THE COURT:  WHO WOULD BE INVOLVED IN THAT, IF THAT

8   OCCURRED?

9        MR. LONG:  IT WILL BE THE NOVAK FIRM.  TELES HIRED

10  THE NOVAK FIRM IN 2006 TO START TAKING OVER THEIR

11  PROSECUTION.  I DON'T BELIEVE THE NOVAK FIRM PROSECUTED THE

12  ORIGINAL 453 PATENT AND ONLY GOT MIDWAY ON THE 902 PATENT.

13        THE COURT:  THEY HAVEN'T BEEN PRIVY TO THIS

14  CONFIDENTIAL INFORMATION PROVIDED BY CISCO?

15        MR. LONG:  NOT AT ALL, YOUR HONOR.  WE'VE PLAINLY

16  RESPECTED YOUR HONOR'S PROTECTIVE ORDER.  IN FACT, THAT'S

17  WHY WE BRING THIS PARTICULAR ISSUE TO YOUR HONOR.

18        SO WE WILL NOT HAVE ANY CONVERSATION WITH THEM

19  ABOUT DRAFTING CLAIM AMENDMENTS OR ADDING NEW CLAIMS.  WE

20  ARE JUST GOING TO DO WHAT WE DO HERE, AND WHAT WE HAVE DONE

21  ALL ALONG SO FAR, WHICH IS ADVISE THE CLIENT AS TO WHY WE

22  THINK THE CLAIMS ARE STILL VALID, NOTWITHSTANDING THE

23  VALIDITY CHALLENGES THAT CISCO HAS MADE IN THIS CASE.

24        THE COURT:  WHY ISN'T TELES' POSITION ACCEPTABLE?

25        MR. DOWNS:  (ON THE PHONE.)  YOUR HONOR --

```
 1            THE COURT:  WE ARE HAVING A LITTLE DIFFICULTY
 2   HEARING YOU.
 3            MR. DOWNS:  I AM IN MY HOTEL ROOM.  I AM TALKING
 4   AS LOUD AS I CAN.
 5            THE COURT:  OKAY.  I THINK THAT'S BETTER.
 6   COUNSEL, IDENTIFY YOURSELF.
 7            MR. DOWNS:  YES, THIS IS MR. DOWNS, YOUR HONOR.
 8            THE COURT: OKAY.
 9            MR. DOWNS:  I AM SORRY I COULDN'T BE THERE IN
10   PERSON.
11            BUT LET ME START AT THE BEGINNING BECAUSE I THINK
12   THAT WHEN WE NEGOTIATED THE PROTECTIVE ORDER, WE WERE
13   DEALING WITH HOWREY, A VERY SOPHISTICATED PATENT FIRM.  AND
14   THEY KNOWINGLY AGREED TO A PROSECUTION BAR ON BEHALF OF
15   THEIR CLIENT THAT WOULD PREVENT THEM, AS A CONDITION OF
16   GETTING CONFIDENTIAL INFORMATION FROM CISCO, FROM
17   PROSECUTING THE PATENT.
18            CAN YOU STILL HEAR ME, YOUR HONOR?
19            THE COURT:  I CAN HEAR YOU.
20            MR. DOWNS:  ALL RIGHT.  AND THEY AGREED TO THAT.
21   NOT ONLY THAT, WHEN TELES HAD SOME SEPARATE LITIGATION IN
22   DELAWARE AGAINST A DIFFERENT DEFENDANT, THEY AGREED TO A
23   PATENT PROSECUTION BARRING THAT LITIGATION AS WELL FOR THEIR
24   LITIGATING COUNSEL.
25            AND THE REASON THAT PEOPLE AGREE TO THAT IS THAT
```

1   IT IS FORESEEABLE, WHEN YOU START LITIGATION AND YOU

2   THREATEN SOMEONE WITH A PATENT, THAT THAT PERSON MIGHT GO

3   OUT AND FILE A REEXAM.  I THINK THAT IS PRETTY CLEAR FROM

4   WHAT WE HAVE SEEN IN THE MOTION TO STAY.

5          SO THEY DID THIS KNOWINGLY WHEN THEY AGREED TO THE

6   PROTECTIVE ORDER, AND CISCO RELIED ON THAT WHEN IT AGREED TO

7   GO AHEAD WITH THE PROTECTIVE ORDER.  IT DIDN'T RAISE AN

8   ISSUE WITH THE COURT AT THE TIME.  AND WE HAD NO IDEA AT

9   THAT TIME THAT THE 902 PATENT WAS GOING TO BE COMING INTO

10  THE CASE, AND WE DIDN'T SANDBAG ANYBODY, AS THEY IMPLIED IN

11  THEIR BRIEF.  THAT WAS A NEGOTIATED PROVISION.

12          AND THE COURTS HAVE REPEATEDLY UPHELD THESE

13  PROVISIONS, PARTICULARLY WITH RESPECT TO LITIGATION COUNSEL

14  WHO HAVE HAD ACCESS TO THE OTHER SIDE'S CONFIDENTIAL

15  INFORMATION.

16          AND THE CASES THAT MR. LONG REFERRED TO AND

17  CITED -- NOT ONE OF THEM DEALS WITH WHAT'S HAPPENED IN THIS

18  SITUATION, WHERE A PARTY, TELES, HAS AGREED TO THE

19  PROSECUTION BAR, AGREED THAT ITS LITIGATING COUNSEL, WHO HAD

20  ACCESS TO THE CONFIDENTIAL INFORMATION, WOULD NOT

21  PARTICIPATE IN THE REEXAM, AND THEN THEY GET ACCESS TO THAT

22  CONFIDENTIAL INFORMATION, AND THEY STUDY IT IN DETAIL FOR

23  MONTHS AND MONTHS, PLANNING THEIR STRATEGY OF HOW TO ATTACK

24  CISCO ON THAT.

25          AND THEN WHEN THE REEXAMINATION IS FILED, THEY

1    TURN AROUND AND SAY, "OH, BY THE WAY, WE NOW WANT TO

2    LITIGATE THE REEXAM."

3         AND THERE IS NOT A SINGLE CASE THAT SAYS THAT.

4    EVERY CASE THAT WE IDENTIFY WHERE THE LITIGATION COUNSEL WAS

5    INVOLVED, THERE IS NOT A CASE THAT SAYS IF YOU LITIGATE AND

6    YOU ARE PROSECUTING THE PATENTS AND YOU HAVE THAT

7    CONFIDENTIAL INFORMATION, YOU CAN THEN GO OUT AND

8    PARTICIPATE IN THE REEXAM.  IN FACT, THE COURTS HAVE BARRED

9    THAT.

10         THE COURT:  IF THE CLAIMS ARE NOT AMENDED, AS

11    COUNSEL INDICATES HE ANTICIPATES WILL BE THE SITUATION, OR

12    IF THEY ARE AMENDED, OTHER COUNSEL WOULD BE INVOLVED IN

13    THAT, WHAT ADVANTAGE HAVE THEY ACQUIRED AS A RESULT OF

14    HAVING OBTAINED THIS CONFIDENTIAL INFORMATION FROM CISCO?

15         MR. DOWNS:  I THINK WHEN YOU LOOK AT CISCO'S

16    SOURCE CODE FOR OVER 200 PRODUCTS INVOLVED HERE AND ITS

17    CONFIDENTIAL DOCUMENTS, WHICH DESCRIBE ITS PRODUCTS IN

18    DETAIL, ESSENTIALLY THE LITIGATION COUNSEL HAS BEEN GIVEN A

19    ROAD MAP ABOUT HOW TO DO SEVERAL THINGS IN THE PROSECUTION

20    OF A PATENT -- AND, RIGHT, THE REEXAMINATION OF THE

21    PROSECUTION -- THAT COULD TAILOR AN ATTACK AGAINST CISCO.

22    IN ESSENCE, THEY HAVE GOT THIS ROAD MAP.  AND IT IS NOT JUST

23    THE AMENDMENT OF CLAIMS.  OBVIOUSLY, THAT IT IS VERY

24    IMPORTANT.

25         AND IT IS SOMETHING THAT THEY EVEN ACKNOWLEDGE --

1   THEY REALLY HAVE NO LEG TO STAND ON FOR THAT.  BUT THERE IS

2   MORE THAN THAT BECAUSE WHEN YOU PROSECUTE IN A

3   REEXAMINATION -- AND YOUR HONOR MAY NOT BE AS FAMILIAR WITH

4   THIS -- YOU HAVE TO MAKE A LOT OF DECISIONS.  FOR EXAMPLE,

5   YOU TAKE POSITIONS ABOUT HOW TO DISTINGUISH THE PRIOR ART,

6   WHICH MAY DISCLAIM CERTAIN CLAIMS, EVEN WITHOUT WITH AN

7   AMENDMENT.

8         SO, FOR EXAMPLE, IF THE PRIOR ART SHOWS THAT IT

9   HAS CERTAIN KINDS OF LIMITATIONS, YOU WOULD BE WRITING THE

10  BRIEF OR WRITING THE RESPONSE IN THE REEXAMINATION TO SAY,

11  "I DISTINGUISH THE PRIOR ART BECAUSE IT LACKS THIS OR THIS,

12  AND, THEREFORE, IS NOT WITHIN THE SCOPE OF THE CLAIM."

13        AND WHEN YOU MAKE THAT STATEMENT IN PROSECUTION,

14  IT AMOUNTS TO A DISCLAIMER THAT YOU CAN'T GO BACK AND

15  RECAPTURE IN LITIGATION.

16        AND IF YOU ARE LIKE HOWREY, IN A POSITION OF

17  KNOWING EXACTLY WHAT CISCO HAS IN ALL OF ITS PRODUCTS AND

18  KNOWING THE ROAD MAP, CISCO'S CONFIDENTIAL INFORMATION, YOU

19  CAN DETERMINE, WELL, WHAT SHOULD I SAY?  SHOULD I SAY IT

20  THIS WAY?  SHOULD I SAY IT THAT WAY?  SHOULD I DISCLAIM

21  MORE?  SHOULD I DISCLAIM LESS?  HOW EXACTLY PRECISELY SHOULD

22  I DEAL WITH THAT SO AS NOT TO HURT MY CASE AGAINST CISCO?

23  AND I KNOW IT WILL HURT MY CASE IF I SAY THIS BECAUSE I

24  ALREADY HAVE CISCO'S CONFIDENTIAL INFORMATION.

25        AND THAT IS ONE EXAMPLE.  ANOTHER IS DURING A

1    REEXAMINATION, YOU CAN TAKE A POSITION ABOUT WHAT THE CLAIM

2    TERMS MEAN.

3            FOR EXAMPLE, THERE ARE CERTAIN CLAIM TERMS CALLED

4    "MEANS PLUS FUNCTION" CLAUSES, WHERE YOU HAVE TO IDENTIFY

5    THE STRUCTURE THAT SATISFIES THAT LANGUAGE.

6            SAY MY PATENT MEANS X, AND THIS CLAIM LANGUAGE

7    MEANS X AND Y.  IF YOU KNOW WHAT YOUR TARGET'S PRODUCTS DO

8    EXACTLY FROM THE SOURCE CODE, YOU CAN, FOR EXAMPLE, SAY,

9    "WELL, THIS PLAIN LANGUAGE MEANS THAT YOU HAVE TO ACCOMPLISH

10   STEP ONE BEFORE STEP TWO," OR YOU MIGHT CHOOSE A DIFFERENT

11   WAY, DEPENDING ON WHAT YOU DO, WHETHER IT WILL READ ON

12   CISCO'S PRODUCT.

13           NOW, THIS ISN'T THE NORMAL SITUATION BECAUSE CISCO

14   IS THE BIGGEST TARGET OF A HUGE LITIGATION CAMPAIGN BY

15   TELES.  THEY SUED US IN GERMANY.  THEY HAVE LAWYERS THERE.

16   THEY SUED US IN THE UNITED STATES ON THE 902 PATENT WHEN

17   THEY BROUGHT IT INTO THIS CASE.  THEY SUED QUINTUM, ANOTHER

18   CASE IN DELAWARE.

19           THEY HAVE LOTS OF ATTORNEYS, AND THEY EVEN HAVE A

20   PROSECUTING ATTORNEY, MR. DELUCA, WHO IS ADMITTEDLY

21   COMPLETELY UP TO SPEED IN PROSECUTING THE PATENTS, BUT WHO

22   PRESENTS NO RISK UNDER THE PROTECTIVE ORDER BECAUSE HE

23   HASN'T HAD ACCESS TO OUR CONFIDENTIAL INFORMATION.

24           SO IF YOU LOOK AT THE CASE LAW, THE COURTS HAVE

25   ADOPTED COMPLETE PROSECUTION BARS AND, OBVIOUSLY, THEY HAVE

1 | SINGLED OUT THE CLAIM AMENDMENTS AS A HUGE PROBLEM.

2 | NOBODY ELSE HAS HAD THE HUTZPAH, I WOULD SAY, TO

3 | SUGGEST THAT IF YOU ARE LITIGATING AND YOU'VE HAD ACCESS TO

4 | SOME OF THIS CONFIDENTIAL INFORMATION, YOU CAN GO AHEAD AND

5 | PARTICIPATE IN THE REST OF REEXAM.  AND THE REASON IS

6 | BECAUSE IT REALLY AFFECTS THE WHOLE PROCESS.

7 | THE COURT:  WELL, I ASSUME, FROM WHAT COUNSEL WAS

8 | SAYING FOR TELES, THAT TO THE EXTENT THAT THERE IS SOME TYPE

9 | OF TACTICAL ADVANTAGE THAT HAS BEEN ACQUIRED AS A RESULT OF

10 | HAVING ACCESS TO THE CONFIDENTIAL INFORMATION, THEY ARE

11 | GOING TO HAVE THAT ADVANTAGE IN THE PROCEEDINGS THAT WOULD

12 | BE BEFORE THIS COURT TO THE SAME EXTENT THAT, CONCEIVABLY, I

13 | GUESS THEY HAVE AN ADVANTAGE AS IT RELATES TO THE EXISTING

14 | CLAIMS THAT WILL BE REEXAMINED BEFORE THE PATENT OFFICE.

15 | DOES THAT MAKE ANY DIFFERENCE?

16 | MR. DOWNS:  I THINK THE DIFFERENCE IS THAT THE

17 | STATEMENTS YOU MAKE TO THE PATENT PROSECUTORS IN THE

18 | REEXAMINATION ARE, IN FACT, GOING TO BE BINDING ON YOU AND

19 | ON THIS COURT.  THEY CREATE, AS IT WERE, THE INTRINSIC

20 | EVIDENCE AS TO WHAT THE PATENT MEANS AND HOW IT SHOULD BE

21 | PURSUED.

22 | AND THAT'S ONE OF THE REASONS WHY WE WANT THE

23 | STAY, BECAUSE THE RECORD OF WHAT THE PATENT REALLY IS WILL

24 | INFLUENCE THIS COURT'S PROCEEDINGS, WHEREAS ARGUMENTS MADE

25 | BY HOWREY, OR SOME OTHER LAW FIRM IN THE LITIGATION,

1   WOULDN'T NECESSARILY HAVE THAT SAME EFFECT.

2          SO IT IS IMPORTANT, AND THERE IS A DISTINCTION

3   BETWEEN WHAT HAPPENS IN THE PATENT OFFICE AND WHAT HAPPENS

4   IN THE LITIGATION.

5          NOW, I THINK THE OTHER THING THAT YOUR HONOR

6   SHOULD KEEP IN MIND IS THAT WHAT THEY REALLY WANT TO DO IS

7   THEY WANT TO NOT STAY OUR LITIGATION, AND THEY WANT TO

8   PROSECUTE THE PATENT AGAINST US.  SO THEY WOULD BE ABLE TO

9   CONTINUALLY KIND OF GO BACK INTO OUR CONFIDENTIAL

10  INFORMATION ON A DAILY BASIS, AS IT WERE, WHILE THEY ARE

11  ALSO PARTICIPATING IN THIS REEXAM.

12         AND TO ME I MEAN IT IS JUST KIND OF INCREDIBLE

13  THAT THAT COULD EVEN OCCUR.  THERE IS NOT A SINGLE CASE

14  SUGGESTING ANYWHERE THAT THIS COULD HAPPEN.  IN FACT, THEY

15  UNIFORMLY SAY YOU REALLY SHOULDN'T DO THAT BECAUSE THE

16  ATTORNEYS WHO HAVE ACCESS TO THIS CONFIDENTIAL INFORMATION

17  CANNOT BE EXPECTED TO SEPARATE IT OUT IN THEIR MINDS FROM

18  WHAT THEY CAN DO AND WHAT THEY CAN'T DO.  IT INFECTS THE

19  ENTIRE PROCESS.  AND THAT IS A COMPLETE BAR.

20         SO IF THIS WERE SOMETHING THAT WE WERE LITIGATING

21  AND WE WERE ADDRESSING THIS ISSUE AT THE BEGINNING OF THE

22  PROTECTIVE ORDER, THERE REALLY ISN'T EVEN A DEBATE THEN THAT

23  LITIGATING COUNSEL, WHO HAS ACCESS TO THE CONFIDENTIAL

24  INFORMATION, CAN GO AHEAD AND PARTICIPATE IN THE

25  REEXAMINATION.  BUT IT IS EVEN MADE WORSE WHERE THE

1   SITUATION IS THEY AGREED TO IT.  WE'VE RELIED ON IT.  THEY

2   ARE OUT THERE.  YOU KNOW, THEY STUDIED OUR MATERIALS.  I

3   MEAN, IT'S REALLY COMPLETELY UNFAIR.

4            I DON'T KNOW HOW TO SAY THIS STRONGLY ENOUGH TO

5   SAY THAT WE REALLY THINK IT WOULD BE HIGHLY INAPPROPRIATE

6   FOR THEM TO DO THIS, YOUR HONOR.  IT WOULD BE EXTREMELY

7   PREJUDICIAL TO CISCO.

8            THIS SO-CALLED BURDEN THAT THEY HAVE IS MERELY

9   THAT THEY WILL HAVE TO RELY ON THE PROSECUTING ATTORNEY,

10  MR. DELUCA.  IT WAS ALREADY IN PLACE, AND HE'S BEEN DOING

11  THIS AND PROSECUTING THE PATENTS AND KNOWS THE PRIOR ART

12  SINCE, THEY SAY, AT LEAST 2006.

13           IF YOU LOOK AT WHAT THEY JUST FILED WITH THE

14  PATENT OFFICE, WHICH IS THIS EXTENSION FOR TIME, MR. LONG

15  TODAY TALKS AS IF IT INDICATES THAT THEY NEED HELP FROM

16  HOWREY.  IN FACT, IT SAYS ABSOLUTELY NOTHING OF THE SORT.

17  IT SAYS THAT MR. DELUCA HAS STUDIED THIS.  HE IS MAKING

18  PROGRESS.  HE JUST NEEDS ADDITIONAL TIME BECAUSE

19  DR. SCHINDLER'S TIME IS LIMITED.  HE HAS BEEN BUSY.  AND

20  THEY HAVE DIFFICULTY COMMUNICATING WITH A FOREIGN CLIENT.

21           HE DOESN'T SAY, "I NEED HELP," OR "I NEED

22  RESOURCES," OR "I AM WAITING TO GET HOWREY TO JUMP IN SO I

23  CAN DO THIS."  IN FACT, THEY ARE FULLY CAPABLE OF DOING IT

24  ON THEIR OWN.

25           AND THERE IS NO REAL PREJUDICE HERE TO TELES.

1 | THEY HAVE THE PROSECUTING ATTORNEYS TO DO IT.  IN CONTRAST,

2 | THE RISK TO CISCO IS OF THE KIND THAT'S BEEN UNIVERSALLY

3 | RECOGNIZED BY THE COURT AS VERY, VERY REAL, GIVEN THE AMOUNT

4 | AT STAKE HERE.

5 | THEY HAVE ACCUSED OVER TWO HUNDRED PRODUCTS,

6 | BILLIONS OF DOLLARS.  IF THEIR PROSECUTING ATTORNEYS ARE

7 | ABLE TO USE OUR CONFIDENTIAL INFORMATION AS A ROAD MAP TO

8 | DETERMINE THE OUTCOME OF THE REEXAMINATION, WE THINK THAT IS

9 | HIGHLY UNFAIR AND IMPROPER.

10 | THE COURT:  ANY BRIEF REPLY?

11 | MR. LONG:  YES.  THANK YOU, YOUR HONOR.

12 | THE COURT:  COUNSEL SEEMS TO DISAGREE WITH YOUR

13 | SUGGESTION THAT WE CAN CATEGORICALLY BE ASSURED THAT IF

14 | THERE ARE NO AMENDMENTS, THAT SOMEHOW YOU ARE NOT UNFAIRLY

15 | THE BENEFICIARY OF HAVING RECEIVED THIS CONFIDENTIAL

16 | INFORMATION AS IT RELATES TO THE REEXAMINATION PROCEEDINGS,

17 | ESPECIALLY IN LIGHT OF THE FACT THAT DECISIONS THAT WILL BE

18 | MADE BY THE PATENT OFFICE WOULD THEN BE BINDING.

19 | MR. LONG: THANK YOU, YOUR HONOR.

20 | IN LISTENING TO ALL THAT CISCO'S COUNSEL SAID, THE

21 | HARM THAT I SAW COME OUT OF THAT WAS THEIR CLAIM THAT WE CAN

22 | MAKE ARGUMENTS ABOUT WHAT THE CLAIMS MEAN THAT THEY SAY

23 | WOULD BE BINDING ON THIS COURT.

24 | TWO RESPONSES TO THAT.  FIRST OF ALL, IN THIS

25 | LITIGATION WE WILL BE MAKING ARGUMENTS TO YOUR HONOR AS TO

1   WHAT THE CLAIMS MEAN -- WHY THE CLAIMS DON'T READ ON THE

2   PRIOR ART.  AND WE WOULD CERTAINLY BE BOUND BY THAT IF YOU

3   ADOPTED THAT CONSTRUCTION.

4           SO, AGAIN, WHAT HAPPENING IN THE PATENT OFFICE IS

5   EXACTLY WHAT'S HAPPENING HERE.  WE WILL BE ADVISING THE

6   CLIENT IN THIS CASE ON THE VALIDITY OF THE PATENTS AND

7   MAKING ARGUMENTS TO THIS COURT.

8           THE COURT:  WOULD THE ARGUMENTS THAT YOU WILL MAKE

9   TO THE PATENT OFFICE BE IN SOME WAY, AT LEAST CONCEIVABLY,

10  ASSISTED BY THE CONFIDENTIAL INFORMATION YOU HAVE RECEIVED

11  FROM CISCO AS A RESULT OF THE AGREEMENT REGARDING THIS

12  PROTECTIVE ORDER?

13          MR. LONG:  IT WON'T BE ANY DIFFERENT THAN WHAT'S

14  HAPPENING HERE, YOUR HONOR.  IT WON'T BE ANY DIFFERENT.  IT

15  WILL BE THE SAME THING WE ARE DOING HERE.  WE ARE SAYING THE

16  FOCSANEANU REFERENCE DOESN'T ANTICIPATE CLAIM X FOR THE

17  FOLLOWING REASONS.  THAT'S WHAT WE WILL BE DOING IN THIS

18  COURT.  THAT IS THE EXACT THING WE WANT TO DO IN THE PATENT

19  OFFICE.

20          THE COURT:  WHAT ABOUT HIS POSITION THAT IF YOU

21  ARE ABLE TO MAKE ARGUMENTS BEFORE THE PATENT OFFICE, AND

22  THOSE ARGUMENTS ARE ASSISTED BY THE FACT THAT YOU HAVE

23  OBTAINED THIS CONFIDENTIAL INFORMATION, AND THEN DECISIONS

24  THAT WILL BE MADE BY THE PATENT OFFICE WOULD THEN BE BINDING

25  ON THIS COURT, WHY ISN'T THAT AN UNFAIR ADVANTAGE THAT YOU

1    ACQUIRED AS A RESULT OF HAVING THEIR CONFIDENTIAL

2    INFORMATION?

3            MR. LONG: I THINK THERE ARE TWO REASONS.  FIRST OF

4    ALL, IT WOULD BE EXACTLY WHAT WE WOULD BE DOING HERE.

5    SECONDLY -- AND, IN FACT, WE CITED IT IN THE STAY MOTIONS

6    BRIEFS -- THE FEDERAL CIRCUIT HAS SAID THAT ACTUALLY THE

7    PATENT OFFICE ISN'T BOUND BY WHAT THE DISTRICT COURT DECIDES

8    ON CLAIM CONSTRUCTION, AND THE DISTRICT COURT IS NOT BOUND

9    BY WHAT THE PATENT OFFICE DECIDES.

10           THE COURT:  YOU DISAGREE WITH HIS POSITION ON THE

11   BINDING EFFECT OF A DECISION THAT WOULD BE MADE BY THE

12   PATENT OFFICE IN THE REEXAMINATION PROCEEDING?

13           MR. LONG: ABSOLUTELY.  ABSOLUTELY.  I DON'T HAVE

14   THE CITE WITH ME.  IT'S IN OUR STAY BRIEF, BUT AS WE ARGUED,

15   CLAIM CONSTRUCTION IN THE PATENT OFFICE IS DONE ON A

16   COMPLETELY DIFFERENT STANDARD.  THERE WAS A DECISION WITHIN

17   THE PAST YEAR -- MAYBE MR. DOWNS REMEMBERS IT -- BECAUSE THE

18   PATENT OFFICE WILL GIVE CLAIMS THEIR BROADEST REASONABLE

19   SCOPE, AND THEY USE OTHER RULES FOR INTERPRETING THE CLAIMS.

20   THEY MAY HAVE DIFFERENT EVIDENCE THAT THEY CONSIDER, ET

21   CETERA.

22           SO THIS COURT IS NOT NECESSARILY BOUND BY WHAT THE

23   PATENT OFFICE SAYS.  THE PATENT OFFICE IS NOT BOUND BY WHAT

24   THIS COURT SAYS ON CLAIM CONSTRUCTION.

25           AGAIN, THAT WAS PART OF OUR BRIEFING ON THE STAY

1   MOTION. WHAT THE PATENT OFFICE DOES ISN'T GOING TO ASSIST

2   CLAIM CONSTRUCTION REALLY, BECAUSE AS THE FEDERAL CIRCUIT

3   HAS SAID -- AND I WISH THAT DECISION CAME TO MIND NOW, BUT

4   IT'S IN OUR STAY BRIEFING -- CLAIM CONSTRUCTION IN THE

5   PATENT OFFICE AND CLAIM CONSTRUCTION IN THE DISTRICT COURT

6   ARE DIFFERENT THINGS.

7           THE COURT: BUT IT IS GOING TO, I ASSUME, BECAUSE

8   OF THE EXPERTISE OF THE PATENT OFFICE -- I WOULD ASSUME,

9   EVEN IF YOU ARE RIGHT THAT THE LAW SAYS IT IS NOT BINDING,

10   IT STILL SEEMS TO ME IT WOULD HAVE SIGNIFICANT INFLUENCE OR

11   ANY COURT, CONSIDERING, AS I SAY, THE EXPERTISE THAT IS

12   BROUGHT TO BEAR BY THE PATENT OFFICE.

13           MR. LONG: IT MAY OR MAY NOT. IN FACT, A LOT OF

14   THE CASES THAT LOOK AT WHAT'S SAID IN REEXAMINATION, THE

15   CASE LAW TALKS ABOUT THERE HAS TO BE A CLEAR DISCLAIMER --

16   AN UNAMBIGUOUS DISCLAIMER OF WHAT YOUR CLAIM MEANS IN

17   PROSECUTION BEFORE THAT COULD AFFECT LIMITING THE LITERAL

18   LANGUAGE OF YOUR CLAIMS. AND THAT DOESN'T HAPPEN VERY

19   OFTEN, AN UNAMBIGUOUS DISCLAIMER IN THE FILE HISTORY.

20           SO IT DOESN'T HAPPEN ALL THE TIME THAT WHAT'S SAID

21   IN PROSECUTION ENDS UP AFFECTING THE LITERAL SCOPE OF WHAT A

22   CLAIM MEANS.

23           THE COURT: LET ME JUST UNDERSTAND. ARE YOU

24   AGREEING THAT IT IS NOT INCONCEIVABLE THAT YOU HAVE ACQUIRED

25   SOME BENEFIT THAT OTHERWISE YOU WOULDN'T HAVE HAD AS A

1   RESULT OF RECEIVING CISCO'S CONFIDENTIAL INFORMATION, BUT

2   YOUR POSITION IS THAT, REGARDLESS OF THAT, THAT REALLY

3   DOESN'T MAKE A DIFFERENCE?

4           MR. LONG:  I THINK THAT IS CORRECT, YOUR HONOR,

5   BECAUSE ALL WE ARE SEEKING TO DO THERE IS WHAT WE'RE GOING

6   TO BE DOING HERE ANYHOW.  WE WILL BE ASSISTING TELES AND

7   DISTINGUISHING THE PRIOR ART IN THIS CASE.

8           IN FACT, WE HAVE BEEN, AND WE ARE ASKING JUST TO

9   DO THAT SAME THING IN THE PATENT OFFICE AND NOT LET THIS

10  SMALL COMPANY LOSE ITS INVESTMENT IN ITS SELECTIVE

11  LITIGATION COUNSEL.

12          WE ARE NOT ASKING TO AMEND CLAIMS.  WE'RE NOT

13  ASKING TO PARTICIPATE IN ANY OTHER PROSECUTION.  WHEN YOU

14  LOOK AT THE CASES CISCO CITES, THEY DEAL WITH ATTORNEYS THAT

15  REGULARLY PROSECUTE PATENTS ON BEHALF OF OTHER PEOPLE.

16          THE CASES I MENTIONED TODAY WERE CASES WHERE THE

17  COURT SAID, "WE'RE NOT GOING TO KEEP LITIGATION COUNSEL FROM

18  DOING THAT.  YOU CAN'T HAVE A PER SE BAR."

19          BOTTOM LINE, WE ARE NOT ASKING TO DO THE TYPES OF

20  THINGS THAT THE PROSECUTION BAR IS DIRECTED TO.  WE ARE JUST

21  IN A POSITION WHERE CISCO FILED A DECLARATORY JUDGMENT

22  SAYING IT NEEDED A PROMPT DETERMINATION FROM THIS COURT ON

23  THE VALIDITY OF THE PATENTS.  OVER A YEAR WENT BY.

24          I THINK I ONLY ENCOUNTERED ONE OF THESE REEXAM

25  CASES WE BRIEFED ON STAY THAT INVOLVED A D. J.    THAT

1    DOESN'T HAPPEN.  A LOT OF TIME PASSED.

2            THE COURT:  WHAT ABOUT COUNSEL'S POSITION THAT

3    THIS OTHER FIRM, HAVING BEEN INVOLVED IN THE CASE FOR A

4    FAIRLY EXTENDED PERIOD OF TIME, WOULDN'T HAVE MUCH

5    DIFFICULTY BRINGING THEMSELVES UP TO SPEED TO BE ABLE TO

6    PROVIDE THE SAME TYPE OF REPRESENTATION YOU WOULD PROVIDE TO

7    TELES?

8            MR. LONG: I THINK THEY ULTIMATELY COULD BE BROUGHT

9    UP TO SPEED.  THE ISSUE IS TIME AND SUBSTANCE, AND, AGAIN,

10   WE'RE DEALING WITH AN INTERNATIONAL CLIENT.  ENGLISH ISN'T

11   THEIR PRIMARY LANGUAGE AND THE EXPENSE OF FLYING TO HAVE TO

12   GET SIDE BY SIDE.  ALL OF THAT STUFF WE HAVE DONE.

13           WHEN YOU LOOK AT THE CURRENT PROSECUTION COUNSEL'S

14   INVOLVEMENT, IT HASN'T BEEN NEARLY TO THE DEGREE WE ARE IN.

15   THEY DIDN'T PROSECUTE THE ORIGINAL PATENT, THE 453 PATENT.

16   ON THE 902 PATENT, THEY ONLY CAME IN, I THINK, ABOUT

17   HALFWAY.  AND THEY HAVEN'T LOOKED AT THIS TO THE SAME DEGREE

18   THAT WE HAVE.  AND TIME IS KIND OF PRECIOUS TO TELES IN

19   TRYING TO HAVE A FULL AND FAIR OPPORTUNITY TO RESPOND TO THE

20   PATENT OFFICE.

21           THE COURT:  ANY BRIEF RESPONSE?

22           MR. DOWNS:  YOUR HONOR, YES.  I HEARD HIM ADMIT,

23   IF I HEARD CORRECTLY -- IT WAS A LITTLE HARD TO HEAR, BUT IF

24   I HEARD CORRECTLY, I HEARD HIM ADMIT THAT HAVING CISCO'S

25   CONFIDENTIAL INFORMATION, IN FACT, DOES GIVE HIM AN

1   ADVANTAGE THAT COULD BE USED IN THE REEXAM.

2          THE COURT:  HE SEEMS TO SAY THAT DOESN'T MAKE ANY

3   DIFFERENCE BECAUSE WHAT HAPPENS AT THE PATENT OFFICE AND

4   DECISIONS MADE BY THE PATENT OFFICE ARE NOT GOING TO BE

5   BINDING ON THIS COURT.

6          MR. DOWNS:  YOUR HONOR, WHEN YOU DO CLAIMS

7   CONSTRUCTION -- AGAIN, I DON'T KNOW HOW FAMILIAR YOU ARE

8   WITH THE PROCESS, BUT WHEN YOU DO CLAIMS CONSTRUCTION, THE

9   STATEMENTS THAT ARE MADE TO THE PATENT OFFICE BECOME PART OF

10   THE INTRINSIC RECORD ABOUT HOW THE PATENT SHOULD BE

11   CONSTRUED IN A DISTRICT COURT LITIGATION.

12          THE COURT:  IS THAT CONTROLLING ON THE COURT OR

13   IT'S JUST PERSUASIVE?

14          MR. DOWNS:  NO.  IT IS THE EVIDENCE ON WHICH YOU

15   MAKE YOUR DECISION FOR A CLAIM CONSTRUCTION.  AND THE

16   STATEMENTS THAT THE PATENT OWNER MAKES ABOUT WHETHER IT'S

17   DISCLAIMING A CERTAIN SCOPE OR WHETHER ITS CLAIM MEANS

18   CERTAIN THINGS IN THE PATENT OFFICE ARE THE EVIDENCE ON

19   WHICH YOU RULE.

20          IT IS LIKE THE BEDROCK, IN A WAY.

21          THE COURT:  RIGHT.

22          MR. DOWNS:  IF YOU ULTIMATELY MAKE THE DECISION,

23   YOU MAY NOT AGREE WITH THE PATENT OFFICE, BUT I THINK YOU

24   WILL BE HIGHLY INFLUENCED BY THE PATENT OFFICE.  BUT THE

25   DECISIONS THAT THEY MAKE IN THE REEXAM ABOUT HOW TO ARGUE

1    AND WHAT TO ARGUE AS TO HOW DISTINGUISH THIS PRIOR ART, IN

2    ADDITION TO WHATEVER THEY SAY ABOUT AMENDING THE CLAIM --

3    BY THE WAY, THEY HAVE NOT REPRESENTED THAT THEY WILL NOT

4    AMEND THE CLAIM.  THEY HAVE ALSO NOT REPRESENTED THAT HOWREY

5    WON'T READ THE AMENDMENTS OR SEE THE DRAFTS OF THE

6    AMENDMENTS.

7            THE COURT:  I COULD DEAL WITH THAT, OBVIOUSLY, BY

8    ISSUING AN ORDER.

9            MR. DOWNS:  THEY ARE GOING TO BE MAKING THOSE

10   STATEMENTS OR THOSE ARGUMENTS TO THE PATENT OFFICE, AND

11   THOSE ARE SPECIAL.  THEY ARE INTRINSIC EVIDENCE THAT THIS

12   COURT HAS TO TAKE INTO ACCOUNT.  AND THAT'S WHAT MAKES THEM

13   DIFFERENT THAN ARGUMENTS IN LITIGATION.

14           AND I THINK THAT THE REASON THAT THE COURTS HAVE

15   ADOPTED THIS AND ENFORCED THE COMPLETE PROSECUTION BARS IS

16   BECAUSE IF HOWREY IS SITTING DOWN WITH OTHER COUNSEL, WHO

17   ARE ALSO AMENDING THE CLAIMS, THERE IS NO WAY TO AVOID THE

18   INFECTION OF THE CONFIDENTIAL INFORMATION.  THERE IS NO WAY

19   TO AVOID THAT ADVANTAGE THAT HOWREY HAS GAINED SOMEHOW BEING

20   COMMUNICATED.  AND IT IS TOO MUCH TO ASK THE LAWYERS TO TRY

21   TO DRAW THOSE LINES.

22           THE COURT:  I MEAN, THAT COULD BE DEALT WITH.  I

23   AM NOT SO WORRIED ABOUT THAT BECAUSE I COULD ISSUE AN ORDER

24   LETTING IT BE KNOWN THAT IF THERE WERE SUCH DISCUSSIONS, AND

25   I BECAME AWARE OF THAT, SOMEBODY WOULD SUFFER SIGNIFICANTLY

1   AS A RESULT OF THAT.

2          SO I THINK A FIRE WALL COULD BE PUT UP.  SO I'M

3   NOT REALLY CONCERNED ABOUT THAT.  AND I THINK COUNSEL ARE

4   PROFESSIONAL ENOUGH THAT THEY WOULDN'T PUT THEIR CAREERS ON

5   THE LINE.

6          MR. DOWNS:  I AM NOT TALKING ABOUT AN EXPLICIT

7   ISSUE, YOUR HONOR.  IT IS MORE THE CHOICE OF THE ARGUMENT.

8   THEY ARE BINDING IN THE SENSE THAT THEY BECOME THE INTRINSIC

9   EVIDENCE FROM WHICH BOTH THE PATENT OFFICE MAKES ITS

10  DECISION AND THIS COURT MAKES ITS DECISION.

11          AND WHAT I HEAR, TOO, IS THAT MR. DELUCA, WHO HAS,

12  IN FACT, BEEN PROSECUTING THE 902 PATENT FOR YEARS -- FOR A

13  A COUPLE YEARS AT LEAST -- KNOWS ALL THE ART AND HAS ALREADY

14  DRAFTED AND IS IN THE MIDDLE OF DRAFTING A RESPONSE, WHICH

15  IS DUE IN TWO WEEKS.  THEY JUST GOT AN EXTENSION, BUT IT'S

16  DUE IN TWO WEEKS.  THEY'RE WAY DOWN THE ROAD.  THEY HAVE

17  ALREADY GOTTEN THEMSELVES UP TO SPEED.  HE'S WORKING WITH

18  DR. SCHINDLER.

19          AND, FRANKLY, THIS IS A GOOD-CAUSE HEARING, RIGHT?

20  HE HAS TO SHOW GOOD CAUSE FOR MODIFICATION OF AN ORDER THAT

21  THEY AGREED TO AND THAT WE RELIED ON.  AND WHAT IS THEIR

22  GOOD CAUSE?  THERE IS NONE, OTHER THAN A DESIRE TO

23  PARTICIPATE IN A REEXAMINATION WHERE THEY ADMIT THEY

24  POTENTIALLY HAVE AN ADVANTAGE.

25          WHY SHOULD WE RUN THE RISK AT ALL OF ANY VIOLATION

1  OR ANY PROBLEM WHEN THEY AGREED TO THIS LANGUAGE?  THEY HAVE

2  PEOPLE IN PLACE WHO CAN DO THE JOB, WHO ARE NOT INFECTED BY

3  OUR CONFIDENTIAL INFORMATION.  AND THE RISK TO CISCO IS REAL

4  AND SUBSTANTIAL.

5        THE COURT:  VERY WELL.

6        MS. SHIFERMAN: YOUR HONOR --

7        THE COURT:  YES.

8        MS. SHIFERMAN:  -- IF I COULD JUST MAKE ONE BRIEF

9  POINT TO ANSWER A QUESTION THAT YOU ASKED EARLIER.  YOU

10 ASKED MR. LONG IF THERE WAS CASE LAW ON THIS ISSUE, AND HE

11 POINTED YOU TO THE MEDIMUNE CASE REPEATEDLY.

12        I JUST WANT TO MAKE SURE YOU UNDERSTAND THAT THAT

13 CASE IS VERY DIFFERENT IN AN IMPORTANT WAY FROM THIS CASE.

14        IN THAT CASE, THE PATENTS THAT WERE AT ISSUE WERE

15 NOT THE ONES THAT WERE BEING LITIGATED IN THAT CASE.  THEY

16 WERE GENERAL PROSECUTION IN THE RELATED AREA OF THE BIOTECH

17 FIELD, NOT THE PATENTS THAT WERE ACTUALLY AT ISSUE IN THE

18 LITIGATION AND THE REEXAM.

19        AND THE JUDGE IN THAT CASE ACTUALLY STATED IN A

20 FOOTNOTE THAT THAT WAS A SIGNIFICANT FACTOR AND POINTED TO

21 OTHER CASES WHERE THE COURT HAD MADE THE OPPOSITE DECISION

22 WHEN IT WAS THE VERY PATENTS THAT WERE PART OF THE REEXAM

23 AND THE LITIGATION THAT WERE AT ISSUE.  SO THERE IS NO CASE

24 LAW THAT WE ARE AWARE OF THAT GOES THE OTHER WAY.

25        THE COURT:  VERY WELL.  I AM PREPARED TO RULE.

1        I AM NOT UNAPPRECIATIVE OF THE AMOUNT OF MONEY

2   THAT HAS TO BE EXPENDED BY A PARTY WHEN THIS TYPE OF PATENT

3   LITIGATION IS INVOLVED.  HOWEVER, I THINK FAIR IS FAIR, AND

4   THERE WAS A NEGOTIATED PROTECTIVE ORDER THAT WAS ISSUED.

5   THAT PROTECTIVE ORDER DOES INCLUDE THIS PROSECUTION-BAR

6   PROVISION THAT SPECIFICALLY WOULD BAR HOWREY FROM

7   REPRESENTING TELES AT A REEXAMINATION PROCEEDING.

8        ADMITTEDLY, IT WASN'T ANTICIPATED AT THE TIME THE

9   PROTECTIVE ORDER WAS ISSUED THAT THERE WOULD BE A

10  REEXAMINATION PROCEEDING, BUT THAT NOW IS THE REALITY.  AND

11  IT SEEMS TO ME, BASED UPON WHAT I HAVE HEARD, I HAVEN'T BEEN

12  CONVINCED THAT TELES' COUNSEL WOULD NOT IN SOME WAY BE

13  BENEFITED IN THE ARGUMENTS THAT WOULD BE MADE TO THE PATENT

14  OFFICE AS A RESULT OF HAVING ACQUIRED TELES' CONFIDENTIAL

15  INFORMATION.

16       THE ABILITY TO MAKE ARGUMENTS THAT MIGHT, IN FACT,

17  BE IMPACTED BY HAVING ACCESS TO THAT INFORMATION COULD, IT

18  SEEMS TO ME, HAVE AN IMPACT ON THE DECISIONS THAT ARE MADE

19  BY THE PATENT OFFICE.  AND WHILE EVEN THOUGH THOSE DECISIONS

20  MAY NOT BE BINDING, AS COUNSEL ACCURATELY REPRESENTS, THE

21  STATEMENTS MADE OR DETERMINATIONS MADE ARE NOT GOING TO BE

22  INSIGNIFICANT AND, TO SOME DEGREE, WILL BE A SIGNIFICANT

23  INFLUENCE ON WHAT THE EVIDENCE IS BEFORE ME THAT I WILL HAVE

24  TO ASSESS IN DECIDING THE CASE AS IT EXISTS BEFORE THIS

25  COURT.

1        SO UNDER THE CIRCUMSTANCES, I JUST DON'T SEE HOW I

2    SHOULD CONCLUDE, WHERE THE EVIDENCE WE ARE TALKING ABOUT,

3    THE CONFIDENTIAL INFORMATION, WAS PROVIDED PURSUANT TO THIS

4    NEGOTIATED PROTECTIVE ORDER, AND NOT BEING ABLE TO CONCLUDE

5    THAT THERE IS NO BENEFIT THAT WOULD INURE FROM HAVING ACCESS

6    TO THAT THAT COULD BE USED IN THE PATENT OFFICE

7    REEXAMINATION PROCEEDINGS, AND THAT THOSE DETERMINATIONS, OR

8    THE ARGUMENTS, OR THE EVIDENCE THAT'S ADDUCED OR DEVELOPED

9    AT THAT PROCEEDING WOULDN'T HAVE ANY IMPACT ON WHAT WOULD

10   TAKE PLACE IN THIS COURT -- IT JUST SEEMS TO ME I CANNOT,

11   ALTHOUGH I AGREE WITH COUNSEL THAT THESE TYPES OF AGREEMENTS

12   SHOULD NOT BE UNMODIFIABLE, THAT UNDER THIS CIRCUMSTANCE, I

13   THINK, EXERCISING MY DISCRETION, IT WOULD BE INAPPROPRIATE

14   TO PERMIT A MODIFICATION IN THIS CASE AND, THEREFORE, I

15   WOULD HAVE TO DENY THE REQUEST FOR THE MODIFICATION.

16       AND I AM INFLUENCED BY THE FACT THAT THE OTHER

17   FIRM INVOLVED IN THIS CASE HAS BEEN INVOLVED FOR SOME PERIOD

18   OF TIME.  THE ART BETWEEN THE TWO PATENTS IS VERY SIMILAR,

19   IF NOT IDENTICAL.  AND, THEREFORE, IT SEEMS TO ME, UNDER

20   THOSE CIRCUMSTANCES, IT IS NOT GOING TO TAKE THAT OTHER FIRM

21   A SIGNIFICANT EFFORT -- ALTHOUGH IT WILL BE SOME -- TO BRING

22   THEMSELVES UP TO SPEED WHERE THEY WOULD BE ABLE TO PROVIDE

23   THE SAME QUALITY OF REPRESENTATION BEFORE THE PATENT OFFICE,

24   WITHOUT HAVING THE BENEFIT OF THIS CONFIDENTIAL INFORMATION.

25       SO I WOULD HAVE TO DENY THE MOTION TO MODIFY.

1            THANK YOU.

2            MR. LONG: THANK YOU, YOUR HONOR.

3            MR. DOWNS:  THANK YOU, YOUR HONOR.

4            (WHEREUPON, THE ABOVE-ENTITLED MATTER WAS

5    ADJOURNED.)

6                    CERTIFICATE OF REPORTER

7       THIS RECORD IS CERTIFIED BY THE UNDERSIGNED REPORTER TO

8    BE THE OFFICIAL TRANSCRIPT OF THE PROCEEDINGS INDICATED.

9

10                              PHYLLIS MERANA

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA
2

3  CISCO SYSTEMS, INC.              :
            PLAINTIFF,              :
4                                   :
     VS.                            :       C. A. NO. 05-2048
5                                   :
                                    :
6  TELES AG                         :
   INFORMATIONSTECHNOLOGIEN,        :
7          DEFENDANT,               :
                                    :

8
                        WASHINGTON, D. C.
9                       MARCH 14, 2008

10             TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE REGGIE B. WALTON
11

12  FOR THE PLAINTIFF:        J. ANTHONY DOWNS, ESQ.
                              MARVA DESKINS, ESQ.
13                            LANA SHIFERMAN, ESQ.

14  FOR THE DEFENDANT:        DAVID LONG, ESQ.
                              MARK WHITAKER, ESQ.
15                            MONICA LATEEF, ESQ.
                              JOERN GENDNER, ESQ.
16

    COURT REPORTER:           PHYLLIS MERANA
17                            6816 U. S. COURTHOUSE
                              3RD & CONSTITUTION AVE, N.W.
18                            WASHINGTON, D. C.  20001

19

20

21

22

23

24

25

1                    P-R-O-C-E-E-D-I-N-G-S

2          THE DEPUTY CLERK:  CIVIL ACTION 05-2048, CISCO

3   SYSTEMS, INC. VERSUS TELES AG INFORMATIONSTECHNOLOGIEN.

4          COUNSEL, CAN YOU PLEASE COME FORWARD AND IDENTIFY

5   YOURSELVES FOR THE RECORD.

6          MR. DOWNS:  GOOD AFTERNOON, YOUR HONOR.  TONY

7   DOWNS FOR CISCO SYSTEMS.  WITH ME IS LANA SHIFERMAN AND

8   MARVA DESKINS.

9          MR. LONG:  GOOD AFTERNOON, YOUR HONOR.  DAVID LONG

10  WITH HOWREY.  I'M HERE ON BEHALF OF TELES AG.  HERE WITH ME

11  TODAY ARE MARK WHITAKER AND MONICA LATEEF.  WE ALSO HAVE

12  IN-HOUSE COUNSEL, JOERN GENDNER, AND PROFESSOR SIGRAM

13  SCHINDLER, WHO IS THE C.E.O.

14         THE COURT:  I'VE THOUGHT LONG AND HARD ABOUT THIS

15  SITUATION, AND I HAVE LOOKED AT THE AUTHORITY THAT AT LEAST

16  TOUCHES ON THE ISSUE.  ADMITTEDLY, THERE IS NOTHING THAT

17  PROVIDES DIRECT ASSISTANCE TO ME IN DECIDING WHAT THE

18  APPROPRIATE THING TO DO IS.

19         I THINK THAT ALL BUT ONE FACTOR, IN MY MIND,

20  CLEARLY FAVOR STAYING THESE PROCEEDINGS TO GIVE THE P.T.O.

21  THE OPPORTUNITY, IN THE FIRST INSTANCE, TO CONDUCT A

22  REEXAMINATION BECAUSE I THINK IT WOULD HAVE A SIGNIFICANT

23  IMPACT, CONCEIVABLY, ON HOW THIS LITIGATION PROCEEDS AND,

24  SIGNIFICANTLY, I THINK, WOULD HAVE AN IMPACT ON WHAT THE

25  EXTENT OF THE DISCOVERY WOULD HAVE TO BE AND PROBABLY HAVE

1   SOME IMPACT ON WHAT THE CLAIMS CONSTRUCTION SHOULD BE AND,

2   ALSO, WOULD HAVE SOME IMPACT ON HOW WE ULTIMATELY PROCEED AS

3   FAR AS TRIAL OR SOME OTHER PROCESS IS CONCERNED.

4           AND THE ONLY ISSUE THAT HAS GIVEN ME SOME PAUSE IS

5   THE ISSUE RAISED BY TELES AS TO THE QUESTION OF DAMAGES.

6   AND I GUESS WHERE I AM NOW IS I NEED SOME ASSISTANCE FROM

7   COUNSEL AS TO YOUR VIEW OF THIS AS TO WHY, ASSUMING TELES

8   DOES PREVAIL ULTIMATELY, AND IT IS DETERMINED THAT THE

9   PATENT IS VALID AND THAT IT WAS, IN FACT, INFRINGED BY CISCO

10  SYSTEMS -- WHETHER, IF THAT IS THE POSTURE ULTIMATELY WE

11  FIND OURSELVES IN, TELES IS GOING TO BE IN A POSITION WHERE

12  IT CAN ADEQUATELY RECOUP ANY DAMAGES IT SUSTAINED AS A

13  RESULT OF THE INFRINGEMENT.

14          AND I GUESS I WILL HEAR FROM COUNSEL ON THAT

15  QUESTION.

16          MR. DOWNS:  YOUR HONOR, THIS IS KIND OF A CLASSIC

17  CASE WHERE TELES FOR YEARS HAS BEEN PRESENT IN GERMANY AND

18  DIDN'T SELL IN THE UNITED STATES.  AND I THINK IF YOU LOOK

19  AT THE RECORD BEFORE YOU, WHAT THEY ARE TRYING TO ARGUE IS

20  THAT THEY HAVE JUST RECENTLY KIND OF GOT A LITTLE TOE-HOLD

21  IN THE UNITED STATES AND MAYBE HAVE A DISTRIBUTOR THEY HAVE

22  SET UP, BUT THERE IS NO EVIDENCE OF ANY ACTUAL SALES YET, AS

23  FAR AS I CAN SEE FROM THE RECORD, BY TELES IN THE UNITED

24  STATES.

25          SO ALTHOUGH THEY SELL PRODUCT IN GERMANY AND THEY

1    MAY START TO SELL IN THE UNITED STATES, THE CLASSIC REMEDY

2    IN THIS SITUATION -- ESPECIALLY SINCE THEY NEVER, FROM THE

3    GET-GO, EVER TRIED TO GET AN INJUNCTION OR SEEK TO EXCLUDE

4    CISCO FROM THE MARKET PLACE, THE CLASSIC REMEDY IS TO

5    RECOVER EITHER THE REASONABLE ROYALTY THAT THEY SHOULD

6    OBTAIN FROM CISCO, BASED ON INFRINGING SALES, OR LOST

7    PROFITS.

8         AND BOTH OF THOSE KINDS OF REMEDIES HAVE BEEN HELD

9    TO BE SUFFICIENT REMEDIES TO PROTECT SOMEONE IN TELES'

10   POSITION, WHERE THERE IS A STAY PENDING REEXAM, THE PATENT

11   COMES OUT AFTERWARDS, AND THEY COULD PROCEED WITH A CASE IN

12   DISTRICT COURT, AND THEY WIN.

13        AND I THINK THE CASES, INCLUDING CASES THAT WE PUT

14   IN OUR LETTER RECENTLY TO YOUR HONOR, LOOK AT THE ALLEGED

15   PREJUDICE FROM THE PASSAGE OF TIME, OR MAYBE EVEN BETWEEN

16   COMPETITORS, AND SAY THAT THE DAMAGES ARE THE SUFFICIENT

17   REMEDY.

18        THE ECHOSTAR CASE IN TEXAS, WHICH WAS ALSO AN

19   INTER PARTES REEXAM CASE, IS PARTICULARLY REPRESENTATIVE OF

20   THAT.  AND SO IN THIS CASE, EVEN IF TELES DOES START TO MAKE

21   SOME SALES IN THE UNITED STATES -- AND THAT IS KIND OF AN IF

22   -- IT IS GOING TO BE A LIMITED AMOUNT.  THEY ARE MOST LIKELY

23   GOING TO BE TRYING TO RECOVER FROM CISCO, WHICH SELLS MANY,

24   MANY MORE PRODUCTS, A REASONABLE ROYALTY ON THE PRODUCTS

25   THAT IT SELLS BECAUSE THAT DAMAGES AMOUNT WILL DWARF

1  WHATEVER THEIR SO-CALLED LOST PROFITS ARE, IF YOU FOLLOW ME,

2  YOUR HONOR.

3       SO, IN THAT CASE, IT DOESN'T MATTER IF CISCO MAKES

4  SALES THAT THEY THEORETICALLY MIGHT HAVE MADE BECAUSE THEY

5  ARE RECOVERING A REASONABLE ROYALTY ON THEM.

6       AND I WOULD ALSO POINT OUT THAT ANOTHER FACTOR

7  HERE IS THIS.

8       THE COURT:  AND I ASSUME, AS A LARGE SOPHISTICATED

9  CORPORATION, THAT CISCO SYSTEMS WOULD HAVE, UPON REQUEST,

10  THAT INFORMATION AVAILABLE FOR THE COURT AND FOR TELES TO

11  EXAMINE TO ASSESS WHAT ITS DAMAGES WOULD BE.

12       MR. DOWNS:  YES, WHEN WE GET TO THE DISCOVERY.  AND

13  I DON'T EVEN KNOW.  WE MAY HAVE EVEN TURNED OVER SOME

14  FINANCIAL INFORMATION ALREADY IN THE DISCOVERY PROCESS ABOUT

15  OUR SALES.  AND CISCO IS A SUBSTANTIAL COMPANY.  WE'RE NOT

16  GOING AWAY.

17       SO THE CHANCES OF THEM SUFFERING ANY KIND OF

18  IRREPARABLE LOSS, I THINK, ARE SLIM TO NONE REALLY BECAUSE

19  THERE ARE NO ACTUAL SALES THAT I AM AWARE OF IN THE UNITED

20  STATES AT THIS TIME.

21       AND THEN, SECONDLY, I WOULD SAY THAT THE EVIDENCE

22  IS THAT THEY HAVEN'T BEEN ACTING AS IF THERE WAS A SENSE OF

23  URGENCY TO PREVENT CISCO TO GET ON THE MARKET.

24       THERE IS ANOTHER CASE, YOUR HONOR, ACTUALLY THAT

25  TELES FILED AGAINST A COMPANY CALLED QUINTUM, WHICH ALSO

1  SELLS ACCUSED EQUIPMENT.  THEY SUED IN THE DISTRICT OF

2  DELAWARE, AND THEIR ATTORNEYS ARE HERE TODAY IN THE

3  AUDIENCE.

4        THAT CASE WAS FILED IN 2006.  AND TELES HAS BEEN

5  CONTENT NOT TO PROCEED AT ALL IN THAT CASE.  BASICALLY, THEY

6  HAVE HAD SOME SETTLEMENT DISCUSSIONS.  THE CASE HAS BEEN

7  STAYED FOR TWO YEARS.  THEY HAVEN'T ACTED WITH ANY SENSE OF

8  URGENCY THERE.

9        SO THAT IS A BIT INCONSISTENT.  AND I KNOW CISCO

10  IS MUCH BIGGER THAN QUINTUM.  SO IT IS A BIT INCONSISTENT

11  WITH THE NOTION THAT WE HAVE TO PROCEED WITH THE LITIGATION

12  IN ORDER TO PROTECT OUR INTEREST.

13        AND I GUESS A THIRD POINT I WOULD MAKE IS THAT IF

14  YOU LOOK AT -- THERE ARE OVER 200 DIFFERENT CISCO PRODUCTS

15  ACCUSED HERE.  AND IF YOU LOOK AT WHAT THE ACTUAL INVENTION

16  IS, IT IS JUST LIKE ONE LITTLE FEATURE ON THE PRODUCT, SO

17  THAT TELES WOULD NEVER BE ABLE TO PRECLUDE CISCO FROM

18  OFFERING COMPETING PRODUCTS BEING OUT THERE IN THE

19  MARKETPLACE.

20        IT IS NOT LIKE EVEN IF THEY WIN, THEY ARE GOING TO

21  GET AN INJUNCTION THAT SAYS CISCO CAN'T SELL ROUTERS.  IT

22  CAN'T SEE, YOU KNOW, THE ACCUSED DEVICES.  IT IS JUST A

23  FEATURE THAT WE'D HAVE TO DEAL WITH, AND WE COULD CHANGE OUR

24  DESIGN, IF WE ARE FOUND TO INFRINGE, OR WE MAY EVEN ALREADY

25  HAVE DONE IT BY THAT TIME BECAUSE THINGS CHANGE.

1          SO THERE IS NEVER A SITUATION WHERE THEY WOULD BE

2     ABLE, BY THIS CASE, TO PRECLUDE CISCO FROM OFFERING ITS

3     SALES.

4          SO THIS NOTION THAT SOMEHOW THEY ARE IRREPARABLY

5     HARMED IS WRONG.  IF THEY ARE GOING TO MAKE SALES IN THE

6     UNITED STATES AND START MAKING THEM, THEY CAN MAKE THEM.

7     THEY CAN COMPETE.  THEY CAN COMPETE AGAINST THE QUINTUMS OF

8     THE WORLD, OR IF THEY DO COMPETE EVEN WITH CISCO, COMPETE

9     AGAINST CISCO, AND THEY CAN RECOVER ANY LOST PROFITS ON

10    SALES THAT THEY CAN PROVE THEY WOULD HAVE MADE, OR THEY CAN

11    RECOVER A REASONABLE ROYALTY ON THE MUCH LARGER UNIVERSE OF

12    ACCUSED PRODUCTS THAT CISCO HAS SOLD.

13         SO I DON'T THINK THAT THE PREJUDICE HAS BEEN

14    DEMONSTRATED ON THIS RECORD.  AND I THINK THAT IF YOU LOOK

15    AT ALL THE CASES THAT WE HAVE CITED, IT IS PRETTY MUCH

16    RECOGNIZED THAT EVEN IF THERE IS SOME DELAY, THAT IS

17    REMEDIABLE BY DAMAGES.

18         THE OTHER THING I DO WANT TO POINT OUT, AS I SAID

19    IN MY LETTER, IS THAT IF WE ARE TALKING ABOUT -- YOU KNOW,

20    IN THE NEXT COUPLE OF MONTHS, IT LOOKS LIKE, FROM THE LETTER

21    FROM THE PATENT OFFICE, WE WILL BE GETTING A SECOND OFFICE

22    ACTION ON THE 902 REEXAM.  AND AT THAT POINT IN TIME, THE

23    PATENT OFFICE WILL, WE SUBMIT, LIKELY UPHOLD ITS CURRENT

24    REJECTION OF ALL OF THE 902 CLAIMS.

25         WE'LL KNOW THAT WITHIN A FEW MONTHS.  AND IF

1    THAT'S THE CASE, I THINK THEN THE STATISTICS KIND OF ARE A

2    LITTLE BIT DIFFERENT.  THERE IS NO STATISTICAL RECORD, BUT

3    THE LIKELIHOOD THAT THAT WILL BE AFFIRMED AND THAT WILL BE

4    UPHELD AND THE PATENTS WILL BE HELD INVALID I THINK GOES UP

5    WHEN YOU GET TO THAT SECOND ROUND.

6            I THINK WE ALREADY HAVE A VERY STRONG CASE BECAUSE

7    IN BOTH OF THE PATENTS AT ISSUE, TWO DIFFERENT SETS OF

8    EXAMINERS HAVE LOOKED AT THEM.  I THINK THERE IS ONE

9    OVERLAPPING EXAMINER, BUT THE EXAMINERS -- FIVE OF THEM

10   ALTOGETHER -- HAVE LOOKED AT THEM AND FOUND THE CLAIMS ALL

11   TO BE REJECTED BASED ON THE ART.

12           SINCE WE WERE HERE LAST, TELES HAS SUBMITTED ITS

13   BRIEF ON THE 902 PATENT.  WE'VE SUBMITTED A RESPONSE THIS

14   WEEK.  IT'S GOING TO THE PATENT OFFICE, AND THAT SHOULD BE

15   DECIDED, ACCORDING TO THE SOLICITOR'S LETTER, WITHIN THE

16   NEXT COUPLE OF MONTHS.

17           SO I THINK THAT MY RECOMMENDATION -- AND IT IS

18   STILL THE SAME -- IS THAT THE STAY CONTINUE IN PLACE BECAUSE

19   THERE IS CERTAINLY NO IRREPARABLE HARM THAT IS GOING TO

20   HAPPEN WITHIN THE NEXT SIX MONTHS REALLY.  AND WE WILL KNOW,

21   I THINK, FOR SURE BY THEN FROM THE PATENT OFFICE WHAT

22   HAPPENS ON THE SECOND-ROUND REJECTION.

23           IF THEY END UP HAVING TO AMEND THEIR CLAIMS, WHICH

24   THEY HAVEN'T, OR IF SOME CLAIMS SURVIVE, THEY MIGHT HAVE A

25   DIFFERENT ARGUMENT.  IT MIGHT CHANGE THE SITUATION A LITTLE

1    BIT.

2            BUT WITH RESPECT TO YOUR PARTICULAR QUESTION, YOUR

3    HONOR, THEY HAVEN'T PROVEN THAT THEY WOULD SUFFER ANYTHING,

4    AND I THINK THE DAMAGES ARE ENOUGH.

5            MR. LONG: THANK YOU, YOUR HONOR.  DAVID LONG WITH

6    HOWREY ON BEHALF OF TELES.

7            IS THE ELMO WORKING, BECAUSE THERE IS A SLIDE I

8    HAD SUBMITTED YESTERDAY THAT I WOULD LIKE TO SHOW THAT GOES

9    DIRECTLY TO YOUR HONOR'S QUESTION ABOUT PREJUDICE?  I DON'T

10   KNOW IF YOU HAVE IT IN FRONT OF YOU.

11           WHILE WE ARE GETTING THAT WORKING, YOUR HONOR, I

12   CAN MENTION THE PREJUDICE ISSUE, FIRST OF ALL.  THE CASE LAW

13   IS CLEAR, OF COURSE, THAT IF THERE IS EVEN A FAIR

14   POSSIBILITY OF PREJUDICE, THEN CISCO HAS THE BURDEN OF

15   SHOWING CLEAR HARDSHIP AND INEQUITY BECAUSE COURTS DON'T

16   TAKE THE CHANCE THAT THERE MAY BE PREJUDICE.

17           IN FACT, IN THE AIMAX DECISION -- ALL CAPITAL --

18   A-I-M-A-X -- AT 385 F. SUPP. 2D, 1030, THE DISTRICT COURT

19   DECLINED TO STAY THE CASE PENDING REEXAMINATION BECAUSE,

20   JUST LIKE I WILL SHOW YOU HERE, THE MARKET WAS AT A CRITICAL

21   JUNCTURE.  IT WAS AT A CRITICAL POINT WHERE YOU COULD

22   ESTABLISH YOURSELF IN THE MARKET OR BE LOST TO THE WIND.

23           IF I CAN STEP AWAY FROM THE MICROPHONE AND DIRECT

24   YOUR ATTENTION TO WHAT WE HAVE ON THE SCREEN, THE SLIDE I AM

25   SHOWING YOU HERE IS FROM AN INDEPENDENT MARKET STUDY ON THE

1    VOICE OVER I. P. MARKET, PROJECTING WITH THE BEST

2    INFORMATION ANY OF US HAVE RIGHT NOW AS TO WHAT THE MARKET

3    IS GOING TO DO OVER THE NEXT TWO YEARS, TWO-AND-A-HALF

4    YEARS, FOUR YEARS OR FIVE YEARS.

5         WHAT I HAVE DONE WITH THIS STUDY IS I HAVE SHOWN

6    WHERE THE STAY PERIOD LIES THAT CISCO IS ASKING FOR.  AND IF

7    YOU LOOK AT THE LINE THAT I POINT TO AS THE U.S. MARKET --

8    AND I WILL PUT AN "X" SAYING WE ARE HERE -- THAT'S WHERE WE

9    STAND.

10        ACCORDING TO THE BEST INFORMATION WE HAVE -- AND

11   THIS IS PART OF THE RECORD BEFORE YOUR HONOR, AND IT IS IN

12   OUR BRIEFS FROM EARLIER THIS YEAR -- THE U.S. MARKET IS

13   GOING TO SKYROCKET RIGHT NOW.  IF YOU GET A CHANCE TO GET

14   YOUR FOOT IN THE DOOR AT COMPANIES, YOUR MARKET SHARE IS

15   GOING TO GROW DRAMATICALLY.  THAT IS THE PRECISE OPPORTUNITY

16   THAT A SMALL, YET INVENTIVE, COMPANY LIKE TELES NEEDS.

17        IF WE STAY THIS CASE DURING THAT PERIOD, THEY

18   WOULD HAVE LOST THAT OPPORTUNITY AND CAN NEVER GET IT BACK.

19   AND THE HARM CAUSED BY THAT CANNOT BE MEASURED BY MONEY.

20   AND WE CANNOT FULLY CONTEMPLATE THE TYPE OF IRREPARABLE JURY

21   THAT TELES WOULD HAVE DURING THIS TIME PERIOD IF THIS CASE

22   WERE STAYED.

23        TO ALSO PUT IT IN PERSPECTIVE, THIS IS A SIMILAR

24   CHART I HAVE PUT HERE.  IT'S IN THE BRIEFING THAT WE

25   SUBMITTED BACK IN THE FALL, I BELIEVE, AS WELL, EXCEPT I

1    ADDED SHADING TO SHOW WHERE THE STAY PERIOD WOULD BE.

2          WE ARE HERE.  THIS IS WORLDWIDE, BUT IT IS JUST

3    SHOWING THAT THIS DATA IS CONSISTENT, SHOWING THAT RIGHT NOW

4    IN THE NEXT YEAR, NEXT TWO YEARS, OR NEXT TWO-AND-A-HALF

5    YEARS IS THE CRITICAL TIME FOR THIS MARKET.

6          IF THIS WAS SOME OTHER CASE DEALING WITH -- I

7    DON'T KNOW -- COMMON STAPLERS AND THE MARKET IS SATURATED,

8    AND PEOPLE HAVE IT, AND WE'RE JUST TALKING ABOUT A STAPLER,

9    THAT WOULD BE ONE THING.  THAT'S NOT THE CASE HERE.  THIS IS

10   DEMONSTRABLY AN EMERGING MARKET.  CASES THAT HAVE DEALT WITH

11   THIS -- FOR EXAMPLE, THE AIMAX CASE I POINTED TO -- HAVE

12   SAID NO STAY IN THIS SITUATION.

13         IN FACT, WHEN YOU LOOK AT THE CASES THAT CISCO HAS

14   CITED -- THE CASE THEY SUBMITTED YESTERDAY, THIS I.T.C.

15   CASE --

16         THE COURT:  TO WHAT EXTENT IS TELES INVOLVED IN

17   THE U.S. MARKET AT THIS TIME?

18         MR. LONG:  THAT'S A GOOD QUESTION.  TELES, LAST

19   JUNE -- I BELIEVE IT WAS JUNE OF LAST SUMMER -- ENTERED A

20   DISTRIBUTION AGREEMENT WITH A U.S. COMPANY TO START TAKING

21   ADVANTAGE OF WHAT'S HAPPENING IN THE U.S. MARKET, BUILDING

22   ON WHAT THEY DID IN EUROPE.

23         IN FACT, I BELIEVE THIS PAST JANUARY, TELES GOT AN

24   AWARD AT A SHOW THAT THIS COMPANY GAVE IN FLORIDA FOR LIKE

25   THE MOST INNOVATIVE, OR SOMETHING LIKE THAT.  THIS COMPANY

1   IS GIVING TELES A FANTASTIC OPPORTUNITY TO TAKE ADVANTAGE OF

2   THIS.

3           I BELIEVE WE HAVE SUBMITTED IN OUR BRIEFING SOME

4   SAMPLE INVOICES OF PRODUCTS THAT WERE ORDERED HERE FOR THE

5   U.S.

6           THE COURT:  WELL, I MEAN THERE ARE SOME

7   UNFORTUNATE PRACTICALITIES OF THE JUDICIAL SYSTEM NOT

8   RECEIVING THE TYPE OF RESOURCES THAT IT NEEDS IN ORDER TO

9   ADJUDICATE CASES ANY FASTER THAN WHAT WE DO.  AND THAT IS

10  THE REALITY THAT, CONSIDERING THE STATUS OF THIS CASE AT

11  THIS TIME AND THE FACT THAT NOT MUCH HAS BEEN DONE THAT HAS

12  TO OCCUR BEFORE THIS CASE WOULD BE IN A POSTURE TO EVEN

13  ENTERTAIN DISPOSITIVE MOTIONS, LET ALONE A TRIAL, I ASSUME,

14  AT A MINIMUM, WE ARE PROBABLY TALKING ABOUT AT LEAST 18

15  MONTHS OR MORE BEFORE WE WOULD BE IN A POSITION TO GO TO

16  TRIAL.

17          NOW, OBVIOUSLY, WE CONCEIVABLY -- I DON'T KNOW,

18  BUT WE MIGHT BE IN A POSITION TO ENTERTAIN DISPOSITIVE

19  MOTIONS BEFORE THAT.  AND I SAY THAT WE WOULD BE NOT IN A

20  POSITION TO GO TO TRIAL FOR PROBABLY 18 MONTHS BECAUSE I

21  ASSUME THAT WE WOULD NOT BE IN A POSITION TO GO TO TRIAL,

22  WITH ALL THE THINGS THAT NEED TO BE DONE, WITHIN THE NEXT

23  YEAR.  AND, UNFORTUNATELY, NEXT JANUARY I START AN EXTENSIVE

24  TRIAL, A CRIMINAL CASE.

25          AND, UNFORTUNATELY, THOSE CASES HAVE TO BE GIVEN

1  PRIORITY.  AND THEN RIGHT AFTER THAT TRIAL, I START AN

2  EIGHT-CODEFENDANT, COMPLEX CRIMINAL CONSPIRACY THAT'S

3  PROBABLY GOING TO TAKE THREE TO FOUR MONTHS.

4      SO WE ARE PROBABLY TALKING ABOUT, BEFORE I AM

5  FINISHED WITH THOSE CASES -- AND GOD KNOWS WHAT ELSE IS

6  GOING TO COME ON MY CALENDAR BY WAY OF CRIMINAL CASES IN THE

7  INTERIM, IN ADDITION TO THE 190-SOMETHING CIVIL CASES I HAVE

8  THAT MANY OF THOSE WILL PROBABLY GO TO TRIAL -- IS THAT WE

9  ARE PROBABLY TALKING ABOUT NEXT SUMMER BEFORE WE PROBABLY

10  WOULD BE IN A POSITION, BECAUSE OF MY CALENDAR SITUATION, TO

11  EVEN BE IN A POSITION TO TAKE THIS CASE TO TRIAL.

12      NOW, CONCEIVABLY, AS I INDICATED, WE MIGHT BE ABLE

13  TO REACH A POINT PRIOR TO THAT WHERE DISPOSITIVE MOTIONS

14  MIGHT BECOME RIPE, BUT CONSIDERING THAT, I MEAN THE REALITY

15  IS THAT AT LEAST FOR SOME PERIOD OF TIME -- AN EXTENDED,

16  UNFORTUNATELY, PERIOD OF TIME -- THE COURT IS NOT GOING TO

17  BE IN A POSITION TO REALLY ADDRESS THIS MATTER DURING THIS

18  PERIOD THAT WE ARE TALKING ABOUT.

19      MR. LONG: THANK YOU, YOUR HONOR.  AND I APPRECIATE

20  YOUR CANDOR WITH THAT.  SO WHEN YOU LOOK AT THE OPTIONS THAT

21  WE FACE, FIRST OF ALL, 18 MONTHS IS PLAINLY FAR SHORTER THAN

22  WHAT WE WILL GET OUT OF THE PATENT OFFICE.

23      MR. DOWNS, JUST IN THE PAST COUPLE WEEKS, HAS

24  OPPOSED A REEXAMINATION AND CONFIRMED WHAT WE HAVE BEEN

25  TELLING YOU ALL ALONG.  THAT, FIRST OF ALL, CLAIMS HAVE A

1   NINETY-PERCENT CHANCE OF SURVIVING REEXAMINATION.  EVEN IF

2   THE EXAMINERS REJECT THE CLAIMS ON APPEAL, THEY ARE REVERSED

3   ABOUT HALF THE TIME.

4        SO WE KNOW YOU REALLY DON'T GET MUCH GOOD OUT OF

5   WHAT'S HAPPENING IN THE PATENT OFFICE PROCEEDINGS UNTIL IT

6   COMPLETES.

7        MR. DOWNS, IN BRIEFING, JUST THIS PAST COUPLE

8   WEEKS -- IN FACT, I THINK JUST YESTERDAY -- POINTED OUT THAT

9   IN SOME REEXAMINATIONS THAT ARE FURTHER ALONG THAN OURS,

10  THEY STILL HAVE THREE OR FOUR YEARS REMAINING, AT LEAST.  WE

11  ALSO SUBMITTED --

12        THE COURT:  YOU ARE TALKING THREE OR FOUR YEARS IN

13  THE PATENT OFFICE ITSELF, OR THREE OR FOUR MORE YEARS,

14  INCLUDING MATTERS BEFORE THE CIRCUIT?

15        MR. LONG:  I WILL GIVE YOU THE QUOTES TO MAKE SURE

16  I AM NOT MISINTERPRETING.  THEY TALK ABOUT TWO PATENTS.  ONE

17  HAD AN INITIAL REJECTION.  ONE HAD A FURTHER-ALONG

18  REJECTION.  AND THEY STATE THAT, QUOTE, IT MAY BE MORE THAN

19  FIVE YEARS FROM ANY FINAL DETERMINATION IF THE P. T. O.

20  REEXAMINATION PROCEEDINGS ARE ALLOWED TO TAKE THEIR NORMAL

21  COURSE, END QUOTE.

22        THAT'S WHAT MR. DOWNS WAS TELLING THE I. T. C.

23  JUST YESTERDAY, IN FACT, I BELIEVE, IN THE FILING THEY DID

24  YESTERDAY.

25        WE ALSO SUBMITTED TO YOU THE FINAL SENATE REPORT

1 THAT CAME OUT, I THINK, IN FEBRUARY OR MAYBE JANUARY BECAUSE

2 THEY ARE CONSIDERING THE WHOLE INTER PARTES REEXAMINATION

3 PROCEEDING.

4 THEY HAVE TESTIMONY FORM THE DIRECTOR OF THE

5 PATENT OFFICE THAT ESSENTIALLY APOLOGIZED FOR THE LONG

6 PENDENCY OF REEXAMINATIONS AND ACKNOWLEDGED THAT THIS WASN'T

7 CONSISTENT WITH THE IDEA OF SPECIAL DISPATCH.

8 THE SENATE REPORT, WITH THEIR FULL INVESTIGATIVE

9 AUTHORITY AND THE ABILITY TO TAKE SWORN TESTIMONY, FOUND

10 THAT PATENTS IN LITIGATION, THEIR REEXAMINATIONS CAN LAST

11 SEVEN TO EIGHT YEARS.  AND THAT'S IN THE PAPERS I GAVE YOU

12 YESTERDAY.

13 SO THE BOTTOM LINE, THERE REALLY IS ALL THE

14 EVIDENCE -- EVERYTHING WE HAVE SEEN -- EVEN STATEMENTS BY

15 CISCO'S OWN COUNSEL CONFIRM THAT WE HAVE AT LEAST THREE,

16 FOUR, OR MAYBE SEVEN OR EIGHT YEARS BEFORE REEXAMINATION IS

17 COMPLETE.

18 AND WE HAVE GIVEN YOU THE STATEMENTS FROM THE

19 FEDERAL CIRCUIT AND FROM THE PATENT OFFICE THAT SAY, "DON'T

20 GIVE ANY INTERIM DECISIONS FROM THE PATENT OFFICE ANY

21 WEIGHT.

22 AND MR. DOWNS -- HE'S TELLING THE I. T. C. THE

23 SAME THING WE'VE BEEN TELLING YOU, WHICH IS THAT THESE

24 INTERIM DECISIONS WARRANT LITTLE WEIGHT, AND THERE IS NO

25 REASON TO WAIT FOR THEM.

1    SO WHERE WE'RE LOOKING AT AND THE CHOICE OF WHERE

2    WE'RE AT, IF IT IS 18 MONTHS HERE, THAT IS BETTER THAN FOUR,

3    FIVE, SIX, OR SEVEN YEARS DOWN THE ROAD.  AND IF CISCO WILL

4    BE FORTHRIGHT IN DISCOVERY, WE MAY BE ABLE TO GET IN A

5    POSITION TO SEEK INJUNCTIVE RELIEF.

6    WE HAVE BEEN ASKING FOR A FEW THINGS FROM THEM

7    THAT ARE REALLY NO COST TO THEM.  ONE IS THEIR SOFTWARE THAT

8    HAS BEEN PRODUCED AT THEIR LAW FIRM'S OFFICE HERE IN D.C.

9    THEY JUST NEED TO ALLOW US TO COME IN THE DOOR AND REVIEW IT

10   TO SEE HOW THEIR SYSTEM WORKS SO WE CAN PUT TOGETHER AN

11   INFRINGEMENT CASE THAT WE CAN BRING PERHAPS SOME DISPOSITIVE

12   MOTION.

13   WE HAVE ALSO ASKED THEM TO GIVE US SAMPLES OF

14   THEIR PRODUCTS.  AND YOUR COURT'S ORDER SAID THEY SHOULD DO

15   SO, BUT ONLY AT THEIR COST.  IT WOULD COST THEM NOTHING TO

16   GIVE US THESE SAMPLES.

17   IF THEY COULD BE FORTHRIGHT WITH THAT AND OTHER

18   DISCOVERY, WE MAY BE IN A POSITION TO GET RELIEF SOONER THAN

19   18 MONTHS, UNDERSTANDING THE COURT'S DOCKET.  BUT EVEN IF WE

20   WAITED 18 MONTHS, THAT IS MUCH BETTER THAN THE FOUR, FIVE,

21   OR SEVEN YEARS THAT REALISTICALLY WE CAN EXPECT THESE

22   REEXAMINATIONS TO LAST.

23   THE COURT:  REPLY?

24   MR. DOWNS: LET ME JUST ADDRESS, FIRST OF ALL, THIS

25   CHART SHOWING THE SPIKE OF THE MARKET, I GUESS.  I MEAN,

1    IT'S WELL AND GOOD TO SHOW THAT INTERNET TELEPHONES MAY BE

2    POPULAR, BUT THERE IS NO EVIDENCE THAT TELES IS ABLE TO

3    CAPTURE ANY OF THAT INCREASED MARKET SHARE RIGHT NOW.  IF

4    THEY HAVE A DISTRIBUTOR, MAYBE AN AWARD OF THEIR PRODUCT

5    ISSUED BY THEIR OWN DISTRIBUTOR --

6            THE COURT:  WHILE I HAVE THIS ON MY MIND, LET ME

7    JUST ASK A QUESTION AS I THINK ABOUT WHAT COUNSEL JUST SAID.

8            MR. DOWNS:  SURE.

9            THE COURT:  IF I WERE TO STAY THESE PROCEEDINGS

10   PENDING A DECISION BY THE P. T. O., WOULD THERE BE ANY

11   PROBLEM WITH THE DISCOVERY THAT COUNSEL MENTIONED BEING

12   PROVIDED DURING THAT COURSE SO THAT THEY WOULD BE IN A

13   POSITION OF ASSESSING WHETHER THEY WOULD BE ABLE TO FILE A

14   DISPOSITIVE MOTION PRIOR TO THE TIME THAT THE P. T. O. WOULD

15   REACH ITS DECISION?

16           MR. DOWNS: I GUESS THERE ARE A COUPLE PROBLEMS

17   WITH THAT ARGUMENT.  ONE IS THAT THEY DID HAVE ACCESS TO OUR

18   SOURCE CODE FOR EIGHT MONTHS OR SOMETHING BEFORE THE STAY

19   WAS ENTERED.  AND SO THEY HAVE HAD THAT ACCESS.

20           SECONDLY, WITH RESPECT TO THE CISCO PRODUCTS, THEY

21   COULD HAVE GONE OUT AND BOUGHT PRODUCTS AT ANY TIME.  THEY

22   NEVER DID.  THEY JUST WERE KIND OF WAITING FOR US TO SELL

23   THEM TO THEM, IN A WAY.

24           BUT, THIRD, AND MOST IMPORTANTLY, EVEN IF,

25   THEORETICALLY, THEY COULD MAKE A MOTION TO SAY SOME PRODUCT

1    OUT OF OUR TWO HUNDRED PRODUCTS INFRINGES, AND THERE IS NO

2    QUESTION OF FACT, YOU NEED TO HAVE EXPERTS.  YOU NEED TO

3    HAVE A FAIR AMOUNT OF OTHER DISCOVERY TO DO THAT.  AND EVEN

4    IF THEY WON, IT STILL WOULDN'T ADDRESS OR GIVE YOU THE

5    ABILITY TO ISSUE ANY KIND OF INJUNCTIVE RELIEF BECAUSE THERE

6    IS THE INVALIDITY QUESTION.

7         AND A PRELIMINARY INJUNCTION IN PATENT CASES IS

8    DEFEATED BY A SUBSTANTIAL QUESTION OF INVALIDITY, WHICH HAS

9    ALREADY BEEN DEMONSTRATED AT THE PATENT OFFICE.  SO THERE IS

10   NO WAY FOR THEM TO GET ANY KIND OF INTERIM RELIEF.

11        AND THAT'S WHY I THINK THAT IT IS IMPORTANT

12   THAT -- YOU KNOW, IF THE MARKET IS SPIKING UP, TELES CAN GET

13   OUT THERE AND COMPETE.  WE'RE DOING ANYTHING AT ALL TO STOP

14   THEM.  THEY CAN GET OUT THERE AND SELL AS MUCH AS THEY CAN.

15   ALL POWER TO THEM.  BUT THAT DOESN'T HAVE ANYTHING TO DO

16   WITH THIS CASE BECAUSE IF THEY ULTIMATELY PREVAIL IN THE

17   PATENT OFFICE, THEY CAN GET DAMAGES TO COVER THEIR HARM.

18        I GUESS -- I DON'T KNOW IF MY INTEGRITY IS BEING

19   IMPUGNED, BUT WITH RESPECT TO THIS OTHER CASE IN THE I.T.C.,

20   WHICH WAS STAYED AND WHICH WE PROVIDED A COPY TO YOUR HONOR,

21   THE HOWREY FIRM WAS ON THE OTHER SIDE ARGUING IN FAVOR OF

22   THE STAY.  MY CLIENT, FOR REASONS WHICH I WOULD BE HAPPY TO

23   EXPLAIN WHY THE CIRCUMSTANCES ARE VERY DIFFERENT, WAS

24   OPPOSING THE STAY IN THAT CASE, IN PART BECAUSE, FOR

25   EXAMPLE, THE PARTIES WERE ALL LITERALLY STANDING IN COURT --

1    THE COURT: ARE YOU ACKNOWLEDGING THAT THE PROCESS

2  WOULD TAKE AS LONG AS WHAT'S INDICATED?

3    MR. DOWNS: YOU KNOW, I THINK THE STATISTICS AND

4  THE LETTER FROM THE PATENT OFFICE -- EVERYBODY IS DEALING

5  WITH THE SAME STATISTICS BASICALLY.  THE EVIDENCE IS THAT

6  SOME REEXAMS DO TAKE A FAIR AMOUNT OF TIME.  SOME GO MORE

7  QUICKLY.

8    I THINK IF YOU LOOK AT THE LETTER YOUR HONOR GOT

9  IN THIS CASE WHERE THEY ARE ASKING IN THIS CASE, THE KEY

10  FACTOR -- ONE OF THE KEY FACTORS IS THAT THE SOLICITOR SAID

11  FROM NOVEMBER 27TH, WHEN YOU HAD THE FIRST OFFICE ACTION,

12  UNTIL WHEN YOU GET THE SECOND OFFICE ACTION -- WHICH COULD

13  EVEN CLOSE THE PATENT OFFICE EXAMINER PORTION OF THE

14  PROCEEDING -- THE END OF STAGE THREE, HE CALLED IT -- FOUR

15  TO FIVE MONTHS WAS HIS ESTIMATE.

16    SO WE ARE LOOKING AT, NOW THAT ALL OF THE PAPERS

17  ARE IN, SOMETHING MAYBE THE END OF APRIL OR MAY -- SOMETHING

18  THAT WE SHOULD BE GETTING MORE INFORMATION ABOUT WITHIN A

19  MATTER OF MONTHS.  AND PUT ASIDE WHAT MAY HAPPEN IN THE

20  OTHER CASE, OR HOW LONG -- AND LET ME EXPLAIN WHY THAT WAS

21  IMPORTANT IN THAT CASE.  IN THAT CASE, THE PATENTS AT ISSUE

22  WERE GOING TO EXPIRE DURING THE TIME IT MIGHT HAVE TAKEN TO

23  GO ALL THE WAY UP THROUGH APPEAL.  SO THAT IF THE PATENTS

24  WERE RULED INVALID AND WENT ON APPEAL, EFFECTIVELY MY CLIENT

25  IN THAT CASE -- AND THERE WERE SEVERAL OTHER LAW FIRMS

1   INVOLVED -- BUT MY CLIENT WOULD HAVE BEEN COMPLETELY

2   DEPRIVED OF ANY I. T. C. REMEDY.

3          SO IT IS A FAR DIFFERENT SITUATION HERE, WHERE IF

4   YOUR HONOR STAYS IT, I THINK WE WILL KNOW FROM THE PATENT

5   OFFICE -- WE ALREADY KNOW.  I THINK WE HAVE A VERY GOOD

6   INDICATION FROM THE PATENT OFFICE THAT THEIR CLAIMS ARE

7   INVALID.  WE HAVE SEEN THEY ARE INVALID IN EUROPE.  THESE

8   PATENTS --

9          THE COURT:  COUNSEL SUGGESTS THAT THESE INTERIM

10  DECISIONS REALLY ARE NOT OF MUCH SIGNIFICANCE.

11         MR. DOWNS:  THAT'S WHAT HE SAYS.  YOU KNOW, HE

12  KEEPS SAYING THAT, AND THEY KEEP COMING OUT THAT THE CLAIMS

13  ARE INVALID.  AND WE WILL SEE WHAT HAPPENS IN A COUPLE OF

14  MONTHS WHEN WE GET THE NEXT ROUND.  BUT I THINK, YOUR HONOR,

15  TO GO BACK TO THE QUESTION OF -- EVERYTHING ELSE FAVORS THE

16  STAY.  I DON'T THINK THERE IS MUCH DISPUTE ABOUT THAT.

17         THE PREJUDICE IS NOT PROVEN ON THE RECORD, AND

18  IT'S COMPENSABLE BY DAMAGES IN THIS CASE.  AND HOW LONG IT

19  TAKES -- WE HAVE THE ESTIMATE FROM THE PATENT OFFICE.  YOUR

20  HONOR ASKED FOR IT.  THEY GAVE YOU A GOOD-FAITH ESTIMATE.  I

21  THINK WE HAVE TO GO BY THAT FOR THIS CASE.

22         I MEAN, I CAN'T ARGUE WITH THAT.  IT MAY GO

23  FASTER, AND HOPEFULLY IT WILL, BUT I THINK EVERY INDICATION

24  WE HAVE IS THAT THESE PATENTS ARE LIKELY TO BE FOUND INVALID

25  OR, AT A MINIMUM, THEY MAY HAVE TO FILE AMENDMENTS.

1       AND I DON'T KNOW IF YOU HAD A CHANCE TO LOOK AT

2   THE SUBSTANTIVE DOCUMENTS THAT WE SENT YOU THAT WERE SENT IN

3   TO THE REEXAM.  IN EFFECT, WHAT TELES WAS ARGUING TO TRY TO

4   GET AROUND THE PRIOR ART WE CITED WAS THAT THESE PATENTS

5   HAVE A WHOLE BUNCH OF SPECIAL MEANINGS TO THEIR CLAIM TERMS

6   THAT HAVE TO BE READ INTO THE PATENT IN ORDER TO ENABLE THEM

7   TO GET AROUND THE PRIOR ART.

8       AND THAT IS PRECISELY THE KIND OF STATEMENT THAT

9   THEY MADE TO THE PATENT OFFICE, WHICH IS GOING TO BE

10  INFORMATIVE TO YOUR HONOR AFTER THE PROCEEDINGS ARE DONE AS

11  TO REALLY, IF THE CLAIMS SURVIVE, WHAT THEY MEAN AND HOW

12  THEY SHOULD BE CONSTRUED.

13      SO, YOUR HONOR, WE HAVE ALREADY SEEN IN THE RECORD

14  THAT THERE WOULD BE REASONS TO WAIT UNTIL THE PATENT OFFICE

15  IS DONE BEFORE YOUR HONOR DECIDES A SUMMARY JUDGMENT MOTION

16  OR DECIDES A CLAIM CONSTRUCTION ISSUE.

17      THE COURT:  BE VERY BRIEF.

18      MR. LONG:  YOUR HONOR, I WILL JUST RESPOND, IF YOU

19  DON'T MIND, TO A COUPLE OF THINGS MR. DOWNS SAID.

20      FIRST OF ALL, THERE IS SUBSTANTIAL BRIEFING ABOUT

21  HOW CLAIM CONSTRUCTION IN THE PATENT OFFICE AND THE COURTS

22  ARE DIFFERENT.

23      MR. DOWNS TOLD THE I. T. C. THE SAME THING JUST

24  THE DAY BEFORE YESTERDAY BECAUSE IT IS WELL KNOWN TO THOSE

25  IN THE PATENT COMMUNITY THAT THEY ARE DIFFERENT PROCEEDINGS.

1   IT IS NOT GOING TO BE VERY USEFUL TO YOU.

2          AND I DON'T TAKE ISSUE WITH MR. DOWNS ADVOCATING

3   ON BEHALF OF HIS CLIENT IN THE I. T. C. FOR OTHER FACTORS,

4   BUT THE FACT IS WHAT HE TOLD THE I. T. C. -- AND THIS IS

5   MORE FACT -- IS HOW LONG REEXAMINATIONS MAY LAST.

6          THERE IS UNIVERSAL AGREEMENT -- ALL THE DATA SHOWS

7   THAT IT CAN BE THREE, THREE AND A HALF, FOUR YEARS -- OR

8   FIVE YEARS, I THINK, IS ONE OF THE NUMBERS HE TOLD THE

9   I. T. C.

10          HE ALSO TOLD THE I. T. C. THAT EVEN IN THOSE

11   PATENTS THAT ARE FURTHER ALONG WITH REJECTIONS, THAT THEY

12   ARE STILL LIKELY TO PREVAIL.

13          AND THE STATISTICS BEAR THAT OUT.  WE HAVE GIVEN

14   YOU STATISTICS THAT SHOW THAT ABOUT HALF OF THE TIME,

15   EXAMINERS ARE REVERSED INTERNALLY WITHIN THE PATENT OFFICE.

16          SO ALL OF THAT REALLY SHOULD NOT BE IN DISPUTE

17   HERE.  I UNDERSTAND YOUR HONOR'S CONCERN ABOUT YOUR DOCKET

18   AND YOUR TIME.  I UNDERSTAND IT COMPLETELY.  IF GIVEN OUR

19   CHOICE BETWEEN FOUR OR FIVE YEARS AND WAITING AND PROCEEDING

20   IN YOUR COURT, WE WOULD CERTAINLY DO THAT.

21          IF I COULD BE SO BOLD, IF YOUR HONOR'S PRINCIPAL

22   CONCERN IS THE ABILITY, GIVEN YOUR PARTICULAR DOCKET, TO

23   PROCEED WITH THIS CASE, WE WOULD BE WILLING TO DO A TRANSFER

24   TO A COURT THAT WAS NOT AS BUSY.  I DON'T KNOW IF ONE

25   EXISTS, BUT AS YOU CAN UNDERSTAND WHERE WE ARE AT --

1    THE COURT:  MY CALENDAR IS PROBABLY BETTER THAN

2  MOST OF MY COLLEAGUES.

3    MR. LONG: I UNDERSTAND, YOUR HONOR.  THE THOUGHT

4  IS IT'S JUST WHOLLY UNACCEPTABLE.  WHERE WE ARE IN THE

5  MARKET -- I THINK I'LL PUT THE SLIDE BACK THERE SO YOU CAN

6  SEE -- THAT'S THE EVIDENCE.  THAT'S WHERE WE'RE AT.  THAT'S

7  SUBSTANTIAL HARM THAT CANNOT BE MEASURED.  AND THE COURTS

8  THAT HAVE DEALT WITH THIS SPECIFIC PROBLEM HAVE SAID YOU

9  CANNOT DO A STAY HERE IN THE CIRCUMSTANCE.

10    THE COURT:  OKAY.  WELL, I AM NOT UNSYMPATHETIC TO

11  THE CONCERNS THAT HAVE BEEN EXPRESSED BY TELES.  OBVIOUSLY,

12  THE REEXAMINATION PROCESS WAS PUT IN PLACE BECAUSE IT SERVES

13  A VIABLE PURPOSE, CONSIDERING THE EXPERTISE OF THE PATENT

14  AND TRADEMARK OFFICE.

15    I THINK, UNDER THE BEST OF CIRCUMSTANCES, IT IS

16  ADVISABLE FOR THAT OFFICE TO HAVE THE OPPORTUNITY TO CONDUCT

17  ITS REEXAMINATION, BECAUSE WHILE INTERIM DECISIONS MAY NOT

18  HAVE MUCH IMPACT ON THE LITIGATION PROCESS, OBVIOUSLY, THEIR

19  ULTIMATE DECISION COULD HAVE AN IMPACT.  AND I THINK, IF

20  POSSIBLE, IT IS APPROPRIATE FOR MATTERS TO BE STAYED TO GIVE

21  THAT OFFICE THE OPPORTUNITY TO CONDUCT THE REEXAMINATION

22  PROCESS.

23    I DO HAVE CONCERNS ABOUT THE LENGTH OF TIME IT

24  TAKES THE OFFICE TO COMPLETE ITS WORK AND THE OBVIOUS

25  POTENTIAL PROBLEM, AS FAR AS PREJUDICE IS CONCERNED, THAT

1   CAN CREATE FOR A LITIGANT IN THE STATUS THAT TELES IS IN.

2          THE AMOUNT OF TIME THAT THE OFFICE REPRESENTED IN

3   THEIR LETTER IT WOULD TAKE TO ADDRESS THIS MATTER, ASSUMING

4   THEY ARE ABLE TO STICK TO THAT SCHEDULE, I DON'T THINK IS

5   UNREASONABLE.  AND I DO THINK, BASED UPON WHAT HAS BEEN

6   REPRESENTED, THAT THERE WILL -- ASSUMING THAT TELES

7   ULTIMATELY DOES PREVAIL, THERE WOULD BE AN ADEQUATE REMEDY

8   WHEREBY IT WOULD BE ABLE TO RECOVER APPROPRIATE DAMAGES FOR

9   ANY INJURY IT SUSTAINED AS A RESULT OF THE ACTIONS OF CISCO.

10         SO I WOULD CONCLUDE THAT A STAY IS APPROPRIATE.

11  WHAT I WILL DO IN THE INTERIM, HOWEVER, IS WE WILL SEND

12  ANOTHER LETTER TO THE P. T. O., TELLING THEM WHAT WE HAVE

13  DONE AND TELLING THEM THAT WE HAVE DONE IT BASED UPON THEIR

14  REPRESENTATIONS AS TO HOW LONG THEY BELIEVE IT WILL TAKE FOR

15  THIS PROCESS TO BE COMPLETED.  AND WE WILL BE ASKING THEM

16  FOR A PERIODIC UPDATE.

17         THEY HAVE BEEN, AT THIS POINT, VERY WILLING, IT

18  SEEMS, TO WORK WITH US AS TO WHERE THEY ARE.  AND I WILL SET

19  THE MATTER DOWN FOR A STATUS HEARING TO SEE IF THE THINGS

20  THAT THEY SAY THEY WOULD HAVE DONE HAVE OCCURRED.  IF THEY

21  HAVE, THEN WE CAN CONTINUE WITH THE STAY.  IF THEY ARE OFF

22  TRACK, AND IT APPEARS THAT WE ARE TALKING ABOUT AN EXTENDED

23  TIME FOR THEM TO COMPLETE THE REEXAMINATION PROCESS, AS

24  SUGGESTED BY TELES, THEN I WILL AT THAT POINT REEXAMINE

25  WHETHER I SHOULD LIFT THE STAY AND PROCEED WITH THIS

1  LITIGATION.

2       BUT CONSIDERING THE BENEFITS THAT I SEE WOULD

3  INURE TO THE PROCESS OR TO THE LITIGATION WITH A FINAL

4  DECISION BY THE P. T. O. -- ASSUMING THAT DECISION IS

5  ULTIMATELY UPHELD ON APPEAL -- I THINK IT IS ADVISABLE TO

6  STAY THIS MATTER AND REVISIT IT PERIODICALLY AS THE PROCESS

7  MOVES ALONG TO SEE WHETHER THE P. T. O. IS, IN FACT, MOVING

8  THE REEXAMINATION PROCESS AT THE PACE INDICATED IN THE

9  LETTER.

10       SO I WILL, OVER OBJECTION, GRANT THE STAY, AND I

11  WILL ADMINISTRATIVELY CLOSE THE CASE, BUT IT WILL STILL

12  REMAIN OPEN.  AND I WILL SET THE MATTER DOWN FOR A STATUS

13  HEARING TO SEE IF THE PATENT OFFICE IS ON TRACK, AS THEY

14  INDICATED TO ME.  AND COUNSEL WAS SUGGESTING THAT, I GUESS,

15  ABOUT SIX MONTHS WOULD BE AN APPROPRIATE TIME TO BRING US

16  BACK.  IS THAT RIGHT?

17       MR. DOWNS: THAT WOULD BE FINE, YOUR HONOR.

18       THE COURT:  OR SOONER?

19       MR. LONG:  YOUR HONOR, THEY SUGGESTED -- AS I

20  RECALL, MR. DOWNS SAID IN APRIL THEY WOULD HAVE A

21  DECISION -- THE NEXT STAGE.

22       MR. DOWNS: I DIDN'T SAY THAT.  WHAT I SAID IS

23  THAT'S WHAT THE LETTER SUGGESTED.

24       THE COURT:  WE CAN SET IT AND SEE IF THEY ARE ON

25  TRACK SOMETIME IN MAY OR EARLY JUNE AND SEE IF THEY ARE

1    MOVING ALONG AS THEY INDICATE.

2            MR. LONG: THANK YOU, YOUR HONOR.

3            YOUR HONOR, I HATE TO ASK, BUT --

4            THE COURT:  I'M SORRY.  MAY 30TH AT 1:30.  IS THAT

5    GOOD?

6            MR. DOWNS: IS THAT MEMORIAL DAY WEEK?

7            THE COURT:  THAT'S THAT SAME WEEK.  MEMORIAL DAY

8    IS THAT MONDAY.

9            MR. DOWNS:  ALL RIGHT.

10            THE COURT:  IF YOU HAVE PLANS, WE COULD DO IT

11    ANOTHER WEEK.  THAT'S FINE.

12            THE DEPUTY CLERK:  MEMORIAL DAY IS THE MONDAY

13    BEFORE THAT.

14            THE COURT:  RIGHT, THE MONDAY BEFORE THAT.

15            MR. DOWNS:  I JUST WANT TO BE ALLOWED THE WEEKEND.

16    THAT'S ALL.

17            THE COURT:  IT'S THE MONDAY BEFORE THAT.

18            THE DEPUTY CLERK:  IT'S THE MONDAY BEFORE THAT.

19            THE COURT:  IT'S THE MONDAY BEFORE THAT.

20            MR. DOWNS: YOUR HONOR, I'LL HAVE TO CHECK MY

21    SCHEDULE.  I MAY HAVE A HEARING AT THAT TIME, BUT LET'S PUT

22    IT THERE FOR NOW.

23            THE COURT:  VERY WELL.  1:30 ON MAY 30TH.

24            MR. LONG: YES, YOUR HONOR.  ONE LAST THING.  A

25    COMPROMISE YOUR HONOR HAD INDICATED IS IF WE COULD --

1        THE COURT:  I DON'T HAVE ANY PROBLEM, IT SEEMS TO

2   ME, SO THAT WE WILL BE IN A POSITION, WHENEVER WE GET BACK

3   ON TRACK, TO MOVE THE CASE AS QUICKLY AS POSSIBLE.  IF THERE

4   IS SOME DISCOVERY THAT CAN BE PROVIDED TO MOVE THAT PROCESS

5   ALONG EVENTUALLY, I DON'T HAVE A PROBLEM WITH THAT.

6        MR. LONG: YES, YOUR HONOR.  ALL I WAS GOING TO ASK

7   IS IF WE CAN HAVE ACCESS TO THEIR SOURCE CODE -- THERE WAS

8   ONE PIECE OF SOURCE CODE WE'D ASKED THEM TO GET TO US.  THEY

9   NEEDED TO.  AND, ALSO, FOR THEM TO PROVIDE THE PRODUCTS

10  YOU'D ORDERED THEM TO PROVIDE.  THAT WOULD GET US A LONG

11  WAYS TO BE IN A POSITION SO THAT WHEN WE COME BACK TO YOUR

12  STATUS CONFERENCE, WE MAY BE IN A POSITION TO LET YOU KNOW

13  WHETHER OR NOT A PRELIMINARY INJUNCTION MIGHT BE AN ISSUE.

14       THE COURT:  CISCO'S POSITION?

15       MR. DOWNS:  YOUR HONOR, I THINK WE WENT THROUGH

16  THIS.

17       THE COURT:  WE DID, AND I THOUGHT WE HAD REACHED A

18  COMPROMISE IN REFERENCE TO THAT.

19       MR. DOWNS:  NO, I MEAN THE LAST TIME WHEN YOU

20  ISSUED THE STAY IN AUGUST, THEY CAME BACK AND SAID, "WE WANT

21  TO HAVE THIS."  AND YOUR HONOR SAID, "WELL, I THINK A STAY

22  IS A STAY."  AND THAT'S OUR POSITION, TOO.

23       IF WE HAVE TO GO BACK AND SEARCH OUR SOURCE CODE

24  FOR ADDITIONAL STUFF, WHICH IS WHAT THEY SEEM TO BE

25  SAYING -- MS. SHIFERMAN TELLS ME THAT ACTUALLY IS NOT

1  SIMPLE.  IT'S COMPLICATED.

2          AND THEN WITH RESPECT TO THE PRODUCTS, AGAIN, THEY

3  COULD BUY THOSE ANYTIME THEY WANT.

4          I THINK -- I HOPE THE PATENT OFFICE HAS ACTED BY

5  MAY.  AND I BELIEVE THAT THE RESULT WILL BE WHAT WE SAY.

6  BUT I DON'T THINK WE SHOULD HAVE A PIECEMEAL STAY.  I DON'T

7  THINK THERE IS ANY EVIDENCE THAT THERE IS ANY REAL PREJUDICE

8  FROM CONTINUING WHAT WE HAVE BEEN DOING FOR A FEW MONTHS.

9          SO I WOULD OBJECT TO HAVING THAT DISCOVERY BECAUSE

10 IT WILL COST US TIME AND EFFORT.  AND WE WILL HAVE TO

11 RECONSTITUTE THE STAFF WHO HAVE OTHERWISE BEEN DOING OTHER

12 THINGS TO GET THEIR HEAD BACK IN THIS CASE, YOUR HONOR.

13         I MEAN, IF THEY WANT TO MOVE AHEAD AND PRODUCE

14 DISCOVERY TO US -- YOU KNOW, IF THEY WANT TO ADVANCE THE

15 BALL THAT WAY BECAUSE THEY OWE US A LOT OF THINGS, TOO --

16 BUT I DON'T THINK THAT'S WHAT WE SHOULD BE DOING.  I THINK

17 WE SHOULD BE --

18         THE COURT:  FOR THE TIME BEING, I WILL JUST ENTER

19 THE STAY, AND WE WILL SEE WHERE WE ARE IN MAY.  I MAY ALTER

20 THAT DECISION IN REFERENCE TO DISCOVERY, DEPENDING UPON

21 WHERE WE ARE AT THAT TIME.

22         THANK YOU.

23         MR. LONG:  THANK YOU, YOUR HONOR.

24         (WHEREUPON, THE ABOVE-ENTITLED MATTER WAS

25 ADJOURNED.)

1          CERTIFICATE OF REPORTER

2     THIS RECORD IS CERTIFIED BY THE UNDERSIGNED REPORTER TO

3  BE THE OFFICIAL TRANSCRIPT OF THE PROCEEDINGS INDICATED.

4                          _____

5                          PHYLLIS MERANA

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25